NIELSEN MERKSAMER LLP
   Christopher E. Skinnell, Esq. (S.B. No. 227093)
   David J. Lazarus, Esq. (S.B. No. 304352)
2350 Kerner Boulevard, Suite 250
San Rafael, California 94941
Telephone: (415) 389-6800
Facsimile:  (415) 388-6874
E-mail: cskinnell@nmgovlaw.com
E-mail: dlazarus@nmgovlaw.com

*Attorneys for (Proposed) Intervenor-Defendants*
CALIFORNIANS TO DEFEND THE OPEN PRIMARY
and INDEPENDENT VOTER PROJECT

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEACE AND FREEDOM PARTY OF CALIFORNIA, *et al.*,<br><br>   *Plaintiffs*,<br><br>vs.<br><br>Dr. SHIRLEY N. WEBER, CALIFORNIA SECRETARY OF STATE,<br><br>   *Defendant*.<br><br>CALIFORNIANS TO DEFEND THE OPEN PRIMARY and INDEPENDENT VOTER PROJECT,<br><br>   *(Proposed) Intervenor-Defendants*. | Case No. 4:24-cv-08308-MMC<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE OF CALIFORNIANS TO DEFEND THE OPEN PRIMARY AND INDEPENDENT VOTER PROJECT**<br><br>DATE: March 28, 2025<br>TIME: 9:00 a.m.<br>COURTROOM: 7 (19th Floor)<br>JUDGE: Hon. Maxine M. Chesney |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION & MOTION ...................................................................... 8

MEMORANDUM OF POINTS & AUTHORITIES ....................................... 9

    I.     INTRODUCTION ........................................................................... 9

    II.    FACTUAL BACKGROUND ........................................................ 10

          A.    ABOUT CALIFORNIANS TO DEFEND THE OPEN PRIMARY AND
THE INDEPENDENT VOTER PROJECT .................................. 10

          B.    ABOUT PROPOSITION 14 ................................................. 11

          C.    ABOUT THE MANY AND VARIED PRIOR SUITS CHALLENGING
PROPOSITION 14 IN WHICH CADOP AND IVP HAVE
INTERVENED .................................................................... 13

    III.   CALIFORNIANS TO DEFEND THE OPEN PRIMARY AND
THE INDEPENDENT VOTER PROJECT MEET THE
STANDARD FOR INTERVENTION OF RIGHT UNDER FRCP
24(a), AND HAVE REPEATEDLY BEEN GRANTED
INTERVENTION TO DEFEND PROPOSITION 14 ............................. 16

          A.    AS THE DRAFTERS AND CHIEF SUPPORTERS OF PROPOSITION
14 IN THE CAMPAIGN, AND AS LITIGANTS WHO HAVE
PREVIOUSLY DEFENDED PROPOSITION 14'S
CONSTITUTIONALITY AGAINST THESE SAME PLAINTIFFS,
CADOP AND IVP HAVE SIGNIFICANT PROTECTABLE
INTERESTS IN DEFENDING THE MEASURE AGAINST LEGAL
CHALLENGE .................................................................... 16

          B.    THE DISPOSITION OF THIS ACTION "MAY, AS A PRACTICAL
MATTER, IMPAIR OR IMPEDE [PROPOSED INTERVENORS']
ABILITY TO PROTECT [THEIR] INTEREST[S]." .................... 18

          C.    THIS MOTION IS TIMELY ................................................ 19

               1.    Stage of the proceedings: no significant
proceedings have yet taken place in this action ................ 19

               2.    Intervention will not prejudice the existing parties .......... 20

3. Length of delay and reason for delay: CADOP and IVP have moved expeditiously to intervene in this action .................................................................................... 21

D. THE EXISTING PARTIES DO NOT ADEQUATELY REPRESENT THE PROPOSED INTERVENORS' INTERESTS ......................................... 22

IV. ALTERNATIVELY, CALIFORNIANS TO DEFEND THE OPEN PRIMARY AND THE INDEPENDENT VOTER PROJECT SHOULD BE GRANTED PERMISSIVE INTERVENTION UNDER FRCP 24(b).................................................... 25

V. CONCLUSION.............................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hotel & Lodging Assn. v. City of Los Angeles,*
  Case No. 2:14-cv-09603-AB-SS (C.D. Cal.) ................................................ 25

*Amoco Oil Co. v. Dingwell,*
  690 F. Supp. 78 (D. Me. 1988) ...................................................................... 27

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003) ...................................................................... 16

*Bates v. Jones,*
  904 F. Supp. 1080 (N.D. Cal. 1995) ................................................. 17, 23, 24

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.,*
  712 F.3d 1349 (9th Cir. 2013) ...................................................................... 25

*Brown v. Bowen,*
  Case No. 2:12-cv-05547-PA-SP (C.D. Cal.) ........................................... 15, 16

*Building Industry Assn. v. City of Camarillo,*
  41 Cal. 3d 810 (1986) ................................................................................... 28

*Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.,*
  309 F.3d 1113 (9th Cir. 2002) ................................................................ 19, 21

*Chamness v. Bowen,*
  722 F.3d 1110 (9th Cir. 2013) .......................................................... 15, 16, 22

*Chamness v. Bowen,*
  Case No. 2:11-cv-01479-ODW-FFM (C.D. Cal.) (Dkt. #80) (Mar. 30,
  2011 order denying motion for preliminary injunction) ............................... 22

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011) ........................................................................ 18

*Clark v. Superior Court,*
  2010 Cal. App. Unpub. LEXIS 1911 (Cal. Ct. App. 3d Dist. Mar. 16,
  2010) ............................................................................................................. 14

*Doe v. Harris,*
  2013 U.S. Dist. LEXIS 4215 (N.D. Cal. Jan. 10, 2013) ............................... 27

*Est. of Monk v. Alameda Cty.,* No. 22-cv-04037-TSH, 2023 U.S. Dist.
  LEXIS 17164 (N.D. Cal. Feb. 1, 2023) ......................................................... 22

*Field v. Bowen*,
 199 Cal. App. 4th 346 (2011) ................................................................ 14, 23, 27

*Freedom from Religion Found., Inc. v. Geithner*,
 644 F.3d 836 (9th Cir. 2011) ..................................................................... 26, 27

*Idaho Farm Bureau Fed'n v. Babbitt*,
 58 F.3d 1392 (9th Cir. 1995) ............................................................................ 22

