NIELSEN MERKSAMER LLP
    Christopher E. Skinnell, Esq. (S.B. No. 227093)
    David J. Lazarus, Esq. (S.B. No. 304352)
2350 Kerner Boulevard, Suite 250
San Rafael, California 94941
Telephone: (415) 389-6800
Facsimile:  (415) 388-6874
E-mail: cskinnell@nmgovlaw.com
E-mail: dlazarus@nmgovlaw.com

*Attorneys for (Proposed) Intervenor-Defendants*
CALIFORNIANS TO DEFEND THE OPEN PRIMARY
and INDEPENDENT VOTER PROJECT

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEACE AND FREEDOM PARTY OF CALIFORNIA, *et al.*,<br><br>    *Plaintiffs*,<br><br>vs.<br><br>Dr. SHIRLEY N. WEBER, CALIFORNIA SECRETARY OF STATE,<br><br>    *Defendant*.<br><br>CALIFORNIANS TO DEFEND THE OPEN PRIMARY and INDEPENDENT VOTER PROJECT,<br><br>    *(Proposed) Intervenor-Defendants*. | Case No. 4:24-cv-08308-MMC<br><br>**INTERVENOR-DEFENDANTS' [Provisional] MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [FRCP 12(b)(6)]**<br><br>DATE: March 28, 2025<br>TIME: 9:00 a.m.<br>COURTROOM: 7 (19th Floor)<br>JUDGE: Hon. Maxine M. Chesney |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION & MOTION ...................................................................... 9

MEMORANDUM OF POINTS & AUTHORITIES ....................................... 10

    I.      INTRODUCTION ............................................................................ 10

    II.    ALLEGATIONS AND JUDICIALLY-NOTICEABLE FACTS ................ 10

         A.    BACKGROUND OF PROPOSITION 14 .................................... 10

         B.    THESE SAME POLITICAL PARTIES AND AFFILIATED
             CANDIDATES & VOTERS CHALLENGE PROPOSITION 14 AS
             INTERFERING WITH THEIR PURPORTED RIGHT OF ACCESS TO
             THE GENERAL ELECTION BALLOT IN *RUBIN V. PADILLA,* 233
             CAL. APP. 4TH 1128 (2015) ............................................. 11

         C.    ALLEGATIONS OF THE COMPLAINT IN THIS ACTION ........... 13

    III.   APPLICABLE STANDARDS OF REVIEW ............................................... 14

         A.    STANDARDS GOVERNING MOTIONS UNDER RULE 12(b)(6) .............. 14

         B.    SUBSTANTIVE STANDARD GOVERNING ELECTION LAW
             CHALLENGES ................................................................ 15

    IV.   THIS SUIT IS BARRED BY *RES JUDICATA* ......................................... 16

    V.    THE COMPLAINT ALSO FAILS TO STATE A CLAIM ........................ 19

         A.    PROPOSITION 14 DOES NOT "DISCRIMINATE" AGAINST
             MINOR PARTIES ............................................................. 19

         B.    POLITICAL PARTIES DO NOT HAVE ANY RIGHT TO APPEAR
             ON THE BALLOT IN A NONDISCRIMINATORY NONPARTISAN
             SYSTEM LIKE PROPOSITION 14'S ..................................... 20

         C.    THE BURDEN ON THE MINOR PARTIES' ASSOCIATIONAL
             RIGHTS IS NOT SEVERE: MINOR PARTY CANDIDATES HAVE
             BROAD ACCESS TO THE PRIMARY ELECTION AND THE SAME
             OPPORTUNITY AS ALL OTHER CANDIDATES TO ADVANCE TO
             THE GENERAL ELECTION ............................................... 23

D.   LIMITING THE GENERAL ELECTION TO THE TOP TWO VOTE-GETTERS FROM THE PRIMARY SERVES IMPORTANT GOVERNMENTAL INTERESTS ............................................................ 25

E.   THE TIMING OF CALIFORNIA'S PRIMARIES DOES NOT RENDER PROPOSITION 14 INVALID ...................................................... 26

F.   MULTIPLE COURTS—INCLUDING THE NINTH CIRCUIT—HAVE ALREADY UPHELD PROPOSITION 14'S BAN ON WRITE-IN VOTING AT THE GENERAL ............................................................ 28

G.   PLAINTIFFS MISSTATE THE LAW INSOFAR AS IT RELATES TO THEIR ABILITY TO RETAIN BALLOT-QUALIFIED STATUS AS A POLITICAL PARTY ...................................................................... 28

VI.   CONCLUSION .................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Adams v. Johnson,*
    355 F.3d 1179 (9th Cir. 2004) ................................................................ 14

*Anderson v. Celebrezze,*
    460 U.S. 780 (1983) .................................................... 25, 26, 27, 28

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................ 15

*Boeken v. Philip Morris USA, Inc.,*
    48 Cal. 4th 788 (2010) ................................................................ 19

*Brown v. Bowen,*
    Case 12-cv-05547-PA-SP (C.D. Cal.) ........................................... 12

*Burdick v. Takushi,*
    504 U.S. 428 (1991) .................................................... 15, 16, 23, 28

*Buscemi v. Bell,*
    964 F.3d 252 (4th Cir. 2020) ................................................... 27

*Cal. Democratic Party v. Jones,*
    530 U.S. 567 (2000) ................................................................ 21, 25

*Carpenter v. Cobb,*
    387 S.E.2d 858 (W. Va. 1989) ................................................... 23

*Chamness v. Bowen,*
    722 F.3d 1110 (9th Cir. 2013) ................................................ *passim*

*Citizens for Open Access etc. Tide, Inc. v. Seadrift Ass'n,*
    60 Cal. App. 4th 1053 (1998) ................................................... 18

*Communist Party of United States v. Peek,*
    20 Cal. 2d 536 (1942) ................................................................ 22

*Dade County v. Young Democratic Club,*
    104 So. 2d 636 (Fla. 1958) ....................................................... 23

*DKN Holdings LLC v. Faerber,*
    61 Cal. 4th 813 (2015) ................................................................ 16

*Dudum v. Arntz,*
    640 F.3d 1098 (9th Cir. 2011) ................................................... 15

*Edelstein v. City & Cty. of San Francisco*,
   29 Cal. 4th 164 (2002) ................................................................................ 24, 25, 26

*Erum v. Cayetano*,
   881 F.2d 689 (9th Cir. 1989) ................................................................................ 24

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011) (per curiam) ........................................................ 14

*Field v. Bowen*
   (2011) 199 Cal.App.4th 346 ........................................................ 10, 11, 12, 28

*Giroux v. LaRose*,
   No. 1:22-cv-309, 2022 U.S. Dist. LEXIS 106519 (S.D. Ohio June 14,
   2022) ................................................................................................................ 27

*Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*,
   536 F.3d 1049 (9th Cir. 2008) ................................................................................ 14

*In re Imperial Corp. of Am.*,
   92 F.3d 1503 (9th Cir. 1996) ................................................................................ 17

*Jenness v. Fortson*,
   403 U.S. 431 (1971) ................................................................................................ 20

