1   ROB BONTA
    Attorney General of California
2   ANTHONY R. HAKL
    Supervising Deputy Attorney General
3   GABRIELLE D. BOUTIN
    Deputy Attorney General
4   State Bar No. 267308
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone: (916) 210-6053
     Fax: (916) 324-8835
7    E-mail: Gabrielle.Boutin@doj.ca.gov
    *Attorneys for Defendant Dr. Shirley Weber, in her*
8   *official capacity as California Secretary of State*

9               IN THE UNITED STATES DISTRICT COURT

10             FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13  | **PEACE AND FREEDOM PARTY;** | 3:24-cv-08308 |

**LIBERTARIAN PARTY OF**

14  **CALIFORNIA; GREEN PARTY OF**    **NOTICE OF MOTION AND MOTION**
    **CALIFORNIA; GAIL LIGHTFOOT; JOE**    **TO DISMISS COMPLAINT;**

15  **DEHN; SEAN DOUGHERTY; WILLIAM**    **MEMORANDUM OF POINTS AND**
    **PATTERSON; AARON REVELES;**    **AUTHORITIES**
    **SHANNEL PITTMAN,**

16                                      Date:      March 28, 2025
                        Plaintiffs,    Time:      9:00 a.m.

17                                      Dept:      Courtroom 7 – 19th Floor
           v.                           Judge:     Maxine M. Chesney

18                                      Trial Date: None set
                                        Action Filed: 11/21/2024

19  **DR. SHIRLEY N. WEBER, CALIFORNIA**
    **SECRETARY OF STATE,**

20
                        Defendant.
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS .................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 2

INTRODUCTION ....................................................................................................................... 2

BACKGROUND ......................................................................................................................... 3

    I.     California's Top-Two Primary System For Certain Elected Offices ..................... 3

    II.    The Political Party Plaintiffs' Prior State Court Challenge to California's Top-Two Primary System in *Rubin v. Padilla* ........................................................ 4

    III.   Allegations in the Complaint .................................................................................. 5

LEGAL STANDARDS ................................................................................................................ 6

ARGUMENT ............................................................................................................................... 6

    I.     The Political Parties Plaintiffs' Claims Are Barred by Res Judicata .................... 6

    II.    Plaintiffs' Ballot Access Claim Under the First and Fourteenth Amendment Fails .......................................................................................................................... 8

          A.    Legal Standard Applicable to Evaluating Constitutionality of State Election Laws ..................................................................................... 8

          B.    Courts Have Already Approved the Top-Two Primary as a Constitutional Method of Choosing General Election Candidates ........... 9

          C.    California's Top-Two Primary System Does Not Impose a Severe Burden on Plaintiffs' First and Fourteenth Amendment Rights .............. 12

          D.    California's Interests Justify Any Burden Imposed by the Top-Two Primary System ............................................................................... 14

    III.   Plaintiffs' Equal Protection Claim Fails .............................................................. 16

CONCLUSION ......................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

CASES

*Allen v. McCurry*
    449 U.S. 90 (1980) ................................................................................. 6

*Anderson v. Celebrezze*
    460 U.S. 780 (1983) ........................................................................ *passim*

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ................................................................................. 6

*Boyd v. Freeman*
    18 Cal. App. 5th 847 (2017) ................................................................... 7

*Burdick v. Takushi*
    504 U.S. 428 (1992) ...................................................................... 2, 9, 14

*California Democratic Party v. Jones*
    530 U.S. 567 (2000) ........................................................................ *passim*

*Chamness v. Bowen*
    722 F.3d 1110 (9th Cir. 2013) ................................................................ 9

*Clements v. Fashing*
    457 U.S. 957 (1982) ................................................................................. 8

*De La Fuente v. Padilla*
    930 F.3d 1101 (9th Cir. 2019) .............................................................. 15

*DKN Holdings LLC v. Faerber*
    61 Cal. 4th 813 (2015) ......................................................................... 7, 8

*Dodd v. Hood River Cnty.*
    59 F.3d 852 ............................................................................................. 6

*Dudum v. Arntz*
    640 F.3d 1098 (9th Cir. 2011) ................................................................ 9

*Engquist v. Oregon Dep't of Agr.*
    553 U.S. 591 (2008) .............................................................................. 16

*Fayer v. Vaughn*
    649 F.3d 1061 (9th Cir. 2011) ................................................................ 6

ii

Not. & Mot. to Dismiss; Mem. of Pts. & Auths. (3:24-cv-08308)

1
2

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

3
4
*Freeman v. City of Santa Ana*
    68 F.3d 1180 (9th Cir. 1995) ............................................................................ 16

5
*Hayes v. Missouri*
    120 U.S. 68 (1887) ............................................................................................ 16

6
7
*Howard v. City of Coos Bay*
    871 F.3d 1032 (9th Cir. 2017) .......................................................................... 7

8
9
*Johnson v. Riverside Healthcare Sys., LP*
    534 F.3d 1116 (9th Cir. 2008) .......................................................................... 6

10
*Lazy Y Ranch Ltd. v. Behrens*
    546 F.3d 580 (9th Cir. 2008) ............................................................................ 6

11
12
*Munro v. Socialist Workers Party*
    479 U.S. 189 (1986) ................................................................... 12, 13, 14, 15

