1   ROB BONTA
    Attorney General of California
2   ANTHONY R. HAKL
    Supervising Deputy Attorney General
3   GABRIELLE D. BOUTIN
    Deputy Attorney General
4   State Bar No. 267308
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone: (916) 210-6053
     Fax: (916) 324-8835
7    E-mail: Gabrielle.Boutin@doj.ca.gov
    *Attorneys for Defendant Dr. Shirley Weber, in her*
8   *official capacity as California Secretary of State*

9              IN THE UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

13  | **PEACE AND FREEDOM PARTY, et al.,** | 3:24-cv-08308-MMC |
14  | | |
    | Plaintiffs, | **NOTICE OF MOTION AND MOTION** |
15  | | **TO DISMISS FIRST AMENDED** |
    | v. | **COMPLAINT; MEMORANDUM OF** |
16  | | **POINTS AND AUTHORITIES** |
17  | **DR. SHIRLEY N. WEBER, CALIFORNIA** | Date:    June 27, 2025 |
    | **SECRETARY OF STATE,** | Time:    9:00 a.m. |
18  | | Dept:    Courtroom 7 – 19th Floor |
    | Defendant. | Judge:   Maxine M. Chesney |
19  | | Trial Date: None set |
    | | Action Filed: 11/21/2024 |

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 2

INTRODUCTION ............................................................................................ 2

BACKGROUND ............................................................................................. 3

    I.    California's Top-Two Primary System For Certain Elected Offices ..................... 3

    II.    The Prior State Court Challenge to California's Top-Two Primary System in *Rubin v. Padilla* ............................................................................. 5

    III.    Allegations in the First Amended Complaint ........................................ 6

LEGAL STANDARDS ...................................................................................... 7

    I.    Standard Applicable to a Motion to Dismiss Under Fed. Rule. Civ. Proc. Rule 12(b)(6) ....................................................................................... 7

    II.    Standard Applicable to Evaluating The Constitutionality of State Election Laws ...................................................................................... 7

ARGUMENT .................................................................................................. 8

    I.    Res Judicata Bars Most Political Party Plaintiffs' Claims ...................... 8

    II.    Plaintiffs' Ballot Access Claims Fail ................................................... 11

        A.    Courts Have Already Approved the Top-Two Primary as a Constitutional Method of Choosing General Election Candidates .......... 11

        B.    California's Top-Two Primary System Does Not Impose a Severe Burden on Plaintiffs' First and Fourteenth Amendment Rights .............. 14

        C.    California's Interests Justify Any Burden Imposed by the Top-Two Primary System ....................................................................... 16

    III.    Plaintiffs' Equal Protection Claim Fails .............................................. 18

    IV.    American Solidarity Party's Challenge to the California Election Code's "Party Preference" Requirements Fails .................................................. 20

    V.    Any Leave to Amend Should Be Limited to the American Solidarity Party's "Party Preference" Claim .......................................................... 22

CONCLUSION ............................................................................................... 22

i

Notice of Mot. and Mot. to Dismiss First Amended Complaint; Memo of Pts. and Auth. (3:24-cv-08308-MMC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

Cases

*Allen v. McCurry*
   449 U.S. 90 (1980)...................................................................................... 8

*Anderson v. Celebrezze*
   460 U.S. 780 (1983).............................................................................. *passim*

*Arizona Green Party v. Reagan*
   838 F.3d 983 (9th Cir. 2016)................................................................... 21

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)............................................................................. 7, 20

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007)............................................................................... 21

*Boyd v. Freeman*
   18 Cal. App. 5th 847 (2017).................................................................... 9

*Burdick v. Takushi*
   504 U.S. 428 (1992).................................................................. 2, 8, 16, 18

*California Democratic Party v. Jones*
   530 U.S. 567 (2000).............................................................................. *passim*

*Cervantes v. Countrywide Home Loans, Inc.*
   656 F.3d 1034 (9th Cir. 2011)................................................................. 22

*Chamness v. Bowen*
   722 F.3d 1110 (9th Cir. 2013).................................................................. 8

*Clements v. Fashing*
   457 U.S. 957 (1982)................................................................................. 7

*De La Fuente v. Padilla*
   930 F.3d 1101 (9th Cir. 2019).................................................................. 17

*DKN Holdings LLC v. Faerber*
   61 Cal. 4th 813 (2015)............................................................................. 10

*Dodd v. Hood River Cnty.*
   59 F.3d 852 .............................................................................................. 8

*Dudum v. Arntz*
   640 F.3d 1098 (9th Cir. 2011).................................................................. 8

ii

1

### TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*
    751 F.3d 990 (9th Cir. 2014)...................................................................... 20

4

*Engquist v. Oregon Dep't of Agr.*
    553 U.S. 591 (2008) ................................................................................. 18

5

6

*Fayer v. Vaughn*
    649 F.3d 1061 (9th Cir. 2011)...................................................................... 7

7

8

*Freeman v. City of Santa Ana*
    68 F.3d 1180 (9th Cir. 1995)..................................................................... 18

9

*Hayes v. Missouri*
    120 U.S. 68 (1887).................................................................................. 18

10

11

*Howard v. City of Coos Bay*
    871 F.3d 1032 (9th Cir. 2017)...................................................................... 9

12

13

*Johnson v. Riverside Healthcare Sys., LP*
    534 F.3d 1116 (9th Cir. 2008)...................................................................... 7

14

*Lawrence v. Blackwell*
    430 F.3d 368 (6th Cir. 2005)..................................................................... 15

15

16

*Lazy Y Ranch Ltd. v. Behrens*
    546 F.3d 580 (9th Cir. 2008)....................................................................... 7

17

18

*Li v. Kerry*
    710 F.3d 995 (9th Cir. 2013)..................................................................... 20

19

*MHC Fin. Ltd. P'ship v. City of San Rafael*
    714 F.3d 1118 (9th Cir. 2013)...................................................................... 9

20

21

*Munro v. Socialist Workers Party*
    479 U.S. 189 (1986) ...................................................................... 14, 15, 16, 17

22

23

*N. Star Int'l v. Ariz. Corp. Comm'n*
    720 F.2d 578 (9th Cir. 1983)....................................................................... 7

24

*Noel v. Hall*
    341 F.3d 1148 (9th Cir. 2003)................................................................... 2, 9

25

26

*NTCH-WA, Inc. v. ZTE Corp.*
    921 F.3d 1175 (9th Cir. 2019)...................................................................... 9

27

28

### TABLE OF AUTHORITIES
#### (continued)

Page

*Personnel Administrator of Mass. v. Feeney*
    442 U.S. 256 (1979) ................................................................................. 19

*Rangel v. PLS Check Cashers of California, Inc.*
    899 F.3d 1106 (9th Cir. 2018) ................................................................. 9

*Rubin v. Bowen*
    No. RG11605301, 2013 WL 6671292 (Cal. Super. Ct. Oct. 04, 2013) ............... 5, 9

*Rubin v. Padilla*
    233 Cal.App.4th 1128 (2015) ................................................................ *passim*

*Storer v. Brown*
    415 U.S. 724 (1974) ................................................................................. 16

