1
DAVID I. SCHOEN (*PRO HAC VICE*)
ATTORNEY AT LAW
2
2800 ZELDA ROAD, SUITE 100-6
MONTGOMERY, ALABAMA 36106
3
TELEPHONE: 917-941-7952
E-MAIL: SCHOENLAWFIRM@GMAIL.COM
4

5
SOYEUN D. CHOI, ESQ., PC (SBN 211344)
969G EDGEWATER BLVD, 314
FOSTER CITY, CA 94404
6
TELEPHONE: (650) 380-6116
E-MAIL: SOYEUN@SOYEUNESQ.COM
7

Counsel for all Plaintiffs
8

IN THE UNITED STATES DISTRICT COURT
9

FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11

12
**PEACE AND FREEDOM PARTY, et. al.,**

13
                                    Plaintiffs,

14
            v.

15

16
**DR. SHIRLEY N. WEBER, CALIFORNIA SECRETARY OF STATE,**

17
                                    Defendant.

18

3:24-cv-08308-MMC

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' AND INTERVENORS' MOTIONS TO DISMISS [ECF Nos. 34&35]**

Courtroom:  7
Judge:  Hon. Maxine M. Chesney
Hearing Date: August 22, 2025
Action Filed:  November 21, 2024

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

I. PROCEDURAL POSTURE ............................................................................. 1

II. INTRODUCTION ......................................................................................... 2

III. PRELIMINARY POINTS ........................................................................... 4

    A.  Judicial Notice is to be Used Sparingly ......................................... 4

    B.  Intervenors Cannot Independently Decide the State's Interests................................ 5

IV. LEGAL STANDARD FOR THE MOTION TO DISMISS................................ 5

V. *ANDERSON/BURDICK* BALLOT ACCESS ANALYTICAL FRAMEWORK ..................... 6

VI. DISCUSSION - THE DEFENDANT'S MOTION TO DISMISS ........................... 9

    A.  This Case is Not Barred by *Res Judicata* ........................................ 9

        (1) The *Rubin* Court Made Demonstrable Mistakes ............................ 10

        (2) The Primary Argument Made Here Was Not Made and
            Could Not Have Been Made in *Rubin*. Other Arguments Made
            in the FAC Also Were Not Made in *Rubin*.................................... 13

    B.  Defendant's Additional Arguments for Dismissal are Unavailing ............................ 15

VII. CONCLUSION ........................................................................................... 25

CERTIFICATE OF SERVICE ........................................................................... 31

**<u>TABLE OF AUTHORITIES</u>**

**Page(s):**

**Cases:**

*American Party of Texas v. White,*
    415 U.S. 767 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 29

*Anderson v. Celebrezze,*
    460 U.S. 780 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*Anderson v. Martin*
    375 U.S. 399 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Angle v. Miller,*
    673 F.3d 1122 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Arizona Libertarian Party v. Bennett,*
    784 F.3d 611 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Arizona Libertarian Party v. Reagan,*
    798 F.3d 723 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Bergland v. Harris,*
    767 F.2d 1551 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 20, 21

*Breck v. Stapleton,*
    259 F. Supp. 3d 1126 (D. Mont. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Brumback v. Ferguson,*
    343 F.R.D. 335 (E.D. Wash. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Burdick v. Takashi,*
    504 U.S. 428 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*California Democratic Party v. Jones*,
     530 U.S. 567 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*California Pro-Life Council, Inc. v. Rudolph*,
     507 F.3d 1172 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Clements v. Fashing*,
     457 U.S. 957 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Clingman v. Beaver*,
     544 U.S. 581 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*Cornwell v. Hamilton*
     80 F. Supp. 2d 1101 (S.D. Cal. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*CPI Advanced, Inc. V. Kong Byung Woo Comm. Ind. Co., Ltd*,
     135 Fed. Appx. 81 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Craigmiles v. Giles*
     312 F.3d 220 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Daien v. Ysursa*,
     711 F. Supp. 2d 1215 (D. Idaho 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Democratic Party v. Reed*,
     343 F.3d 1198 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Dudum v. Arntz*,
     640 F.3d 1098 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Dunn v. Blumstein*
     405 U.S. 330 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Foster v. Love*,
     522 U.S. 67 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Fulani v. Krivanek*,
     973 F.2d 1539 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Genasys Inc. v. Vector Acoustics, LLC*,
     638 F. Supp. 3d 1135 (S.D. Cal. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

iii

*Gray v. Sanders,*
    372 U.S. 368 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Green Party of Georgia v. Georgia,*
    551 Fed. Appx. 982 (11th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Green Party of Georgia v. Kemp,*
    171 F. Supp. 3d 1340 (N.D. Ga. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*Green Party of Georgia v. Kemp,*
    674 Fed. Appx. 974 (11th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 28
    *Rehearing and rehearing en banc denied*

*Green Party of Tennessee v. Hargett,*
    791 F.3d 684 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Illinois State Board of Elections v. Socialist Workers Party,*
    440 U.S. 173 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 28, 29

*Kennedy v. Seattle,*
    94 Wn.2d 376 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lee v. Keith,*
    463 F.3d 763 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

*Libertarian Party of Arkansas v. Thurston,*
    962 F.3d 390 (8th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

*Libertarian Party of Arkansas v. Thurston,*
    632 F. Supp. 3d 855 (E.D. Ark. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Libertarian Party of Illinois v. Illinois State Bd. Of Elections,*
    164 F. Supp. 3d 1023 (N.D. Ill. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

*Libertarian Party of Illinois v. Scholz,*
    872 F.3d 518 (7th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14, 20

*Libertarian Party of Ohio v. Blackwell,*
    462 F.3d 579 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18, 28

*Libertarian Party of Washington v. Munro,*
    31 F.3d 759 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Los Angeles v. San Fernando*,
   14 Cal. 3d 199 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lubin v. Panish*,
   415 U.S. 709 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 27, 29

*Mandel v. Bradley*,
   432 U.S. 173 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12, 14, 21

*Malheur Forest Fairness Coalition v. Iron Triangle, LLC*,
   699 F. Supp. 3d 1086 (D. Ore. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Merrifield v. Lockyer*,
   547 F.3d 978 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Metropolitan Creditors' Trust v. Pricewaterhousecoopers, LLP*,
   463 F. Supp. 2d 1193 (E.D. Wash. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Montana v. United States*,
   440 U.S. 147 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
   686 F. Supp. 3d 900 (N.D. Cal. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Munro v. Socialist Workers Party*,
   479 U.S. 189 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 13, 17

*Nader v. Brewer*,
   531 F.3d 1028 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15, 20, 25

*Nader v. Keith*,
   385 F.3d 729 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*NL Indus., Inc., v. Kaplan*,
   792 F.2d 896 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Norman v. Reed*,
   502 U.S. 279 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 23, 29

*Perez-Guzman v. Gracia*,
   346 F.3d 229 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*PEST Committee v. Miller*,
          648 F. Supp. 2d 1202 (D. Nev. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pierce v. Jacobsen*,
          44 F.3d 853 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 20

*Pierce v. Stapleton*,
          505 F. Supp. 3d 1059 (D. Mont. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pilcher v. Rains*,
          853 F.2d 334 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Purcell v. Gonzalez*,
          549 U.S. 1 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Republican Party of Minnesota v. White*,
          536 U.S. 765 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Reynolds v. Sims*
          377 U.S. 533 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *29*

*Rubin v. Padilla*,
          233 Cal. App. 4th 1128 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*Schultz v. Harry S. Truman Scholarship Found.*,
          2023 U.S. Dist. LEXIS 40767 (N.D. Cal., March 10, 2023) . . . . . . . . . . . . . . . . . . . 6, 15

*Soltysik v. Padilla*,
          910 F.3d 438 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 23, 25

*Storer v. Brown*,
          415 U.S. 724 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*Sweezy v. New Hampshire*
          354 U.S. 234 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Timmons v. Twin Cities Area New Party*,
          520 U.S. 351 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Classic*,
          313 U.S. 299 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Wash. State Grange v. Wash. State Republican Party,*
   552 U.S. 442 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Wash. State Grange v. Wash. State Republican Party,*
   676 F.3d 784 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14, 16, 18

*Wesberry v. Sanders*
   376 U.S. 1 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*Whittaker v. Mallott,*
   259 F. Supp. 3d 1024 (D. Alaska 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Williams v. Rhodes,*
   393 U.S. 23 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

**Statutes and Other Legislative Materials:**

Cal. Elec. Code § 1202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Secretary of State's *Statement of Vote* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

U.S. Const. amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

U.S. Const. amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

https://elections.cdn.sos.ca.gov/sov/2000-primary/special.pdf . . . . . . . . . . . . . . . . . . . . . 23

**Articles and Books:**

Adams, James, and Samuel Merrill, *Why Small, Centrist Third Parties Motivate Policy
Divergence by Major Parties*, The American Political Science Review, vol. 100, no. 3, 2006, pp.
403-417 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *28*

Calao, Broockman, Huber, Kalla, *Tracing Polarization's Roots: A Panel Study of Voter Choice
in Congressional Primary and General Elections* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

J. David Gillespie, *Challengers to Duopoly, Why Third Parties Matter in American Two-Party
Politics* (University of South Carolina Press 2012 ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Jacques Anatole Francois Thibault ("Anatole France"), *The Red Lily* [1894] Ch. 7 . . . . . . . . . 24

Jessica A. Levinson, *Is the Party Over? Examining the Constitutionality of Proposition 14 as it
Relates to Ballot Access for Minor Parties*, 44 LOY, L.A. L. Rev 463 (2011) . . . . . . . . . . . . . 25

1    **<u>Rules:</u>**
2
3    Fed. R. Civ. P. 8(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
4
5    Fed R. Civ. P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
6
7    Fed R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 15
8