*Kootenai Tribe of Idaho v. Veneman*,
 313 F.3d 1094 (9th Cir. 2002) .......................................................................... 26

*United States ex rel. McGough v. Covington Technologies Co.*,
 967 F.2d 1391 (9th Cir. 1992) .......................................................................... 21

*Missouri v. Harris*,
 2014 U.S. Dist. LEXIS 76305 (E.D. Cal. June 3, 2014) ............................ 18, 26

*Northwest Forest Res. Council v. Glickman*,
 82 F.3d 825 (9th Cir. 1996) .............................................................................. 20

*Perry v. Brown*,
 52 Cal. 4th 1116 (2011) .............................................................................. 24, 28

*Prete v. Bradbury*,
 438 F.3d 949 (9th Cir. 2006) ................................................................. 17, 18, 22

*Rubin v. Padilla*,
 233 Cal. App. 4th 1128 (1st Dist. 2015), *rev. denied*, 2015 Cal. LEXIS
 2395 (Cal., Apr. 29, 2015), *cert. denied*, 577 U.S. 923 (Oct. 13, 2015) ............. *passim*

*Sagebrush Rebellion v. Watt*,
 713 F.2d 525 (9th Cir. 1983) ................................................................. 17, 22, 25

*SEC v. United States Realty & Improvement Co.*,
 310 U.S. 434 (1940) .......................................................................................... 25

*Sierra Club v. United States EPA*,
 995 F.2d 1478 (9th Cir. 1993), *overruled in part on other grounds by*
 *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) ..................... 20

*Smith v. Marsh*,
 194 F.3d 1045 (9th Cir. 1999) .......................................................................... 20

*Soltysik v. Padilla*,
 No. CV 15-07916-AB, 2015 U.S. Dist. LEXIS 195316 (C.D. Cal. Dec.
 11, 2015) ............................................................................................................ 16

*Southwest Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) ............................................................. 10

*Spangler v. Pasadena City Bd. of Ed.,*
    552 F.2d 1326 (9th Cir. 1977) ...................................................... 24, 26

*Taylor v. Superior Court,*
    2010 Cal. App. Unpub. LEXIS 1909 (Cal. Ct. App. 3d Dist. Mar. 16,
    2010) .................................................................................................. 14

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972) ........................................................................... 22

*United States v. Alisal Water Corp.,*
    370 F.3d 915 (9th Cir. 2004) .............................................................. 16

*United States v. Oregon,*
    745 F.2d 550 (9th Cir. 1984) .............................................................. 19

*United States v. Union Elec. Co.,*
    64 F.3d 1152 (8th Cir. 1995) .............................................................. 20

*Vivid Entm't, LLC v. Fielding,*
    2013 U.S. Dist. LEXIS 109251 (C.D. Cal. Aug. 2, 2013) .................. 17

*Wash. State Bldg. Constr. Trades v. Spellman,*
    684 F.2d 627 (9th Cir. 1982), *cert. denied sub. nom., Don't Waste
    Wash. Legal Defense Found. v. Wash.,* 461 U.S. 913 (1983) ................... 17

*Wash. State Grange v. Wash. Republican Party,*
    552 U.S. 442 (2008) ........................................................................... 12

*Wash. State Republican Party v. Logan,*
    377 F. Supp. 2d 907 (W.D. Wash. 2005) ........................................... 17

*Wash. State Republican Party v. Wash. State Grange,*
    676 F.3d 784 (9th Cir.), *cert. denied,* 568 U.S. 814 (2012) ................... 12

*Widjaja v. Yum! Brands, Inc.,*
    2009 U.S. Dist. LEXIS 98391 (E.D. Cal. Oct. 22, 2009) .................. 19

*Wilderness Soc'y v. United States Forest Serv.,*
    630 F.3d 1173 (9th Cir. 2011) ............................................................ 26

**Constitutional Authorities**

    First Amendment ................................................................................... 9

Proposition 14, California's Top-Two Candidate Open Primary Act ............... *passim*

    Cal. Const. art. II, § 5 ................................................................................. 12

## Statutes

Assembly Bill 1413 (2011-2012 Reg. Sess.), Cal. Stats. 2012, ch. 3 ......................... 11

Cal. Elec. Code § 359.5 .................................................................................. 12

Cal. Elec. Code § 2151 ................................................................................... 12

Cal. Elec. Code § 8002.5 ................................................................................ 23

Cal. Elec. Code § 8002.5(b) ............................................................................ 12

Cal. Elec. Code § 8002.5(c) ............................................................................ 13

Cal. Elec. Code § 8141.5 ................................................................................ 12

Cal. Elec. Code § 13105 ................................................................................. 23

California's Political Reform Act, Cal. Gov't Code § 81000 *et seq.* ............................ 10

Federal Voting Rights Act ............................................................................... 15

Senate Bill 6 (2009-2010 Reg. Sess), Cal. Stats. 2009, ch. 1 .............................. 11, 27

## Other Authorities

Assem. Comm. on Elec. & Redistricting, Conc. in Senate Amendments
    to AB 1413 (Jan. 26, 2012), p. 7, *available online at*
    http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_
    id=201120120AB1413# (last visited Jan. 28, 2025) ........................................ 17

Fed. R. Civ. Proc. 24 .................................................................................. 16, 27

Fed. R. Civ. Proc. 24(A) .............................................................................. 16, 17

Fed. R. Civ. Proc. 24(a)(2) ........................................................................... 15, 26

Fed. R. Civ. Proc. 24(b) ........................................................................... 24, 25, 26

Fed. R. Civ. Proc. 24(b)(1) ................................................................................ 25

Fed. R. Civ. Proc. 24(b)(1)(B) ........................................................................... 24

Fed. R. Civ. Proc. 24(b)(3) .......................................................................... 25, 26

**NOTICE OF MOTION & MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on Friday, March 28, 2025, at 9:00 a.m., or as soon thereafter as the parties may be heard, Intervenor-Defendants CALIFORNIANS TO DEFEND THE OPEN PRIMARY and INDEPENDENT VOTER PROJECT will move this Court, at the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, Courtroom #7 (19th Floor), for an order granting it leave to intervene as of right under Federal Rule of Civil Procedure 24(a), or, alternatively, for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).