*Kay v. City of Rancho Palos Verdes*,
   504 F.3d 803 (9th Cir. 2007) ................................................................................ 16

*Lawrence v. Blackwell*,
   430 F.3d 368 (6th Cir. 2005), *cert. denied*, 547 U.S. 1178 (2006) ...................... 27

*Lee v. City of L.A.*,
   250 F.3d 668 (9th Cir. 2001) ................................................................................ 14

*Lewis v. Kohler*,
   No. 3:22-cv-01225(JBA), 2023 U.S. Dist. LEXIS 149885 (D. Conn. Aug.
   25, 2023) .......................................................................................................... 19

*Libertarian Party of N.D. v. Jaeger*,
   659 F.3d 687 (8th Cir. 2011), *cert. denied*, 566 U.S. 939 (2012) .......................... 20

*Maldonado v. Harris*,
   370 F.3d 945 (9th Cir. 2004) ................................................................................ 17

*MHC Fin. Ltd. P'ship v. City of San Rafael*,
   714 F.3d 1118 (9th Cir. 2013) ................................................................................ 17

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
    465 U.S. 75 (1984) .................................................................................................. 16

*Milonopoulos v. Bowen*,
    Case 2:14-cv-05973-DOC-VBK (E.D. Cal.) ..................................................... 12

*Morse v. Republican Party*,
    517 U.S. 186 (1996) ................................................................................................ 26

*Munro v. Socialist Workers Party*,
    479 U.S. 189 (1986) ........................................................................................ *passim*

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ....................................................................................... 14, 26

*Owens v. Kaiser Found. Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001) ........................................................................... 16

*Pac. Gas & Elec. Co. v. Lego*,
    141 Cal. App. 3d 179 (1983) ........................................................................... 18

*Physicians Comm. for Responsible Med. v. Vilsack*,
    No. 21-cv-03088-RS, 2023 U.S. Dist. LEXIS 22523 (N.D. Cal. Feb. 9,
    2023) ......................................................................................................................... 18

*Pickman v. Am. Express Co.*,
    No. C 11-05326 WHA, 2012 U.S. Dist. LEXIS 9662 (N.D. Cal. Jan. 27,
    2012) ......................................................................................................................... 17

*Righeimer v. Jones*,
    Civ. S-00-1522 DFL PAN, 2000 U.S. Dist. LEXIS 13313 (E.D. Cal.
    Sep. 14, 2000) ........................................................................................................ 19

*Rubin. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
    322 F.3d 1064 (9th Cir. 2003) ........................................................................... 18

*Rubin v. Padilla*,
    233 Cal. App. 4th 1128 (2015), *review denied*, 2015 Cal. LEXIS 2395
    (Cal., Apr. 29, 2015), *cert. denied*, 577 U.S. 923 (2015) ...................... *passim*

*Rutan v. Republican Party*,
    497 U.S. 62 (1990) (Stevens, J., concurring) .............................................. 23

*Sarlls v. State*,
    166 N.E. 270 (Ind. 1929) ................................................................................... 23

*Scott v. Kuhlmann*,
   746 F.2d 1377 (9th Cir. 1984) ........................................................................ 16

*Storer v. Brown*,
   415 U.S. 724 (1974) ................................................................................ 26, 27

*Storey v. Cello Holdings, LLC*,
   347 F.3d 370 (2d Cir. 2003) .......................................................................... 16

*Timmons v. Twin Cities Area New Party*,
   520 U.S. 351 (1997) ................................................................................ 15, 29

*Unger v. Superior Court*,
   37 Cal. 3d 612 (1984) .................................................................................... 22

*Valley View Health Care, Inc. v. Chapman*,
   992 F. Supp. 2d 1016 (E.D. Cal. 2014) ........................................................ 18

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008) .......................................................................... 16, 21, 25

*Wash. State Rep. Party v. Wash. State Grange*,
   Case 05-cv-00927-JCC (W.D. Wash.) .................................................... 21, 22

*Washington State Republican Party v. Washington State Grange*,
   676 F.3d 784 (9th Cir. 2012), *cert. denied*, 568 U.S. 814 (2012) ...................... *passim*

*Whitney v. Skinner*,
   241 S.W. 350 (Ky. 1922) ............................................................................... 23

*Williams v. Rhodes*,
   393 U.S. 23, 32 (1968) .................................................................................. 26


**Constitutional Authorities**

U.S. CONST. amend. I .............................................................................. 12, 14, 15

U.S. CONST. amend. XIV ............................................................................. 14, 15

CAL. Const., art. II, § 5 .............................................................................. 10, 11, 21

CAL. CONST. art. II, § 5(a) ............................................................................ 10, 24

CAL. CONST. art. II, § 5(b) ............................................................................ 11, 21

Sen. Const. Amend. No. 4, Stats. 2009 res. ch. 2 ............................................ 10

## Statutes

28 U.S.C. § 1738 ................................................................................................. 16

Cal. Elec. Code § 332.5 ....................................................................................... 11

Cal. Elec. Code § 359.5 ....................................................................................... 10

Cal. Elec. Code § 359.5(a) ................................................................................... 11

Cal. Elec. Code § 1001 ........................................................................................ 26

Cal. Elec. Code § 1200 ........................................................................................ 10

Cal. Elec. Code § 1201 ........................................................................................ 10

Cal. Elec. Code § 5100(a)(1) ............................................................................... 29

Cal. Elec. Code § 8002.5 ..................................................................................... 24

Cal. Elec. Code § 8002.5(c) ................................................................................. 21

Cal. Elec. Code § 8020 ................................................................................... 11, 24

Cal. Elec. Code §§ 8040-8041 ........................................................................ 11, 24

Cal. Elec. Code § 8062 ........................................................................................ 24

Cal. Elec. Code § 8062(a) .................................................................................... 11

Cal. Elec. Code § 8103 ................................................................................... 11, 24

Cal. Elec. Code § 8106 ........................................................................................ 24

Cal. Elec. Code § 8141.5 ................................................................................ 11, 21

Cal. Elec. Code § 8606 ........................................................................................ 26

Cal. Elec. Code § 13105(a) .................................................................................. 11

Cal. Elec. Code § 15452 ...................................................................................... 21

## Other Authorities

Fed. R. Civ. Proc. 12(b)(6) ................................................................... 9, 10, 14, 16

Nathaniel Persily, *Toward a Functional Defense of Political Party Autonomy*, 76 N.Y.U.L. REV. 750, 813 (2001) ..................................................... 23

## **NOTICE OF MOTION & MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on Friday, March 28, 2025, at 9:00 a.m., or as soon thereafter as the parties may be heard, Intervenor-Defendants CALIFORNIANS TO DEFEND THE OPEN PRIMARY and INDEPENDENT VOTER PROJECT will move this Court, at the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, Courtroom #7 (19th Floor), for an order dismissing the Complaint on file in this action (ECF No. 1), with prejudice on the grounds that the sole claim contained therein fail to state a claim on which relief can be granted (FRCP 12(b)(6)), both on the merits and because of the *res judicata* effect of the ruling in *Rubin v. Padilla*, 233 Cal. App. 4th 1128 (2015), *review denied*, 2015 Cal. LEXIS 2395 (Cal., Apr. 29, 2015), *cert. denied*, 577 U.S. 923 (2015).