13
14
*N. Star Int'l v. Ariz. Corp. Comm'n*
    720 F.2d 578 (9th Cir. 1983) ............................................................................ 6

15
*Noel v. Hall*
    341 F.3d 1148 (9th Cir. 2003) ....................................................................... 2, 7

16
17
*NTCH-WA, Inc. v. ZTE Corp.*
    921 F.3d 1175 (9th Cir. 2019) .......................................................................... 7

18
19
*Personnel Administrator of Mass. v. Feeney*
    442 U.S. 256 (1979) ......................................................................................... 16

20
*Rubin v. Bowen*
    No. RG11605301, 2013 WL 6671292 (Cal. Super. Ct. Oct. 04, 2013) ............... 5, 7

21
22
*Rubin v. Padilla*
    233 Cal.App.4th 1128 (2015) ................................................................... *passim*

23
24
*Storer v. Brown*
    415 U.S. 724 (1974) ......................................................................................... 14

25
*Tedards v. Ducey*
    951 F.3d 1041 (9th Cir. 2020) .......................................................................... 9

26
27
*Washington State Grange v. Washington State Republican Party*
    552 U.S. 442 (2008) ................................................................................. *passim*

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Washington State Republican Party v. Washington State Grange*
676 F.3d 784 (9th Cir. 2012)................................................................*passim*

**STATUTES**

42 U.S.C.
§ 1983.................................................................................................... 5

California Election Code
§ 337..................................................................................................... 3
§ 359.5................................................................................................ 3, 4
§ 359.5(a).............................................................................................. 4
§ 1201................................................................................................... 4
§ 1202.......................................................................................... 4, 5, 13
§ 8141.5................................................................................................ 4

State Election Laws.................................................................................. 8

**CONSTITUTIONAL PROVISIONS**

First Amendment............................................................................... 10, 11

Second Amendment............................................................................... 4, 5

Fourteenth Amendment.......................................................................*passim*

California Constitution Article II
§ 5...................................................................................................... 3, 5
§ 5(a)............................................................................................. 3, 4, 16
§ 5(c), (d)............................................................................................. 3

**COURT RULES**

Federal Rules of Civil Procedure Rule 12(b)(6) ..................................... 1, 6

1

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on March 28, 2025, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Maxine M. Chesney of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue in San Francisco, California, Defendant Dr. Shirley Weber, in her official capacity as California Secretary of State, will and hereby does move this Court to dismiss the Complaint and all claims therein, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion to dismiss is made on the grounds that Plaintiffs fails to state a claim upon which relief can be granted. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Defendant's Request for Judicial Notice, the papers and pleadings on file, and upon such matters that may be submitted at the hearing.

Dated:  January 31, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General

*s/ Gabrielle D. Boutin*
GABRIELLE D. BOUTIN
Deputy Attorney General
*Attorneys for Defendant Dr. Shirley Weber, in her official capacity as California Secretary of State*

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**INTRODUCTION**

With the enactment of Proposition 14 in 2010, California voters amended the California Constitution to overhaul the system the state uses to select candidates for statewide, legislative, and congressional offices.  Proposition 14 replaced a closed partisan primary system with a nonpartisan blanket primary system, or "top-two" primary system, in which the two candidates receiving the most votes in the primary then proceed to a runoff in the general election. The United States Supreme Court and the Ninth Circuit have recognized the nonpartisan blanket primary system as a constitutional means for choosing general election candidates.[1]  *See California Democratic Party v. Jones*, 530 U.S. 567, 586 (2000); *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 452 (2008); *Washington State Republican Party v. Washington State Grange* 676 F.3d 784, 794-95 (9th Cir. 2012).  Indeed, California's top-two primary system is consistent with "the function of the election process," which is "to winnow out and finally reject all but the chosen candidates." *Burdick v. Takushi*, 504 U.S. 428, 438 (1992) (internal quotation marks omitted).

Plaintiffs, who include minor political parties and their candidates, claim that California is constitutionally prohibited from enforcing its top-two primary system.  They allege that the top-two primary system violates their right to ballot access under the First and Fourteenth Amendments, and their right to equal protection.  These claims fail as a matter of law.

As a threshold matter, the political party Plaintiffs' claims are barred by res judicata.  These Plaintiffs previously brought the same claims in California state courts, and those claims were soundly rejected.  This Court is required to give "full faith and credit" to the state court's judgment.  *Noel v. Hall*, 341 F.3d 1148, 1166 (9th Cir. 2003).

Plaintiffs' claims also fail on the merits.  At heart, Plaintiffs complaint is that it is difficult for minor party candidates to qualify for the general election ballot.  Even if deemed true, there is

---

[1] A closed partisan primary is one in which each party-affiliated voter votes for the nominee of their party to proceed to the general election.  A nonpartisan blanket primary is one in which any voter may vote for any candidate and only the top two (or other specified number) vote recipients proceed to the general election.

1    no constitutional right to appear on the general election ballot where, as here, the law treats all

2    political parties and their candidates alike, there is no allegation of insufficient access to a

3    primary ballot, and the voters decide which candidates proceed to the general election.

4    California's top-two primary system does not "severely burden" Plaintiffs' constitutional right to

5    ballot access and is justified by California's important state interests, including its interests in

6    increasing voter choice and participation.  *See Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).

7    Nor does the system discriminate between major and minor parties or candidates in violation of

8    equal protection.