*Tedards v. Ducey*
    951 F.3d 1041 (9th Cir. 2020) ................................................................. 8

*Washington State Grange v. Washington State Republican Party*
    552 U.S. 442 (2008) ................................................................. 2, 8, 12, 13

*Washington State Republican Party v. Washington State Grange*
    676 F.3d 784 (9th Cir. 2012) ................................................................ *passim*

**STATUTES**

42 U.S.C.
    § 1983 ................................................................................................. 6

Fed. Rule. Civ. Proc. Rule 12(b)(6) ................................................... 7, 20, 21

Fed. Rule. Civ. Proc. Rule 8 ................................................................. 20, 21

California Elections Code
    § 337 ................................................................................................. 4
    § 359.5 ............................................................................................. 3, 5
    § 359.5(a) ........................................................................................... 4
    § 1201 ................................................................................................. 5
    § 1202 ............................................................................................. 5, 15
    § 5100 ............................................................................................. 4, 21
    § 8002.5 .................................................................................. 4, 6, 20, 21
    § 8141.5 ............................................................................................. 4
    §13105(a) ................................................................................. 4, 6, 20, 21

# TABLE OF AUTHORITIES
### (continued)

Page

**CONSTITUTIONAL PROVISIONS**

First Amendment.................................................................................... 2, 5, 6, 7, 12, 21

Second Amendment ................................................................................................... 5

Fourteenth Amendment.................................................................... 2, 5, 6, 7, *passim*

California Constitution Article II
   § 5............................................................................................................... 3, 6
   § 5(a) .................................................................................................... 3, 4, 19
   § 5(b) ......................................................................................................... 4, 21
   § 5(c), (d).......................................................................................................... 4

v

Notice of Mot. and Mot. to Dismiss First Amended Complaint; Memo of Pts. and Auth. (3:24-cv-08308-MMC)

1

### NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

2      PLEASE TAKE NOTICE THAT on June 27, 2025, at 9:00 a.m., or as soon thereafter as

3  the matter may be heard, before the Honorable Maxine M. Chesney of the United States District

4  Court for the Northern District of California, located at 450 Golden Gate Avenue in San

5  Francisco, California, Defendant Dr. Shirley Weber, in her official capacity as California

6  Secretary of State, will and hereby does move this Court to dismiss the Complaint and all claims

7  therein, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

8      This motion to dismiss is made on the grounds that Plaintiffs fails to state a claim upon

9  which relief can be granted.  This motion is based on this Notice of Motion and Motion, the

10  Memorandum of Points and Authorities, Defendant's Request for Judicial Notice, and the papers

11  and pleadings on file, and upon such matters that may be submitted at the hearing.

12  Dated:  April 11, 2025                                    Respectfully submitted,

13                                                            ROB BONTA
                                                              Attorney General of California
14                                                            ANTHONY R. HAKL
                                                              Supervising Deputy Attorney General
15

16

17                                                            *s/ Gabrielle D. Boutin*
                                                              GABRIELLE D. BOUTIN
18                                                            Deputy Attorney General
                                                              *Attorneys for Defendant*
19                                                            *Office of Secretary of State*

20

21

22

23

24

25

26

27

28

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

With the enactment of Proposition 14 in 2010, California voters amended the California Constitution to overhaul the system the state uses to select candidates for statewide, legislative, and congressional offices.  Proposition 14 replaced a closed partisan primary system with a nonpartisan blanket primary system, or "top-two" primary system, in which the two candidates receiving the most votes in the primary then proceed to a runoff in the general election. The United States Supreme Court and the Ninth Circuit have recognized the nonpartisan blanket primary system as a constitutional means for choosing general election candidates.[1]  *See California Democratic Party v. Jones*, 530 U.S. 567, 586 (2000); *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 452 (2008); *Washington State Republican Party v. Washington State Grange* 676 F.3d 784, 794-95 (9th Cir. 2012).  Indeed, California's top-two primary system is consistent with "the function of the election process," which is "to winnow out and finally reject all but the chosen candidates." *Burdick v. Takushi*, 504 U.S. 428, 438 (1992) (internal quotation marks omitted).

Plaintiffs, who include minor political parties and their candidates, assert in the First Amended Complaint ("FAC") that California is constitutionally prohibited from enforcing its top-two primary system.  They allege that several different components of the top-two primary system violate their right to ballot access under the First and Fourteenth Amendments, and their right to equal protection.  These claims fail as a matter of law.

As a threshold matter, most of the political party Plaintiffs' claims are barred by res judicata.  These Plaintiffs previously brought the same claims in California state courts, and those claims were soundly rejected.  This Court is required to give "full faith and credit" to the state court's judgment.  *Noel v. Hall*, 341 F.3d 1148, 1166 (9th Cir. 2003).

---

[1] A closed partisan primary is one in which each party-affiliated voter votes for the nominee of their party to proceed to the general election.  A nonpartisan blanket primary is one in which any voter may vote for any candidate and only the top two (or other specified number) vote recipients proceed to the general election.

2

1    Plaintiffs' claims also fail on the merits.  Plaintiffs' primary complaint is that it is difficult
2    for minor party candidates to qualify for the general election ballot.  Even if deemed true, there is
3    no constitutional right to appear on the general election ballot where, as here, the law treats all
4    political parties and their candidates alike, there is no allegation of insufficient access to a
5    primary ballot, and the voters decide which candidates proceed to the general election.
6    California's top-two primary system does not "severely burden" Plaintiffs' constitutional right to
7    ballot access and is justified by California's important state interests, including its interests in
8    increasing voter choice and participation.  *See Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).
9    Nor does the system discriminate between major and minor parties or candidates in violation of
10    equal protection.
11    Plaintiffs' other constitutional claims also fail.  California's has important interests in
12    holding March primaries in presidential election years and in keeping write-in candidates off the
13    general election ballot, neither of which regulation severely burdens Plaintiffs.  And while the
14    FAC asserts bare allegations related to candidates' statement of party preference on ballots, these
15    allegations are insufficient to state a plausible claim.
16    For these reasons, explained further below, the FAC should be dismissed.

**BACKGROUND**

**I.    CALIFORNIA'S TOP-TWO PRIMARY SYSTEM FOR CERTAIN ELECTED OFFICES**

19    In 2010, California voters approved Proposition 14, which amended Article II, Section 5 of
20    the California Constitution to create the state's top-two primary system for certain offices.  *See*
21    CAL. CONST. art. II, § 5; *Rubin v. Padilla*, 233 Cal.App.4th 1128, 1137 (2015).  The top-two
22    system applies to statewide executive offices (such as the Governor and Secretary of State) and
23    state and federal legislative offices, all of which California designates as "voter-nominated
24    offices."  CAL. CONST. art. II, § 5(a); Cal. Elec. Code § 359.5; *Rubin*, 233 Cal.App.4th at 1137.
25    The top-two primary system does not apply to elections for presidential candidates, political party

3

1    committees, or party central committees, which are designated as "party-nominated" offices.