1  DAVID I. SCHOEN (PRO HAC VICE)
   ATTORNEY AT LAW
2  2800 ZELDA ROAD, SUITE 100-6
   MONTGOMERY, ALABAMA 36106
3  TELEPHONE: 917-941-7952
   E-MAIL: SCHOENLAWFIRM@GMAIL.COM
4
   SOYEUN D. CHOI, ESQ., PC (SBN 211344)
5  969G EDGEWATER BLVD, 314
   FOSTER CITY, CA 94404
6  TELEPHONE: (650) 380-6116
   E-MAIL: SOYEUN@SOYEUNESQ.COM
7
   Counsel for all Plaintiffs
8
                IN THE UNITED STATES DISTRICT COURT
9
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11

12  **PEACE AND FREEDOM PARTY, et. al.,**        3:24-cv-08308-MMC

13                              Plaintiffs,      **PLAINTFFS' MEMORANDUM OF
                                                 POINTS AND AUTHORITIES IN
14          v.                                   OPPOSITION TO DEFENDANT'S AND
                                                 INTERVENORS' MOTIONS TO
15                                               DISMISS [ECF Nos. 34 & 35]**

    **DR. SHIRLEY N. WEBER, CALIFORNIA
16  SECRETARY OF STATE,**                        Courtroom:  7
                                                 Judge: Hon. Maxine M. Chesney
17                              Defendant.       Hearing Date: August 22, 2025

18

19          I.      **PROCEDURAL POSTURE**

20          The Complaint was filed in the above-captioned case on November 21, 2024 [ECF #1].  On

21  January 31, 2025, Defendant Weber filed a motion to dismiss and supporting papers [ECF #20].

22  Also on January 31, 2025, Intervenors filed a motion for leave to intervene, along with a proposed

23  motion to dismiss [ECF #19].  The motion to intervene was denied on February 10, 2025 [ECF

24  #25]; however, following an agreement between Plaintiffs and the Intervenors [See ECF #26] and

25  Defendant Weber's consent to the intervention [ECF #28], the Court entered an Order permitting

26  the intervention [ECF #31].

27          On February 21, 2025, Plaintiffs filed their First Amended Complaint ("FAC") [ECF #29],

28  rendering the motion to dismiss filed by the Defendant and the proposed motion to dismiss

                                            1

1   proffered by the Intervenors moot [ECF ##30, 31].  On April 11, 2025, Intervenors filed a motion

2   to dismiss the First Amended Complaint [ECF #34].  Defendant Weber filed her motion to

3   dismiss and an amended motion to dismiss also on that date [ECF ##35, 36].  Defendant and

4   Intervenors are aligned in their attack on the First Amended Complaint and their arguments

5   overlap.  For purposes of efficiency, Plaintiffs now file their consolidated Opposition to the

6   motions to dismiss.  Plaintiffs will address the Defendant's Motion to Dismiss and then address

7   any additional issues in the Intervenors' motion not covered.

8           **II.    <u>INTRODUCTION</u>**

9           Plaintiffs herein challenge California's Top-Two election system as violative of their First

10  and Fourteenth Amendment rights.  The Defendant and the Intervenors' primary basis for urging

11  a dismissal of the FAC is that the Top-Two system was upheld by the California state courts in

12  2015 and therefore this action is barred by *res judicata*.  They are mistaken and their arguments

13  misapprehend fundamental principles of ballot access law which require, not just a case by case,

14  fact-specific analysis to ballot access restrictions as applied, but which require, as well, a

15  consideration of ballot access history since the imposition of the restriction.

16          Plaintiffs do not bring this challenge in a vacuum and certainly were aware of the decision

17  in the case on which the *res judicata* argument relies, *Rubin v. Padilla*, 233 Cal. App. 4th 1128

18  (2015).

19          Rather, Plaintiffs assert in their FAC the more than plausible claim that in light of the

20  unassailable fact that: "<u>In the years since the passage of Proposition 14 and the adoption of the</u>

21  <u>Top-Two primary in California, when there is at least one Republican on the primary ballot and</u>

22  <u>one Democrat on the primary ballot no minor party candidate ever finishes in the top two</u>."

23  [FAC at ¶27](Emphasis added).[1]

24          Ten years have passed since the decision in *Rubin* and the evidence during those years

25  _____

    [1] There is only one single exception to this historical fact in any election subject to Top-Two
26  since its enactment.  In the 2024 Top-Two primary for California State Assembly District 18, the
    American Independent Party candidate, Andre Sandford finished second by a few votes over two
27  Republican candidates who split the Republican vote.  The Democratic party candidate
    overwhelmingly finished first.  The split was Dem: 84.9%; AIP: 5.3%; Rep: 5.1%; Rep: 4.7%.
28  California Secretary of State's *Statement of Vote*.

1    further establishes the unconstitutionally insurmountable barrier to gaining ballot access for minor

2    parties and independent candidates the Top-Two primary law imposes. *See e.g., Mandel v.*

3    *Bradley*, 432 U.S. 173, 177 (1977) (Past experience will be a helpful, if not always an unerring,

4    guide: it will be one thing if candidates have qualified with some regularity and quite

5    a different matter if they have not.), *quoting from, Storer v. Brown*, 415 U.S. 724, 742 (1974);

6    *Libertarian Party of Arkansas v. Thurston*, 632 F. Supp. 3d 855, 892 (E.D. Ark. 2022)("…

7    parties' past success or failure in a particular state under extant or prior requirements is relevant

8    to show the necessity or burdensomeness of the restrictions, and such history is also material to

9    the question of whether the statutes are narrowly tailored to a compelling state interest…"); *Lee v.*

10   *Keith*, 463 F.3d 763, 769 (7th Cir. 2006) [2]

11          To date the fundamentally important ballot access implications still have not been

12   considered by any federal court.

13          The clear and unequivocal history over the more than a decade since the enactment

14   of Top-Two and over the ten years since the decision in *Rubin*, has proven that the barrier to

15   minor parties gaining access to the general election ballot has been proven beyond question to be

16   functionally insurmountable, constituting a severe burden by any measure, triggering strict

17   scrutiny analysis under well-settled ballot access jurisprudence, and requiring compelling state

18   interests and the application of the least restrictive means to achieve any such compelling

19   interests.

20          There certainly are no compelling, important, or even rational, legitimate state interests in

21   limiting the general election ballot to two candidates, especially in light of the indisputably

22   demonstrated discriminatory impact this has had on minor parties, their candidates, and

23   supporting voters.

24          Top-Two violates Plaintiffs' First and Fourteenth Amendment rights and, most relevant for

25          [2] "The Supreme Court has held that ballot access history is an important factor in
     determining whether restrictions impermissibly burden the freedom of political association: "Past
26   experience will be a helpful, if not always unerring, guide: it will be one thing if independent
     candidates have qualified with some regularity and quite a different matter if they have not."
27   *Storer,* 415 U.S. at 742. The "inevitable question for judgment" is whether "a reasonably diligent
     independent candidate [could] be expected to satisfy the signature requirements, or will it be only
28   rarely that the unaffiliated candidate will succeed in getting on the ballot?"

3

1  the instant purposes, Plaintiffs' claims in the FAC are more than plausible and must be permitted

2  to go forward.

3      Plaintiffs will make a couple of preliminary points, present the analytical framework for the

4  kind of ballot access challenges presented by the case, and will then address the specific

5  arguments in the Defendant's Motion to Dismiss, along with any position taken by the

6  Intervenor-Defendants not otherwise addressed in the response to the Defendant's motion.

7      ### III.   PRELIMINARY POINTS

8      There are two preliminary points to be made before discussing the applicable legal standard

9  for the Court's evaluation of the motions to dismiss and the substantive opposition.

10     **A. Judicial Notice is to be Used Sparingly**

11     First, the Defendant and Intervenors have made voluminous submissions in support of their

12  motions.  The bulk of their respective filings are comprised of matters with respect to which they

13  each ask the Court to take judicial notice.  In evaluating a Rule 12(b)(6) motion to dismiss, a

14  court's consideration generally is limited to the allegations in the pleadings, exhibits attached to

15  the Complaint and matters properly subject to judicial notice.  *Genasys Inc. v. Vector Acoustics,*

16  *LLC*, 638 F. Supp.3d 1135 (S.D. Cal. 2022).  However, courts must be cautious and should only

17  take judicial notice of facts that are undisputed and relevant to the issues presented in the motion

18  to dismiss and should not draw inferences in favor of the defendant based on extrinsic evidence.

19  *Metropolitan Creditors' Trust v. Pricewaterhousecoopers, LLP*, 463 F.Supp.2d 1193 (E.D. Wash.

20  2006); *Malheur Forest Fairness Coalition v. Iron Triangle, LLC*, 699 F. Supp.3d 1086 (D. Ore.

21  2023).  Indeed, the Ninth Circuit has emphasized a cautious approach to judicial notice in the

22  context of Rule 12(b) motions to dismiss, especially when the facts at issue are in dispute and the

23  request for judicial notice is especially broad, making it clear, *inter alia*, that judicial notice

24  should not be used to reject factual allegations in a plaintiff's Complaint.  *See CPI Advanced, Inc.*

25  *v. Kong Byung Woo Comm. Ind. Co., Ltd*, 135 Fed. Appx. 81 (9th Cir. 2005); *Motul S.A. v. USA*

26  *Wholesale Lubricant, Inc.*, 686 F. Supp.3d 900 (N.D. Cal. 2023)(the court cannot take judicial

27  notice of disputed facts in the proffered records); *Metropolitan Creditors' Trust, Id*; *Malheur*, *Id*.

28

4

1    (denying judicial notice where the defendant sought to introduce extrinsic evidence to disprove

2    plaintiff's factual allegations).

3    **B.  Intervenors Cannot Independently Decide the State's Interests**

4        Secondly, while intervenors may participate in litigation to ensure that their perspective is

5    considered, they do not have the right or authority to determine or argue independently as to what

6    the state's interests are in support of the legislative restriction at issue in the case.  *See e.g, PEST*

7    *Committee v. Miller*, 648 F. Supp.2d 1202 (D. Nev. 2009); *Brumback v. Ferguson*, 343 F.R.D.