This motion is based on the following documents: this Notice of Motion and the attached Points & Authorities; the Declaration of Christopher E. Skinnell, filed herewith; the Complaint in Intervention and Answer in Intervention, filed herewith; and all the other papers, documents, or exhibits on file or to be filed in this action, and the argument to be made at any hearing on the motion ordered by the Court.

Respectfully submitted,

Dated: January 31, 2025                NIELSEN MERKSAMER LLP

By:    /s/    Christopher E. Skinnell
                Christopher E. Skinnell

*Attorneys for Intervenor-Defendants*
CALIFORNIANS TO DEFEND THE
OPEN PRIMARY and INDEPENDENT
VOTER PROJECT

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION.**

This is now the *seventh* lawsuit challenging Proposition 14, California's Top-Two Candidate Open Primary Act. Proposed Intervenors herein, Californians to Defend the Open Primary ("CADOP") and the Independent Voter Project ("IVP"), have been permitted to intervene in all of the prior suits. In all but one of those cases— including three times in the federal district courts—intervention was granted over the objection of the plaintiffs. Perhaps most importantly, CADOP and IVP previously defended Proposition 14 in a prior challenge to the constitutionality of the Act by these same political parties, on the very same grounds presented by the Complaint herein. *See Rubin v. Padilla*, 233 Cal. App. 4th 1128 (1st Dist. 2015), *rev. denied*, 2015 Cal. LEXIS 2395 (Cal., Apr. 29, 2015), *cert. denied*, 577 U.S. 923 (Oct. 13, 2015) (rejecting First Amendment and Equal Protection challenges to Proposition 14 by so-called "minor" parties based on based on alleged difficulty in advancing from the primary to the general election ballot).

And even though, as the measure's chief sponsors, there is no question CADOP and IVP are entitled to intervene in these proceedings as well, CADOP and IVP are forced, yet again, to seek leave of Court to intervene to defend the measure. Counsel for Defendant Secretary of State has informed Proposed Intervenors' counsel that the Secretary does not oppose this intervention, but Plaintiffs have refused to stipulate, necessitating this motion. *See* Skinnell Decl., filed herewith, ¶¶ 12-13 & Exhibit 1.

CADOP and IVP respectfully request an order from this Court granting their intervention as of right. That CADOP's and IVP's interests in the subject matter of this action, as the chief supporters of Proposition 14, are sufficient to justify intervention is well-established by controlling case law; no other defendant adequately represents CADOP's and IVP's interests; and denying intervention would seriously impair CADOP's and IVP's ability to protect their interests by risking inconsistent court rulings and invalidation of Proposition 14, thereby undermining

CADOP's and IVP's prior legal victories on the same exact issues. Finally, this motion is timely, coming as it does before Defendant Weber is due to file a responsive pleading, and while no proceedings are currently pending. There could not be a clearer case for intervention as of right.

Alternatively, CADOP and IVP should at least be granted permissive intervention. Either way, they should be allowed to participate in this suit.

## II.    FACTUAL BACKGROUND.[1]

### A.    ABOUT CALIFORNIANS TO DEFEND THE OPEN PRIMARY AND THE INDEPENDENT VOTER PROJECT.

CADOP is a California nonprofit corporation formed to support the passage of Proposition 14 by California's voters in 2010. Its sole purpose was, and is, to educate the public about, and to advocate for open, nonpartisan primary elections in California, allowing voters to cross party lines in elections for the Legislature, statewide elected offices and congressional districts, and to defend Proposition 14 in litigation. As part of its mission (and to comply with California's Political Reform Act, *see* Cal. Gov't Code § 81000 *et seq.*), CADOP created and administered a political committee, Yes on 14—Californians For An Open Primary, that successfully advocated for the adoption of Proposition 14 by California voters in 2010, expending $4.75 million in the process. Yes on 14 was *the* primarily-formed ballot measure committee in support of Proposition 14. *See* Skinnell Decl., ¶¶ 2-3.

CADOP has also been active in litigation to defend Proposition 14, as discussed further below, and legislative activities surrounding Proposition 14, to ensure that implementation of the measure is not frustrated by legislative tinkering. *See* Skinnell Decl., ¶ 4. CADOP's legislative activities include participation in the process leading

---

[1] "[A] district court is required to accept as true the non-conclusory allegations made in support of an intervention motion." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001).

to the enactment of Assembly Bill 1413 ("AB 1413"),[2] technical clean-up legislation that amended a number of provisions of the Elections Code that implement Proposition 14. *Id.*

IVP is a nonprofit corporation, founded to represent and advocate for the full engagement of non-partisan voters in California's electoral process. Proposition 14's Top Two Open Primary system has been a major reform project of Intervenor IVP for several years on which it has expended considerable resources. It was directly involved in drafting and sponsoring—indeed, was the initial drafter—of the measure that became Proposition 14, and the SB6 legislation.[3] It expended significant resources advocate for placement of the Top Two Open Primary before the voters. The Top Two Open Primary plan is a major accomplishment of IVP, and declaring it inoperative would severely harm IVP's advocacy for and programs for DTS voters, and detract for IVP's reputation as an effective advocate for DTS voters. *See* Skinnell Decl., ¶ 5.

Since Proposition 14 was enacted, CADOP and IVP have spent more than $1 million dollars to defend the measures in every level of the federal and state courts, up to and including petitions for review and certiorari in the California and United States Supreme Courts, respectively. *See* Skinnell Decl., ¶¶ 6-11.

**B.    ABOUT PROPOSITION 14.**

Proposition 14 is one of a series of reforms adopted by California voters in an effort to fix their dysfunctional government, which was plagued with extreme partisanship. Not surprisingly, virtually the entire political establishment—including the leadership of both parties in the Legislature—opposed Proposition 14. *See* Skinnell Decl., ¶¶ 3. Nevertheless, Californians voted on June 8, 2010, to adopt

---

[2] Assem. Bill 1413 (2011-2012 Reg. Sess.), *codified at* Cal. Stats. 2012, ch. 3.

[3] Senate Bill 6 (2009-2010 Reg. Sess.), *codified at* Cal. Stats. 2009, ch. 1 ("SB6"), was adopted by the Legislature as implementing legislation for Proposition 14, and its effectiveness was made contingent upon Proposition 14's approve by the voters at the June 2010 primary.