This motion is based on the following documents: this Notice of Motion and the attached Points & Authorities; and all the other papers, documents, or exhibits on file or to be filed in this action, and the argument to be made at any hearing on the motion ordered by the Court.        Respectfully submitted,

Dated: January 31, 2025        NIELSEN MERKSAMER LLP

By:    /s/    Christopher E. Skinnell
        Christopher E. Skinnell

*Attorneys for Intervenor-Defendants*
CALIFORNIANS TO DEFEND THE
OPEN PRIMARY and INDEPENDENT
VOTER PROJECT

<u>**MEMORANDUM OF POINTS & AUTHORITIES**</u>

## I.    <u>INTRODUCTION</u>.

This case presents a claim that has previously been rejected by both the Ninth Circuit, in *Washington State Republican Party v. Washington State Grange*, 676 F.3d 784, 793-94 (9th Cir. 2012) ("*Grange II*"), and the California Court of Appeal, in the decision referred to in footnote 1 of the Complaint, *Rubin v. Padilla*, 233 Cal. App. 4th 1128 (2015). That claim is (as *Grange II* put it): that these "minor" political parties' purportedly "fundamental right of access to the ballot" is violated by a nonpartisan "top-two" primary system because it is too "difficult for a minor-party candidate to progress to the general election." 676 F.3d at 793-94. Both the Ninth Circuit and the California Court of Appeal held, as a matter of law, that there is no violation.

Those cases are dispositive here. As a Ninth Circuit opinion, *Grange II* is obviously binding on this Court, and because the plaintiffs herein were either plaintiffs in the *Rubin* case or in privity with the *Rubin* plaintiffs, that decision also carries *res judicata* effect. For both reasons—because their claim is subject to claim preclusion and simply because it lacks merit—Plaintiffs' complaint is properly subject to dismissal under Rule 12(b)(6), and no amendment can cure the defects.

## II.    <u>ALLEGATIONS AND JUDICIALLY-NOTICEABLE FACTS</u>.

### A.    BACKGROUND OF PROPOSITION 14.

The pertinent background of Proposition 14 is summarized in the *Rubin* decision thus:

> The top-two system was added to the California Constitution by Proposition 14, which was placed on the ballot by the Legislature in 2009 and passed by voters the following year. (Cal. Const., art. II, § 5; Sen. Const. Amend. No. 4, Stats. 2009 (2009–2010 Reg. Sess.) res. ch. 2; *see generally Field v. Bowen* (2011) 199 Cal.App.4th 346, 351 (*Field*).) Under the system, statewide executive offices and state and federal legislative offices are designated "voter-nominated" offices. (Cal. Const., art. II, § 5, subd. (a); Elec. Code, § 359.5.) Every [even-numbered year], prior to the general election in November, a primary election is held for voter-nominated offices in which all voters and candidates, without regard to their party affiliation, are permitted to participate. (Cal. Const., art. II, § 5, subd. (a); Elec. Code, §§ 359.5, 1200, 1201.) The prerequisites for

inclusion on the voter-nominated primary ballot are minimal: the payment of a filing fee and the submission of a declaration of candidacy and nomination papers bearing the signatures of at most 100 nominators. (Elec. Code, §§ 8020, subd. (a), 8040, 8041, 8062, subd. (a), 8103.)

So long as they are affiliated with a "qualified" political party, the primary candidates may list their "party preference" on the election ballot. (Cal. Const., art. II, § 5, subd. (b); Elec. Code, §§ 5100, 13105, subd. (a).) The primary election does not, however, result in the selection of party "nominees," which are defined by statute as party-affiliated candidates "who are entitled by law to participate in the general election for that office." (Elec. Code, § 332.5; see Cal. Const., art. II, § 5, subd. (b).) Rather, only the two candidates receiving the most votes in the primary election, regardless of party affiliation, advance to the general election. (Cal. Const., art. II, § 5; Elec. Code, § 8141.5.) Accordingly, no party is entitled to place a candidate on the general election ballot, and two candidates stating the same party preference may appear on the general election for the same voter-nominated office if they are the first and second place finishers. (Elec. Code, § 8141.5.) The Elections Code expressly states the purpose of the primary is not "to determine the nominees of a political party"; rather, it "serves to winnow the candidates for the general election to the candidates receiving the highest or second highest number of votes cast at the primary election." (Id., § 359.5, subd. (a).)

233 Cal. App. 4th at 1137-38 (footnote omitted)

> **B.    THESE SAME POLITICAL PARTIES AND AFFILIATED CANDIDATES & VOTERS CHALLENGE PROPOSITION 14 AS INTERFERING WITH THEIR PURPORTED RIGHT OF ACCESS TO THE GENERAL ELECTION BALLOT IN *RUBIN V. PADILLA,* 233 CAL. APP. 4TH 1128 (2015).**

Immediately upon its passage, Proposition 14 came under attack by various so-called "minor" political parties (*i.e.,* parties other than Democrats and Republicans),[1] and candidates and voters associated with them, in a number of suits. The most significant, for purposes of this case is *Rubin,*[2] in which the same political parties

---

[1]  Intervenor-Defendants' use of the term "minor party" herein to refer to any political party other than the Republican and Democratic parties is merely following the convention used in the Complaint and, like the Court in *Rubin*, is not intended to demean those parties. *See* 233 Cal. App. 4th at 1136 n.1.

[2]  *See also Field v. Bowen*, 199 Cal. App. 4th 346 (2011), (affirming dismissal of suit challenging inability to list non-qualified political bodies as a candidate's "party preference" on the ballot and challenging the lack of a write-in option at the general election); *Chamness v. Bowen*, 722 F.3d 1110 (9th Cir. 2013) (affirming dismissal of

who are plaintiffs herein—the Libertarian Party, the Peace and Freedom Party, and the Green Party—and candidates and voters affiliated with those parties, filed suit in the Alameda County Superior Court raising precisely the same ballot access claims presented in this case. Those claims were rejected in a published opinion of the California Court of Appeal, and the California and U.S. Supreme Courts declined to review the case.

In *Rubin*, the plaintiffs initially brought a facial claim to Proposition 14, based on the minor parties' purported right to appear on the general election ballot. *See* Request for Judicial Notice, filed herewith ("Intervenors' RJN"), Exs. 1 and 3 (original and first amended complaints). After demurrers were sustained to the initial and First Amended Complaint, *id.* at Exs. 2 and 4, the *Rubin* plaintiffs sought to amend to allege an "as-applied" claim based on allegations that numerous minor party candidates were denied access to the general election ballot in 2012, despite receiving substantial support—as high as 18.6% of the vote—at the primary, and that "Out of more than 150 races governed by the top-two system in the 2012 election, only three minor party candidates advanced to the general election. Accordingly, the minor parties were represented by no general election candidate for 98 percent of statewide and legislative offices." *Rubin*, 233 Cal. App. 4th at 1136. *See also* Intervenors' RJN, Ex. 5 (second amended complaint). This allegedly "substantial limitation on the ability of minor party candidates to participate in the electoral process," 233 Cal. App. 4th at 1136, was claimed to violate the First Amendment, equal protection, and corresponding provisions of the California Constitution.