9    　　　For these reasons, explained further below, the Complaint should be dismissed without

10   leave to amend.

## BACKGROUND

## I.    CALIFORNIA'S TOP-TWO PRIMARY SYSTEM FOR CERTAIN ELECTED OFFICES

13   　　　In 2010, California voters approved Proposition 14, which amended Article II, Section 5 of

14   the California Constitution to create the state's top-two primary system for certain offices.  *See*

15   CAL. CONST. art. II, § 5; *Rubin v. Padilla*, 233 Cal.App.4th 1128, 1137 (2015).  The top-two

16   system applies to statewide executive offices (such as the Governor and Secretary of State) and

17   state and federal legislative offices, all of which California designated as "voter-nominated

18   offices."  CAL. CONST. art. II, § 5(a); Cal. Elec. Code § 359.5; *Rubin*, 233 Cal.App.4th at 1137.

19   The top-two primary system does not apply to elections for presidential candidates, political party

20   committees, or party central committees, which are designated as "party-nominated" offices.

21   CAL. CONST. art. II, § 5(c), (d); Cal. Elec. Code § 337.[2]

22   　　　Under the top-two system, "[a]ll voters may vote at a voter-nominated primary election for

23   any candidate for congressional and state elective office without regard to the political party

24   preference disclosed by the candidate or the voter, provided that the voter is otherwise qualified

25   to vote for candidates for the office in question."  CAL. CONST. art. II, § 5(a).  This process leads

---

26   　　　[2] Prior to Proposition 14's passage, statewide executive offices and state and federal
     legislative offices were also effectively "party-nominated offices."  *Rubin*, 233 Cal.App.4th at
27   1138.  For party nominated offices, the primary serves to designate the party nominees for the
     general election and each qualified party is entitled to place one, and only one, nominee on the
28   general election ballot.  *Id.*

3

Not. & Mot. to Dismiss; Mem. of Pts. & Auths. (3:24-cv-08308)

to a general election between the two candidates receiving the most votes in the primary election, regardless of party preference or affiliation. *Id.* The purpose of a top-two primary is not "to determine the nominees of a political party"; rather, it "serves to winnow the candidates for the general election to the candidates receiving the highest or second highest number of votes cast at the primary election." Cal. Elec. Code § 359.5(a).

The top-two primary system also provides that while a political party may endorse, support or oppose a candidate, it "shall not nominate a candidate for any congressional or state elective office at the voter nominated primary," and "shall not have the right to have its preferred candidate participate in the general election for a voter-nominated office other than a candidate who is one of the two highest vote-getters at the primary election . . . ." *Id.* art. II, § 5(b); *see also* Cal. Elec. Code § 8141.5.

California statewide primaries take place every even-numbered year. Cal. Elec. Code § 1201. In presidential election years, the primaries take place in March. *Id.* § 1202. In all other even-numbered years, the primaries take place in June. *Id.* § 1201.

California law does not permit write-in candidates in general elections for voter-nominated offices. *Id.* § 8606; *see also id.* § 359.5.

## II.    THE POLITICAL PARTY PLAINTIFFS' PRIOR STATE COURT CHALLENGE TO CALIFORNIA'S TOP-TWO PRIMARY SYSTEM IN *RUBIN V. PADILLA*

Plaintiffs Peace and Freedom Party, Libertarian Party of California, and Green Party of California previously challenged California's top-two primary system in California state court. *See Rubin*, 233 Cal.App.4th 1128 [3]; *see also* Request for Judicial Notice ("RJN") No. 1 and Exh. A (operative Second Amended Complaint). That challenge failed. In *Rubin*, the plaintiffs asserted in their operative Second Amendment Complaint a first cause of action for "ballot access" under the First and Fourteenth Amendments of the United States Constitution, alleging that California's top-two primary system unconstitutionally prevents the parties' participation in the general election. RJN No. 1 and Exh. A at 11-12. The plaintiffs also asserted a second cause

---

[3] The plaintiffs in *Rubin* also included individuals who are not parties to this action.

4

Not. & Mot. to Dismiss; Mem. of Pts. & Auths. (3:24-cv-08308)

of action for violation of equal protection, alleging that the top-two system unconstitutionally excludes minor party candidates from the general election ballot. *Id.* at 12.

The California superior court dismissed the Second Amendment Complaint with prejudice and entered judgment in favor of the state on both claims. *See* RJN No. 2, Exh. B (Order of Dismissal and Final Judgment upon Sustaining of Demurrer without Leave to Amend [C.C.P § 581(d)], *Rubin v. Bowen*, No. RG11605301, 2013 WL 6671292, (Cal. Super. Ct. Oct. 04, 2013)).[4] The Court of Appeal affirmed the judgment in its entirety, holding that the top-two primary system did not violate the plaintiffs' First or Fourteenth Amendment rights related to general election ballot access, nor did the system violate their equal protection rights. *Rubin*, 233 Cal.App.4th at 1155. The *Rubin* plaintiffs subsequently petitioned for rehearing in the Court of Appeal, review in the California Supreme Court, and certiorari in the United States Supreme Court, but each petition was denied. RJN Nos. 3-5, Exhs. C at 1, D at 1, E at 4.