2    CAL. CONST. art. II, § 5(c), (d); Cal. Elec. Code § 337.[2]

3        Under the top-two system, "[a]ll voters may vote at a voter-nominated primary election for

4    any candidate for congressional and state elective office without regard to the political party

5    preference disclosed by the candidate or the voter, provided that the voter is otherwise qualified

6    to vote for candidates for the office in question." CAL. CONST. art. II, § 5(a).  This process leads

7    to a general election between the two candidates receiving the most votes in the primary election,

8    regardless of party preference or affiliation.  *Id.*  The purpose of a top-two primary is not "to

9    determine the nominees of a political party"; rather, it "serves to winnow the candidates for the

10    general election to the candidates receiving the highest or second highest number of votes cast at

11    the primary election."  Cal. Elec. Code § 359.5(a).

12        The top-two primary system also provides that while a political party may endorse, support

13    or oppose a candidate, it "shall not nominate a candidate for any congressional or state elective

14    office at the voter nominated primary," and "shall not have the right to have its preferred

15    candidate participate in the general election for a voter-nominated office other than a candidate

16    who is one of the two highest vote-getters at the primary election . . . ."  *Id.* art. II, § 5(b); *see also*

17    Cal. Elec. Code § 8141.5.

18        A candidate in a top-two primary who is affiliated with a "qualified" party may list their

19    "party preference" on the election ballot. CAL. CONST. art. II, § 5(b); Cal. Elec. Code §§ 5100,

20    8002.5, 13105(a).  A party may become "qualified" by reaching one of three designated statistical

21    thresholds related to votes cast for affiliated candidates, the declared party preference of

22    registered voters, and petition signatures.  Cal. Elec. Code § 5100.  If a candidate has no party

23    preference or prefers a party that is not "qualified," then the ballot states near their name "party

24    preference: none." *Id.* §§ 8002.5(a)(2), 13105(a)(2).

25

26        [2] Prior to Proposition 14's passage, statewide executive offices and state and federal
legislative offices were also effectively "party-nominated offices." *Rubin*, 233 Cal.App.4th at

27    1138.  For party nominated offices, the primary serves to designate the party nominees for the
general election and each qualified party is entitled to place one, and only one, nominee on the

28    general election ballot.  *Id.*

California statewide primaries take place every even-numbered year.  Cal. Elec. Code
§ 1201.  In presidential election years, the primaries take place in March.  *Id.* § 1202; *see also*
S.B. No. 568, 2017-2018 Reg. Sess. (Cal. 2017) (moving presidential election year primaries
from June to March).  In all other even-numbered years, the primaries take place in June.  Cal.
Elec. Code § 1201.

California law does not permit write-in candidates in general elections for voter-nominated
offices.  *Id.* § 8606; *see also id.* § 359.5.

## II.   THE PRIOR STATE COURT CHALLENGE TO CALIFORNIA'S TOP-TWO PRIMARY SYSTEM IN *RUBIN V. PADILLA*

The Peace and Freedom Party and Libertarian Party of California, which are Plaintiffs here,
along with the Green Party of Alameda County and several individuals previously challenged
California's top-two primary system in California state court.[3]  *See Rubin*, 233 Cal.App.4th 1128;
*see also* Request for Judicial Notice ("RJN") No. 1 and Exh. A (operative Second Amended
Complaint).  That challenge failed.  In *Rubin*, the plaintiffs asserted in their operative Second
Amendment Complaint a first cause of action for "ballot access" under the First and Fourteenth
Amendments of the United States Constitution, alleging that California's top-two primary system
unconstitutionally prevents the parties' participation in the general election.  RJN No. 1 and Exh.
A at 11-12.  The plaintiffs also asserted a second cause of action for violation of equal protection,
alleging that the top-two system unconstitutionally excludes minor party candidates from the
general election ballot.  *Id*. at 12.

The California superior court dismissed the Second Amendment Complaint with prejudice
and entered judgment in favor of the State on both claims.  *See* RJN No. 2, Exh. B (Order of
Dismissal and Final Judgment upon Sustaining of Demurrer without Leave to Amend [C.C.P §
581(d)], *Rubin v. Bowen*, No. RG11605301, 2013 WL 6671292, (Cal. Super. Ct. Oct. 04, 2013)).[4]

---

[3] The individual Plaintiffs in this case and Plaintiffs American Solidarity Party of California and Green Party of California were not plaintiffs in *Rubin*.

[4] The original defendant in *Rubin* was former Secretary of State Debra Bowen.  Former Secretary of State Alex Padilla was later substituted in as the defendant when he assumed that office.

1    The Court of Appeal affirmed the judgment in its entirety, holding that the top-two primary

2    system's advancement of the top two vote-getters to the general election did not violate the

3    plaintiffs' First or Fourteenth Amendment rights related to general election ballot access, nor did

4    the system violate their equal protection rights.  *Rubin*, 233 Cal.App.4th at 1155.  The *Rubin*

5    plaintiffs subsequently petitioned for rehearing in the Court of Appeal, review in the California

6    Supreme Court, and certiorari in the United States Supreme Court, but each petition was denied.

7    RJN Nos. 3-5, Exhs. C at 1, D at 1, E at 4.

8    **III.   ALLEGATIONS IN THE FIRST AMENDED COMPLAINT**

9         Plaintiffs are minor political parties and their candidates.  FAC at 1, 2, 4-7.  Plaintiffs

10   generally challenge the constitutionality of California's top-two primary system set forth in

11   Article II, section 5 of the California Constitution as applied to Plaintiffs.  *See generally id.* at 1-3,

12   7-10.  The FAC purports to assert a single cause of action under 42 U.S.C. section 1983 for

13   "Violation of the First and Fourteenth Amendments to the United States Constitution."  *Id.* at 13.

14   However, this cause of action contains several different claims.

15        Plaintiffs allege that the top-two primary system, i.e. the advancement of the top-two vote-

16   getters from the primary to the general election, violates Plaintiffs' First and Fourteenth

17   Amendment rights by creating an unconstitutional barrier to ballot access for minor parties and

18   their candidates.  FAC at 13.

19        Plaintiffs allege that their First and Fourteenth Amendment rights are also violated by the

20   State's scheduling of the top-two primaries in March of presidential election years and its

21   prohibition on write-in candidates on the general election ballot.  FAC at 14.

22        Plaintiffs also all allege that California's top-two primary system discriminates against

23   minor parties and their candidates in favor of Democratic and Republican parties and their

24   candidates by purportedly making it more difficult for minor parties to advance from the primary

25   to the general election.  FAC at 14.

26        Plaintiff American Solidarity Party of California ("ASPC") alleges an additional

27   constitutional challenge to California Elections Code sections 8002.5 and 13105, which provide

28   for candidates' "party preference" statements on primary ballots.  FAC at 14.  ASPC alleges that

6

1  these statutes violate its First and Fourteenth Amendment rights by requiring that the ballot labels

2  of its candidates state "party preference: none." *Id.*

3      For relief, Plaintiffs request a declaration that "California's Top-Two primary system, as

4  codified in the California Constitution and the California Elections Code, including all provisions

5  of California law identified and described herein, to be violative of the First and Fourteenth

6  Amendments to the United States Constitution and otherwise unconstitutional as applied to

7  Plaintiffs."  FAC at 15.

8  **LEGAL STANDARDS**

9  **I.    STANDARD APPLICABLE TO A MOTION TO DISMISS UNDER FED. RULE. CIV. PROC.**
10  **RULE 12(B)(6)**

    A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.