8    335 (E.D. Wash. 2022).  This is particularly relevant and important in a ballot access case in

9    which, as will be discussed in greater detail below, the analytical framework requires a court to

10   consider the character and magnitude of the burden on ballot access and then identify and

11   evaluate the precise interests put forward by the State as justification for the burden imposed by

12   the restriction at issue.  *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Whittaker v.*

13   *Mallott*, 259 F. Supp.3d 1024 (D. Alaska 2017).  And it is even more so where, as here, Plaintiffs

14   allege that the ballot access restriction at issue is so onerous as to require strict scrutiny, and

15   support by compelling state interests and the least restrictive means to accomplish those

16   compelling interests.  *See, e.g.*, *Breck v. Stapleton*, 259 F. Supp.3d 1126 (D. Mont. 2017).

17        **IV.    LEGAL STANDARD FOR THE MOTION TO DISMISS**

18       Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can
19   be based on the lack of a cognizable legal theory or the absence of sufficient facts
     alleged under a cognizable legal theory." *See Balistreri v. Pacifica Police Dep't*,
20   901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short
     and plain statement of the claim showing that the pleader is entitled to
21   relief.'" *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955,
     167 L. Ed. 2d 929 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a
22   complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed
     factual allegations." *See id.* Nonetheless, "a plaintiff's obligation to provide the
23   grounds of his entitlement to relief requires more than . . . a formulaic recitation of
     the elements of a cause of action." *See id.* (internal quotation, citation, and
24   alteration omitted).
25
         In analyzing a motion to dismiss, a district court must accept as true all
26   material allegations in the complaint and construe them in the light most favorable
     to the nonmoving party. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.
27   1986). "To survive a motion to dismiss," however, "a complaint must contain
     sufficient factual material, accepted as true, to 'state a claim to relief that is
28

5

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

 *Schultz v. Harry S. Truman Scholarship Found*., 2023 U.S. Dist. LEXIS 40767, *5-6 (N.D. Cal., March 10, 2023)(Chesney, J.)

Beyond any question, the detailed factual allegations in the FAC state cognizable claims for relief and are not just plausible; they are verifiably true and accurate.  The Motions to Dismiss must be denied.

## V. *ANDERSON/BURDICK* BALLOT ACCESS ANALYTICAL FRAMEWORK:

As will be discussed below, the primary focus of the motions to dismiss is on the claim that certain plaintiffs' claims are barred by *res judicata*.  That is a matter that is mainly outside traditional ballot access analysis and will be addressed below.  However, ultimately the underlying issues in this case center around constitutional claims that the plaintiff parties' and candidates' rights to access to the general election ballot and plaintiff voters' rights to cast their votes to elect candidates and parties of their choice under the First and Fourteenth Amendments are being denied by California's Top-Two system.  The Court must be guided by the *Anderson/Burdick* analytical framework in evaluating the claims.

The First and Fourteenth Amendments afford all candidates vying for elected office, and their voting constituencies, the fundamental right to associate for political purposes and to participate in the electoral process and espouse their political views. *See, e.g., Clingman v. Beaver*, 544 U.S. 581, 586 (2005); *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Anderson*, 460 U.S. at 787-88; *Williams v. Rhodes*, 393 U.S. 23, 30 (1968); *Lee v. Keith*, 463 F.3d 763, 767-68 (7th Cir. 2006) (quoting *Clingman*, 544 U.S. at 586. Placing restrictions on candidates' and political parties' access to the ballot interferes with their right to associate for political purposes and the rights of qualified voters to cast their votes for the candidates of their choice. *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986) (*citing Williams*, 393 U.S. at 30); *see also*

1  *Norman v. Reed*, 502 U.S. 279 (1992); *Anderson*, 460 U.S. at 786; *Ill. State Bd. of Elections v.*

2  *Socialist Workers Party*, 440 U.S.173, 184 (1979).

3      Ballot-access requirements that place more burdensome restrictions on certain types of

4  candidates than on others implicate rights under the Equal Protection Clause as well. *See*

5  *Williams*, 393 U.S. at 30-31; *Green Party of Tennessee v. Hargett*, 791 F.3d 684, 695 (6th Cir.

6  2015) (finding that a ballot access restriction that "imposes a greater burden on minor parties

7  without a sufficient rationale put forth by the state . . . violates the Equal Protection Clause"); *see*

8  *also Anderson v. Celebrezze*, 460 U.S. 780, 786 n.7 (1980); *Lubin v. Panish*, 415 U.S. 709, 713-

9  714 (1974); *Libertarian Party of Ill. v. Ill. State Bd. of Elections*, 164 F. Supp. 3d 1023, 1029

10  (N.D. Ill. 2016), *affirmed by*, *Libertarian Party of Illinois v. Scholz*,  872 F.3d 518, 523-24 (7th

11  Cir. 2017)(discussing Equal Protection principles applied to restrictions which discriminate

12  against minor parties in favor of major parties).

13      In striking down Ohio's ballot access restrictions in *Anderson v. Celebrezze*, 460 U.S. 780

14  (1983), the Court set out the requisite analytical framework as follows:

15      Constitutional challenges to specific provisions of a State's election laws therefore cannot

16  be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions.  Instead, a

17  court must resolve such a challenge by an analytical process that parallels its work in ordinary

18  litigation.  It must first consider the character and magnitude of the asserted injury to the rights

19  protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate.  It then

20  must identify and evaluate the precise interests put forward by the State as justifications for the

21  burden imposed by its rule.

22      In passing judgment, the Court must not only determine the legitimacy and strength of each

23  of those interests; it also must consider the extent to which those interests make it necessary to

24  burden the plaintiff's rights.  Only after weighing all these factors is the reviewing court in a

25  position to decide whether the challenged provision is unconstitutional.  *Anderson*, 460 U.S. at

26  789. (Internal citation omitted).

27      In analyzing a particular burden to First and Fourteenth Amendment rights in the ballot

28  access context, "the rigorousness of our inquiry into the propriety of a state election law depends

7

1    upon the extent to which a challenged regulation burdens First and Fourteenth Amendment

2    rights." *Burdick v. Takushi,* 504 U.S. 428, 434 (1992). Regulations imposing severe burdens on

3    associational rights must be narrowly tailored to advance a compelling government interest.

4    *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358 (1997); *Pierce v. Jacobsen,* 44 F.3d

5    853, 862 (9th Cir. 2002)(state bears the burden of proving the regulation is narrowly tailored to

6    meet the compelling interest). Regulations imposing lesser burdens are subject to less intensive

7    scrutiny, and reasonable, nondiscriminatory restrictions ordinarily will be sustained if they serve

8    important regulatory interests. *Id.*

9       Where the State imposes only reasonable and genuinely neutral restrictions on associational

10   rights, there is no threat to the integrity of the electoral process and no apparent reason for judicial

11   intervention. As such restrictions become more severe, however, and particularly where they have

12   discriminatory effects, there is increasing cause for concern that those in power may be using

13   electoral rules to erect barriers to electoral competition. In such cases, applying heightened

14   scrutiny helps to ensure that such limitations are truly justified and that the State's asserted

15   interests are not merely a pretext for exclusionary or anticompetitive restrictions." *Clingman*, 544

16   U.S. at 603 (O'Connor, concurring); *Id*. at 586-587 ("Regulations that impose severe burdens on

17   associational rights must be narrowly tailored to serve a compelling state interest); *Republican*

18   *Party of Minnesota v. White*, 536 U.S. 765, 774-775 (2002)(same); *California Pro-Life Council,*

19   *Inc. v. Rudolph,* 507 F.3d 1172, 1178 (9th Cir. 2007).

20       "[W]hat is demanded (by the State) may not be so excessive or impractical as to be in

21   reality a mere device to always, or almost always, exclude parties with significant support from

22   the ballot.  The Constitution requires that access to the electorate be real, not 'merely

23   theoretical.'" *American Party of Texas v. White,* 415 U.S. 767, 783 (1974).

24       In this analysis, "the burden is on the state to 'put forward' the 'precise interests ... [that are]

25   justifications for the burden imposed by its rule,'" and to "explain the relationship between these

26   interests" and the challenged provision. *Fulani v. Krivanek*, 973 F.2d 1539, 1544 (11th Cir. 1992)

27   (*quoting Anderson*, 460 U.S. at 789). "The State must introduce evidence to justify both the

28

8

1  interests the State asserts and the burdens the State imposes on those seeking ballot access."

2  *Bergland v. Harris*, 767 F.2d 1551, 1554 (11th Cir. 1985).

3       Courts are to determine the appropriate level of scrutiny based on the seriousness of the

4  burden imposed. "Regulations imposing severe burdens ... must be narrowly tailored and advance

5  a compelling state interest," while "[l]esser burdens ... trigger less exacting review, and a State's

6  important regulatory interests will usually be enough to justify reasonable, nondiscriminatory

7  restrictions." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358-59 (1997) (citations and

8  internal quotation marks omitted).

9       In cases specifically addressing ballot access restrictions, courts look to the individual

10  restrictions in light of the statutory scheme as a whole. *See Ariz. Libertarian Party v. Reagan*, 798

11  F.3d 723, 730 (9th Cir. 2015); *Nader v. Brewer,* 531 F.3d 1028, 1035 (9th Cir. 2008). "[T]he

12  burden on plaintiffs' rights should be measured by whether, in light of the entire statutory scheme

13  regulating ballot access, 'reasonably diligent' candidates can normally gain place on the ballot, or

14  whether they will rarely succeed in doing so." *Id.* (quoting *Libertarian Party of Washington v.*

15  *Munro,* 31 F.3d 759, 763 (1994)); *Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012)("In (the

16  ballot access restrictions) setting, we have held that 'the burden on plaintiffs' rights should be

17  measured by whether, in light of the entire statutory scheme regulating ballot access, 'reasonably

18  diligent' candidates can normally gain a place on the ballot, or whether they will rarely succeed in

19  doing so.'" *Citing Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008) (quoting *Libertarian*

20  *Party of Wash. v. Munro*, 31 F.3d 759, 762 (9th Cir. 1994)).