Proposition 14. *Id.*

Proposition 14 amended the state Constitution to replace party primaries with a type of open primary election known as "top two," or "voter-nominated" primary election. Only candidates and voters registered with a qualified political party could participate in the primary elections under the prior system; DTS voters and those affiliated with non-qualified parties were prohibited from participating in the primary elections.[4]

Under Proposition 14, any candidate, regardless of whether he or she is affiliated with a qualified party, may run in the primary for congressional or state elective office (now called "voter-nominated" offices). In addition, any voter may vote at the primary election for any candidate without regard to the political party preference of either the candidate or the voter. *See* CAL. CONST. art. II, § 5 (as amended by Proposition 14); Cal. Elec. Code § 8002.5(b) (as amended by SB 6).[5] The two candidates receiving the highest vote totals for each office at the primary election, regardless of party preference, will then compete for the office at the ensuing general election. *See* CAL. CONST. art. II, § 5 (as amended by Proposition 14); Cal. Elec. Code §§ 8141.5 (added by SB 6) and 15452 (as amended by SB 6). This type of top-two primary system was upheld against facial constitutional challenge by the U.S. Supreme Court in *Wash. State Grange v. Wash. Republican Party*, 552 U.S. 442 (2008) ("*Grange I*"), and against an as-applied constitutional challenge in *Wash. State Republican Party v. Wash. State Grange*, 676 F.3d 784 (9th Cir.), *cert. denied*, 568

---

[4] Decline to State voters might be allowed to vote in a party's primary under the former system, but only if the party deigned to permit it. *See* Cal. Elec. Code § 2151. Other, minor party voters could not participate at all.

[5] Elections Code § 359.5, added by SB 6, defines "Voter-nominated office" to include: (1) Governor; (2) Lieutenant Governor; (3) Secretary of State; (4) State Treasurer; (5) Controller; (6) State Insurance Commissioner; (7) Member of the Board of Equalization; (8) Attorney General; (9) State Senator; (10) Member of the Assembly; (11) United States Senator; (12) Member of the United States House of Representatives.

U.S. 814 (2012) ("*Grange II*").

Like the Washington system, on which Proposition 14 was largely modeled, candidates for voter-nominated office have the option of indicating their party "preference" on the ballot, but no candidate becomes the "nominee" of any party by virtue of choosing that preference. California Elections Code § 8002.5(c) provides: "A candidate designating a party preference pursuant to subdivision (a) shall not be deemed to be the official nominee of the party designated as preferred by the candidate. A candidate's designation of party preference shall not be construed as an endorsement of that candidate by the party designated. The party preference designated by the candidate is shown for the information of the voters only and may in no way limit the options available to voters."

## C. ABOUT THE MANY AND VARIED PRIOR SUITS CHALLENGING PROPOSITION 14 IN WHICH CADOP AND IVP HAVE INTERVENED.

Ever since Proposition 14 was placed on the ballot, it has been under constant legal attack in an effort to undermine it. *See* Skinnell Decl., ¶¶ 6-12.

Prior to the election on Proposition 14 an opponent of the measure, with the consent of the leadership in the California Legislature, filed a lawsuit in the California courts seeking to amend the language for the ballot title and summary and the ballot label so that they tracked his ballot argument against Proposition 14. The changes proposed by the plaintiff would have converted the ballot title and summary and label into campaign advocacy against Proposition 14, increasing the expense and effort of CADOP and other supporters to campaign for its enactment. No notice was given to Proposition 14's supporters, but they had the good fortune to learn of the action in an online posting. *See* Skinnell Decl.. ¶¶ 7-8.

By the time the Yes on 14 campaign (*i.e.*, CADOP) learned of the filing of *Clark v. Bowen*, the Legislature had already reached an agreement with plaintiff Clark that the Court could enter an order amending the title and summary and label in accordance with plaintiff's wishes. CADOP requested that the plaintiff Clark and the

Legislature stipulate to the intervention of Yes on 14. They refused. CADOP therefore filed an *ex parte* application to intervene on behalf of Yes on 14, which was granted. Intervenors mounted a strong defense and successfully resisted the most egregious changes to the ballot title and summary and ballot label proposed by plaintiff and the Legislature in the Sacramento County Superior Court. That decision was upheld by the Third District Court of Appeal. *See id.* at ¶ 8; *Clark v. Superior Court,* 2010 Cal. App. Unpub. LEXIS 1911 (Cal. Ct. App. 3d Dist. Mar. 16, 2010). The same day, the Court of Appeal also overruled Mr. Clark's efforts to rewrite the Legislative Analyst's "Fiscal Effect" analysis for Proposition 14. *See Taylor v. Superior Court,* 2010 Cal. App. Unpub. LEXIS 1909 (Cal. Ct. App. 3d Dist. Mar. 16, 2010).

Once Proposition 14 passed, the litigation only increased. As noted above, there have been seven post-election lawsuits challenging Proposition 14 and its implementing statutes, and this is the second challenge by the Libertarian Party, Peace & Freedom Party, and Green Party based on their asserted right to access the general election ballot:

Within months of the Proposition's passage, "Plaintiffs Jeff Mackler and Rodney Martin wish[ed] to run for the United States House of Representatives 'stating a preference' on the ballot for 'Socialist Action' and 'the Reform Party,' respectively," *id.* at 352, even though those parties were not qualified political parties in California. The suit also challenged the prohibition on write-in voting at the general election. The California Court of Appeal rejected the challenge in *Field v. Bowen,* 199 Cal. App. 4th 346 (2011). CADOP and IVP were granted intervention of right in *Field* (*see* 199 Cal. App. 4th at 352),[6] despite the objection of the plaintiffs.

In early 2011, a candidate for a special election for congressional office filed

---

[6] CADOP was granted intervention under the name "Yes on 14 – Californians for an Open Primary," the ballot measure campaign committee created and maintained by CADOP as the only committee primarily formed and operated to support Proposition 14 at the ballot box.

suit in the Central District of California, seeking declaratory and injunctive relief based upon the alleged unconstitutionality of the party label statutes that precluded him from stating his affiliation with the "Coffee Party," or alternatively identifying himself as "Independent," rather than as having "No Party Preference." The district court granted summary judgment in favor of the defendants (including Intervenors CADOP and IVP), and the Ninth Circuit affirmed in *Chamness v. Bowen,* 722 F.3d 1110 (9th Cir. 2013). CADOP and IVP were granted intervention of right in *Chamness* as well, again over the objection of the plaintiffs. *See* 722 F.3d at 1121 n.6.