The trial court sustained demurrers to the second amended complaint without

claims similar to those in *Field*); *Brown v. Bowen,* Case 12-cv-05547-PA-SP (C.D. Cal.) (order filed Oct. 9, 2012, dismissing claims by voter alleging that inability to vote for a candidate affiliated with the political party of her choice at the general election violated the First, Fourteenth, and Fifteenth Amendments and section 2 of the federal Voting Rights Act); *Milonopoulos v. Bowen*, Case 2:14-cv-05973-DOC-VBK (E.D. Cal.) (order of Dec. 24, 2014, dismissing action seeking to require write-in candidacies at the general election under Proposition 14).

leave to amend. Intervenors' RJN at Ex. 6. The Court of Appeal unanimously affirmed that dismissal, *id*. at 1135; the California Supreme Court denied review, 2015 Cal. LEXIS 2395 (Cal., Apr. 29, 2015); and the United States Supreme Court denied a petition for writ of certiorari, 577 U.S. 923 (2015).

### C.  ALLEGATIONS OF THE COMPLAINT IN THIS ACTION.

Insofar as it contains actual factual allegations, rather than merely legal conclusions, the material allegations of the Complaint in this case are as follows: the Libertarian, Peace and Freedom, and Green Parties are qualified political parties in California. (Complaint, ¶s 3-5.) The individual Plaintiffs herein are registered California voters who (1) are each affiliated with one of the three plaintiff political parties, (2) ran for voter-nominated office at the March 2024 primary election, and (3) did not receive enough votes at that primary to finish the top two candidates and advance to the general election in November. (Complaint, ¶s 4-12.) They further allege that they wished to be write-in candidates at the general election or to support write-in candidates. (*Id*.) Each of the individual plaintiffs intends to run for elective office again in California, at some unspecified future time, and they plain to vote in the future as well. (Complaint, ¶ 13.) The parties intend to continue fielding candidates for voter-nominated offices who support their respective agendas. (*Id*.)

The Complaint further alleges that the top-two system, when combined with the prohibition on write-in voting at the general election "effectively eliminates the ability of any candidate who is not a Democrat or Republican to appear on the general election ballot and effectively eliminates the ability of any voter to vote to elect any candidate who is not a member of the Democratic or Republican party," at least "when there is a candidate representing the Democratic Party and a candidate representing the Republican Party or at least two candidates representing these two major parties." (Complaint, ¶s 26-28.) It alleges that "By effectively denying access to the general election ballot for any political candidate other than a Democrat or Republican, California law … limits the ability of third-parties to attract members

and grow and to obtain elective office in California. It also makes it much harder for a small political party to retain ballot-qualified status, a requirement to be able to list party preference on the ballot." (*Id.* at ¶ 29.) And finally, it alleges that "In a presidential election year, the scheduling of the Top-Two primary for the first Tuesday after the first Monday in March, in combination with California's other ballot access laws, violates the Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution," though without specifying how it does so. (*Id.* at ¶ 40.)

## III.    **APPLICABLE STANDARDS OF REVIEW.**

### A.    STANDARDS GOVERNING MOTIONS UNDER RULE 12(b)(6).

Under Rule 12(b)(6), a motion to dismiss is properly granted if one or more causes of action in the complaint fail to state a claim as a matter of law. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). While, as a general rule, the court may not consider materials beyond the pleadings when ruling on a 12(b)(6)) motion, it *may* consider matters that are judicially noticeable, *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001).[3] And, while the factual allegations of a complaint are generally accepted as true, the court must not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations," *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam), and mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss[.]" *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). Likewise, "[t]he court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). And finally, the U.S. Supreme Court has held that factual allegations of wrong-doing must be "plausible," rather than merely "conceivable" or "speculative" to survive demurrer:

---

[3] All of the facts cited in Section II, *supra*, that are not contained in the Complaint itself fall within this exception.

[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. [Citation]. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [Citation].  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)*, & Fed. R. Civ. Proc. 8(a)(2))*.

## B.    SUBSTANTIVE STANDARD GOVERNING ELECTION LAW CHALLENGES.

"Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections." *Dudum v. Arntz*, 640 F.3d 1098, 1103 (9th Cir. 2011) (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1991) ("*Burdick*")). Accordingly, "[w]hen deciding whether a state election law violates [constitutional[4]] rights, courts are to 'weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Chamness*, 722 F.3d at 1116 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)).

In applying this balancing test, the U.S. Supreme Court has held that "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983), and *Tashjian v. Republican Party of Conn.*, 479 U.S. 208 (1986)). Only election laws imposing a "severe" burden on voting or associational rights face strict scrutiny. 504 U.S. at 434. "[V]oting regulations are rarely subject to strict scrutiny." *Chamness*, 722 F.3d at

---

[4] Courts employ the same "single analytic framework" summarized above in election law challenges, regardless of whether the claims are based on the First Amendment or the Fourteenth Amendment. *Dudum*, 640 F.3d at 1106 n.15.

1  1116 (quoting *Dudum*, 640 F.3d at 1106).[5]

2  **IV.   THIS SUIT IS BARRED BY *RES JUDICATA*.**

3  To begin with this is case is barred by the doctrine of *res judicata*, based on the

4  final judgment in *Rubin*. "Under the doctrine of *res judicata*, or claim preclusion, '[a]

5  final judgment on the merits of an action precludes the parties or their privies from

6  relitigating issues that were or could have been raised in that action.'" *Storey v. Cello

7  Holdings, LLC*, 347 F.3d 370, 380 (2d Cir. 2003). *See also Owens v. Kaiser Found.

8  Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). A court may properly dismiss a

9  plaintiff's claims under Rule 12(b)(6) if the claims are barred by *res judicata*. *See Scott

10  v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

11  When the prior action in question is a state court action, a federal court must

12  give the judgment in that action the "the same preclusive effect as would be given

13  that judgment under the law of the State in which the judgment was rendered,"

14  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984), meaning that the

15  preclusive effect of the *Rubin* decision is determined by California law. *See Kay v. City

16  of Rancho Palos Verdes*, 504 F.3d 803, 808 (9th Cir. 2007); 28 U.S.C. § 1738. Under

17  California law, "claim preclusion arises if a second suit involves (1) the same cause of

18  action (2) between the same parties" or "parties in privity with them," "(3) after a final

19  judgment on the merits in the first suit." *DKN Holdings LLC v. Faerber*, 61 Cal. 4th

20  813, 824 (2015).