**III.    ALLEGATIONS IN THE COMPLAINT**

Plaintiffs are minor political parties and their candidates. Compl. at 3-6. Plaintiffs generally challenge the constitutionality of California's top-two primary system set forth in Article II, section 5 of the California Constitution as applied to Plaintiffs. *See generally* Compl. at 1-3, 7-10. The Complaint asserts a single cause of action under 42 U.S.C. section 1983 for "Violation of the First and Fourteenth Amendments to the United States Constitution." *Id.* at 10. Plaintiffs allege that the top-two primary system generally creates an unconstitutional barrier to ballot access for minor parties. *Id.* Plaintiffs also allege that the primary system is unconstitutional "in combination with California's other ballot access laws," including the provision that primaries take place in March of presidential election years (Cal. Elec. Code § 1202), and the prohibition on write-in candidates on the general election ballot (*id.* § 8606). Compl. at 10-11. Finally, Plaintiffs allege that the top-two primary system violates their equal protection rights by discriminating against them, as compared to major political parties. *Id.* at 8-

---

[4] The original defendant in *Rubin* was former Secretary of State Debra Bowen. Former Secretary of State Alex Padilla was later substituted in as the defendant when he assumed that office.

9, 11.  Plaintiffs allege that the system discriminates by erecting barrier to only minor parties'

general ballot access.  *Id.* at 11.

For relief, Plaintiffs request a declaration that "California's Top-Two primary system, as

codified in the California Constitution and the California Election Code, including all provisions

of California law identified and described herein, to be violative of the First and Fourteenth

Amendments to the United States Constitution and otherwise unconstitutional as applied to

Plaintiffs."  Compl. at 11-12.

## LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.

*N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  To survive a motion to

dismiss, a complaint must contain sufficient facts to state a claim for relief that is plausible on its

face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A Rule 12(b)(6) dismissal may be based on

either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a

cognizable legal theory."  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th

Cir. 2008) (internal quotation omitted).  The court accepts as true all material allegations in the

complaint and construes them in the light most favorable to the plaintiff.  *Lazy Y Ranch Ltd. v.

Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  However, this tenet does not apply to "legal

conclusions ... cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064

(9th Cir. 2011) (internal quotation marks omitted).

## ARGUMENT

### I.    THE POLITICAL PARTIES PLAINTIFFS' CLAIMS ARE BARRED BY RES JUDICATA

Plaintiffs Peace and Freedom Party, Libertarian Party of California, and Green Party of

California's (the "Political Party Plaintiffs") claims should be dismissed with prejudice because

they are barred by the doctrine of res judicata.  "[T]he determination of federal constitutional

questions in state court systems may not be reviewed or repeated in the federal system."  *Dodd v.

Hood River Cnty.*, 59 F.3d 852, 861 (9th Cir. 1995; *see also Allen v. McCurry*, 449 U.S. 90, 95

(1980); ("federal courts generally have . . . consistently accorded preclusive effect to issues

6

1    decided by state courts"); *Noel v. Hall*, 341 F.3d 1148, 1166 (9th Cir. 2003) ("[u]nder 28 U.S.C.

2    § 1738, federal courts must give 'full faith and credit' to judgments of state courts").

3        The term "res judicata" refers "collectively" to claim and issue preclusion.  *NTCH-WA, Inc.*

4    *v. ZTE Corp.*, 921 F.3d 1175, 1178 n.1 (9th Cir. 2019).  "Claim preclusion describes the rules

5    formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once

6    known as 'collateral estoppel' and 'direct estoppel.'"  *Id.*  Courts "apply the res judicata rule of

7    the jurisdiction that heard the initial case."  *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 n.2

8    (9th Cir. 2017) (citing *Allen*, 449 U.S. at 96).

9        Because res judicata arises here from the *Rubin* judgment, the State of California's rules

10   governing claim and issue preclusion apply here.  *See Howard*, 871 F.3d at 1040 n.2.  Under

11   California law, claim preclusion arises if a second suit involves: "(1) the same cause of action (2)

12   between the same parties (3) after a final judgment on the merits in the first suit."  *DKN Holdings*

13   *LLC v. Faerber*, 61 Cal. 4th 813, 824 (2015).  Here, the Complaint and judicially noticeable facts

14   establish that all three of these requirements are met.  First, this case and *Rubin* involve the same

15   causes of action—in both cases the plaintiffs assert that California's top-two primary system

16   unconstitutionally limits ballot access in violation of the First and Fourteenth Amendment, and

17   that the system violates minor parties' and their candidates' equal protection rights.  *Compare*

18   Compl. at 2-3, 8-11 *with* RJN No. 1 and Exh. A at 11-12 (Second Amended Complaint in

19   *Rubin*); *see also Rubin*, 233 Cal.App.4th at 1135-37. Second, the cases involve the same parties—

20   the Political Party Plaintiffs and the Secretary of State.  *Compare* Compl. at 1, 3-6 *with* RJN No.

21   1 and Exh. A at 1, 4-5; *see also Rubin*, 233 Cal.App.4th at 1135-36.  Third, judgment on the

22   merits was entered in *Rubin*.  Order of Dismissal and Final Judgment upon Sustaining of

23   Demurrer without Leave to Amend [C.C.P § 581(d)], *Rubin v. Bowen*, No. RG11605301, 2013

24   WL 6671292, at *1 (Cal. Super. Ct. Oct. 04, 2013); *see Boyd v. Freeman*, 18 Cal. App. 5th 847,

25   855 (2017) ("[I]t is generally held that a demurrer which is sustained for failure of the facts

26   alleged to establish a cause of action, is a judgment on the merits.").  Claim preclusion therefore

27   bars the Political Party Plaintiffs' claims in this action.