11
12  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  To survive a motion to

13  dismiss, a complaint must contain sufficient facts to state a claim for relief that is plausible on its

face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A Rule 12(b)(6) dismissal may be based on
14
15  either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a

cognizable legal theory."  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th
16
17  Cir. 2008) (internal quotation omitted).  The court accepts as true all material allegations in the

complaint and construes them in the light most favorable to the plaintiff.  *Lazy Y Ranch Ltd. v.*
18
19  *Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  However, this tenet does not apply to "legal

conclusions ... cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064
20
21  (9th Cir. 2011) (internal quotation marks omitted).

22  **II.    STANDARD APPLICABLE TO EVALUATING THE CONSTITUTIONALITY OF STATE**
    **ELECTION LAWS**

23      In examining challenges to ballot access, the United States Supreme Court focuses on the

24  degree to which the challenged restrictions operate as a mechanism to exclude certain classes of

25  candidates from the electoral process.  *Clements v. Fashing*, 457 U.S. 957, 964 (1982).  "The

26  inquiry is whether the challenged restriction unfairly or unnecessarily burdens the 'availability of

27  political opportunity.'"  *Id.* (quoting *Lubin v. Panish*, 415 U.S. 709, 716 (1974)).

28

7

1   Review of state voting laws does not automatically require heightened scrutiny, but instead

2   follows a flexible balancing standard:  a court must weigh "the character and magnitude" of the

3   asserted injury against the "interests put forward by the State as justifications for the burden

4   imposed by its rule," taking into consideration the extent to which the State interests make the

5   burden necessary.  *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  Under this standard, "the state's

6   important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory

7   restrictions."  *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).  Accordingly, the Supreme

8   Court has "repeatedly upheld reasonable, politically neutral regulations that have the effect of

9   channeling expressive activity at the polls."  *Washington State Grange v. Washington State*

10  *Republican Party*, 552 U.S. 442, 452 (2008) (quoting *Burdick*, 504 U.S. at 438) (*Washington I*)).

11  But when First and Fourteenth Amendment rights are subject to "severe restrictions," the law

12  must be "narrowly drawn to advance a state interest of compelling importance."  *Burdick*, 504

13  U.S. at 434.  "[V]oting regulations are rarely subjected to strict scrutiny."  *Dudum v. Arntz,* 640

14  F.3d 1098, 1106 (9th Cir. 2011); *accord Chamness v. Bowen*, 722 F.3d 1110, 1116 (9th Cir.

15  2013).

16  Where, as here, the challenged restrictions are "reasonable [and] nondiscriminatory" and

17  not "severe," courts may properly weigh the state's interests against the burden on ballot access at

18  the motion to dismiss stage.  *See Tedards v. Ducey*, 951 F.3d 1041, 1067-68 (9th Cir. 2020).

### ARGUMENT

## I.   RES JUDICATA BARS MOST POLITICAL PARTY PLAINTIFFS' CLAIMS

21  Plaintiffs Peace and Freedom Party, Libertarian Party of California, and Green Party of

22  California's (the "Political Party Plaintiffs") claims should be dismissed with prejudice because

23  they are barred by the doctrine of res judicata.[5]

24  "[T]he determination of federal constitutional questions in state court systems may not be

25  reviewed or repeated in the federal system."  *Dodd v. Hood River Cnty.*, 59 F.3d 852, 861 (9th

26  Cir. 1995; *see also Allen v. McCurry*, 449 U.S. 90, 95 (1980); ("federal courts generally have . . .

[5] Defendant does not argue in this motion that the claims the individual Plaintiffs or American Solidarity Party are barred by res judicata, but reserves the right to do so in subsequent proceedings, including after further factual development.

8

1    consistently accorded preclusive effect to issues decided by state courts"); *Noel v. Hall*, 341 F.3d

2    1148, 1166 (9th Cir. 2003) ("[u]nder 28 U.S.C. § 1738, federal courts must give 'full faith and

3    credit' to judgments of state courts").

4          The term "res judicata" refers "collectively" to claim and issue preclusion.  *NTCH-WA, Inc.*

5    *v. ZTE Corp.*, 921 F.3d 1175, 1178 n.1 (9th Cir. 2019).  "Claim preclusion describes the rules

6    formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once

7    known as 'collateral estoppel' and 'direct estoppel.'"  *Id.*  Courts "apply the res judicata rule of

8    the jurisdiction that heard the initial case."  *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 n.2

9    (9th Cir. 2017) (citing *Allen*, 449 U.S. at 96).

10         Because res judicata arises here from the *Rubin* judgment, the State of California's rules

11   governing res judicata apply here.  *See Howard*, 871 F.3d at 1040 n.2.  Under California law,

12   claim preclusion applies when "(1) the decision in the prior proceeding was final and on the

13   merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3)

14   the parties in the present proceeding or parties in privity with them were parties to the prior

15   proceeding."  *Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106, 1110 (9th Cir.

16   2018) (quoting *Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles*, 126 Cal. App. 4th

17   1180, 1202 (2004)).  Here, the FAC and judicially noticeable facts establish that all three of these

18   requirements are met.

19         First, a final judgment on the merits was entered in *Rubin*.  Order of Dismissal and Final

20   Judgment upon Sustaining of Demurrer without Leave to Amend [C.C.P § 581(d)], *Rubin v.*

21   *Bowen*, No. RG11605301, 2013 WL 6671292, at *1 (Cal. Super. Ct. Oct. 04, 2013); *see Boyd v.*

22   *Freeman*, 18 Cal. App. 5th 847, 855 (2017) ("[I]t is generally held that a demurrer which is

23   sustained for failure of the facts alleged to establish a cause of action, is a judgment on the

24   merits.").

25         Second, *Rubin* involved the same claims that the Political Party Plaintiffs bring here.  Under

26   California law "[a] claim is the 'same claim' if it is derived from the same 'primary right,' which

27   is 'the right to be free from a particular injury, regardless of the legal theory on which liability for

28   the injury is based.'"  *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1125-26 (9th

9

1   Cir. 2013) (quoting *Adam Bros. Farming, Inc. v. Cty. of Santa Barbara*, 604 F.3d 1142, 1149 (9th

2   Cir. 2010)).  In both cases plaintiffs have asserted that California's top-two primary system's

3   advancement of the top-two vote-getters injures the same "primary" rights under the First and

4   Fourteenth Amendment to (1) access the general election ballot and (2) not be discriminated

5   against with respect to general election ballot access as compared to major parties.  *Compare*

6   FAC at 2-3, 7-13 *with*  RJN No. 1 and Exh. A at 11-12 (Second Amended Complaint in *Rubin*);

7   *see also Rubin*, 233 Cal.App.4th at 1135-37.