21       **VI.    DISCUSSION - THE DEFENDANT'S MOTION TO DISMISS**

22       Each of the Defendant's arguments for dismissal will be addressed here *seriatim*.

23       **A.  This Case is Not Barred by *Res Judicata*.**

24       The first argument for dismissal the Defendant makes is that this action is barred by *res*

25  *judicata*, in light of the California state court decision in *Rubin v. Padilla*, 233 Cal.App.4th 1128

26  (2015) [ECF No. 35 at 2, 5-6, 8-11].

27       There are several reasons why this Court should not dismiss this action.  Preliminarily,

28  however, Plaintiffs would note that the Defendant has advised the Court that its *res judicata*

9

1    argument for dismissal is directed solely at Plaintiffs Peace and Freedom Party, Libertarian Party

2    of California, and Green Party of California and should not be considered as a basis for dismissal

3    of the claims brought by Plaintiffs American Solidarity Party of California, Lightfoot, Dehn,

4    Dougherty, Patterson, Reveles, or Pittman [ECF No. 35 at 8, n.5].[3]  This is consistent with

5    relevant *res judicata* on the subject.  These latter plaintiffs were neither parties to the litigation in

6    *Rubin* nor are they in privity with the litigating parties in *Rubin*.  *See e.g.*, *Perez-Guzman v.*

7    *Gracia*, 346 F.3d 229, 234-235 (1st Cir. 2003).

8           The case also should not be dismissed on *res judicata* ground as to the three political parties

9    to which this dismissal argument is directed.

10          **(1) The Rubin Court Made Demonstrable Material Mistakes.**

11          The court in *Rubin* indisputably based its decision on some mistaken material facts and

12    conclusions.  For example, the court in *Rubin*, cited as one purpose (and benefit) of Top-Two is

13    that with the enactment of Top-Two, "membership in a qualified party is no longer a condition to

14    participation in the primary election…" *Id*. at 1145.  The undisputed fact of the matter is, since

15    2002, independents in California could vote in the Democratic or Republican primaries for

16    congressional and state offices.

17          The *Rubin* court mistakenly understood that the primary under Top-Two is held exclusively

18    in June before a November general election, *Rubin*, 233 Cal. App. 4th at 1137-1138.  That is

19    wrong.  Indeed, one of the claims in the FAC is that the March primary that is held under the

20    Top-Two system, in combination with the other restrictions imposed by Top-Two, renders Top-

21    Two unconstitutional [ECF No. 29 at ¶¶33, 46].  It is undisputed that Top-Two requires a March

22    primary in presidential election years. *Cal. Elec. Code §1202*.  Tellingly, the court in *Washington*

23    *State Grange v. Washington State Republican Party* (*Grange* II), 676 F.3d 784, 794[4] (9th Cir.

24    2012), in considering that State's Top-Two system noted the unconstitutional burden the Court in

---

25          [3] Intervenor-Defendants appear to argue that *res judicata* should apply to the individual
26    plaintiffs as well; but their position should not be considered as a basis for dismissal in light of
      the Defendant's express position to the contrary and, if considered, it should be rejected on the
27    authority and rationale of  *Perez-Guzman v. Gracia*, 346 F.3d 229, 234-235 (1st Cir. 2003).

28          [4] There is a typographical error in the FAC with respect to this citation at ECF No. 29, n.2.
      The erroneous citation should be to page 794 of this case, not 894.

1    *Anderson* found a March deadline for minor parties and independents to be and expressly

2    distinguished the Washington scheme because it provided for a primary "… **in August, not**

3    **March.**" (Emphasis added).

4    The *Rubin* court at 233 Cal. App. 4th 1135, describes the Top-Two system as an "open

5    nonpartisan election, followed by a runoff between the top two candidates" and then concluded

6    that "for ballot access purposes, access to California's primary election is constitutionally

7    indistinguishable from access to the general election." *Id*. at 1146.  That misguided assertion is

8    constitutionally indefensible.  No one can be elected to office from the primary – even if only a

9    single candidate runs in the primary; moreover, it would be unlawful to elect a member of

10   Congress before November.  *Foster v. Love, 522 U.S. 67* (1997).  If this is the Defendant's

11   position in this case, then Plaintiffs would request an opportunity to amend their FAC to allege a

12   violation of federal statutory law for holding an "election" for federal legislators prior to

13   November.  *Id*.

14   Similarly, the court in *Rubin* wrote that "[I]n deciding these cases, the Supreme Court never

15   distinguished doctrinally between access to the primary election and access to the general

16   election." *Id*. at 1145, *citing Williams v. Rhodes*, 393 U.S. 23 (1968).  That simply is not true.

17   The court in *Williams* clearly and unequivocally was concerned about access to the general

18   election ballot – a ballot from which candidates could be elected to office.

19   The *Williams* court was intent on striking down exactly the kind of monopoly California's

20   Top-Two system has created for the major parties with respect to access to the general election

21   ballot.  The Court in *Williams* wrote the following, which is especially applicable here: "The fact

22   is, however, that the Ohio system does not merely favor a "two-party system"; it favors two

23   particular parties -- the Republicans and the Democrats -- and in effect tends to give them a

24   complete monopoly. There is, of course, no reason why two parties should retain a permanent

25   monopoly on the right to have people vote for or against them. Competition in ideas and

26   governmental policies is at the core of our electoral process and of the First

27   Amendment freedoms." *Williams*, *Id*. at 32.

28

It is pure nonsense to even suggest the leading ballot access cases since *Williams* "have not distinguished doctrinally between access to the primary election and access to the general election." *Rubin* at 1145. The cases are concerned with access to the **general election ballot** – the only forum from which a candidate can be elected to office and in which a voter can elect a candidate into office. *See e.g.*, *Mandel v. Bradley*, 432 U.S. 173 (1977); *See also, Storer v. Brown*, 415 U.S. 724, 728-729 (1974), citing *Williams*, 393 U.S. at 25(emphasizing that *Williams* distinguished between rights with respect to the primary and rights with respect to getting on the general ballot, writing that even when citizens are free to associate in the primary nominating process and to cast their votes in the general election, "… **the State must also provide feasible means for other political parties and other candidates to appear on the general election ballot**.")(Emphasis added); *Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340, 1363 (N.D. Ga. 2016), *quoting from Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 590 (6th Cir. 2006)("In other words, the restrictions at issue in this case serve to prevent minor parties from engaging in **the fundamental political activity of placing their candidate on the general election ballot in hopes of winning votes and, ultimately, the right to govern.** The restrictions also limit the ability of voters to cast their votes effectively.").[5]

Additionally, the court in *Rubin,* wrote that the Supreme Court in *California Democratic Party v.* Jones, 530 U.S. 567, 585-586, gave its "constitutional imprimatur to the top-two system, at least in dictum." *Rubin*, 233 Cal. 4th at 1143. That is demonstrably wrong. Justice Scalia wrote the decision in *Jones*, yet he dissented in *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008). Justice Scalia clearly envisioned a primary without party labels and that is not this Top-Two system.

The *Rubin* court understood this Top-Two system to be similar to the ballot access restrictions upheld in *Munro v. Socialist Workers Party*, 479 U.S. 189 (1986), writing, incredibly,

---

[5] *See also*, Calao, Broockman, Huber, Kalla, *Tracing Polarization's Roots:  A Panel Study of Voter Choice in Congressional Primary and General Elections*. This article authoritatively argues that there is a big difference between the bases for voters to make far more informed decisions about candidates in a general election than in a primary election, emphasizing the distinctively different factors between the primary and general election forums. https://osf.io/preprints/osf/7xbza_v1

that "[T]he 1 percent rule approved in *Munro* is constitutionally indistinguishable from the elimination of lesser candidates by the primary election under Proposition 14." *Rubin*, *Id*. at 1147. In fact, the two are readily and materially distinguishable for constitutional analysis purposes and all other purposes. To meet the 1 percent requirement in *Munro* or any other "modicum of support" case, the minor party and its candidate do not have to actually beat the major party candidates who have far greater resources and organizational structures; they just have to get 1 percent of the votes in the primary (potentially along with many others in the field). In sharp contrast, under Top-Two, in a race in which there is at lease one Republican and one Democrat candidate, the minor party and its candidate must actually beat a major party candidate in order to get access to a ballot from which he or she actually can be elected.

### (2) The Primary Argument Made Here Was Not Made and Could Not Have Been Made in *Rubin*. Other Arguments Made in the FAC Also Were Not in *Rubin*

The *Rubin* court did not have before it a central argument made in the instant case – that the demonstrated history of the exclusion of minor parties from the general election ballot (and inclusion solely of Democratic or Republican Party candidates) in the hundreds of elections since the passage of Top-Two in which there is at least one Republican and one Democrat on the primary ballot constitutes an unconstitutionally severe burden not justified by any compelling state interest or the least restrictive means [ECF No. 29 at ¶27].

The instant case argues that in the thirteen years of experience since Top-Two's enactment (and ten years since *Rubin* was decided), relevant ballot access history proves that the ballot access burden imposed by Top-Two is severe and unconstitutional. There was not any such argument before the court in *Rubin*, nor could there have been, and this is a vitally important argument in the context of a First and Fourteenth Amendments challenge to a ballot access barrier.

Though not determinative, "past candidates' ability to secure a place on the ballot can inform the court's analysis." *Daien v. Ysursa*, 711 F. Supp. 2d 1215, 1230 (D. Idaho 2010); *See Storer v. Brown*, 415 U.S. 724, 742 (1974)(" ... in the context of California politics, could a reasonably diligent independent candidate be expected to satisfy the signature requirements, or

1    will it be only rarely that the unaffiliated candidate will succeed in getting on the ballot? Past

2    experience will be a helpful, if not always an unerring, guide: it will be one thing if independent

3    candidates have qualified with some regularity and quite a different matter if they have not."); 

4    *Mandel v. Bradley*, 432 U.S. 173, 177-178 (1977)(noting the importance of ballot access history

5    and remanding based on the lower court's failure to consider the history and other criteria

6    required under *Storer*).  *See also*, *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723 (9th Cir. 2015);

7    *Ariz. Libertarian Party v. Bennett*, 784 F.3d 611 (9th Cir. 2015); *Libertarian Party of Arkansas v.*

8    *Thurston*, 962 F.3d 390, 399 (8th Cir. 2020)(ballot history is important to consider in order to

9    evaluate the necessity and burdensomeness of the restriction and to evaluate whether it reflects

10   the least restrictive means).