In mid-2011, the Libertarian Party of California (a plaintiff herein), the Peace & Freedom Party of California (also a plaintiff herein), the Green Party of Alameda County (a geographical division of the Green Party of California, a plaintiff herein), and a number of candidates and voters affiliated with those parties filed suit in the Alameda County Superior Court asserting a right to access the general election ballot—essentially the claim advanced in this case. The California Court of Appeal rejected that position in *Rubin*, and the California Supreme Court and United States Supreme Court declined to hear the case. In that case, the plaintiffs wisely stipulated to intervention by CADOP and IVP.

In 2012, in *Brown v. Bowen*, Case No. 2:12-cv-05547-PA-SP (C.D. Cal.), a number of voters filed suit in the Central District of California, challenging Proposition 14 under the federal Voting Rights Act. The district court again granted intervention to CADOP and IVP over the plaintiffs' objection. *See Brown v. Bowen*, Case No. 2:12-cv-05547-PA-SP (C.D. Cal.) (Dkt. #14) (July 11, 2012 order granting intervention and denying preliminary injunction), p. 3 ("This Court similarly agrees that Interveners satisfy the requirements for intervention pursuant to Federal Rule of Civil Procedure 24(a)(2).").

And in 2015, another voter filed suit in the Central District of California, again challenging the ballot label provisions of the Proposition 14 his inability to be labeled on the ballot as an "independent." Yet again, the plaintiffs opposed intervention by

CADOP and IVP, and yet again the district court granted their motion to intervene. *See Soltysik v. Padilla*, No. CV 15-07916-AB (GJSx), 2015 U.S. Dist. LEXIS 195316 (C.D. Cal. Dec. 11, 2015).

In short, CADOP and IVP have been allowed to intervene to defend Proposition 14 time and time again. They should be permitted to do so in this case as well.

### III. CALIFORNIANS TO DEFEND THE OPEN PRIMARY AND THE INDEPENDENT VOTER PROJECT MEET THE STANDARD FOR INTERVENTION OF RIGHT UNDER FRCP 24(A), AND HAVE REPEATEDLY BEEN GRANTED INTERVENTION TO DEFEND PROPOSITION 14.

Ninth Circuit case law requires "an applicant for intervention as of right to demonstrate that '(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.'" *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)). "Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

Proposed Intervenors easily meet these criteria. Indeed, the federal courts have already granted CADOP and IVP intervention of right in three prior actions challenging Proposition 14 and its implementing legislation—*Chamness v. Bowen*, *Brown v. Bowen*, and *Soltysik v. Padilla*—over the objections of the plaintiffs.

#### A. AS THE DRAFTERS AND CHIEF SUPPORTERS OF PROPOSITION 14 IN THE CAMPAIGN, AND AS LITIGANTS WHO HAVE PREVIOUSLY DEFENDED PROPOSITION 14'S CONSTITUTIONALITY AGAINST THESE SAME PLAINTIFFS, CADOP AND IVP HAVE SIGNIFICANT PROTECTABLE INTERESTS IN DEFENDING THE MEASURE AGAINST LEGAL CHALLENGE.

As discussed above, CADOP spent nearly $5 million in support of Proposition 14 at the June 2010 election, and it has spent well in excess of $1 million in post-

enactment litigation. It has also been active, where appropriate, in negotiating legislative amendments to SB 6, including AB 1413 in 2012, to ensure that those amendments do not undermine (inadvertently or otherwise) Proposition 14.[7] IVP has also expended considerable resources drafting the measure, qualifying it for the ballot, and defending it in litigation.

The Ninth Circuit has unequivocally held that "for purposes of intervention as of right, a public interest group that has supported a measure (such as an initiative) has a significant protectable interest in defending the legality of the measure." *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (citing *Sagebrush Rebellion v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)). Thus, ballot measure proponents or sponsors, and legislative sponsors, are routinely permitted to intervene in federal court actions to defend the legality of the measure they supported. *See, e.g., Wash. State Bldg. Constr. Trades v. Spellman*, 684 F.2d 627, 629-30 (9th Cir. 1982), *cert. denied sub. nom., Don't Waste Wash. Legal Defense Found. v. Wash.*, 461 U.S. 913 (1983) ("Denial of DWW's motion to intervene was error and accordingly we reverse as to that holding. … DWW, as the public interest group that sponsored the initiative, was entitled to intervention as a matter of right under Rule 24(a)."); *Bates v. Jones*, 904 F. Supp. 1080, 1087 (N.D. Cal. 1995) (granting intervention to proponents of Proposition 140, California's term limits initiative); *Vivid Entm't, LLC v. Fielding*, 2013 U.S. Dist. LEXIS 109251 (C.D. Cal. Aug. 2, 2013) (granting intervention to proponents of Proposition 140, California's term limits initiative Los Angeles County's Measure B, regulating adult films); *Wash. State Republican Party v. Logan*, 377 F. Supp. 2d 907 (W.D. Wash. 2005) (public interest group that supported Washington's top-two measure allowed to intervene to defend that measure).

---

[7] *See* Assem. Comm. on Elec. & Redistricting, Conc. in Senate Amendments to AB 1413 (Jan. 26, 2012), p. 7, *available online at* http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201120120AB1413# (last visited Jan. 28, 2025) (identifying CADOP as a supporter of the bill).

1
2
3

**B.    THE DISPOSITION OF THIS ACTION "MAY, AS A PRACTICAL MATTER, IMPAIR OR IMPEDE [PROPOSED INTERVENORS'] ABILITY TO PROTECT [THEIR] INTEREST[S]."**

4      Once a proposed intervenor establishes a significantly protectable interest,
5   courts approach the "impair or impede" requirement pragmatically: "[i]f an absentee
6   would be substantially affected in a practical sense by the determination made in an
7   action, he should, as a general rule, be entitled to intervene." *Southwest Center for
8   Biological Diversity*, 268 F.2d at 822 (quoting Rule 24 advisory committee's notes).
9   There is no requirement that the proposed intervenor show "an absolute certainty"
10  that its interests will be impaired in support of its request. *Citizens for Balanced Use
11  v. Montana Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011). "Generally, after
12  determining a party has a protectable interest, courts have 'little difficulty concluding'
13  the disposition of the case may affect the interest." *Missouri v. Harris*, 2014 U.S. Dist.
14  LEXIS 76305, *20-*22 (E.D. Cal. June 3, 2014) (quoting *State ex rel. Lockyer v. United
15  States*, 450 F.3d 436, 442 (9th Cir. 2006)). *See also Prete*, 438 F.3d at 954-55 ("an
16  adverse court decision on such a [ballot] measure [supported by the proposed
17  intervenor] may, as a practical matter, impair the interest held by the public interest
18  group.").