21  As for the first element, under California law "[a] claim is the 'same claim' if it

22  is derived from the same 'primary right,' which is "'the right to be free from a

23  particular injury, regardless of the legal theory on which liability for the injury is

24

25  [5] Though this passage from *Burdick* refers to the rights of "voters," because that's
26  what was at issue in that case, the same rule applies to election regulations affecting
    the rights of political parties and candidates, too. *See Wash. State Grange v. Wash.
27  State Republican Party*, 552 U.S. 442, 451-52 (2008) ("*Grange I*") (applying the
    *Anderson-Burdick* balancing test to a political party's claim that Washington's top-
28  two primary violated its associational rights); *Chamness*, 722 F.3d at 1116-21
    (applying *Anderson-Burdick* to candidate's prior challenge to Proposition 14).

based.""" *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1125-26 (9th Cir. 2013) (quoting *Adam Bros. Farming, Inc. v. Cty. of Santa Barbara*, 604 F.3d 1142, 1149 (9th Cir. 2010)).[6] Here, the plaintiffs are unquestionably alleging the same "primary right" as that alleged in *Rubin*—the right for minor parties and their candidates to access the general election ballot, and for their supporters to vote for those candidates at the general election, and not be shut out of participation by the top-two primary, coupled with the prohibition on write-in voting at the general election. Each of the three complaints in *Rubin* action alleged that minor parties faced insurmountable odds in reaching the general election—first as a general matter, as part of the plaintiffs' facial challenge, and then on an as-applied basis in the second amended complaint.

As for the identity of parties, the Libertarian Party of California and the Peace and Freedom Party of California were themselves plaintiffs in *Rubin*, and while the Green Party of California was not, the Green Party of Alameda County was, and the second amended complaint in *Rubin* specifically alleged that "Plaintiff GREEN PARTY OF ALAMEDA COUNTY (GPAC) is a geographic division of the Green Party of California, which is a qualified political party under the California Elections Code." *See* Intervenors' RJN, Ex. 5, at p. 5 (¶ 14). Entities in a parent/subsidiary relationship are generally held to be in privity with one another. *See, e.g., In re Imperial Corp. of Am.*, 92 F.3d 1503, 1507 (9th Cir. 1996) (finding privity between parent and subsidiaries for res judicata purposes); *Pickman v. Am. Express Co.*, No. C 11-05326 WHA, 2012 U.S. Dist. LEXIS 9662, at *14-15 (N.D. Cal. Jan. 27, 2012) (same). Moreover, Michael Rubin himself—the lead plaintiff in the prior action—was a member of the State Coordinating Committee of the Green Party of California, *see* Intervenors' RJN, Ex. 5, at p. 4 (SAC, ¶ 7).

As for the individual plaintiffs herein, they were not parties to the prior action,

---

[6] This is distinct from federal law, which applies a "transactional nucleus of facts" test. *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004) (noting the difference).

but a nonparty to a prior action is nevertheless subject to *res judicata* "'if his or her interests are so similar to a party's interest that the latter was the former's virtual representative in the earlier action." *Citizens for Open Access etc. Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1070-71 (1998) (quoting *United States v. Geophysical Corp.*, 732 F.2d 693, 697 (9th Cir. 1984)) (members of the public bound by judgment in prior case based on virtual representation by state agencies litigating in the public interest). In other words, there must be a "relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel." *Id.* at 1069-70 (quoting *Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 875 (1978)).

"One of the relationships that has been deemed 'sufficiently close' to justify a finding of privity is that of an organization or unincorporated association filing suit on behalf of its members," so long as the organization had sufficient incentive to fully litigate the issues, as the minor parties did in *Rubin*. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1082 (9th Cir. 2003) (applying *res judicata* in light of a previous lawsuit by an association to bar a subsequent suit brought on the same facts by members of the association). *See also Physicians Comm. for Responsible Med. v. Vilsack*, No. 21-cv-03088-RS, 2023 U.S. Dist. LEXIS 22523, at *29 n.13 (N.D. Cal. Feb. 9, 2023) (same); *Valley View Health Care, Inc. v. Chapman*, 992 F. Supp. 2d 1016, 1048-49 (E.D. Cal. 2014) (same); *Pac. Gas & Elec. Co. v. Lego*, 141 Cal. App. 3d 179 (1983) (Indian tribe's claim barred by *res judicata* where its members had previously litigated the same claim unsuccessfully).

In this case, the individual plaintiffs are asserting a desire to appear on the ballot as a representative of the minor party to which they belong.[7] In short, they are

---

[7] *See, e.g.,* Complaint, ¶¶ 7 ("Plaintiff Joe Dehn is a registered California voter who ran for the United States House, seeking to be the elected Representative from California's 17th House District in 2024 *as a Libertarian Party of California candidate*, but was denied access to the general election ballot because of the Top-Two primary law") (emphasis added), 8 ("Plaintiff Sean Dougherty is a registered

seeking to advance the right to associate with the party and other members thereof—the very same associational interests that the minor parties advanced on behalf of themselves and their members in *Rubin* and seek to advance again here. The minor parties acted as the "virtual representative" of their members in the prior action, and privity thus applies. *See Righeimer v. Jones*, Civ. S-00-1522 DFL PAN, 2000 U.S. Dist. LEXIS 13313, at *8 (E.D. Cal. Sep. 14, 2000) (individual voters challenging election conducted under blanket primary bound by Republican Party's failure to advance claim in prior action); *Lewis v. Kohler*, No. 3:22-cv-01225(JBA), 2023 U.S. Dist. LEXIS 149885, at *9 (D. Conn. Aug. 25, 2023) ("this Court concludes Plaintiff is in privity with the plaintiffs in *Misbach* based on their shared interest in broadening ballot access beyond the major parties and the significant overlap between the allegations here and in *Misbach*."). *See also Rubin*, 233 Cal. App. 4th at 1144 n.9 (plaintiffs made no distinction between the rights of the parties, candidates, and voters in challenging Prop. 14 and that the court did not see any material difference).

Finally, "for purposes of applying the doctrine of *res judicata* … a dismissal with prejudice," as *Rubin* was, "is the equivalent of a final judgment on the merits, barring the entire cause of action." *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 793 (2010).

## V.    **THE COMPLAINT ALSO FAILS TO STATE A CLAIM.**

Even if this case weren't barred by *res judicata*, it is barred by binding precedent, which demonstrates that Plaintiffs' claim fails as a matter of law.

### A.    **PROPOSITION 14 DOES NOT "DISCRIMINATE" AGAINST MINOR PARTIES.**

One of the main premises of the Complaint is that Proposition 14

---

California voter who ran for the United States House, seeking to be the elected Representative from California's 19th House District in 2024 *as a Green Party of California candidate*") (emphasis added) & 9 ("Plaintiff William Patterson is a registered California voter who ran for a seat in the United States House, seeking to be the elected Representative from California's 28th House District in 2024 *as a Peace and Freedom Party of California candidate*") (emphasis added).