28

7

Even if claim preclusion for some reason did not apply here, the Political Party Plaintiffs'

claims here would still be barred by issue preclusion. Under California law, "issue preclusion

applies: (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily

decided in the first suit and (4) asserted against one who was a party in the first suit or one in

privity with that party." *DKN Holdings*, 61 Cal. 4th at 825.  In *Rubin*, the California superior

court and Court of Appeal actually litigated and necessarily decided the identical issues of

whether California's top-two primary system violates the First and Fourteenth Amendment rights

to ballot access and the issue of whether the system violates equal protection by impermissibly

discriminating against minor parties and candidates.  *See* RJN No. 2, Exh. B (superior court

judgment), Exh. 1 (Amended Order dismissing Second Amended Complaint) at 10-22; *Rubin*,

233 Cal.App.4th at 1143-54.  The state courts duly and correctly determined that the system

violates none of these rights.  *See* RJN No. 2, Exh. B, Exh. 1 at  17, 19; *Rubin*, 233 Cal.App.4th at

1135.  Issue preclusion therefore bars Political Party Plaintiffs from now bringing these issues to

this Court for renewed consideration.[5]

Res judicata bars the Political Party Plaintiffs' claims in this action, and those parties

should therefore be dismissed.

**II.    PLAINTIFFS' BALLOT ACCESS CLAIM UNDER THE FIRST AND FOURTEENTH AMENDMENT FAILS**

**A.    Legal Standard Applicable to Evaluating Constitutionality of State Election Laws**

In examining challenges to ballot access, the United States Supreme Court focuses on the

degree to which the challenged restrictions operate as a mechanism to exclude certain classes of

candidates from the electoral process. *Clements v. Fashing*, 457 U.S. 957, 964 (1982).  "The

inquiry is whether the challenged restriction unfairly or unnecessarily burdens the 'availability of

political opportunity.'" *Id.* (quoting *Lubin v. Panish*, 415 U.S. 709, 716 (1974)).

Review of state voting laws does not automatically require heightened scrutiny, but instead

follows a flexible balancing standard:  a court must weigh "the character and magnitude" of the

---

[5] If it is determined through discovery or otherwise that the individual plaintiffs—who are the candidates of the Political Party Plaintiffs—are "in privity" with the Political Party Plaintiffs, issue preclusion would also bar the individual plaintiffs' claims.

8

Not. & Mot. to Dismiss; Mem. of Pts. & Auths. (3:24-cv-08308)

asserted injury against the "interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration the extent to which the State interests make the burden necessary. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Under this standard, "the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). Accordingly, the Supreme Court has "repeatedly upheld reasonable, politically neutral regulations that have the effect of channeling expressive activity at the polls." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 452 (2008) (quoting *Burdick*, 504 U.S. at 438) (*Washington I*)). But when First and Fourteenth Amendment rights are subject to "severe restrictions," the law must be "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434. "[V]oting regulations are rarely subjected to strict scrutiny." *Dudum v. Arntz,* 640 F.3d 1098, 1106 (9th Cir. 2011); *accord Chamness v. Bowen*, 722 F.3d 1110, 1116 (9th Cir. 2013).

Where, as here, the challenged restrictions are "reasonable [and] nondiscriminatory" and not "severe," courts may properly weigh the state's interests against the burden on ballot access at the motion to dismiss stage. *See Tedards v. Ducey*, 951 F.3d 1041, 1067-68 (9th Cir. 2020).

### B. Courts Have Already Approved the Top-Two Primary as a Constitutional Method of Choosing General Election Candidates

Plaintiffs allege that California's top-two primary system violates their First and Fourteenth Amendment rights to ballot access by making it more difficult for a minor party candidate to qualify for the general election. This theory, however, has been rejected by the Supreme Court and other courts, either expressly or impliedly, as a basis on which to declare a top two primary system unconstitutional.

In *California Democratic Party v. Jones*, the Supreme Court considered the constitutionality of California's earlier partisan blanket primary system. 530 U.S. 567 (2000). Under that system, any voter, regardless of party affiliation, could vote for any candidate at the primary election, and the candidate of each party who won the most votes became the party's

9

nominee in the general election.[6]  *Id.* at 570.  The Court invalidated the system, concluding that the system placed a severe burden on political parties' associational freedom and did not survive strict scrutiny.  *Id.* at 582-585.