8       Third, the cases involve the same parties or parties in privity with them.  Plaintiffs Peace

9   and Freedom Party and Libertarian Party of California were plaintiffs in *Rubin* and are Plaintiffs

10  here.  *Compare* FAC at 1, 4 *with* RJN No. 1 and Exh. A at 1, 4-5; *see also Rubin*, 233

11  Cal.App.4th at 1135-36.  And while Plaintiff Green Party of California was not technically a

12  party in *Rubin*, it is "in privity" with Green Party of Alameda County, which was a party in that

13  case.  *Id.*  "[P]rivity requires the sharing of an identity or community of interest, with adequate

14  representation of that interest in the first suit, and circumstances such that the nonparty "should

15  reasonably have expected to be bound" by the first suit."  *DKN Holdings LLC v. Faerber*, 61 Cal.

16  4th 813, 826 (2015).  As a geographic division of the Green Party of California, RJN No. 7 and

17  Ex. A, Green Party of Alameda County adequately represented in *Rubin* its shared interests

18  related to ballot access with Green Party of California, and Green Party of California should have

19  reasonably expected to be bound, particularly where its division brought the suit with two

20  statewide party as co-plaintiffs.

21      Claim preclusion therefore bars the Political Party Plaintiffs' claims in this action.

22      Even if claim preclusion for some reason did not apply here, the Political Party Plaintiffs'

23  claims here would still be barred by issue preclusion. Under California law, "issue preclusion

24  applies: (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily

25  decided in the first suit and (4) asserted against one who was a party in the first suit or one in

26  privity with that party."  *DKN Holdings*, 61 Cal. 4th at 825.  In *Rubin*, the California superior

27  court and Court of Appeal actually litigated and necessarily decided the identical issues of

28  whether California's top-two primary system's advancement of the top-two vote-getters violates

10

1  the First and Fourteenth Amendment rights to ballot access and the issue of whether the system

2  violates equal protection by impermissibly discriminating against minor parties and candidates.

3  *See* RJN No. 2, Exh. B (superior court judgment), Exh. 1 (Amended Order dismissing Second

4  Amended Complaint) at 10-22; *Rubin*, 233 Cal.App.4th at 1143-54.  The state courts duly and

5  correctly determined that the system violates none of these rights.  *See* RJN No. 2, Exh. B, Exh. 1

6  at  17, 19; *Rubin*, 233 Cal.App.4th at 1135.  Issue preclusion therefore bars Political Party

7  Plaintiffs from now bringing these issues to this Court for renewed consideration.

8      Res judicata bars the Political Party Plaintiffs' claims in this action, and those parties

9  should therefore be dismissed.

10  **II.    PLAINTIFFS' BALLOT ACCESS CLAIMS FAIL**

11      **A.    Courts Have Already Approved the Top-Two Primary as a Constitutional
               Method of Choosing General Election Candidates**

12

13      Plaintiffs allege that California's top-two primary system violates their First and Fourteenth

14  Amendment rights to ballot access by making it more difficult for a minor party candidate to

15  qualify for the general election.  This theory, however, has been rejected by the United States

16  Supreme Court and other courts, either expressly or impliedly, as a basis on which to declare a

17  top-two primary system unconstitutional.

18      In *California Democratic Party v. Jones*, the Supreme Court considered the

19  constitutionality of California's earlier partisan blanket primary system.  530 U.S. 567 (2000).

20  Under that system, any voter, regardless of party affiliation, could vote for any candidate at the

21  primary election, and the candidate of each party who won the most votes became the party's

22  nominee in the general election.[6]  *Id.* at 570.  The Court invalidated the system, concluding that

23  the system placed a severe burden on political parties' associational freedom and did not survive

24  strict scrutiny.  *Id.* at 582-585.

25      Importantly, however, the Supreme Court suggested that a state may instead utilize a

26  *nonpartisan* blanket primary, in which the state determines the qualifications for a candidate to be

27

28      [6] Following *Jones*, California reverted to the closed partisan primary system, which was
        later replaced with the top-two primary system upon the passage of Proposition 14 in 2010.

11

Notice of Mot. and Mot. to Dismiss First Amended Complaint; Memo of Pts. and Auth. (3:24-cv-08308-MMC)

1   placed on the primary ballot, and then "[e]ach voter, regardless of party affiliation, may then vote

2   for any candidate, and the top two vote getters (or however many the State prescribes) then move

3   on to the general election." *Id*. at 585-586.  The Court explained that a nonpartisan blanket

4   primary differs from the partisan blanket primary in a way that is "the constitutionally crucial

5   one: primary voters are not choosing a party's nominee." *Id.*  Thus, "[u]nder a nonpartisan

6   blanket primary, a State may ensure more choice, greater participation, increased 'privacy,' and a

7   sense of 'fairness'—all without severely burdening a political party's First Amendment right of

8   association." *Id.* at 586.  Although *Jones* did not directly address the ballot access rights of minor

9   political parties, it strongly suggests, if not establishes, that a top two primary system would be

10  constitutional.  *See id.*

11      Following *Jones*, the State of Washington adopted a top-two primary system very similar to

12  California's system challenged here.  *See Washington I*, 552 U.S. at 444.  Under Washington's

13  top-two system, each candidate indicates his or her party preference on the primary ballot and

14  voters may select any candidate listed on the ballot, regardless of the party preference of the voter

15  or the candidate, with the top two vote getters advancing to the general election.  *See Washington*

16  *State Republican Party v. Washington State Grange* 676 F.3d 784, 788 (9th Cir. 2012)

17  (*Washington II*).  Certain Washington state political parties challenged provisions of that state's

18  new system, leading to the Supreme Court's opinion in *Washington I*, and the Ninth Circuit's

19  subsequent opinion in *Washington II*.

20      In *Washington I*, the Supreme Court considered the provision of Washington's top-two

21  primary system that required ballots to indicate candidates' party preferences.  552 U.S. at 444.

22  The political parties argued that, like in *Jones*, this law also violated their associational rights

23  under the First Amendment.  *Id.*  The Supreme Court disagreed, reasoning that Washington's

24  primary system was fundamentally different than California's system invalidated in *Jones*:

25  Washington's system did not determine parties' nominees for the general election, but instead

26  served to "winnow" the number of candidates to two for the general election.  *Id.* at 453.  While

27  *Washington I* did not decide the state Libertarian's separate constitutional challenge to the top-

28  two system based on restricted ballot access, *see id.* at 458 n.11, the opinion reaffirmed the

12

Notice of Mot. and Mot. to Dismiss First Amended Complaint; Memo of Pts. and Auth. (3:24-cv-08308-MMC)

1   Supreme Court's assumption in *Jones* that "the nonpartisan primary we described in *Jones* would

2   be constitutional." *Washington I*, 552 U.S. at 452.