11          Additionally, the *Rubin* court did not have before it the claim that the March deadline in a

12   Presidential election year is unconstitutional. [ECF No. 29 at ¶¶33, 46].  The *Rubin* court

13   understood the primary to be in June.  *Rubin*, 233 Cal. App. 4th at 1137-1138. That is significant,

14   as noted above and as the court in *Grange II* noted at 676 F.3d 794.

15          Also, the *Rubin* court expressly noted, the only arguments before it were from the

16   perspective of the Party plaintiffs and not from the perspective of the plaintiffs in their roles as

17   voters or candidates.  *Rubin*, 233 Cal. App. 4th at 1144, n.9.  Plaintiffs herein argue that their First

18   and Fourteenth Amendment rights as Parties, voters, and candidates, respectively, are violated.

19   [See FAC generally and especially ¶¶49, 50].

20          The fact that material legal arguments were not before the court whose decision a party

21   seeks to use as a *res judicata* bar is a well-recognized basis for denying *res judicata* effect.  *See*

22   *e.g.*, *Libertarian Party of Ill. v. Ill. State Bd. of Elections*, 164 F. Supp. 3d 1023, 1031-1032 (N.D.

23   Ill. 2016)(striking down Illinois' full-slate ballot access requirement, notwithstanding several

24   earlier decisions upholding it), *affirmed by Libertarian Party of Ill. v. Scholz,* 872 F.3d 518 (7th

25   Cir. 2017).

26          Dismissing this constitutional challenge to Top-Two on behalf of voters, candidates, and

27   political parties based on *res judicata* grounds when the *Rubin* court did not have that important

28   ballot access legal argument or the underlying ballot access factual history would be an

1    inappropriate use of *res judicata*, would be wrong and, indeed, would be a manifest injustice.  *See*

2    *Montana v. United States*, 440 U.S. 147 (1979).  Just as it would be inappropriate to allow

3    collateral estoppel to bar later litigation where doing so would be a manifest injustice or where

4    the issue is of significant importance, *see Kennedy v. Seattle*, 94 Wn.2d 376, 378-79 (1980), *Los*

5    *Angeles v. San Fernando*, 14 Cal. 3d 199, 230, 537 P.2d 1250 (1975), it would truly be a manifest

6    injustice to bar this case from going forward on *res judicata* grounds and to ignore the severe

7    burden Top Two has created for small parties, candidates, and voters.

8        **B.  Defendant's Additional Arguments for Dismissal are Unavailing.**

9        Pages 2-8 of the Defendant's Motion to Dismiss purport to provide the Court with some

10    background, reference to the prior state court decision on which Plaintiff relies for her claim that

11    "most of the political party Plaintiffs' claims are barred by *res judicata,"* a rendition of the claims

12    made by the Plaintiffs, and references to the standard for a Rule 12(b)(6) motion and the

13    analytical framework for ballot access cases, and the [ECF No. 35 at 2-8].

14        The FAC [ECF # 29] speaks for itself as to Plaintiffs' allegations and, of course, the

15    material allegations set forth in the FAC must be taken as true and must be construed in the light

16    most favorable to the Plaintiffs.  *Schultz v. Harry S. Truman Scholarship Found*., 2023 U.S. Dist.

17    LEXIS 40767, *5-6 (N.D. Cal., March 10, 2023)(Chesney, J.).  All are more than plausible.[6]

18        Plaintiffs have set forth hereinabove a detailed explanation of the applicable analytic

19    framework used in this Circuit and around the country for ballot access cases (The

20    *Anderson/Burdick* framework) and rely on that in response to the version presented by the

21    Defendant. (Section V. above)

22

23    _____
        [6] Defendant asserts that, while the FAC purports to allege one cause of action, it really
24    makes multiple separate claims [ECF No. 35 at 6].  The Defendant is mistaken.  *Anderson* and all
        relevant ballot access authority directs that an evaluation in a ballot access challenge must look at
        the restrictions imposed as a whole in analyzing the severity of the burden, the legitimacy of the
25    claimed State interests, and in considering less restrictive alternatives.  The FAC challenges the
        Top-Two system as a whole and cites the restrictions at issue as unconstitutional in combination
26    with each other.  *See Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 730 (9th Cir. 2015); *Nader
        v. Brewer,* 531 F.3d 1028, 1035 (9th Cir. 2008). "[T]he burden on plaintiffs' rights should be
27    measured by whether, in light of the entire statutory scheme regulating ballot access, 'reasonably
        diligent' candidates can normally gain place on the ballot, or whether they will rarely succeed in
        doing so." *Id.* (quoting *Libertarian Party of Washington v. Munro,* 31 F.3d 759, 763 (1994));
28    *Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012).

15

1    At pages 8-11 of Defendant's Motion to Dismiss, she presents her argument that some of

2    the claims brought by some of the Plaintiffs are barred by *res judicata*, in light of the decision in

3    *Rubin v. Padilla*, 233 Cal. App. 4th 1128 (2015) [ECF No. 35 at 8-11].  Plaintiffs have addressed

4    above the reasons this Court should not find any claims by any Plaintiffs barred by *res judicata*

5    and relies on that discussion in response to this portion of the Defendant's Motion. (Section VI.

6    A. above).

7    At pages 11-14 of Defendant's Motion to Dismiss, she argues that "courts have already

8    approved the Top-Two primary as a constitutional method of choosing general election

9    candidates." [ECF No. 35 at 12-14].[7]  Defendant points first to *California Democratic Party v.*

10    *Jones*, 530 U.S. 567 (2000); but, of course, any such "approval" would be nothing more than

11    *dicta* in that case which struck down as unconstitutional an earlier California version of a blanket

12    primary and, as Defendant acknowledges, the case did not involve or address ballot access

13    considerations [ECF No. 35 at 12].

14    Defendant next refers for support to the decision in *Washington State Grange v.*

15    *Washington State Republican Party*, 552 U.S. 442 (2008) [ECF No. 35 at 12]; but, of course, as

16    the Court expressly noted, the constitutionality of ballot asset considerations was not raised and

17    was not in any way before the Court.  *Id*. 552 U.S. at 458, n.11.

18    Defendant then refers for support to the decision in *Washington State Grange v.*

19    *Washington State Republican Party*, 676 F.3d 784 (9th Cir. 2012) [ECF No. 35 at 12-14].

20    Defendant asserts that in that case, the Ninth Circuit approved a Top-Two system in Washington

21    that was "very similar to California's system challenged here." [ECF No. 35 at 12].  However,

22    Defendant omits a material fact from her argument:  As noted above, the court in *Washington*

23    *State Grange v. Washington State Republican Party* ("*Grange* II"), 676 F.3d 784, 794 (9th Cir.

24    2012), in considering that State's Top-Two system noted the unconstitutional burden the Court in

25    *Anderson* found a March deadline for minor parties and independents to be and expressly

26    distinguished the Washington scheme because it provided for a primary "… **in August, not**

27    _____

        [7] As noted above, one cannot fairly say that the Court in *Jones* approved a Top-Two
28    system and certainly not one like the one at issue here, as Justice Scalia wrote the opinion in
        *Jones*, but dissented in *Washington State Grange* ("Grange I").

16

**March.**" (Emphasis added).  It is surprising that Defendant would omit that material fact from her argument, since she knows that one of the bases for Plaintiffs' constitutional challenge here is to the March primary requirement of California's Top-Two system in a Presidential election year (and June, not August, in a non-Presidential year) [See ECF No. 29 at ¶¶33, 46].

Finally, Defendant relies on the State court decision in *Rubin* [ECF No. 35 at 13-14].  The flaws with that argument are discussed at Section VI. A. (1) & (2) above and Plaintiffs will rely on that in response to this argument.  The major flaw and distinguishing factor in Defendant's argument in this regard, is that not one of the cases relied on had evidence of the severe burden that has been established by the exclusion of minor parties from the general election ballot in the more than a decade Top-Two has been in effect in every one of the hundreds of elections subject to Top-Two  in which there has been at least one Democrat and one Republican in the race, with one anomalous exception in a local race [ECF No. 29 at 9 & n.3].

At pages 14-16 of Defendant's Motion to Dismiss [ECF No. 35 at 14-16], she argues that the Top-Two system at issue does not pose a severe burden on Plaintiffs.  Defendant's argument once again ignores the allegations in the FAC regarding the history of exclusion in the more than a decade since the enactment of Top-Two and, indeed, ignores altogether the relevance of ballot access history under long-standing ballot access jurisprudence.  Defendant's argument is that where, as here, ready access to a primary election from which only the top two vote getters are given access to the general election ballot, is constitutionally sufficient to meet the Plaintiff parties' candidates, and voters' First and Fourteenth Amendment rights and she refers for support to *Munro v. Socialist Workers Party*, 479 U.S. 189 (1986).  *Munro*, in sharp material contrast, was a modicum of support ballot access case in which a minor party candidate could gain access to the general election ballot by obtaining at least 1% of the votes cast in the primary.  There was no limitation to only the top two finishers gaining ballot access; nor, most significantly, was a minor party required to beat major party candidates head to head, as the only possible route to general ballot access in a race in which there is at least one Democrat and one Republican in the primary.  That is the case here.

The amount of support a minor party candidate gets in a primary under the instant Top-Two system is irrelevant in such a race, so long as two major party candidates have more. Defendant ignores the cases that make clear it is access to the general election ballot that is key and especially for minor parties who need such access in order to grow and for voters who wish to vote for someone in a forum from which he or she can actually be elected to office who has a message that is different from the two major parties' message.