19     An adverse ruling in this action would leave CADOP and IVP with no means of
20  protecting their interests in the validity of Proposition 14 as established by their prior
21  litigation efforts. Presumably, that adverse ruling would be binding on the State in all
22  future actions, meaning CADOP and IVP would have no way of seeing that
23  Proposition 14 is enforced.

24     Moreover, CADOP and IVP have successfully litigated a prior case—Rubin—
25  raising *identical issues* to those advanced in Plaintiffs' complaint, and obtained a
26  judgment in their favor, and against the political parties who are plaintiffs herein.
27  "[B]ecause of the possibility of inconsistent rulings, disposition of this action without
28  intervention may impair or impede Intervenor-[Defendant]s' ability to protect that

interest." *Widjaja v. Yum! Brands, Inc.*, 2009 U.S. Dist. LEXIS 98391, \*19 (E.D. Cal. Oct. 22, 2009) (Wanger, J.). Notwithstanding CADOP's and IVP's success in preserving the enforcement of Proposition 14 in multiple proceedings, if this Court were to issue an injunction precluding Defendant Secretary of State from enforcing Proposition 14, CADOP's and IVP's victories to date, on which they have spent considerable time and resources, would be nullified.

## C.   THIS MOTION IS TIMELY.

In determining whether a motion is "timely," a court generally evaluates three factors: (1) the stage of the proceedings, (2) prejudice to existing parties, and (3) the length of, and reason for, any delay in seeking to intervene. *California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002). Courts assess these criteria, and the issue of timeliness, especially "leniently" when intervention is sought of right, because of the "likelihood" of "serious harm." *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (overturning denial of State of Idaho's motion to intervene as untimely).

### 1.   Stage of the proceedings: no significant proceedings have yet taken place in this action.

This case was apparently filed on November 21, 2024. CADOP and IVP were not served with the complaint, or otherwise notified by Plaintiffs' counsel, even as a courtesy, despite the fact that they CADOP, IVP, and the political parties who are plaintiffs in this case were parties to the *Rubin* case as well, and despite Plaintiffs' clear recognition of the overlap of issues, as evidenced by footnote 1 of the Complaint. *See* Skinnell Decl., ¶ 12. Counsel also did not receive notice from the Secretary of State's counsel, but none of the counsel of record participated in *Rubin*, and the current Secretary of State is two office-holders removed from the one who initially agreed to intervention in that case. *Id*.

Upon learning of the case, Proposed Intervenors' counsel contacted their clients and then contacted counsel for Plaintiffs and for Defendant Secretary of State Weber,

on January 22, 2025, to request a stipulation to intervention. *Id*. On January 23, 2025, counsel for Plaintiffs indicated that they would not stipulate to intervention, and Intervenors' counsel immediately began preparing motion papers. Counsel for Defendant responded on January 27, 2025, indicating that the Secretary of State does not oppose CADOP's and IVP's intervention. *Id*. at ¶ 13 & Ex. 1. On January 29, 2025, counsel for proposed Intervenors met-and-conferred with counsel for the parties by videoconference and by e-mail to coordinate the timing of this motion in a manner that is most convenient to all the parties. *Id*. This motion is filed within approximately a week of receiving the response of Plaintiff's counsel and within five days of receiving the Secretary of State's response.

The Secretary's response to the complaint is not due until this Friday—January 31—because the parties previously stipulated to an extension of time. *See* ECF No. 11. Thus, this action is not yet at issue, the Court has not "substantively—and substantially—engaged the issues in this case," *Smith v. Marsh*, 194 F.3d 1045, 1050 (9th Cir. 1999), and intervention is therefore timely. *See Sierra Club v. United States EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) (upholding trial court's finding that application was timely where filed before defendant had filed its answer), *overruled in part on other grounds by Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) ("ONRC's motion to intervene was timely. ONRC moved to intervene … before the Secretaries had filed an answer, and before any proceedings had taken place. Moreover, ONRC's motion to intervene does not appear to have prejudiced either party in the lawsuit, since the motion was filed before the district court had made any substantive rulings.").

### 2.    Intervention will not prejudice the existing parties.

In addressing this criterion, the relevant question "is whether existing parties may be prejudiced by the delay in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change." *United*

1  *States v. Union Elec. Co.*, 64 F.3d 1152, 1159 (8th Cir. 1995). *See also United States ex*

2  *rel. McGough v. Covington Technologies Co.*, 967 F.2d 1391, 1395 (9th Cir. 1992)

3  ("Industrial Indemnity's position following intervention is essentially the same as it

4  would have been had the government intervened earlier.").

5  In this case, no party will be prejudiced by the proposed intervention.

6  Defendant Weber does not oppose the proposed intervention. Plaintiffs do, but their

7  interests will not be prejudiced by intervention now. This case is barely two months

8  old, and the Secretary of State's response to the complaint—anticipated to be a motion

9  to dismiss—will not be heard for more than a month yet. Proposed Intervenors have

10 submitted a proposed answer to the complaint with this motion, and they are

11 concurrently filing a request that the Court allow them to provisionally move to

12 dismiss as well, so that their motion can be heard concurrently with Defendant's. No

13 other proceedings are presently pending that could be delayed.

14     ### 3.  Length of delay and reason for delay: CADOP and IVP have moved expeditiously to intervene in this action.

15

16 In addressing the third prong of timeliness—length and reason for delay—the

17 courts consider the length and reason for delay from the time the movant "knows or

18 has reason to know that his interests might be adversely affected by the outcome of

19 the litigation.'" *Cal. Dep't of Toxic Substances Control*, 309 F.3d at 1120 (quoting

20 *United States v. State of Oregon*, 913 F.2d 576, 589 (9th Cir. 1990)).