"discriminates" against parties other than the Democrats and Republicans. That is simply not the case. Proposition 14 is facially neutral and "does not dictate political outcomes or invidiously discriminate against a class of candidates." *Chamness*, 722 F.3d at 1121. The Court of Appeal squarely rejected this contention in *Rubin*:

> While plaintiffs contend the top-two system prevents minor party candidates from advancing to the general election, it has exactly the same impact on major party candidates who fail to garner a top-two finish. … When precluding access to the general election ballot, the statute makes no distinction on the basis of party affiliation. Plaintiffs allege, nonetheless, that minor party candidates are more severely disadvantaged by the top-two system because they fail to advance far more often than major party candidates. The cause of this disparity, however, does not lie in the electoral system. Rather, the differential failure to advance is a direct result of the minor party candidates' failure to attract the votes of a sizeable portion of the electorate. The state has no equal protection obligation to compensate for the minor parties' lack of general electoral appeal. (*Munro, supra*, 479 U.S. at p. 198.)

*Rubin*, 233 Cal. App. 4th at 1153. Or, as the cited passage in *Munro* put it:

> Washington has created no impediment to voting at the primary elections; every supporter of the Party in the State is free to cast his or her ballot for the Party's candidates. As was the case in *Jenness* v. *Fortson*, 403 U.S. 431 (1971), "candidates and members of small or newly formed political organizations are wholly free to associate, to proselytize, to speak, to write, and to organize campaigns for any school of thought they wish...." *Id.*, at 438. **States are not burdened with a constitutional imperative to reduce voter apathy or to "handicap" an unpopular candidate to increase the likelihood that the candidate will gain access to the general election ballot. . . .**

*Munro v. Socialist Workers Party*, 479 U.S. 189, 198 (1986) (emphasis added). *See also Libertarian Party of N.D. v. Jaeger*, 659 F.3d 687, 699-700 (8th Cir. 2011), *cert. denied*, 566 U.S. 939 (2012) ("[T]he burden is appropriately placed on the candidate to generate support and rally voters to vote in order to make it to the general election ballot. It is not the state's obligation to find or create an easier forum for establishing voter support.").

## B.    POLITICAL PARTIES DO NOT HAVE ANY RIGHT TO APPEAR ON THE BALLOT IN A NONDISCRIMINATORY NONPARTISAN SYSTEM LIKE PROPOSITION 14'S.

It is beyond debate that Proposition 14 established a nonpartisan electoral

system for voter-nominated offices. A nonpartisan system is one for which no political party may nominate a candidate. *Cal. Democratic Party v. Jones*, 530 U.S. 567, 585 (2000) (referring to top two as a "nonpartisan primary"); *Grange I*, 552 U.S. at 452. Proposition 14 is such a system. CAL. CONST. art. II, § 5(b); *Rubin*, 233 Cal. App. 4th at 1135 ("The top-two system consists of an open nonpartisan primary followed by a general election runoff between the primary's top-two votegetters").

Under Proposition 14, the political parties no longer control the primary as they previously did, and the primary does not choose any party's nominee. Instead, any candidate may run in the primary for congressional or state elective office (now called "voter-nominated" offices), and any voter may vote at the primary election for any candidate. CAL. CONST. art. II, § 5(b); *See also* Cal. Elec. Code § 8002.5(c). The two candidates receiving the highest vote totals for each office at the primary then compete for the office at the ensuing general election, regardless of party affiliation or "preference." CAL. CONST. art. II, § 5; *see also* Cal. Elec. Code §§ 8141.5 and 15452.

In *Grange II*, the Ninth Circuit held that political parties have no right to be on the general election ballot in such a system. Following remand by the Supreme Court in *Grange I*, the Libertarian Party contended that Washington's top-two system "violate[d] its fundamental right of access to the ballot by making it difficult for a minor-party candidate to qualify for the general election ballot." 676 F.3d at 793. That claim is essentially identical to Plaintiffs' here. Notably, the district court in *Grange II* rejected this claim as a *matter of law*, noting that a top-two system would, "*by definition* exclude many parties from the general election ballot[,]" but that the Supreme Court had nevertheless endorsed top-two systems. The district court further held that any ballot access concerns were negated by the fact that Washington (like California) "'virtually guarantees' minor parties access to a statewide primary ballot."[8] And finally, the district court held:

---

[8] *See* Intervenors' RJN, Ex. 7 (8/20/09 order dismissing ballot access claims in *Wash. State Rep. Party v. Wash. State Grange*, Case 05-cv-00927-JCC (W.D. Wash.)),

Indeed, in [Washington's top-two system], the general election becomes, for all intents and purposes, a runoff election between the top-two vote getters of the primary. Putting aside the issue of "party preference" and forced association, ***there can be no doubt that the "top-two" aspect of I-872 would be permissible if the "primary" were renamed a "general election," and the "general election" were renamed a "runoff." Yet the constitutionality of the election statute cannot turn on the identifiers used for its various provisions.*[9]**

The Ninth Circuit affirmed this dismissal as a matter of law, 676 F.3d at 793-95. Like the district court, the Ninth Circuit "recognize[d] the possibility that [a top-two system] makes it more difficult for minor-party candidates to qualify for the general election ballot than regulations permitting a minor-party candidate to qualify for a general election ballot by filing a required number of petition signatures. This additional burden, however, is an inherent feature of any top two primary system, and the Supreme Court has expressly approved of top two primary systems." *Id.* at 795. The Supreme Court denied a petition for certiorari. 568 U.S. 814 (2012).

Likewise in *Rubin*, the court held, "The minor parties unquestionably have a right to fair and equal participation in the process by which officeholders are selected, but this right is satisfied by participation in an open nonpartisan primary election in which every candidate has an equal opportunity, regardless of party affiliation, to advance to the general election." 233 Cal. App. 4th at 1144.

Nor are *Grange II* and *Rubin* exceptional. Nonpartisan elections have been used throughout the country for decades—including in California for local and judicial office, for over 100 years[10]—and, as the California Supreme Court has put it, "in a non-partisan election the party system is not an integral part of the elective machinery and the individual's right of suffrage is in no way impaired by the fact that he cannot exercise his right through a party organization." *Communist Party of*

---

p. 12 (citing *Munro*, 479 U.S. at 199).

   [9] *Id*. at 13 (emphasis added).

   [10] *Unger v. Superior Court*, 37 Cal. 3d 612, 617 (1984).

*United States v. Peek*, 20 Cal. 2d 536, 543-44 (1942) (emphasis added). Many other courts have similarly held that political parties have no constitutional right to access the ballot in such a system. *See, e.g., Carpenter v. Cobb*, 387 S.E.2d 858, 861 n.6 (W. Va. 1989) ("The right to have nonpartisan elections to certain offices does not appear to violate equal protection principles" (citing cases)); *Dade County v. Young Democratic Club*, 104 So. 2d 636, 639-40 (Fla. 1958) ("The non-partisan election of officers is a question of policy involving no constitutional determination. The electors of Dade County determined that county commissioners should be elected on a non-partisan ballot. We think their determination was final and that the courts have no right to interfere with it."); *Whitney v. Skinner*, 241 S.W. 350 (Ky. 1922) (nonpartisan general/runoff system constitutional); *Sarlls v. State*, 166 N.E. 270, 277 (Ind. 1929) (people have the right to form parties, but parties have no constitutional right to designate nominees on the ballot). No case is to the contrary.[11]

### C. THE BURDEN ON THE MINOR PARTIES' ASSOCIATIONAL RIGHTS IS NOT SEVERE: MINOR PARTY CANDIDATES HAVE BROAD ACCESS TO THE PRIMARY ELECTION AND THE SAME OPPORTUNITY AS ALL OTHER CANDIDATES TO ADVANCE TO THE GENERAL ELECTION.