Importantly, however, the Supreme Court suggested that a state may instead utilize a *nonpartisan* blanket primary, in which the state determines the qualifications for a candidate to be placed on the primary ballot, and then "[e]ach voter, regardless of party affiliation, may then vote for any candidate, and the top two vote getters (or however many the State prescribes) then move on to the general election."  *Id.* at 585-586.  The Court explained that a nonpartisan blanket primary differs from the partisan blanket primary in a way that is "the constitutionally crucial one: primary voters are not choosing a party's nominee."  *Id.*  Thus, "[u]nder a nonpartisan blanket primary, a State may ensure more choice, greater participation, increased 'privacy,' and a sense of 'fairness'—all without severely burdening a political party's First Amendment right of association."  *Id.* at 586.  Although *Jones* did not directly address the ballot access rights of minor political parties, it strongly suggests, if not establishes, that a top two primary system would be constitutional.  *See id.*

Following *Jones*, the State of Washington adopted a top-two primary system very similar to California's system challenged here.  *See Washington I*, 552 U.S. at 444.  Under Washington's top-two system, each candidate indicates his or her party preference on the primary ballot and voters may select any candidate listed on the ballot, regardless of the party preference of the voter or the candidate, with the top two vote getters advancing to the general election.  *See Washington State Republican Party v. Washington State Grange* 676 F.3d 784, 788 (9th Cir. 2012) (*Washington II*).  Certain Washington State political parties challenged provisions of that state's new system, leading to the Supreme Court's opinion in *Washington I*, and the Ninth Circuit's subsequent opinion in *Washington II*.

In *Washington I*, the Supreme Court considered the provision of Washington's top-two primary system that required ballots to indicate candidates' party preferences.  552 U.S. at 444.

---

[6] Following *Jones*, California reverted to the closed partisan primary system, which was later replaced with the top-two primary system upon the passage of Proposition 14 in 2010.

The political parties argued that, like in *Jones*, this law also violated their associational rights under the First Amendment. *Id.* The Supreme Court disagreed, reasoning that Washington's primary system was fundamentally different than California's system invalidated in *Jones*: Washington's system did not determine parties' nominees for the general election, but instead served to "winnow" the number of candidates to two for the general election. *Id.* at 453. While *Washington I* did not decide the state Libertarian's separate constitutional challenge to the top-two system based on restricted ballot access, *see id.* at 458 n.11, the opinion reaffirmed the Supreme Court's assumption in *Jones* that "the nonpartisan primary we described in *Jones* would be constitutional." *Washington I*, 552 U.S. at 452.

Subsequently, the Ninth Circuit did consider the Libertarian Party's ballot access challenge to Washington's top two primary system. *Washington II*, 676 F.3d at 787. The court rejected that challenge, holding that the primary system did not impose a severe burden on the Libertarian Party's rights. *Id.* at 795. The Court observed that, given the features of a top two system, including broad access to the primary ballot by minor party candidates, the minor parties failed to show that the system "impermissibly 'limit[ed] the field of candidates from which voters might choose.'" *Id.* (quoting *Anderson*, 460 U.S. at 786). And "because [the top two primary law] gives major and minor party candidates equal access to the primary and general election ballots, it does not give the 'established parties a decided advantage over any new parties struggling for existence.'" *Washington II*, 676 F.3d at 795 (quoting *Williams v. Rhodes*, 393 U.S. 23, 31 (1968)). The Ninth Circuit has also rejected the notion that a top two primary is flawed solely because that system "makes it more difficult for minor-party candidates to qualify for the general election ballot than regulations permitting a minor-party candidate to qualify for a general election ballot by filing a required number of petition signatures." *Washington II*, 676 F.3d at 795. "This additional burden . . . is an inherent feature of any top two primary system, and the Supreme Court has expressly approved of top two primary systems." *Id.* (citing *Jones*, 530 U.S. at 585-86.) The Ninth Circuit therefore affirmed the dismissal of a ballot access claim nearly identical to the one presented by Plaintiffs in this action. *Washington II*, 676 F.3d at 794-95.

Finally, as discussed above, the California Court of Appeal has already held that state's top-two primary system is constitutional in *Rubin*.  233 Cal.App.4th 1128.  In that opinion, the court concluded that California's top-two system imposes not a severe burden, but an "at most, modest" burden on the plaintiffs' ballot access rights.  *Id.* at 1150.  The court held California's interest in "permitting independent voters to participate in the process of narrowing candidates for the general election" was, alone, was sufficient to justify the "limited burden" on plaintiffs' constitutional ballot access rights.  *Id.*  The Court also rejected the plaintiffs' equal protection claim, explaining that the claim is "gravely hampered by the system's manifestly equal treatment of all qualified political parties," and that any "differential failure" of minor parties to advance to general elections "is a direct result of the minor party candidates' failure to attract the votes of a sizeable portion of the electorate."  *Id.* at 1152-53.

## C.    California's Top-Two Primary System Does Not Impose a Severe Burden on Plaintiffs' First and Fourteenth Amendment Rights

Ballot access cases "focus on the degree to which the challenged restrictions operate as a mechanism to exclude certain classes of candidates from the electoral process."  *Anderson*, 460 U.S. at 793.  "The inquiry is whether the challenged restriction unfairly or unnecessarily burdens the availability of political opportunity."  *Id*. (internal quotation marks omitted).  The Constitution therefore guarantees political parties the opportunity to gain access to state ballots so that voters may cast their votes effectively.  *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986) (upholding Washington statute requiring that minor-party candidate receive at least 1% of votes cast in primary election to qualify for general election ballot).  However, the Constitution does not, guarantee minor parties a place on a general election ballot when their candidates have easy access to a primary election ballot that affords them the same opportunity to advance to the general election as every other candidate.  *Id*. at 199 (a law's "effect on a candidate's constitutional rights is slight" when state "affords a minor-party candidate easy access to the primary election ballot and the opportunity to wage a ballot-connected campaign").  Primary election systems are not unconstitutional merely because "voters must make choices as they vote