3       Subsequently, the Ninth Circuit did consider the Libertarian Party's ballot access challenge

4   to Washington's top two primary system. *Washington II,* 676 F.3d at 787. The court rejected that

5   challenge, holding that the primary system did not impose a severe burden on the Libertarian

6   Party's rights. *Id*. at 795. The Court observed that, given the features of a top-two system,

7   including broad access to the primary ballot by minor party candidates, the minor parties failed to

8   show that the system "impermissibly 'limit[ed] the field of candidates from which voters might

9   choose.'" *Id.* (quoting *Anderson*, 460 U.S. at 786). And "because [the top-two primary law]

10  gives major and minor party candidates equal access to the primary and general election ballots, it

11  does not give the 'established parties a decided advantage over any new parties struggling for

12  existence.'" *Washington II*, 676 F.3d at 795 (quoting *Williams v. Rhodes*, 393 U.S. 23, 31

13  (1968)). The Ninth Circuit has also rejected the notion that a top-two primary is flawed solely

14  because that system "makes it more difficult for minor-party candidates to qualify for the general

15  election ballot than regulations permitting a minor-party candidate to qualify for a general

16  election ballot by filing a required number of petition signatures." *Washington II*, 676 F.3d at

17  795. "This additional burden . . . is an inherent feature of any top two primary system, and the

18  Supreme Court has expressly approved of top two primary systems." *Id*. (citing *Jones*, 530 U.S. at

19  585-86.) The Ninth Circuit therefore affirmed the dismissal of a ballot access claim nearly

20  identical to the one presented by Plaintiffs in this action. *Washington II*, 676 F.3d at 794-95.

21      Finally, as discussed above, the California Court of Appeal has already held that state's top-

22  two primary system is constitutional in *Rubin*. 233 Cal.App.4th 1128. In that opinion, the court

23  concluded that California's top-two system imposes not a severe burden, but an "at most, modest"

24  burden on the plaintiffs' ballot access rights. *Id.* at 1150. The court held California's interest in

25  "permitting independent voters to participate in the process of narrowing candidates for the

26  general election" was, alone, was sufficient to justify the "limited burden" on plaintiffs'

27  constitutional ballot access rights. *Id.* The Court also rejected the plaintiffs' equal protection

28  claim, explaining that the claim is "gravely hampered by the system's manifestly equal treatment

13

1    of all qualified political parties," and that any "differential failure" of minor parties to advance to

2    general elections "is a direct result of the minor party candidates' failure to attract the votes of a

3    sizeable portion of the electorate." *Id.* at 1152-53.

4    **B.    California's Top-Two Primary System Does Not Impose a Severe Burden
         on Plaintiffs' First and Fourteenth Amendment Rights**

5

6        Ballot access cases "focus on the degree to which the challenged restrictions operate as a

7    mechanism to exclude certain classes of candidates from the electoral process." *Anderson*, 460

8    U.S. at 793.  "The inquiry is whether the challenged restriction unfairly or unnecessarily burdens

9    the availability of political opportunity." *Id.* (internal quotation marks omitted).  The Constitution

10   therefore guarantees political parties the opportunity to gain access to state ballots so that voters

11   may cast their votes effectively.  *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986)

12   (upholding Washington statute requiring that minor-party candidate receive at least 1% of votes

13   cast in primary election to qualify for general election ballot).  However, the Constitution does

14   not guarantee minor parties a place on a general election ballot when their candidates have easy

15   access to a primary election ballot that affords them the same opportunity to advance to the

16   general election as every other candidate.  *Id.* at 199 (a law's "effect on a candidate's

17   constitutional rights is slight" when state "affords a minor-party candidate easy access to the

18   primary election ballot and the opportunity to wage a ballot-connected campaign").  Primary

19   election systems are not unconstitutional merely because "voters must make choices as they vote

20   at the primary," where "there are no state imposed obstacles impairing voters in the exercise of

21   their choices." *Id.*

22       Here, California's advancement of only the top-two primary vote getters to the general

23   election does not severely burden Plaintiffs' ballot access rights.  The Ninth Circuit has already

24   held that Washington's top-two primary system "does not impose a severe burden on the

25   Libertarian Party's [ballot access] rights." *Washington II*, 676 F.3d at 794.  The court recognized

26   that, under Washington's system, minor party candidates had access to the primary ballot and,

27   from there, the same access to the general election ballot as candidates from major parties.  *Id.* at

28   794-95; *see also Munro*, 479 U.S. at 198 (states are not required to "handicap an unpopular

                                              14

1   candidate to increase the likelihood that the candidate will gain access to the general election

2   ballot"). In other words, Washington's top-two primary system provided minor party candidates

3   the same "political opportunity" to obtain voter support as major party candidates, *Anderson*, 460

4   U.S. at 793, and did not "impair[] voters in the exercise of their choices," *Munro*, 479 U.S. at

5   193. Since California's top-two primary system is indistinguishable from Washington's with

6   respect to its ballot access provisions, *see Washington II*, 676 F.3d at 788 (describing challenged

7   statute), the same holding and reasoning apply here.

8         California's scheduling of its primaries in March of presidential election years, meanwhile,

9   does not burden, much less substantially burden Plaintiffs. *See* FAC at 14. The FAC implies that

10   March primaries are purportedly unconstitutional *per se*, but does not explain why, cite any

11   supporting authorities, or otherwise explained how they are burdened. To be sure, in *Anderson¸*

12   the Supreme Court invalidated an Ohio law setting a March deadline for independent candidates

13   to submit petition signatures to appear on the general election ballot. 460 U.S. at 782-83.

14   However, *Anderson* does not stand for the proposition that March deadlines for ballot

15   qualifications always impose severe burdens on constitutional rights. Rather, the Court held that

16   the March deadline in *Anderson* imposed a severe burden because it put independent candidates

17   at an unfair competitive disadvantage compared to major party candidates whose primaries were

18   on an entirely different schedule, thereby excluding independent candidates and voters from the

19   electoral process. *Id.* at 790-95; *Lawrence v. Blackwell*, 430 F.3d 368 (6th Cir. 2005), cert.

20   denied, 547 U.S. 1178 (2006) (distinguishing *Anderson* and upholding Ohio's March primary that

21   applied equally to all candidates).

22         Here, unlike in *Anderson*, California's March primaries do not exclude any parties,

23   candidates, or voters. In all election years, including presidential election years, California holds

24   a simultaneous primary election for all candidates affiliated with all parties. Cal. Elec. Code

25   § 1202. The political opportunity for all parties and candidates is the same. *See Washington II*,

26   676 F.3d at 794 (distinguishing *Anderson*). California's March primary in presidential election

27   years therefore does not burden Plaintiffs' constitutional right to ballot access.

28

1    California's prohibition on write-in candidates also does not severely burden Plaintiffs.  *See*

2    FAC at 14.    The Supreme Court has held that states may prohibit write-in voting in general

3    elections.  *Burdick*, 504 U.S. at 441-42.  In *Burdick*, the Court explained that where candidates

4    otherwise have sufficient ballot access, a prohibition on write-in voting imposes a "very limited"

5    burden.  *Id*. at 436-37.  Here, candidates of all parties have an equal and fair opportunity to appear

6    on the primary ballot, and then the general election ballot.  That political opportunity is not

7    severely burdened merely because a candidate who fails to obtain sufficient voter support in the

8    primary cannot continue to run as a write-in candidate.