Defendant acknowledges that the *Anderson* court struck down a March deadline as unconstitutional, but argues, nonetheless, that the March primary date under Top-Two in a Presidential election year does not present any burden at all. Defendant asserts that the FAC does not provide any supporting authorities for its assertion or explain how it is a burden [ECF No. 35 at 15]. Defendant is mistaken. Plaintiffs, of course, have no obligation to provide citations to authority in a Complaint; but these Plaintiffs actually have provided authority to numerous cases that have struck down similarly early deadlines and that explain the reasons why such early deadlines are unconstitutional [See ECF No. 29 at 14, n.11]. There are more.

Plaintiffs also refer in the FAC to the express notation by the *Grange II* court that in upholding the constitutionality of Washington's Top-Two system it did so based, in part, on the fact that the primary was in August and not March. [ECF No. 29 at 3, n.2]. *See also*, *Libertarian Party of Ohio v. Blackwell,* 462 F.3d 579, 590-591 (6th Cir. 2006)(collecting cases striking down early deadlines, applying strict scrutiny to early deadlines, and explaining the impact of early deadlines on minor parties); *Libertarian Party of Arkansas v. Thurston*, 962 F.3d 390, 400 (8th Cir. 2020)(explaining problems for minor parties and independents associated with early deadlines). The Court in *Williams v. Rhodes* 393 U.S. 23, 33 (1968) also emphasized the burden imposed on minor parties in particular by early deadlines:

> Since the principal policies of the major parties change to some extent from year to year, and since the identity of the likely major party nominees may not be known until shortly before the election, this disaffected "group" will rarely if ever be a cohesive or identifiable group until a few months before the election. Thus, Ohio's burdensome procedures, requiring extensive organization and other election activities by a very early date, operate to prevent such a group from ever getting on the ballot and the Ohio system thus denies the "disaffected" not only a choice of leadership but a choice on the issues as well.

18

Defendant next argues that "California's prohibition on write-in candidates also does not severely burden Plaintiffs." [ECF No. 35 at 16]. Plaintiffs do not allege that the prohibition on write-ins standing alone is unconstitutional. Rather it is expressly alleged in the FAC that the prohibition on write-ins "in combination with" the other ballot access restrictions, violates the First and Fourteenth Amendment rights of the Plaintiffs in their respective capacities. [ECF No. 29 at ¶48]. Plaintiffs also do not suggest that allowing write-ins would cure the constitutional deficiencies in Top-Two. *See Anderson*, 460 U.S. at 799, n.26 (write-ins are not an adequate substitute for listing a candidate's name on the printed ballot). Prohibiting write-ins is alleged to be an attribute of Top-Two that highlights that the only way to gain access to the general election ballot (or to be able to cast a vote that could result in the election of a voter's choice) is by the candidate beating the major party candidates head to head in any primary in which there is at least one Democrat and one Republican candidate and that the general election ballot is limited to two candidates. As one court opined, if a route to general election ballot access is too difficult to meet and the only alternative route open is to appear as a write-in candidate, the candidate is "hobbled." *Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340, 1361-1362 (N.D. Ga. 2016). This is all the more so when even write-ins are prohibited.

At pages 16-18 of the Motion to Dismiss, Defendant recites, without any meaningful justification, boilerplate, generic purported state interests which she claims support the restrictions on ballot access imposed by the Top-Two system. [ECF No. 35 at 16]. Not only does the Defendant fail to justify the claimed state interests or provide any meaningful actual relationship between them and the burden imposed, she asserts that she is not required to make any "particularized showing of the existence of the basis for the state interest prior to imposition of reasonable restrictions on ballot access or a showing as to the effects of its top-two primary system." [ECF No. 35 at 16, n.7]. The assertion that the State has no obligation to justify its generic boilerplate re-tread claimed interests or to provide any evidence regarding their necessity and relationship to the burden imposed is contrary to abundant authority.

As noted above in Section V., the Court in *Anderson* expressly held that in passing judgment on the constitutionality of the ballot access restriction at issue, the Court must not only

1    determine the legitimacy and strength of each of those interests; it also must consider the extent to

2    which those interests make it necessary to burden the plaintiff's rights.  Only after weighing all

3    these factors is the reviewing court in a position to decide whether the challenged provision is

4    unconstitutional.  *Anderson*, 460 U.S. at 789. (Internal citations omitted).  *See also*, *Pierce v.

5    Stapleton*, 505 F. Supp. 3d 1059, 1067 (D. Mont. 2020), *aff'd in part, rev'd in part and remanded

6    sub nom. Pierce v. Jacobsen*, 44 F.4th 853 (9th Cir. 2022) ("A court considering a challenge to a

7    state election law must weigh "the character and magnitude of the asserted injury to the rights

8    protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against

9    "the precise interests put forward by the State as justifications for the burden imposed by its rule,"

10   taking into consideration "the extent to which those interests make it necessary to burden the

11   plaintiff's rights."); *Nader v. Brewer*, 531 F.3d 1028, 1024 (9th Cir. 2008); *Soltysik v. Padilla,* 910

12   F.3d 438 (9th Cir. 2018); *Bergland v. Harris*, 767 F.2d 1551, 1553-54 (11th Cir. 1985); *Green

13   Party of Georgia v. Kemp*, 171 F. Supp. 3d 1340, 1355-56, 1366-67 (N.D. Ga. 2016), *affirmed by

14   and Opinion adopted in whole by Green Party of Georgia v. Kemp*, 674 Fed. Appx 974 (11th Cir.

15   2017), *rehearing and rehearing en banc denied* (11th Cir., March 31, 2017)(requiring the

16   Secretary of State to prove the strength, legitimacy, and applicability of its claimed interests,

17   consistent with long-standing precedent; reaffirming that a "litmus-test" approach is prohibited);

18   *Green Party of Georgia. v. Georgia*, 551 Fed. Appx. 982 (11th Cir. 2014)(Same).

19       The State cannot just rely on stating abstract interests that, perhaps, have been important or

20   compelling in other cases where, as here, the ballot access restriction at issue does not advance

21   those interests. *Libertarian Party of Illinois v. Scholz*, 872 F.3d 518, 525 (7th Cir. 2017). In

22   evaluating the State's purported interests, even when the burden is not found to be severe, the

23   reviewing court must evaluate whether such purported interests serve the purpose the State claims

24   they are needed for and whether other less restrictive means could be used to serve such State

25   interests, to the extent the interests are deemed to be legitimate.  *Soltysik v. Padilla*, 910 F.3d 438,

26   445-448 (9th Cir. 2018).

27       The Court in *Anderson* rejected the use of any "litmus-test" to "separate valid from invalid

28   [ballot access] restrictions."  *Anderson,* 460 U.S. at 789.  Instead, a court determining whether a

20

1   challenged ballot access restriction is unconstitutional must: 1) evaluate the character and

2   magnitude of rights protected by the First and Fourteenth Amendments; 2) identify the State's

3   interests advanced as justifications for the burdens imposed by the ballot access restrictions; and

4   3) evaluate the legitimacy and strength of each asserted state interest, and determine whether and

5   to what extent those interests required burdening the plaintiffs' rights. *Id*.

6       In order to permit the required evaluation of competing interests, "[t]he State must

7   introduce evidence to justify both the interests the State asserts and the burdens the State imposes

8   on those seeking ballot access." *Id.*; *Bergland*, 767 F.2d at 1554. *See also*, *Mandel v. Bradley*,

9   432 U.S. 173, 178 (1977)(Court must sift through conflicting evidence and make findings of fact

10   as to the difficulty of obtaining signatures in time to meet the deadline); *Storer v. Brown*, 415

11   U.S. 724 (1974)(a court is required to examine the facts and circumstances of each case

12   individually and may not apply a "litmus test"); *Democratic Party v. Reed*, 343 F.3d 1198, 1205-

13   1207 (9th Cir. 2003)(a determination about the validity and justification for the purported State

14   interests vis a vis the burden imposed is not to be made in the abstract; rather the court must

15   evaluate whether the specific purported interest is actually addressed by the law; rejecting "voter

16   choice" and "voter participation" as justifying interests for a blanket primary).

17       Plaintiffs must be given the opportunity to develop an evidentiary record to demonstrate the

18   burden and to show that the restriction at issue does not advance, let alone serve the State's

19   purported interests. *Soltysik*, *Id*. at 447. In the instant case, as plausibly alleged in the FAC [ECF

20   No. 29 at ¶¶35-40], (undisputed in the Motions to Dismiss), and as will be discussed below, the

21   history we now have in the years since the passage of Top-Two demonstrates beyond any

22   question that the State's purported interests have actually been undermined by Top-Two.

23       Notwithstanding Defendant's assertion that she need not provide justification for the

24   claimed interests "prior to imposition," the present procedural posture is now after their

25   imposition to deny Plaintiffs access to the ballot and the opportunity to vote for their candidate

26   and issues in the general election. The court in *Green Party of Ga. v. Kemp*, 171 F. Supp. 3d

27   1340, 1366, n. 16 (N.D. Ga. 2016) noted this distinction and in response to the exact claim the

28

1    Defendant here makes, required the Secretary of State to demonstrate the importance of his

2    claimed interests and to show how the restrictions advanced those claimed interests.

3        The Defendant claims that the burden imposed by the Top-Two system is justified by State

4    interests in (1) increasing voter choice and voter participation; (2) streamlining the ballot; (3)

5    avoiding ballot overcrowding; and (4) reducing voter confusion.  [ECF No. 35 at 16-17].  These

6    generic, boilerplate, retread purported interests provide no meaningful justification for the burden

7    imposed and, based on the evidence now adduced after more than a decade of having Top-Two in

8    place, certainly are not served by the Top-Two system.

9        As alleged in the FAC, without any dispute in the Motions to Dismiss, voter participation

10    has decreased since Top-Two was enacted [ECF No. 29 at ¶¶38-39].  This makes sense since

11    voters who previously could vote in the general election for an alternative to the two major parties

12    now have no such opportunity.  Top-Two certainly does not serve an interest in increasing voter

13    choice, again, as alleged in the FAC without dispute in the Motions to Dismiss [ECF No. 35 at

14    ¶40].  With the enactment of Top-Two, voters in the general election, the only forum from which

15    a person can actually be elected to govern and carry out policy that might be of interest to or drive

16    a voter, the "voter choice" is limited to a maximum of two candidates.