21 Upon learning of the existence of this action, Proposed Intervenors moved

22 expeditiously to seek intervention, first attempting to seek intervention on a

23 cooperative basis, and then filing this motion barely a week after learning that

24 Plaintiffs would not stipulate to intervention.

25 The reason for this minor delay is simple: counsel for CADOP and IVP had to

26 prepare the complaint, research several procedural issues, consult with their clients,

27 confer with counsel for the other parties to seek their views on the proposed

28 intervention, prepare a proposed complaint- and answer-in-intervention, prepare a

---

provisional motion dismiss, and then research and draft the instant papers. *See* Skinnell Decl., ¶¶ 12-14. *See also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (affirming intervention when motion filed four months after complaint filed, before any substantive rulings, because the "motion was filed at a very early stage"); *Est. of Monk v. Alameda Cty.*, No. 22-cv-04037-TSH, 2023 U.S. Dist. LEXIS 17164, at *8 (N.D. Cal. Feb. 1, 2023) (same when motion filed six months after amended complaint filed, and four months after answers filed).

**D.    THE EXISTING PARTIES DO NOT ADEQUATELY REPRESENT THE PROPOSED INTERVENORS' INTERESTS.**

"In assessing whether a present party will adequately represent an intervenor-applicant's interests, [courts must] 'consider several factors, including whether [a present party] will undoubtedly make all of the intervenor's arguments, whether [a present party] is capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected.' [Citation.] *The burden of showing inadequacy of representation is minimal and 'is satisfied if the applicant shows that representation of its interests 'may be' inadequate....'" Prete*, 438 F.3d at 956 (quoting *Sagebrush Rebellion, Inc.*, 713 F.2d at 528 (emphasis added)); *see also Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.").

No party will adequately represent CADOP's and IVP's interests here.

Plaintiffs obviously will not.

As for the Secretary of State, there is no reason to presume that the Secretary "will undoubtedly make all of the intervenor's arguments." Though CADOP and IVP and the Secretary have all defended the measure in the past, they have routinely presented different arguments in support of the measure, and there has been a history of *actual* disagreement about those arguments. *See* Skinnell Decl., ¶¶ 18-22.

For example, in both *Field* and *Chamness*, CADOP and IVP and the Secretary disagreed about the proper interpretation of Elections Code §§ 8002.5 and 13105, *see, e.g., Field*, 199 Cal. App. 4th at 370, and they disagreed about the proper interpretation of other provisions regarding write-in voting, though those provisions are not at issue here. *Id.* at 354-55 (accepting CADOP's and IVP's interpretation and rejecting Secretary's).

In *Field*, Intervenors alone argued that the case could be resolved as a matter of law in an appeal from denial of a preliminary injunction, rather than remanding for further proceedings—a proposition the Court of Appeal accepted. *See id.* at 352-53; Skinnell Decl., ¶ 20.

In *Chamness*, Intervenors alone argued that *Pullman* abstention was appropriate in light of the pendency of *Field. See Chamness v. Bowen*, Case No. 2:11-cv-01479-ODW-FFM (C.D. Cal.) (Dkt. #80) (Mar. 30, 2011 order denying motion for preliminary injunction), pp. 6-8; Skinnell Decl., ¶ 20.

And in *Rubin*, it was Intervenors who submitted substantial evidence upon which the Court of Appeal relied in concluding that Proposition 14 top-two primary system serves valuable interests. *See* 233 Cal. App. 4th at 1150-51. Intervenors were also the only parties in *Rubin* to file an opposition to the petition for certiorari. *See* U.S. Supreme Court Docket, No. 15-135.

Moreover, the courts have recognized that:

> [A]n official sponsor of a ballot initiative may be considered to add an element not covered by the government in defending the validity of the initiative in that ***the very act of resorting to a ballot initiative indicates a rift between the initiative's proponents and voters and their elected officials on the issue that underlies the initiative.*** [Citation.]

*Bates*, 904 F. Supp. at 1087 (emphasis added) (granting intervention to initiative proponents and rejecting plaintiffs' argument that intervention was unnecessary because the interest of intervenors would be adequately represented by Defendant Secretary of State, who "will vigorously defend the validity of the California

constitutional provision.").

In the same vein, the California Supreme Court has held in *Perry v. Brown*, 52 Cal. 4th 1116 (2011):

> **Allowing official proponents to assert the state's interest in the validity of the initiative measure** in such litigation (along with any public officials who may also be defending the measure) (1) **assures voters who supported the measure and enacted it into law that any residual hostility or indifference of current public officials to the substance of the initiative measure will not prevent a full and robust defense of the measure to be mounted in court on the people's behalf**, and (2) ensures a court faced with the responsibility of reviewing and resolving a legal challenge to an initiative measure that it is aware of and addresses the full range of legal arguments that reasonably may be proffered in the measure's defense. In this manner, the official proponents' general ability to appear and defend the state's interest in the validity of the initiative measure and to appeal a lower court judgment invalidating the measure serves to enhance both the fairness of the judicial process and the appearance of fairness of that process.

*Id.* at 1125-26 (emphasis added). This discussion addresses "whether the intervenor offers a necessary element to the proceedings that would be neglected" and supports intervention here.

The courts have also recognized that the case for intervention by an initiative's sponsor is particularly strong where, as here, the subject of the ballot measure is electoral reform. Thus, the *Bates* court granted intervention to the proponents of California's term limits law, concluding that the mere fact of an initiative demonstrates a "rift" between the people and elected officials, and "[t]his is particularly so in the instant case, where the subject matter of the initiative was outwardly hostile to elected officials." *Bates*, 904 F. Supp. at 1087. Likewise here, Proposition 14 was a reform measure that was widely opposed by the political establishment in Sacramento, including both major political parties. *See* Skinnell Decl., ¶ 3.

Simply put, the well-established hostility of the California political class to Proposition 14, combined with a history of the State and CADOP/IVP actually presenting different arguments in prior litigation, undermine the assumption that

CADOP's and IVP's interests will be adequately represented by the State. *See also Sagebrush Rebellion, Inc., 713 F.2d at 528-29* ("thus far in this litigation, the government, through the United States Attorney, has continued professionally and diligently to defend the actions of Secretary Andrus; there is no indication in this record of collusion or of any other conduct detrimental to the applicant's interest. Nevertheless, such a showing is not required.").

## IV. ALTERNATIVELY, CALIFORNIANS TO DEFEND THE OPEN PRIMARY AND THE INDEPENDENT VOTER PROJECT SHOULD BE GRANTED PERMISSIVE INTERVENTION UNDER FRCP 24(b).