Applying the *Burdick* standard, the Ninth Circuit held that the top two system does not impose a "severe" burden on the parties' right, because (1) every party in Washington—major and minor—has "broad access to the I-872 primary" and (2) all candidates compete at that primary on equal terms and I-872 thereby "gives minor party candidates the same opportunity as major-party candidates to advance to the general election." *Grange II*, 676 F.3d at 794. In support of these points, the Ninth

---

[11] Nor should this be surprising. Not only is there no mention of political parties in the Constitution, but the Founders' distrust of political parties is well-known. *See Rutan v. Republican Party*, 497 U.S. 62, 82 n.3 (1990) (Stevens, J., concurring) (discussing the Founders' skepticism of political parties); Nathaniel Persily, *Toward a Functional Defense of Political Party Autonomy*, 76 N.Y.U. L. REV. 750, 813 (2001) ("Political parties are absent from the constitutional text, and it would be an activist judge indeed who would suggest that the Constitution obligates states to provide a formal role for parties in their nomination processes.").

Circuit quoted the Supreme Court's holding from *Munro v. Socialist Workers Party*, that if minor parties are given equal access to compete in a statewide primary, "[i]t can hardly be said that Washington's voters are denied freedom of association because they must channel their expressive activity into a campaign at the primary as opposed to the general election." *Id.* (quoting *Munro,* 479 U.S. at 199). *Munro* rejected a challenge to Washington's prior blanket primary system, holding that the burden on minor parties of being kept off the *general* election ballot is "slight." 479 U.S. at 199. *See also Erum v. Cayetano,* 881 F.2d 689, 693 (9th Cir. 1989) ("the effect on a candidate's constitutional rights is 'slight' when a state affords a candidate easy access to the primary election ballot and the opportunity to wage a ballot-connected campaign."). Rubin likewise held that Proposition 14 imposed an "at most, modest burden" on the parties' rights. 233 Cal. App. 4th at 1150.

As for "broad access" to the primary, the requirements for a candidate to participate in the California primary are basically the same as in Washington.[12]  And regarding the point that all qualified parties participate in the primary election on equal terms, and have an equal opportunity to advance to the general election, the same is true of Proposition 14.  The top two candidates at the primary proceed to the general *without regard to their party preference.* CAL. CONST. art. II, § 5(a).

Consistent with *Munro* is *Edelstein v. City & Cty. of San Francisco,* 29 Cal. 4th 164 (2002), in which several voters challenged San Francisco's ban on write-in voting at the general/runoff election for citywide office, but not the primary election. Applying the *Anderson-Burdick* balancing test, the California Supreme Court rejected

---

[12] *Compare Grange II,* 676 F.3d at 794 (summarizing Washington's requirements) *with* Cal. Elec. Code §§ 8002.5, 8020, 8040-8041, 8103, 8106. There are two slight differences. First, California candidates must file a nomination petition signed by a specified number of registered voters, but that requirement is minimal: between 65 and 100 voters in the case of a statewide office, with even fewer required for other offices. *See* Cal. Elec. Code § 8062. Also, the filing fee for a *statewide* office (*i.e.*, Governor, etc.) is 2% of the annual salary. Cal. Elec. Code § 8103(a)(1). For all other offices it is 1%, like Washington. *Id.,* at subds. (a)(2) & (3).

the challenge, holding, "We conclude that San Francisco's prohibition against write-in voting in the mayoral runoff election was not a *severe* restriction on voting rights, but rather that it imposed only a *limited burden* on voters' rights to make free choices and to associate politically through the vote. [Citation.] After all, voters were not denied an opportunity to cast a write-in ballot for the candidate of their choice. They were only denied the opportunity to cast a write-in ballot *twice*." 29 Cal. 4th at 182. Likewise, under Proposition 14 voters were not denied the opportunity to vote for minor party candidates in 2024; they were only denied the opportunity to do so twice.

### D. Limiting the General Election to the Top Two Vote-Getters from the Primary Serves Important Governmental Interests.

Given the lack of a "severe" burden on the parties' rights, the State need only show that Proposition 14 furthers an "important regulatory interest." *Anderson*, 460 U.S. at p. 788; *Grange I*, 552 U.S. at 458. It furthers several.

First, as the *Rubin* Court recognized, under the prior partisan electoral system independent "decline-to-state" voters, who represented roughly a fifth of the electorate when the measure was enacted, had no right to participate in the primary election.[13] As a consequence, "[i]n effect, [DTS voters'] choices at the general election could be determined for them by the members of the qualified parties. The top-two system, by moving away from a party-based primary election, gives to this substantial bloc of independent voters the right to participate equally in the important first stage of the electoral process." *Rubin*, 233 Cal. App. 4th at 1150-51. The Court held that this "interest alone is sufficient to justify the limited burden on minor party associational rights imposed by the top-two system." *Id.* at 1150.

Second, Proposition 14 is consistent with past Supreme Court case law holding that the State may "properly reserve the general election ballot 'for major struggles,'"

---

[13] Though some parties gave DTS voters permission to participate in their primaries, others did not, and the State could not force them to do so. *See Cal. Democratic Party v. Jones*, 530 U.S. at 567.

1   using the primary "to winnow out and finally reject all but the chosen candidates[.]'"

2   _Munro_, 479 U.S. at 196 (quoting _Storer v. Brown_, 415 U.S. 724, 735 (1974)). Notably,

3   the Supreme Court has characterized the State's interest in using a primary to

4   "winnow" the field of candidates to "the serious few" as "compelling," which is a higher

5   standard than the State has to meet here. _Morse v. Republican Party_, 517 U.S. 186,

6   205 (1996); _see also Munro_, 479 U.S. at 195-96; _Storer_, 415 U.S. at 735-36.

7       Third, as the Court in _Rubin_ noted, limiting a runoff to the top two vote-getters

8   at the primary ensures that the person who is ultimately elected to office receives the

9   support of a majority of the voters, and "the Supreme Court recognized as long ago as

10  _Williams_ [_v. Rhodes_, 393 U.S. 23, 32 (1968)] that 'the State does have an interest in

11  attempting to see that the election winner be the choice of a majority of its voters."

12  233 Cal. App. 4th at 1151. Indeed, to ensure that such a majority is received, SB 6

13  bans write-in voting at the general election, just as the system upheld in _Edelstein_

14  did. _See_ Cal. Elec. Code § 8606.

15      Relatedly, the Supreme Court has recognized that a "prohibition on write-in

16  voting is a legitimate means of averting divisive sore-loser candidacies." _Burdick_, 504

17  U.S. at 439.

18  **E.    THE TIMING OF CALIFORNIA'S PRIMARIES DOES NOT RENDER**
19  **PROPOSITION 14 INVALID.**

20      In _Rubin_, the plaintiffs sought to distinguish _Grange II_ by arguing that,

21  whereas Washington's primary was held in August, California's was held in June, and

22  that the larger gap between the primary and general rendered California's law

23  unconstitutional, even if Washington's wasn't. The _Rubin_ Court rejected the

24  distinction. 233 Cal. App. 4th at 1143 n.6.