1    at the primary," where "there are no state imposed obstacles impairing voters in the exercise of

2    their choices." *Id.*

3        Here, California's top-two primary system does not severely burden Plaintiffs' ballot access

4    rights. The Ninth Circuit has already held that Washington's top-two primary system "does not

5    impose a severe burden on the Libertarian Party's [ballot access] rights." *Washington II*, 676

6    F.3d at 794. The court recognized that, under Washington's system, minor party candidates had

7    access to the primary ballot and, from there, the same access to the general election ballot as

8    candidates from major parties. *Id.* at 794-95; *see also Munro*, 479 U.S. at 198 (states are not

9    required to "handicap an unpopular candidate to increase the likelihood that the candidate will

10   gain access to the general election ballot"). In other words, Washington's top-two primary

11   system provided minor party candidates the same "political opportunity" to obtain voter support

12   as major party candidates, *Anderson*, 460 U.S. at 793, and did not "impair[] voters in the exercise

13   of their choices," *Munro*, 479 U.S. at 193. Since California's top-two primary system is

14   indistinguishable from Washington's with respect to its ballot access provisions, *See Washington*

15   *II*, 676 F.3d at 788 (describing challenged statute), the same holding and reasoning apply here.

16       California's top-two primary system also does not impose a severe burden in presidential

17   primary election years, as Plaintiffs allege, merely because the primaries occur in March. *See*

18   Compl. at 10-11. The Complaint suggests that March primaries are purportedly unconstitutional

19   *per se*, but does not explain why or cite any supporting authorities. To be sure, in *Anderson*, the

20   Supreme Court invalidated an Ohio law setting a March deadline for independent candidates to

21   submit petition signatures to appear on the general election ballot. 460 U.S. at 782-83. However,

22   *Anderson* does not stand for the proposition that March deadlines for ballot qualifications always

23   impose severe burdens on constitutional rights. Rather, the Court held that the March deadline in

24   *Anderson* imposed a severe burden because it put independent candidates at an unfair competitive

25   disadvantage compared to major party candidates whose primaries were on an entirely different

26   schedule, thereby excluding independent candidates and voters from the electoral process. *Id.* at

27   790-95. Here, there is no such exclusion. In all election years, including presidential election

28   years, California holds a simultaneous primary election for all candidates from all parties. Cal.

13

Not. & Mot. to Dismiss; Mem. of Pts. & Auths. (3:24-cv-08308)

1   Elec. Code § 1202.  The political opportunity for all parties and candidates is the same.  *See*

2   *Washington II, 676 F.3d* at 794 (distinguishing *Anderson*).  California's March primary in

3   presidential election years therefore does not severely burden Plaintiffs' constitutional right to

4   ballot access.

5        California's top-two primary system also does not impose a severe burden on Plaintiffs due

6   to California's prohibition on write-in voting in the general election.  *See* Compl. at 10-11.   The

7   Supreme Court has held that states may prohibit write-in voting in general elections.  *Burdick*,

8   504 U.S. at 441-42.  In *Burdick*, the Court explained that where candidates otherwise have

9   sufficient ballot access, a prohibition on write-in voting imposes a "very limited" burden.  *Id*. at

10  436-37.  Here, candidates of all parties have an equal and fair opportunity to appear on the

11  primary ballot, and then the general election ballot.  That political opportunity is not severely

12  burdened merely because a candidate who fails to obtain sufficient voter support in the primary

13  cannot continue to run as a write-in candidate.

14       California's top-two primary system does not impose a severe burden on Plaintiffs' First or

15  Fourteenth Amendment ballot access rights.

16       **D.    California's Interests Justify Any Burden Imposed by the Top-Two
            Primary System**

17

18       Because California's top-two primary system does not impose a severe burden on Plaintiffs,

19  the system need only be justified by the state's "important regulatory interests" to survive review.

20  *Anderson*, 460 U.S. at 788.  That is the case here, where the state has important interests in

21  increasing voter choice and voter participation.[7]  In *Jones*, the Supreme Court implicitly

22  recognized that these are important state interests, asserting that in some circumstances increasing

23  voter choice and participation may even be "compelling" interests.  *Jones,* 530 U.S. at 584.  That

24  ───────────────

25       [7] California is not required to make a "particularized showing of the existence" of the basis
     for the state interest prior to imposition of reasonable restrictions on ballot access or a showing as
26   to the effects of its top-two primary system. *Munro*, 479 U.S. at 195 (noting that in *Storer v. Brown*,
     415 U.S. 724 (1974) "[t]here is no indication that we held California to the burden of demonstrating
27   empirically the objective effects on political stability that were produced by the 1-year disaffiliation
     requirement").  To do so as a "predicate to the imposition of reasonable ballot access restriction
28   would invariably lead to endless court battles over the sufficiency of the 'evidence' marshaled by
     a State to prove the predicate." *Munro*, 479 U.S. at 195.

1  is why the Court observed that California could implement a nonpartisan primary system (which

2  California subsequently did by adopting the top-two primary) to pursue these interests while

3  avoiding infringement on associational rights.  *Id.* at 585-86.

4       Indeed, the ballot initiative materials in support of Proposition 14, through which the top-

5  two system was adopted, specifically cited the state's interests in voter choice and participation.