9    California's top-two primary system does not impose a severe burden on Plaintiffs' First or

10   Fourteenth Amendment ballot access rights.

11   **C.    California's Interests Justify Any Burden Imposed by the Top-Two**

12   **Primary System**

13   Because the challenged components of California's top-two primary system do not severely

14   burden Plaintiffs, the system need only be justified by, at most, the state's "important regulatory

15   interests" to survive review.  *Anderson*, 460 U.S. at 788.  That is the case here, where the

16   system's advancement of the top-two vote-getters justifies the State's important interests in

17   increasing voter choice and voter participation by permitting voters to vote in the primary for

18   whichever candidate they prefer regardless of political party affiliation (or non-affiliation).[7]  In

19   *Jones*, the Supreme Court implicitly recognized that these are important state interests, asserting

20   that in some circumstances increasing voter choice and participation may even be "compelling"

21   interests.  *Jones,* 530 U.S. at 584.  That is why the Court observed that California could

22   implement a nonpartisan primary system (which California subsequently did by adopting the top-

23

24

25   [7] California is not required to make a "particularized showing of the existence" of the basis
     for the state interest prior to imposition of reasonable restrictions on ballot access or a showing as

26   to the effects of its top-two primary system.  *Munro*, 479 U.S. at 195 (noting that in *Storer v. Brown*,
     415 U.S. 724 (1974) "[t]here is no indication that we held California to the burden of demonstrating

27   empirically the objective effects on political stability that were produced by the 1-year disaffiliation
     requirement").  To do so as a "predicate to the imposition of reasonable ballot access restriction

28   would invariably lead to endless court battles over the sufficiency of the 'evidence' marshaled by
     a State to prove the predicate." *Munro*, 479 U.S. at 195.

1    two primary) to pursue these interests while avoiding infringement on associational rights.  *Id.* at

2    585-86.

3         Indeed, the ballot initiative materials in support of Proposition 14, through which the top-

4    two system was adopted, specifically cited the state's interests in voter choice and participation.

5    RJN No. 6, Exh. F at 14 (Official Voter Information Guide).  For example, in the Official Voter

6    Information Guide, the measure's title and summary states that Proposition 14 would

7    "encourage[] increased participation in elections for congressional, legislative, and statewide

8    offices by changing the procedure by which candidates are selected in primary elections."  *Id.*

9    The title and summary further states that the measure would "give[] voters increased options in

10   the primary by allowing all voters to choose any candidate regardless of the candidate's or voter's

11   political party preference."  *Id.*  In their arguments in favor of the measure, the proponents of

12   Proposition 14 echoed these points, asserting that Proposition 14 "will open up primary elections"

13   and allow Californians "to vote for any candidate [they] wish for state and congressional offices,

14   regardless of political party preference."  *Id.* at 18.  Proposition 14 was also seen as "giv[ing]

15   independent voters an equal voice in primary elections," whereas under the partisan system,

16   independent voters cannot participate in the primary process.  *Id.* at 14, 18.

17        That California advances the top-two vote-getters in the primaries is also justified by the

18   State's "important regulatory interests in streamlining the ballot, avoiding ballot overcrowding,

19   and reducing voter confusion" in the general election.  *De La Fuente v. Padilla*, 930 F.3d 1101,

20   1106 (9th Cir. 2019) (internal citation omitted); *see also Munro*, 479 U.S. at 193-96 (upholding

21   Washington law requiring candidates to receive minimum percentage of votes to proceed from

22   primary to general election).  In *De LaFuente*¸ based on these interests, the Ninth Circuit

23   California upheld California's law requiring independent presidential candidates to collect

24   signatures from one percent of California's registered voters to appear on the general election

25   ballot.  *Id.* at 1103-03, 1106-07.  California's limitation of the number of candidates proceeding

26   from the primary to general election promotes the same interests.

27        With respect to California's March primary in presidential election years, any potential

28   burden is also justified by California's important interests.  As the Legislature recognized,

1    holding the primary in March instead of June ensures that California residents have the

2    opportunity to meaningfully influence the presidential primary process before the nominees are

3    already "effectively decided" by other states.   Sen. Third Reading, 2017-2018 Reg. Sess.,

4    Analysis of SB 568, as amended August 31, 2017 (Cal. Sept. 13, 2017), at 1; Sen. Rules Comm.,

5    Analysis of SB 568, 2017-2018 Reg. Sess. (Cal. Sept. 15, 2017), at 5; Senate Third Reading,

6    2017-2018 Reg. Sess., Analysis of SB 568, as amended June 21, 2017, (Cal. Aug. 18), 17 at 1-3.

7    This influence, in turn, also increases voter turnout in California's primary elections and

8    incentivizes candidates to "respond to California's unique issues and challenges."  Sen. Third

9    Reading, 2017-2018 Reg. Sess., Analysis of SB 568, as amended August 31, 2017 (Cal. Sept. 13,

10    2017), at 1.

11         Moreover, the Supreme Court has already held that a state's prohibition on write-in

12    candidacies in general elections are justified by the states' interests. *Burdick v. Takushi*, 504 U.S.

13    428, 439 (1992). In *Burdick*, the Court noted that the primary election is "an integral part of the

14    entire election process," and concluded that states are therefore within their rights to "reserve the

15    general election ballot for major struggles and not a forum for continuing intraparty feuds." *Id.*

16    (quoting *Storer,* 415 U.S. at 735 (cleaned up)).  In other words, a "prohibition on write-in voting

17    [in a general election] is a legitimate means of averting divisive sore-loser candidacies." *Id.*

18         In sum, California has important state interests that justify the provisions of the top-two

19    primary system that Plaintiffs challenge here.

20    **III.   PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS**

21         To the extent that Plaintiffs purport to allege a claim under the Equal Protection Clause of

22    the Fourteenth Amendment, that claim also fails.

23         The Equal Protection Clause "requires that all persons subjected to ... legislation shall be

24    treated alike, under like circumstances and conditions, both in the privileges conferred and in the

25    liabilities imposed." *Hayes v. Missouri*, 120 U.S. 68, 71-72 (1887); *accord Engquist v. Oregon*

26    *Dep't of Agr.*, 553 U.S. 591, 602 (2008).  The first step in equal protection analysis is to identify

27    the [defendant's] classification of groups." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187

28    (9th Cir. 1995) (quotation omitted).

18

1    Plaintiffs allege that California's top-two primary system discriminates against minor

2 parties and their candidates in favor of Democratic and Republican parties and their candidates.

3 FAC at 14.  Plaintiffs allege that the top-two system discriminates between these group because it

4 purportedly makes it difficult for minor parties to advance from the primary to the general

5 election.  *Id.*

6    These allegations do not state a claim for violation of equal protection.  "[T]he Fourteenth

7 Amendment guarantees equal laws, not equal results."  *Personnel Administrator of Mass. v.*

8 *Feeney*, 442 U.S. 256, 273 (1979).  California's top-two primary system treats all parties and

9 candidates alike.  Under the system, the two candidates receiving the most votes in the primary

10 advance to the general election, "regardless of party preference."  CAL. CONST. art. II, § 5(a).