17        The last three purported interests claimed by the Defendant are all remarkably similar –

18    streamlining the ballot, avoiding ballot overcrowding, and avoiding voter confusion.

19        It is the height of absurdity to even suggest that there is a legitimate, let alone compelling,

20    state interest in limiting access to the general election ballot to two candidates in order to avoid

21    ballot overcrowding or voter confusion.  Indeed, in his concurrence in *Williams*, Justice Harlan

22    expressly opined that "the presence of eight candidacies cannot be said, in light of experience, to

23    carry a significant danger of voter confusion." *Williams*, 393 U.S. 23, 47 (1968).

24        Moreover, it borders on hypocrisy to argue that limiting the general election ballot to two

25    candidates is necessary to avoid ballot overcrowding and voter confusion when the primary

26    election is filled with many more candidates, given the low threshold Defendant boasts about for

27    access to the primary.  *See Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340, 1366 (N.D. Ga.

28    2016).  This is even more emphatically so when, as here, Defendant argues that access to the

22

1   primary is a constitutionally adequate substitute for access to the general election ballot or, as the

2   *Rubin* court found at the State's behest, the primary under Top-Two is "constitutionally

3   indistinguishable" from the general election and, indeed, constitutes the election, with the general

4   election being the "run-off." *Rubin*, 233 Cal. App. 4th at 1135, 1146.[8]

5          Logically, the same interests and concerns for the State should apply with respect to the

6   Top-Two primary; but that clearly is not the case and that severely undermines the legitimacy, let

7   alone compelling nature claimed to attend these purported interests. Moreover, "streamlining the

8   ballot" when it comes to the general election ballot directly undermines the interest in "voter

9   choice.[9]"

10          Defendant argues at pages 18-19 of her Motion to Dismiss that Plaintiffs' Equal Protection

11   Claim has no merit because all parties, big and small are treated the same under Top-Two, with

12   the same opportunity to qualify as a top two finisher in the primary in order to gain general

13   election ballot access. [ECF No. 35 at 18-19].  Ballot access equal protection claims are evaluated

14   under the *Anderson/Burdick* framework just like First Amendment claims. *Norman v. Reed*, 502

15   U.S. 279, 288 n.8 (1992); *Dudum v. Arntz*, 640 F.3d 1098, 1106, n.15 (9th Cir. 2011).  Plaintiffs

16   rely on the *Anderson/Burdick* analysis discussed herein in response to Defendant's Equal

17   Protection argument.

18          Plaintiffs would add the following in response: "Under the Equal Protection Clause

19   'sometimes the grossest discrimination can lie in treating things that are different as though they

20   were exactly alike.'" *Merrifield v. Lockyer*, 547 F.3d 978, 985-986 (9th Cir. 2008)(*citing Cornwell*

---

8   "When the State makes the primary an "integral part of the procedure of choice," every eligible citizen's right to vote should receive the same protection as in the general election." *United States v. Classic*, 313 U.S. 299, 318 (1941); *Gray* v. *Sanders,* 372 U.S. 368 (1963).  *Clingman v. Beaver*, 544 U.S. 581, 610 (2005)(Stevens, J. dissenting).

   9 The following is just one example that demonstrates the danger of Top-Two's "streamlining" that limits the number of candidates on the general election ballot to two.  In 1999, in a California special election, Green Party candidate Audie Bock ran in a blanket primary.  She finished third behind two Democrats and, of course, under Top-Two, her candidacy would have been over, only the two Democrats would have advanced to the general election ballot and voters could not have cast their vote for the Green Party candidate.  However, California law at the time provided for the top vote-getter from each party to advance to the general election ballot.  Audie Bock won the general election with 50.55% of the vote.
https://elections.cdn.sos.ca.gov/sov/2000-primary/special.pdf

1    *v. Hamilton*, 80 F. Supp. 2d 1101 (S.D. Cal. 1999) and *Craigmiles v. Giles*, 312 F.3d 220 (6th

2    Cir. 2002) as two cases in which an Equal Protection violation was found notwithstanding

3    treatment for the plaintiffs that was the same as for other groups under the challenged statutory

4    framework).

5         Asserting that the two major parties are treated just like the minor parties under the Top-

6    Two system brings to mind the famous Anatole France quote: "The law, in its majestic equality,

7    forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal

8    bread."[10]  As the court wrote in *Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340, 1362 (N.D.

9    Ga. 2016), "'… burdens that fall on new or smaller parties fall disproportionately on 'those voters

10   whose political preferences lie outside the existing political parties.' *Anderson,* 460 U.S. at 793-

11   94, *citing Clements v. Fashing*, 457 U.S. 957, 964 (1982))."

12        Forcing minor parties to beat out major parties head to head just to gain access to the

13   general election ballot is not treating them alike in reality.  They are minor parties still because

14   they do not yet have the financial and other resources that the Democrats and Republicans have

15   thus far in America and if the barrier to general election ballot access imposed by Top-Two,

16   leaving this as the only route and limiting the ballot to two candidates remains in place, minor

17   parties cannot grow into parties able to compete.  Being kept off the general election ballot

18   unquestionably stifles a minor party's ability to grow.

19        In referring to the lesser resources of minor parties competing to put forward their

20   candidates and viewpoints, the Court wrote in *Williams*, granting "the States power to keep all

21   political parties off the ballot until they have enough members to win would stifle the growth of

22   all new parties working to increase their strength from year to year." *Williams*, 393 U.S. at 32.

23        Finally, Defendant argues at pages 20-21 of her Motion to Dismiss that Plaintiff American

24   Solidarity Party's Challenge to the "Party Preference" requirement fails for not alleging sufficient

25   facts [ECF No. 35 at 20-21].  Defendant asserts that she does not understand the claim and that it

26   _____

         [10] Jacques Anatole Francois Thibault ("Anatole France"), *The Red Lily* [1894], Ch. 7.
27   Louisiana tried to justify its requirement that all candidates alike have their race listed on the
     ballot.  The Court rejected this "alleged equality" argument as "superficial" just as it is here.
28   *Anderson v. Martin*, 375 U.S. 399, 404 (1964).

1    fails Rule 8's pleading requirement.  Of course, the FAC cites to *Soltysik v. Padilla*, 910 F.3d 438

2    (9th Cir. 2018) and to the statutory provision that bars it from listing its party name on the ballot

3    and this should be sufficient to establish standing and to state the claim.[11]  But if the Court is not

4    satisfied with that, Plaintiffs certainly can file a Second Amended Complaint for that or any other

5    purpose directed.

6    **VII.   CONCLUSION**

7
        **For more than two decades, this Court has recognized the constitutional
8       right of citizens to create and develop new political parties. The right
        derives from the First and Fourteenth Amendments and advances the
9       constitutional interest of like-minded voters to gather in pursuit of
        common political ends, thus enlarging the opportunities of all voters to
10      express their own political preferences**.

11   *Norman v. Reed*, 502 U.S. 279, 288 (1992).

12
        **There is, of course, no reason why two parties should retain a
13      permanent monopoly on the right to have people vote for or against them.
        Competition in ideas and governmental policies is at the core of our electoral
14      process and of the First Amendment freedoms. New parties struggling for
        their place must have the time and opportunity to organize in order to meet
15      reasonable requirements for ballot position, just as the old parties have had in
        the past.**
16

17   *Williams v. Rhodes*, 393 U.S. 23, 32 (1968).

18
        **When the variety and number of political parties increases, the chance of
19      oppression, factionalism, and non-critical acceptance of ideas decreases.**

20   *James Madison*

21
        **In our political life, third parties are often important channels through which
22      political dissent is aired: "All political ideas cannot and should not be
        channeled into the programs of our two major parties. History has amply
23      proved the virtue of political activity by minority, dissident groups, which
        innumerable times have been in the vanguard of democratic thought and
24      whose programs were ultimately accepted. . . . The absence of such voices
        would be a symptom of grave illness in our society."**
25

26

27   _____
        [11] *See also*, Jessica A. Levinson, *Is the Party Over?  Examining the Constitutionality of
28   Proposition 14 as It Relates to Ballot Access for Minor Parties*, 44 Loy. L. A. L. Rev. 463 (2011)
        (arguing for strict scrutiny in light of the burden imposed by Proposition 14).

*Willams v. Rhodes*, 393 U.S. 23, 39 (Douglas, J., Concurring), *quoting from, Sweezy v. New Hampshire*, 354 U.S. 234, 250-251 (1957).

The Motions to Dismiss must be denied.  For the reasons set out above, this action is not barred by *res judicata*.  There is now compelling historical evidence that the effect of Top-Two over the course of more than a decade in which it has been in place has been to present an insurmountable barrier to the election of a minor party candidate for public office in every race subject to Top-Two in which there is at least one Democrat and Republican in the race.  The single anomalous local exception in 2014 which Plaintiffs identified, among the hundreds of elections at issue, does not render the barrier any less onerous.  This evidence has never been put before a court and it is directly relevant both to the severity of the burden and the legitimacy/efficacy of the purported state interests used to attempt to justify the extreme burden.

Putting the matter in terms contemplated by the *Anderson/Burdick* framework, Plaintiffs can demonstrate from an unbroken history since Top-Two was enacted (and in sharp contrast with the minor party ballot access history that preceded Top-Two) that the burden Top-Two presents on minor parties, their candidates, and voters who would like to cast their votes for candidates and policies other than those offered by the two major parties is a severe one.

As the Supreme Court recognized almost sixty years ago, "The right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot." *Williams* v. *Rhodes*, 393 U.S. 23, 31 (1968).