When intervention as a matter of right is denied, courts consider whether permissive intervention is appropriate under Rule 24(b)(1)(B). *Spangler v. Pasadena City Bd. of Ed., 552 F.2d 1326, 1329 (9th Cir. 1977)*. If intervention of right is denied, permissive intervention would nevertheless be appropriate here.

A court has broad discretion to allow intervention under Rule 24(b) when: (1) a federal statute confers a conditional right to intervene; or (2) the applicant's claim or defense shares a common question of law or fact with the main action. Fed. R. Civ. Proc. 24(b)(1). "This provision plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *SEC v. United States Realty & Improvement Co., 310 U.S. 434, 459 (1940)*. "Generally, permissive intervention under Rule 24(b) requires '(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Blum v. Merrill Lynch Pierce Fenner & Smith Inc., 712 F.3d 1349, 1353 (9th Cir. 2013)*. Additionally, "[i]n exercising its discretion, the Court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. Proc. 24(b)(3).

CADOP and IVP meet these criteria.

First, in federal question cases, like this one, the "independent ground for jurisdiction" requirement does not apply where the proposed intervenor is not raising

1  new claims. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th
2  Cir. 2011).

3        Second, the timeliness of this motion is established above.

4        Third, there are undeniably common questions of law and fact related to the
5  constitutionality of the party label provisions applicable to elections under the Top
6  Two system, "as the common questions directly respond to the allegations raised by
7  the" Plaintiffs. *Am. Hotel & Lodging Assn. v. City of Los Angeles*, Case No. 2:14-cv-
8  09603-AB-SS (C.D. Cal.) (Dkt. #75) (order granting permissive intervention), p. 17.
9  Indeed, given the present posture of the case, it appears that CADOP's and IVP's
10  "defenses" will consist primarily of responding to questions of law and fact raised by
11  the Complaint itself or to issues expected to be raised by Defendant's motion to
12  dismiss. *See* Skinnell Decl., ¶ 15.

13        And finally, allowing CADOP and IVP to intervene would not "unduly delay or
14  prejudice the adjudication of the original parties' rights." Fed. R. Civ. Proc. 24(b)(3).
15  As discussed above, CADOP and IVP do not propose to delay the conduct of this action
16  at all, but seeks expeditious resolution of this case. *See Kootenai Tribe of Idaho v.*
17  *Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) (affirming intervention under FRCP
18  24(b), though denying it under FRCP 24(a)(2), and noting "because the intervention
19  motions were filed near the case outset and the defendant-intervenors said they could
20  abide the court's briefing and procedural scheduling orders, there was no issue
21  whatsoever of undue delay.").[8]

22        CADOP and IVP would also note that allowing them to intervene is likely to
23  provide useful assistance to the Court by participating in this action.[9] CADOP's and

24

25        [8] *Kootenai Tribe* was subsequently overruled by *Wilderness Soc'y v. United States*
26  *Forest Serv.*, 630 F.3d 1173, 1178-79 (9th Cir. 2011), but only insofar as it denied
   intervention of right.

27        [9] *See Spangler*, 552 F.2d at 1329 (in considering permissive intervention, courts
   may consider "whether parties seeking intervention will significantly contribute to
28  full development of the underlying factual issues in the suit and to the just and
   equitable adjudication of the legal questions presented."); *Missouri v. Harris*, 2014

IVP's attorneys—alone among the counsel in this action—have been involved in every single lawsuit challenging Proposition 14, and they were involved in the initial drafting of the measure and subsequent amendments thereto as well. *See* Skinnell Decl., ¶¶ 2-6, 22. They, accordingly, have background knowledge about Proposition 14 and its implementing statutes that no other participant in this action has.

Moreover, CADOP's and IVP's prior briefing has already been cited by the courts as providing significant, unique assistance on the questions related to the constitutionality of Proposition 14. *See Field*, 199 Cal. App. 4th at 359 ("Plaintiffs argue that *Libertarian Party* cannot be applied here because the case was based on a qualified party system that Proposition 14 and Senate Bill 6 "dismantled" by doing away with partisan primaries. *This contention is persuasively refuted in interveners' appellate brief*, which identifies many rights that continue to be reserved for qualified parties under the Proposition 14 and Senate Bill 6 open primary system." (emphasis added)); *Rubin*, 233 Cal. App. 4th at 1150-51 (relying on evidence submitted by Intervenors regarding the purposes of the measure).

Finally, Rule 24 should not be applied in a way that encourages forum-shopping. *See Amoco Oil Co. v. Dingwell*, 690 F. Supp. 78, 83 (D. Me. 1988) (Rule 24 not "intended to further the interests of forum shopping or to serve as a means to circumvent unfavorable state law."); *cf. Freedom from Religion Fdn.*, 644 F.3d at 843 (requirement of independent jurisdictional ground for permissive intervention in non-federal question cases based on concern about expanding federal jurisdiction).

U.S. Dist. LEXIS 76305, at *20-*22 (E.D. Cal. June 2, 2014) (granting permissive intervention to public interest group to defend legislation it supported, where intervenor "will bring a unique perspective to this action that will enable the court to make a well informed decision regarding the claims at issue."); *Doe v. Harris*, 2013 U.S. Dist. LEXIS 4215, *7 (N.D. Cal. Jan. 10, 2013) (granting permissive intervention to ballot measure proponent because "the Court anticipates that the presence of Proponents in this suit will contribute to the just and equitable resolution of the issues before it. … [and] … The Court finds that the potential for Proponents to make such contributions outweighs the as yet abstract danger that delay or prejudice to the original parties could result from Proponents' formal participation as intervenors.").

Denying CADOP and IVP leave to intervene would have that very effect. If this case were brought in the California state courts, it would almost certainly be an abuse of discretion to deny intervention. *See Perry,* 52 Cal. 4th at 1126; *Building Industry Assn. v. City of Camarillo,* 41 Cal. 3d 810, 822 (1986). This Court should not encourage plaintiffs to file in federal court for the sole purpose of avoiding a vigorous defense of Proposition 14 by its chief sponsors and defenders.

## V.  <u>CONCLUSION</u>.

In light of the foregoing, intervention of right—or alternatively by permission—should be granted.

Dated: January 31, 2025

Respectfully submitted,

NIELSEN MERKSAMER LLP

By:  /s/    Christopher E. Skinnell
        Christopher E. Skinnell

*Attorneys for Intervenor-Defendants*
CALIFORNIANS TO DEFEND THE
OPEN PRIMARY and INDEPENDENT
VOTER PROJECT