25      Beginning in 2020, California began holding its primaries in March in

26  presidential years, while maintaining the June primary in non-presidential years.

27  Cal. Elec. Code § 1001. Plaintiffs assert, in conclusory fashion and without

28  explanation, that "This is a time frame which repeatedly has been held

unconstitutional as applied to minor political parties and independent candidates to select their candidates or declare their candidacies." (Complaint, p. 2:17-19.)

Presumably, this allegation rests—as the *Rubin* plaintiffs' did—on *Anderson v. Celebrezze*, which struck down a March filing deadline for independent presidential candidates to appear on the November general election ballot as unduly burdensome, 460 U.S. at 780. But as the Sixth Circuit has noted, the key to the holding of *Anderson* was the fact that the deadline in question applied only to independent candidates, whereas party candidates had an additional five months to file papers. *Lawrence v. Blackwell*, 430 F.3d 368 (6th Cir. 2005), *cert. denied*, 547 U.S. 1178 (2006). In short, it was the discrimination among candidates that was dispositive. *Giroux v. LaRose*, No. 1:22-cv-309, 2022 U.S. Dist. LEXIS 106519, at *27 (S.D. Ohio June 14, 2022) (*Lawrence* "confirms that it is the discrimination, more than the burden itself, the drives the analysis."). *See also Storer*, 415 U.S. at 729 (the Court has ruled that "*discriminations* against new parties and their candidates had to be justified by compelling state interests." (emphasis added)).

Accordingly, in *Lawrence* itself the Sixth Circuit upheld Ohio's *March* filing deadline as a matter of law, even though *Anderson* had struck down a March filing deadline, finding it to be a "vital distinction" that the March deadline before it applied equally to all candidates:

> All candidates are burdened by the fact that Ohio chooses to conduct its primary at an early date, but there is no particular group which feels the additional burden of being placed at a disadvantage with respect to the rest of the field. The district court correctly concluded that this difference between this case and the *Anderson* case is significant.

*Id.* at 373.

Likewise, in *Buscemi v. Bell*, 964 F.3d 252 (4th Cir. 2020), the Fourth Circuit followed *Lawrence* and upheld a March filing deadline for unaffiliated candidates when party candidates were not given additional time to decide whether to run.

Under Proposition 14, as in *Lawrence* and *Buscemi*, all candidates are subject

to the same rules. All must file their paperwork at the same time, and all candidates who do not place in the top-two voter getters at the primary—including major party candidates—are equally precluded from moving onto the general election.

Another "vital distinction" between the March filing deadline at issue in *Anderson* and the March primary here is that the former precluded <u>any</u> "opportunity for the candidate to wage a ballot-connected campaign," *Munro,* 479 U.S. at 199, whereas Proposition 14 gives candidates that opportunity at the primary election.

## F.   MULTIPLE COURTS—INCLUDING THE NINTH CIRCUIT—HAVE ALREADY UPHELD PROPOSITION 14'S BAN ON WRITE-IN VOTING AT THE GENERAL.

Plaintiffs also object to the fact that they are precluded from either casting write-in votes at the general election or being write-in candidates. (*See, e.g.,* Complaint, ¶¶ 6-11, 30 ["The barring of write-in candidates from the ballot further impermissibly restricts the exercise of these fundamental constitutional rights and effectively disenfranchises those voters who wish to vote for the write-in candidate of their choice."].) This challenge has been raised repeatedly and rejected every time, in *Field v. Bowen,* 199 Cal. App. 4th at 366-70; in *Rubin,* 233 Cal. App. 4th at 1143 n.7; and, most importantly, by the Ninth Circuit in *Chamness v. Bowen,* 722 F.3d at 1115-21. In *Burdick* the Supreme Court recognized that a "prohibition on write-in voting [at the general election] is a legitimate means of averting divisive sore-loser candidacies. 504 U.S. at 439. And, indeed, in that case the Court held that it is constitutional for a State to prohibit write-in voting altogether, rather than just at the general election, as California does. *Id.* at 439-40.

## G.   PLAINTIFFS MISSTATE THE LAW INSOFAR AS IT RELATES TO THEIR ABILITY TO RETAIN BALLOT-QUALIFIED STATUS AS A POLITICAL PARTY.

Finally, Plaintiffs allege that "By effectively denying access to the general election ballot for any political candidate other than a Democrat or Republican, California law … limits the ability of third-parties to attract members and grow and to obtain elective office in California. It also makes it much harder for a small political

party to retain ballot-qualified status, a requirement to be able to list party preference on the ballot." (Complaint, ¶ 29.)

Insofar as this allegation focuses on the ability of the parties to attract members and grow, the Court in *Rubin* rejected the plaintiffs' argument that their rights were violated because "their candidates are excluded from the ballot at the time when they would have the largest audience for their electoral activities." 233 Cal. App. 4th at 1148. The Court noted:

> Because minor parties are permitted to promote candidates in the primary election on the same terms as any other party, plaintiffs are fully able to communicate their message through the electoral process at that time. Further, even at the time of the general election, plaintiffs are in no way excluded from many expressive activities associated with the electoral process. Even without a candidate on the ballot in November, plaintiffs may organize their members, communicate their message through advertising and events, support or oppose candidates who are on the ballot, and engage in any other appropriate political activity. The lack of a candidate in no way prevents plaintiffs from participating in the various election-related political activities at the time of the general election. It merely prevents them from using a candidacy as the vehicle for such activities.

*Id*. The Court further quoted *Timmons*, 520 U.S. at 363, to the effect that it was "'unpersuaded, however, by the Party's contention that it has a right to use the ballot itself to send a particularized message … . Ballots serve primarily to elect candidates, not as fora for political expression. [Citations.] … [P]laintiffs remain free at the time of the general election to participate in expressive political activity, whether or not they have a candidate on the ballot." *Rubin*, 233 Cal. App. 4th at 1149-50.

And insofar as Plaintiffs are alleging that exclusion from the general election ballot makes it more difficult for their to retain their status as a ballot-qualified party, they're simply mistaken. In 2014, Elections Code § 5100(a) was amended to enable a political party to retain its ballot qualified status if its candidates received at least 2% of the statewide vote "at the last preceding gubernatorial *primary* election," rather than at the general election as was previously the case. *Id.* (emphasis added). Thus, their ability to retain ballot-qualified status does not depend on their ability to

advance to the general election.

**VI.** **CONCLUSION.**

For the foregoing reasons, the Complaint should be dismissed without leave to amend.

Respectfully submitted,

Dated: January 31, 2025

NIELSEN MERKSAMER LLP

By:    /s/    Christopher E. Skinnell
            Christopher E. Skinnell

*Attorneys for Intervenor-Defendants*
CALIFORNIANS TO DEFEND THE
OPEN PRIMARY and INDEPENDENT
VOTER PROJECT