6  RJN No. 6, Exh. F at 14 (Official Voter Information Guide).  For example, in the Official Voter

7  Information Guide, the measure's title and summary states that Proposition 14 would

8  "encourage[] increased participation in elections for congressional, legislative, and statewide

9  offices by changing the procedure by which candidates are selected in primary elections." *Id.*

10  The title and summary further states that the measure would "give[] voters increased options in

11  the primary by allowing all voters to choose any candidate regardless of the candidate's or voter's

12  political party preference." *Id.*  In their arguments in favor of the measure, the proponents of

13  Proposition 14 echoed these points, asserting that Proposition 14 "will open up primary elections"

14  and allow Californians "to vote for any candidate [they] wish for state and congressional offices,

15  regardless of political party preference." *Id.* at 18.  Proposition 14 was also seen as "giv[ing]

16  independent voters an equal voice in primary elections," whereas under the partisan system,

17  independent voters cannot participate in the primary process. *Id.* at 14, 18.

18       California's top-two primary system is also justified by the state's "important regulatory

19  interests in streamlining the ballot, avoiding ballot overcrowding, and reducing voter confusion."

20  *De La Fuente v. Padilla*, 930 F.3d 1101, 1106 (9th Cir. 2019) (internal citation omitted); *see also*

21  *Munro*, 479 U.S. at 193-96 (upholding Washington law requiring candidates to receive minimum

22  percentage of votes to proceed from primary to general election).  In *De LaFuente¸* based on these

23  interests, the Ninth Circuit California upheld California's law requiring independent presidential

24  candidates to collect signatures from one percent of California's registered voters to appear on the

25  general election ballot. *Id.* at 1103-03, 1106-07.  California's top-two primary system promotes

26  the same interests by limiting the general election ballot to the top two vote-getters in the primary

27  election.

28

15

Not. & Mot. to Dismiss; Mem. of Pts. & Auths. (3:24-cv-08308)

In sum, California has important state interests in increasing voter choice, increasing voter participation, and managing its general election ballots.  Those interests justify the top-two primary system's reasonable, non-discriminatory restrictions on candidates' access to the general election ballot.

### III.  PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS

The Equal Protection Clause "requires that all persons subjected to ... legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." *Hayes v. Missouri*, 120 U.S. 68, 71–72 (1887); *accord Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 602 (2008).  The first step in equal protection analysis is to identify the [defendant's] classification of groups." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (quotation omitted).

Here, Plaintiffs allege that the top-two primary system discriminates against minor parties and their candidates in favor of Democratic and Republican parties and their candidates.  Compl. at 11.  Plaintiffs allege that the top-two system discriminates between these group because it purportedly makes it difficult for minor parties to advance from the primary to the general election.  *Id.*

These allegations do not state a claim for violation of equal protection.  "[T]he Fourteenth Amendment guarantees equal laws, not equal results." *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 273 (1979).  California's top-two primary system treats all parties and candidates alike.  Under the system, the two candidates receiving the most votes in the primary advance to the general election, "regardless of party preference." CAL. CONST. art. II, § 5(a).  Thus, "[c]andidates listing a preference for a minor party who appeal to a sufficiently broad swath of the electorate have the same opportunity to advance as similar candidates expressing a preference for a major party." *Rubin v. Padilla*, 233 Cal. App. 4th 1128, 1152–53 (2015).  As the California Court of Appeal explained, any historical failure of minor party candidates to advance to the general election does not lie in the electoral system.  *Id.* at 1153.  "Rather, the differential failure to advance is a direct result of the minor party candidates' failure to attract the votes of a sizeable portion of the electorate." *Id.*  In other words, the top-two system provides all parties

16

1    and candidates with the same political opportunity to obtain voter support; it is then *voters*, not

2    the state, who treat candidates differently from one another.  And California "has no equal

3    protection obligation to compensate for the minor parties' lack of general electoral appeal." *Id.*

4    (citing *Munro*, 479 U.S. at 198).

5        Because California's top-two primary system does not treat minor parties and candidates

6    differently than major parties and candidates, Plaintiffs' equal protection claim fails.

7                                        **CONCLUSION**

8        For the reasons explained above, Plaintiffs' Complaint fails to state a claim and should be

9    dismissed without leave to amend.

10

11   Dated:  January 31, 2025                    Respectfully submitted,

12                                               ROB BONTA
                                                 Attorney General of California
13                                               ANTHONY R. HAKL
                                                 Supervising Deputy Attorney General
14

15

16                                               *s/ Gabrielle D. Boutin*
                                                 GABRIELLE D. BOUTIN
17                                               Deputy Attorney General
                                                 *Attorneys for Defendant Dr. Shirley Weber,*
18                                               *in her official capacity as California*
                                                 *Secretary of State*
19

20

21

22

23

24

25

26

27

28

                                             17

# CERTIFICATE OF SERVICE

Case Name:    **Peace and Freedom Party, et al.**        No.    **3:24-cv-08308-MMC**
                **v. Dr. Shirley N. Weber**

I hereby certify that on January 31, 2025, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;  MEMORANDUM OF POINTS AND AUTHORITIES**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on January 31, 2025, at Los Angeles, California.

_____              _____
            Beth L. Gratz                                                    *Beth L. Gratz*
              Declarant                                                         Signature

SA2024305451
67398103.docx