11 Thus, "[c]andidates listing a preference for a minor party who appeal to a sufficiently broad swath

12 of the electorate have the same opportunity to advance as similar candidates expressing a

13 preference for a major party."  *Rubin v. Padilla*, 233 Cal. App. 4th 1128, 1152–53 (2015).  As the

14 California Court of Appeal explained, any historical failure of minor party candidates to advance

15 to the general election does not lie in the electoral system.  *Id.* at 1153.  "Rather, the differential

16 failure to advance is a direct result of the minor party candidates' failure to attract the votes of a

17 sizeable portion of the electorate."  *Id.*  In other words, the top-two system provides all parties

18 and candidates with the same political opportunity to obtain voter support; it is then *voters*, not

19 the state, who treat candidates differently from one another.  And California "has no equal

20 protection obligation to compensate for the minor parties' lack of general electoral appeal."  *Id.*

21 (citing *Munro*, 479 U.S. at 198).

22    Because California's top-two primary system does not treat minor parties and candidates

23 differently than major parties and candidates, Plaintiffs' equal protection claim fails.

24

25

26

27

28

19

1

**IV.    AMERICAN SOLIDARITY PARTY'S CHALLENGE TO THE CALIFORNIA ELECTION CODE'S "PARTY PREFERENCE" REQUIREMENTS FAILS**

2

3       Plaintiff ASPC separate claim related to its candidates' "party preference" ballot statements

4    should also be dismissed because the FAC fails to allege sufficient facts to state a claim.

5       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

6    accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

7    U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "Rule

8    12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of

9    the claim, but also grounds on which the claim rests.'"  *Li v. Kerry*, 710 F.3d 995, 998 (9th Cir.

10   2013) (quoting *Twombly,* 550 U.S. at 556 n.3).  While a high level of factual detail is not

11   required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me

12   accusation." *Iqbal*, 556 U.S. at 678.  "Plaintiffs must include sufficient 'factual enhancement' to

13   cross 'the line between possibility and plausibility'" to show their entitlement to relief. *Eclectic*

14   *Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*,

15   550 U.S. at 557).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

16   elements of a cause of action'" does not satisfy Rule 8's pleading requirements.  *Iqbal*, 556 U.S.

17   662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

18       Here, ASPC's only allegations supporting its party preference claim consist of three

19   sentences.  The allegations state:

20       Plaintiff American Solidarity Party of California is further
         unconstitutionally burdened because when its candidates run in the primary,
21       they are prohibited from having their party name appear on the ballot under
         California Election Code §§ 8002.5 and 13105.  Their ballot label is just
22       "party preference: none." *Id.*; *See Soltysik v. Padilla*, 910 F.3d 20 438 (9th
         Cir. 2018).

23       ….

24       California law that prohibits The American Solidarity Party of California
         and other parties similarly situated from listing their party name on the
25       ballot and, instead, requires their ballot label to be "party preference: none"
         – Cal. Elec. Code §§ 8002.5 and 13105 – violates the First and Fourteenth
26       Amendments to the United States Constitution.

27   FAC 5, at 14.

28

20

These bare allegations fail to state sufficient facts under Rules 12(b)(6) and 8.  Under California Elections Code sections 8002.5 and 13105, a primary candidate affiliated with a "qualified" party may list their "party preference" on the election ballot.  CAL. CONST. art. II, § 5(b); Cal. Elec. Code §§ 5100, 8002.5, 13105(a).  ASPC alleges no facts disclosing, for example:

- why it is not a "qualified party";
- whether and why it has not or cannot meet one of the three required statistical thresholds to become a "qualified party"; and,
- why and to what extent becoming a "qualified party" would potentially be burdensome.

ASPC was required to, at minimum, assert facts that allege the "practical consequences" that the challenged statutes impose on ASPC in order to plausibly allege that the burden on it outweighs the State's interests under *Anderson/Burdick*.  *Cf. Arizona Green Party v. Reagan*, 838 F.3d 983, 990 (9th Cir. 2016) (holding that plaintiff political party was not entitled to summary judgment on ballot access claim where it had failed to submit any factual evidence of the "practical consequences" of the state election law).  ASPC has alleged virtually no factual background or basis to show that they are plausibly entitled to relief.

ASPC's allegations also fail to provide "fair notice of the nature of" its claim.  *Twombly*, 550 U.S. at 556 n.3.  It alleges generally that the state statutes violate their First and Fourteenth Amendment rights.  However, it fails to allege which particular rights under these constitutional amendments are purportedly violated.  The claim does not appear to be a traditional "ballot access" claim under the First and Fourteenth Amendment like most of Plaintiffs' other claims, since the claim involves circumstances in which ASPC's candidates *are* on the ballot.  So, for example, does ASPC allege that the statutes violate their First Amendment associational rights or speech rights?  Does ASPC allege that the statutes violate the Due Process Clause, the Equal Protection Clause, or merely the Fourteenth Amendment's incorporation of their First Amendment rights against the states?  The FAC fails to provide fair notice under Rule 8 regarding the nature of ASPC's claim.

ASPC's "party preference" claim should therefore be dismissed for failure to state sufficient facts to state a plausible claim.

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V.    ANY LEAVE TO AMEND SHOULD BE LIMITED TO THE AMERICAN SOLIDARITY PARTY'S "PARTY PREFERENCE" CLAIM**

The Court should not grant Plaintiffs leave to amend the majority of their claims in the FAC.  "[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

Here, Supreme Court and Ninth Circuit precedent clearly establish that Plaintiffs' ballot access and equal protection claims fail as a matter of law.  These claims are also barred by res judicata as to the Political Party Plaintiffs.  Plaintiffs have already had one opportunity to attempt to cure these defects; they filed the First Amended Complaint after having weeks to review and consider Defendant's previous motion to dismiss.  *See* ECF Nos. 20, 29.  That attempt failed, and any further attempts would continue to be futile.

Although it is currently unclear whether Plaintiff ASPC may be able to amend their "party preference" cause of action to state a plausible claim, any leave to amend should be limited to that claim.

**CONCLUSION**

For the reasons explained above, Plaintiffs' First Amended Complaint fails to state a claim and should be dismissed.

1    Dated:  April 11, 2025                            Respectfully submitted,

2                                                      ROB BONTA
                                                       Attorney General of California
3                                                      ANTHONY R. HAKL
                                                       Supervising Deputy Attorney General
4

5

6                                                      *s/ Gabrielle D. Boutin*
                                                       GABRIELLE D. BOUTIN
7                                                      Deputy Attorney General
                                                       *Attorneys for Defendant Dr. Shirley Weber,*
8                                                      *in her official capacity as California*
                                                       *Secretary of State*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

# CERTIFICATE OF SERVICE

Case Name:   **Peace and Freedom Party, et al.**      No.      **3:24-cv-08308-MMC**
              **v. Dr. Shirley N. Weber**

I hereby certify that on <u>April 11, 2025,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

   **NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
   COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>April 11, 2025</u>, at Los Angeles, California.

_____                   _____
            Beth L. Gratz                                              *Beth L. Gratz*
              Declarant                                                  Signature

SA2024305451
67567989.docx