Top-Two provides only one avenue for minor parties to gain access to the general election ballot and one can only gain access to elective office if one is on the general election ballot.  Concomitantly, one can only cast a vote for a candidate or viewpoint outside of those representing the two major parties if a third-party candidate can gain access to the general election ballot.  "The absence of any alternative means of gaining access to the ballot inevitably

renders the California system exclusionary as to some aspirants." *Lubin v. Panish*, 415 U.S. 709, 718 (1974).  *Green Party of Georgia v. Kemp*, 171 F. Supp. 3d 1340, 1363 (N.D. Ga. 2016) (finding a severe burden and applying strict scrutiny when "the restrictions at issue in this case serve to prevent minor parties from engaging in the fundamental political activity of placing their candidate on the general election ballot").

It is not a constitutionally sufficient answer to say that all parties are treated the same with the same chance to enter the blanket primary and finish in the top two – and especially not when we have the undeniable history of the exclusion from the general ballot for minor parties when they have to go head-to-head with the major parties.  Top-Two is not based on a showing of a modicum of support in order to gain general election ballot access.  Rather, it is a device created by legislators from the two major parties that ensures that those two major parties will maintain the right to govern, at the expense of the minor parties who have lesser resources and seek to grow, but cannot grow without access to the general election ballot for their members, supporters, and voters to see.  This is the very dynamic Justice O'Connor warned about in her concurring opinion in *Clingman v. Beaver*, 544 U.S. 581, 603 (2005) (O'Connor, J., Concurring).[12]  Indeed,

---

[12] "Although the State has a legitimate -- and indeed critical -- role to play in regulating elections, it must be recognized that it is not a wholly independent or neutral arbiter. Rather, the State is itself controlled by the political party or parties in power, which presumably have an incentive to shape the rules of the electoral game to their own benefit. Recognition of that basic reality need not render suspect most electoral regulations. Where the State imposes only reasonable and genuinely neutral restrictions on associational rights, there is no threat to the integrity of the electoral process and no apparent reason for judicial intervention. As such restrictions become more severe, however, and particularly where they have discriminatory effects, there is increasing cause for concern that those in power may be using electoral rules to erect barriers to electoral competition. In such cases, applying heightened scrutiny helps to ensure that such limitations are truly justified and that the State's asserted interests are not merely a pretext for exclusionary or anticompetitive restrictions."

27

the Top-Two system, like another state's system struck down as unconstitutional, "serves to protect the two major parties at the expense of political dialogue and free expression, which is not justified, much less compelling." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 594 (6th Cir. 2006).

Smaller political parties have played a significant role in the American political system through our nation's history. As Justice Marshall wrote long ago:

"The States' interest in screening out frivolous candidates must be considered in light of the significant role that third parties have played in the political development of the Nation. Abolitionists, Progressives, and Populists have undeniably had influence, if not always electoral success." *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 185 (1979); *See also, Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340, 1352-53 (N.D. Ga. 2016), *affirmed by Green Party of Ga. v. Kemp,* 2017 U.S. App. LEXIS 1769 (11th Cir., February 1, 2017); *See also*, J. David Gillespie, *Challengers to Duopoly, Why Third Parties Matter in American Two-Party Politics* (University of South Carolina Press 2012 ed.)

https://www.jstor.org/stable/j.ctv6wgjrr ; Adams, James, and Samuel Merrill, *Why Small, Centrist Third Parties Motivate Policy Divergence by Major Parties.* The American Political Science Review, vol. 100, no. 3, 2006, pp. 403–417. JSTOR, www.jstor.org/stable/27644363.

None of the proffered State interests put forward by the Defendant can justify the severe burden on Plaintiffs' ability to gain access to the general election ballot or to cast their votes to elect a candidate of choice; indeed, as discussed above, Top-Two has either been proven to undermine those purported interests entirely or is far too restrictive in allowing only two candidates on the ballot; but in any event there is no legitimate, relevant, compelling interest that justifies the imposition of Top-Two. The following excerpts from two landmark ballot access cases poignantly express the constitutional imperative to rein in overly restrictive ballot access

1  initiatives and to require truly compelling state interests that actually apply when minor parties,

2  candidates, and voters face a burden like that imposed by Top Two:

3
4       "For more than two decades, this Court has recognized the constitutional
   right of citizens to create and develop new political parties. The right derives from
   the First and Fourteenth Amendments and advances the constitutional interest of
5  like-minded voters to gather in pursuit of common political ends, thus enlarging
   the opportunities of all voters to express their own political
6  preferences. See *Anderson* v. *Celebrezze*, 460 U.S. 780, 793-794, 75 L. Ed. 2d
   547, 103 S. Ct. 1564 (1983); *Illinois Bd. of Elections* v. *Socialist Workers Party*,
7  440 U.S. 173, 184, 59 L. Ed. 2d 230, 99 S. Ct. 983 (1979); *Williams* v. *Rhodes*,
   393 U.S. 23, 30-31, 21 L. Ed. 2d 24, 89 S. Ct. 5 (1968). To the degree that a State
8  would thwart this interest by limiting the access of new parties to the ballot, we
   have called for the demonstration of a corresponding interest sufficiently weighty
9  to justify the limitation, see *Anderson, supra*, at 789, and we have accordingly
   required any severe restriction to be narrowly drawn to advance a state interest of
10 compelling importance. See *Socialist Workers Party, supra*, at 184, 186."

11
   *Norman v. Reed*, 502 U.S. 279, 288-289 (1992).
12
        "Restrictions on access to the ballot burden two distinct and fundamental
13 rights, "the right of individuals to associate for the advancement of political
   beliefs, and the right of qualified voters, regardless of their political persuasion, to
14 cast their votes effectively." *Williams* v. *Rhodes, supra*, at 30. The freedom to
   associate as a political party, a right we have recognized as fundamental, see 393
15 U.S., at 30-31, has diminished practical value if the party can be kept off the
   ballot. Access restrictions also implicate the right to vote because, absent recourse
16 to referendums, "voters can assert their preferences only through candidates or
   parties or both." *Lubin* v. *Panish*, 415 U.S. 709, 716 (1974). By limiting the
17 choices available to voters, the State impairs the voters' ability to express their
   political preferences. And for reasons too self-evident to warrant amplification
18 here, we have often reiterated that voting is of the most fundamental significance
   under our constitutional structure. *Wesberry* v. *Sanders*, 376 U.S. 1, 17 (1964);
19 *Reynolds* v. *Sims*, 377 U.S. 533, 555 (1964); *Dunn* v. *Blumstein*, 405 U.S. 330,
   336 (1972).  When such vital individual rights are at stake, a State must establish
20 that its classification is necessary to serve a compelling interest. *American Party of
   Texas* v. *White*, 415 U.S. 767, 780-781 (1974); *Storer* v. *Brown*, 415 U.S. 724, 736
21 (1974); *Williams* v. *Rhodes, supra*, at 31."

22
   *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979).
23
24      Plaintiffs have alleged plausible facts in support of a cognizable legal theory.  The Motions

25 to Dismiss must be denied.  Plaintiffs must be permitted to develop a record in this case to fully

26 demonstrate the severity of the burden imposed on them in their respective roles as parties,

27 candidates, and voters and to demonstrate that the interests the Defendant claims justify the Top-

28
   29

1    Two restrictions that have kept minor parties off of the general election ballots do not justify such

2    restrictions.  Plaintiffs must also be permitted to develop a record, through expert testimony and

3    otherwise of the availability and greater efficacy of alternative election systems that would meet

4    any legitimate ballot access State interest.[13]

5

6        There truly are "strands of liberty" interwoven with questions of ballot access, as the Court

7    wrote in *Anderson*, 460 U.S. at 787.  Ballot access restrictions implicate the different, but

8    overlapping, right of individuals to associate for the advancement of political beliefs, and the

9    right of qualified voters, regardless of their political persuasion, to cast their votes effectively.

10   Both of these rights, of course, rank among our most precious freedoms.  As our courts have

11   recognized, the candidates who appear on the ballot are crucial to the voters' exercise of those

12   First and Fourteenth Amendment rights, for "voters can assert their preferences only through

13   candidates or parties or both." *Anderson,* 460 U.S. at 787.

14

15       "No right is more precious in a free country than that of having a voice in the election of

16   those who make the laws under which, as good citizens, we must live. Other rights, even the most

17   basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 17-18

18   (1964).

19

20       Plaintiffs must be permitted to have that voice by having a real, achievable avenue to gain

21   access to the general election ballot in order to get elected to govern and in order to be able to

22

23       [13] Naturally, if Top-Two is struck down as unconstitutional as applied, it will be for the
     State to determine the best alternative to address the constitutional deficiencies as a matter of first
24   course.  Plaintiffs must be given the opportunity to put in evidence, through an expert and
     otherwise, regarding alternative systems in place now in other states that meet legitimate
25   regulatory interests while not limiting the general election ballot to two candidates.  The simplest
     alternatives that come to mind would be systems in Arizona, Colorado, Maine, and New Mexico,
26   for example that have partisan primaries with independents allowed to vote in the primaries.  The
     much touted "Top-Four" system in Alaska would be an alternative to consider as well, with a
27   minor party candidate able to gain general ballot access since it has been in use, given the
     expansion of the field from two to four candidates.  There are many other alternatives Plaintiffs
28   would present which would be relevant under *Anderson/Burdick* and beyond.

meaningfully exercise their right to vote.  Plaintiffs must be permitted to pursue their First and

Fourteenth Amendment claims.

Respectfully Submitted,

/s/ Soyeun D. Choi
(SBN 211344)
Counsel for Plaintiffs

Soyeun D. Choi, Esq., PC
969G Edgewater Blvd, 314
Foster City, CA 94404
Telephone: (650) 380-6116
E-mail: Soyeun@SoyeunEsq.com

/s/ David I. Schoen
Counsel for Plaintiffs (*pro hac vice*)

David I. Schoen
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: 917-941-7952
Facsimile: 917-591-7586
E-Mail: Schoenlawfirm@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of June, 2025, I caused a copy of the foregoing

Memorandum of Points and Authorities in Opposition to Defendant's and Intervenor-Defendants'

Motions to Dismiss to be served on all counsel of record by filing the same in this Court through

the ECF system.

/s/ David I. Schoen
Counsel for Plaintiffs (*pro hac vice*)