IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEACE AND FREEDOM PARTY, et al., | Case No.  24-cv-08308-MMC |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |
| v. | |
| SHIRLEY N. WEBER, | |
| California Secretary of State, | |
| Defendant. | |

Before the Court are: (1) defendant Shirley N. Weber's Motion to Dismiss First Amended Complaint/Request for Judicial Notice, filed April 11, 2025; and (2) intervenor-defendants Californians to Defend the Open Primary and Independent Voter Project's Motion to Dismiss the First Amended Complaint/Request for Judicial Notice, filed April 11, 2025. Plaintiffs, in response to the above motions, have filed a single opposition, to which defendant and intervenor-defendants have filed separate replies. The Court, having read and considered the papers filed in support of and in opposition to the motions, hereby rules as follows.[1]

## BACKGROUND

**I.      California Election Law**

Approved by voters in 2010, Proposition 14 amended the California Constitution to create, for voter-nominated offices, a non-partisan primary election system, see Cal.

---

[1] By prior order, the Court took the matters under submission. (See Doc. No. 46.)

United States District Court
Northern District of California

United States District Court
Northern District of California

Const. Art. 2, § 5(a); FAC ¶ 16, effective January 2011 (hereinafter, "top-two primary").[2]

Prior to Proposition 14, members of a political party "determine[d] the nominees of [that] political party," see Cal. Elec. Code § 359.5(a), with "[e]ach qualified party[3] [being] entitled to place one, and only one, nominee on the general election ballot" for each elective office[4], see Rubin v. Padilla, 233 Cal.App.4th 1128, 1138 (Cal. Ct. App. 2015), who then competed in the general election against the nominees of all other political parties.

Under Proposition 14, as compared with the above-described partisan primary election, "[a]ll voters" in the top-two primary election "may vote…for any candidate…without regard to the political party preference disclosed by the candidate or the voter," and "candidates who are the top two vote-getters…regardless of party preference, compete in the ensuing general election." See Cal. Const. Art. 2, § 5(a); see also Cal. Elec. Code. § 8002.5(c). In other words, only the top two candidates from the top-two primary for a voter-nominated office—whether affiliated with the same political party, with different political parties, or with no political party at all—will advance to the

---

[2] The "voter-nominated" State offices in the top-two primary are Governor, Lieutenant Governor, Secretary of State, Controller, Treasury, Attorney General, Insurance Commissioner, Member of the State Board of Equalization, State Senator, and Member of the Assembly; the "voter-nominated" federal offices are United States Senator and Member of the United States House of Representatives. See Cal. Elec. Code § 359.5(a)). The top-two primary does not apply to any other elective office, including President of the United States. See id.; Cal. Const. Art. 2, § 5(c).

[3] To qualify, a party must meet one of three statutorily-designated statistical thresholds. See Cal. Elec. Code §§ 5100(a)(1); § 5100(b)(1); § 5100(c).

[4] Nonqualified party candidates could not appear on the primary ballot, but could reach the general election ballot "through the process of independent nomination by petition." See Field v. Bowen, 199 Cal.App.4th 346, 351 (Cal. Ct. App. 2011); see also Libertarian Party v. Eu, 28 Cal.3d 535, 541-42 (1980) (setting forth previous requirements for independent and nonqualified party candidates to appear on general election ballot under prior law).

United States District Court
Northern District of California

general election ballot. See Cal. Const. Art. II, § 5(b) (explaining no political party "ha[s] the right to have its preferred candidate participate in the general election for a voter-nominated office"). As set forth below, California's voter-nominated primary elections are governed by a number of other new provisions as well.

A candidate for a voter-nominated office may list their party affiliation, or lack thereof, on the primary election ballot, see Cal. Const. Art. 2, § 5(b), and, if such candidate chooses to list a party affiliation, and if that party has been "qualified to participate in a primary election," see Cal. Elec. Code § 5100, the candidate's party name will appear on the ballot along with the candidate's name, see id. §§ 8002.5(a)(1); 13105. If a candidate's chosen affiliation is with an unqualified political party, however, the following will appear with the candidate's name: "Party Preference: None." See id. §§ 8002.5(a)(2); 13105. Write-in candidates are permitted at the primary stage but not at the general election. See Cal. Elec. Code § 8606. Primary elections are held in "each even-numbered year"—in March during presidential election years and in June during non-presidential election years. See Cal. Elec. Code § 1201.

## II.      Prior Litigation

On November 21, 2011, the Green Party of Alameda County, the Libertarian Party of California, and the Peace and Freedom Party of California, along with several party members and candidates for voter-nominated offices, filed suit in California state court, alleging the top-two primary violated the First and Fourteenth Amendments to the United States Constitution. (See Doc. No. 35-1 (Defendant's Request for Judicial Notice) ("RJN") Ex. A (Rubin, et al. v. Bowen, Alameda Cty. Super. Ct. Case No. RG11605301)

United States District Court
Northern District of California

(hereinafter, "Rubin Action") ¶¶ 40, 43; Ex. B. at 30:5.)[5] In particular, the plaintiffs therein asserted Proposition 14 violated their right to ballot access under the First and Fourteenth Amendments, for the alleged reason that the top-two primary prevented candidates from qualified minor parties from reaching the general election ballot because such candidates ordinarily did not finish among the top two candidates in the primary election, whereas, prior to Proposition 14, each qualified minor party was automatically permitted to place its nominee on the general election ballot. (See RJN Ex. A ¶¶ 18, 26-27, 40.) Plaintiffs therein also alleged Proposition 14 violated the Equal Protection Clause of the Fourteenth Amendment by precluding minor parties and candidates from participating in general elections while allowing major parties and candidates to do so. (See id. ¶ 43.)

On September 23, 2013, the California Superior Court dismissed the operative complaint with prejudice (see RJN Ex. B at 24:5), holding that the top-two primary gives all parties and candidates equal access to the general election ballot, and thus did not unconstitutionally burden plaintiffs' ballot access rights (see id. at 43:15-20), that the top-two primary gives all parties equal opportunity to compete for a spot in the general election, and that plaintiffs failed to allege any invidious discriminatory intent with respect to the top-two primary's implementation (see id. at 45:4-5).

On February 27, 2015, the California Court of Appeal affirmed the trial court's dismissal in its entirety. See Rubin, 233 Cal.App.4th at 1155; (see also RJN Ex. C), and, on April 29, 2015, the California Supreme Court denied the petition for review (see RJN

---

[5] With respect to exhibits, the Court's citations herein are to the page numbers assigned at the top of each page by this district's electronic filing system.

Ex. D). On October 13, 2015, the United States Supreme Court denied a petition for writ of certiorari. (See RJN Ex. E.)[6]

### III.      Instant Action

In the operative complaint in the instant action, the First Amended Complaint, several political parties, namely, the Peace and Freedom Party, Libertarian Party of California, Green Party of California (collectively, "Qualified Political Party Plaintiffs"), the American Solidarity Party of California ("ASPC"), and six members of those parties who previously ran as candidates for voter-nominated offices, namely, Gail Lightfoot, Joe Dehn, Sean Dougherty, William Patterson, Aaron Reveles, and Shannel Pittman (collectively, "Individual Plaintiffs"),[7] assert a single cause of action, brought pursuant to 42 U.S.C. § 1983, alleging the above-discussed top-two primary and related state election laws violate plaintiffs' First and Fourteenth Amendment rights. (See Doc. No. 29 ("FAC") ¶¶ 3-14, 43-50.) In particular, all plaintiffs allege the challenged laws (collectively, hereinafter, "top-two primary system") present "an unconstitutional barrier to ballot access for minor parties" and their candidates (see FAC ¶¶ 44-45) and discriminate against minor parties and their candidates in favor of the Democratic and Republican parties and

---

[6] The Court takes judicial notice of the following documents filed in the Rubin Action: Second Amended Complaint for Declaratory, Injunctive, and Other Relief (RJN Ex. A); Order of Dismissal and Final Judgment (RJN Ex. B); California Court of Appeal order denying petition for rehearing of decision affirming trial court's dismissal (RJN Ex. C); California Supreme Court order denying petition for review (RJN Ex. D.); and U.S. Supreme Court order denying petition for writ of certiorari (RJN Ex. E). See Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (holding federal courts may "take judicial notice of undisputed matters of public record") (emphasis omitted).

[7] Plaintiffs Gail Lightfoot and Joe Dehn ran as Libertarian Party of California candidates. (See FAC ¶¶ 7, 8.) Plaintiffs Sean Dougherty and Shannel Pittman ran as Green Party of California candidates. (See id. ¶¶ 9, 12.) Plaintiffs William Patterson and Aaron Reveles ran as Peace and Freedom Party of California candidates. (See id. ¶¶ 10, 11.) None of the Individual Plaintiffs ran as American Solidarity Party of California candidates.

their candidates by creating "an historically insurmountable barrier to the general election ballot access in any election [for a voter-nominated office] in which there are two or more candidates from either the Democratic or Republican parties" (see id. ¶ 49).

By the instant motions, defendant and intervenor-defendants seek an order dismissing the FAC, with prejudice, on the basis of claim preclusion and failure to state a claim. (See Doc. No. 35 ("Def.'s Mot."); Doc. No. 34 ("Intervenor-Def.'s Mot.").)

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action." Id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion

6

couched as a factual allegation," Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the complaint. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, however, may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, a district court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referenced in the complaint. Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

## DISCUSSION

### I.      Claim Preclusion

At the outset, defendant and intervenor-defendants argue plaintiffs' claims, in light of Rubin, are barred by res judicata. (See Def.'s Mot. at 8:21-10:20; Intervenor-Def.'s Mot. at 18:22-21:19.)

"Res judicata describes the preclusive effect of a final judgment on the merits." Mycogen Corp. v. Monsanto Co., 28 Cal.4th 888, 896 (2002). It "precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." See id. at 897 (internal quotation and citation omitted). Under the doctrine of res judicata, "if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action." See id.

7

at 896-97.

For purposes of a res judicata analysis, application of the doctrine does not depend on whether "identical causes of action were *in fact* litigated" in the initial action, but whether the parties "had the *opportunity* to litigate them" in the initial action. See Weikel v. TCW Realty Fund II Holding Co., 55 Cal.App.4th 1234, 1245 (Cal. Ct. App. 1997) (emphasis in original). Res judicata thus "bar[s] not only claims actually litigated in a prior proceeding, but also claims that could have been litigated" in that proceeding. See Palomar Mobilehome Park Ass'n v. City of San Marcos, 989 F.2d 362, 364 (9th Cir. 1993); see also Mycogen, 28 Cal.4th at 897 (holding "all claims based on the same cause of action must be decided in a single suit [and] if not brought initially, they may not be raised at a later date").

"Whether a prior state court judgment precludes relitigation of an identical claim in federal court depends on the preclusion rules of the state." Gupta v. Thai Airways Intern., Ltd., 487 F.3d 759, 765 (9th Cir. 2007). Federal courts are thus required "to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." See Kremer v. Chemical Const. Corp., 456 U.S. 461, 466 (1982) (citing 28 U.S.C. § 1738). Put another way, federal courts apply the preclusion rules "chosen by the State from which the judgment is taken." See id. Here, as the Rubin Action was litigated in California state court, the Court applies California preclusion law to the claims brought in the instant action.

Under California law, "res judicata applies" where "(1) the decision in the prior proceeding was final and on the merits"; (2) "the parties in the present proceeding or parties in privity with them were parties to the prior proceeding"; and (3) "the present proceeding is on the same cause of action as the prior proceeding." See Rangel v. PLS Check Cashers of California, Inc., 899 F.3d 1106, 1110 (9th Cir. 2018).

United States District Court
Northern District of California

The Court next addresses, in turn, the above-listed requisite elements.

### A.    Final Decision on the Merits

As noted, the California Superior Court dismissed the operative complaint in the Rubin Action "in its entirety, with prejudice." (See RJN Ex. B at 24:5.) "[A] dismissal with prejudice is the equivalent of a final judgment on the merits." See Boeken v. Philip Morris USA, Inc., 48 Cal.4th 788, 793 (Cal. 2010).

Accordingly, the first element is satisfied.

### B.    Same Parties or Privies

Defendant and intervenor-defendants (hereinafter, "moving defendants") argue the Qualified Political Party Plaintiffs are in privity with the party plaintiffs in the Rubin Action and that their claims thus are barred by the doctrine of claim preclusion. Intervenor-defendants argue the Individual Plaintiffs' claims likewise are barred.[8] No party argues ASPC's claims are barred.

#### 1. Peace and Freedom Party and Libertarian Party of California

Both the Peace and Freedom Party and Libertarian Party of California were plaintiffs in the Rubin Action. (See RJN Ex. A ¶¶ 15, 16.)

Accordingly, the second element is satisfied as to these two parties.

#### 2. Green Party of California

The Green Party of California was not a party in the Rubin Action. As the moving defendants point out, however, the Green Party of Alameda County was a party in that action (see RJN Ex. A ¶ 14), the question thus presented being whether the Green Party of California is in privity with the Green Party of Alameda County.

---

[8] Defendant "reserves the right to do so in subsequent proceedings." (See Def.'s Mot. at 8 n.5.)

United States District Court
Northern District of California

"[P]rivity requires the sharing of an identity or community of interest, with adequate representation of that interest in the first suit, and circumstances such that the nonparty should reasonably have expected to be bound by the first suit." See DKN Holdings LLC v. Faerber, 61 Cal.4th 813, 826 (Cal. 2015) (internal quotation omitted). An interest sufficient to support a finding of privity must be "so similar to the party's interest that the party acted as the nonparty's virtual representative in the first action." See id. (internal quotation and citation omitted).

Here, as to shared identity, the Green Party of Alameda County describes itself as "a geographic division of the Green Party of California." (See RJN Ex. A ¶ 7.) While the parties have not cited, and the Court has not independently found, any California case addressing such relationships in the context of privity, there is ample authority holding a similar relationship, namely, that of parent and subsidiary, suffices for purposes of privity. The Court finds a political party and a geographic subdivision thereof are, like a parent and subsidiary, "substantially the same." See Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Development Corp., 933 F.2d 724, 728 (9th Cir. 1991) (finding privity between parent and subsidiary corporation) (internal quotation and citation omitted).

Next, as to shared interests, the Green Party of California's interest as expressed in the instant action is, in essence, identical to the Green Party of Alameda County's interest as expressed in the Rubin Action, specifically, an interest in appearing on the general election ballot and having its candidates advance to the general election. (See FAC ¶ 5 (alleging Green Party of California candidates "have been prevented from appearing on the general election ballot…despite significant support for the Party and its platform and candidates among the electorate"); RJN Ex. A ¶¶ 1, 2 (alleging plaintiffs, including Green Party of Alameda County, were "prevented…from participating in…general election, despite the fact that many minor party candidates received

United States District Court
Northern District of California

substantial voter support").) Moreover, that interest, being the focus of the Rubin Action, was adequately represented therein.

Lastly, the Green Party of California, given its shared identity and interests with those of the Green Party of Alameda County, "should reasonably have expected to be bound by the" Rubin Action. See DKN Holdings, 61 Cal.4th at 826 (internal quotation and citation omitted).

Accordingly, the second element is satisfied as to the Green Party of California.

### 3. Individual Plaintiffs

None of the Individual Plaintiffs was a party in the Rubin Action. (See RJN Ex. A ¶¶ 7-13.) As noted, however, each previously ran as a candidate of a Qualified Political Party Plaintiff (see FAC ¶¶ 7-11), and, as further noted, the plaintiffs in the Rubin Action included Qualified Political Party members and candidates (see RJN Ex. A ¶¶ 7-13). In light thereof, intervenor-defendants, citing Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, argue the Individual Plaintiffs share with the party plaintiffs and individual plaintiffs in the Rubin Action an interest of sufficient similarity to satisfy privity, namely, an interest in advancing to the general election and appearing on the general election ballot. (See FAC ¶¶ 7-12 (alleging Individual Plaintiffs have been "denied access to the general election ballot" and ability to vote for other minor party candidates); RJN Ex. A ¶¶ 28-31 (naming individual minor party candidates who were "denied access to the general election ballot").)

In Tahoe-Sierra, the Ninth Circuit noted "[o]ne of the relationships that has been deemed sufficiently close to justify a finding of privity is that of an organization or unincorporated association filing suit on behalf of its members," see Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 322 F.3d 1064 (9th Cir. 2003) (internal quotation and citation omitted), provided "there is no conflict between the

11

Case 3:24-cv-08308-MMC   Document 57   Filed 04/13/26   Page 12 of 26

United States District Court
Northern District of California

organization and its members, and if the organization provides adequate representation on its members' behalf," see id.

Although Tahoe-Sierra was not decided under California privity law, the test it used, "commonality of interest," see id. at 1081, reads much like that used by California courts, "community of interest," see DKN Holdings, 61 Cal.4th at 826.[9] Under such circumstances, the Court finds the reasoning and holding set forth in Tahoe-Sierra instructive. Further, as noted above, the Court has found the Individual Plaintiffs share a community of interest with their political parties, as well as with other members and candidates of their parties, who asserted their interests in the Rubin Action and adequately represented those interests.

The Court thus finds the Individual Plaintiffs are in privity with the parties in the Rubin Action. See Tahoe-Sierra, 322 F.3d at 1084 (finding individual members of association in privity with association; further finding, association, in absence of privity, "would be free to attack the [prior] judgment *ad infinitum* by arranging for successive actions by different sets of individual member plaintiffs"); see also Midwest Disability Initiative v. JANS Enterprises, Inc., 929 F.3d 603, 609 (8th Cir. 2019) (holding organization "should not be able to evade preclusion continually by…bringing successive suits by claiming injury to different identified members").

Accordingly, the second element is satisfied as to the Individual Plaintiffs.

### C.      Same Cause of Action

Res judicata requires the current and prior suit to share the same cause of action.

---

[9] The case on which plaintiffs rely, Perez-Guzman v. Gracia, 346 F.3d 229 (1st Cir. 2003), is readily distinguishable in that it was decided under Puerto Rico's privity law, which required a showing that the plaintiff in the new case was not only a member of the political party plaintiff in the earlier case but also had "controlled its conduct of the litigation." See id. at 234.

See Rangel, 899 F.3d at 1110.

For purposes of res judicata, "California courts employ the 'primary rights theory to determine what constitutes the same cause of action.'" See Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009) (internal quotation and citation omitted). "[T]wo suits involve the same cause of action when they involve the same primary right." Furnace v. Giurbino, 838 F.3d 1019, 1024 (9th Cir. 2016) (internal quotation omitted). Where "two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." See San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement System, 568 F.3d 725, 734 (9th Cir. 2009) (internal quotation and citation omitted); see also Furnace, 838 F.3d at 1027 (explaining "primary rights doctrine prevents…inconsistent judgments by requiring a party to bring all of his claims—as many causes of action, or theories of recovery, or remedies as he has—in a single suit").

Here, although the FAC contains, as noted, a single cause of action, that cause of action is based on a number of different theories that, in essence, constitute five separate claims: (1) a claim challenging the denial of access to the general election ballot ("top-two claim") (see FAC ¶ 45); (2) a claim challenging the preclusion of write-in candidates on the general election ballot ("write-in claim") (see id. ¶ 48); (3) a claim challenging the scheduling of the primary election in March during presidential election years ("March scheduling claim") (see id. ¶ 46); (4) a claim challenging unequal access to the general election ballot as compared with the Democratic and Republican parties ("Equal Protection claim") (see id. ¶ 49); and (5) a claim, brought solely on behalf of ASPC, challenging the manner in which the party preference of a candidate of an unqualified party is designated on the primary ballot (see id. ¶ 47) ("party designation claim").

United States District Court
Northern District of California

The Court addresses each such claim in turn. See Hindin v. Rust 118 Cal.App.4th 1247, 1257 (Cal. Ct. App. 2004) (holding "[t]he manner in which a plaintiff elects to organize his or her claims within the body of the complaint is irrelevant to determining the number of causes of action"); see also Cochran-McKinney v. County of Los Angeles, 2007 WL 1365977, at *3 (Cal. Ct. App. 2007) (considering single cause of action as three separate claims); Kobbervig-Harrell v. Nike, Inc., 2007 WL 1140421, at *13 (Cal. Ct. App. 2007) (holding plaintiff's allegations, although "captioned under a single cause of action,…encompass[ed] separate claims").

### 1. Top-Two Claim

In opposition to the application of res judicata to their top-two claim, plaintiffs cite to data reflecting the inability of minor party candidates to reach the general election ballot in the years after Rubin was decided, i.e., data that was not before the court in Rubin. (See Opp. at 13:12-24; FAC § 27.)

As discussed above, however, where, as here, the two actions involve the same wrong and same injury, "the same primary right is at stake even if in the second suit the plaintiff…adds new facts supporting recovery." See San Diego Police Officers' Ass'n, 568 F.3d at 734 (internal citation omitted); see also Northern California River Watch v. Humboldt Petroleum, Inc., 162 Fed.Appx. 760, 763 (9th Cir. 2006) (holding "[s]imply identifying continuing harm from the same conduct is insufficient to overcome res judicata"). Moreover, data pertaining to minor party candidates' lack of success in the aftermath of Proposition 14 was, in fact, presented to the court in the Rubin Action. (See RJN Ex. A ¶ 26.)

Accordingly, the third element is satisfied as to the top-two claim.

United States District Court
Northern District of California

### 2. Write-In Claim

Although plaintiffs did not plead their write-in claim in the Rubin Action, it nonetheless is barred by res judicata, given that it is based on the same injury as the injury asserted in the Rubin Action, namely, the alleged inability of minor party candidates to appear on the general election ballot, that it is based on the same wrong, namely, the top-two primary system, and that it could have been asserted in the Rubin Action. See Palomar Mobilehome Park Ass'n, 989 F.2d at 364 (holding res judicata "bar[s] not only claims actually litigated in a prior proceeding, but also claims that could have been litigated"); Gates v. Superior Court, 178 Cal.App.3d 301, 308 (Cal. Ct. App. 1986) (explaining "[w]hen an issue has been litigated, all inquiry respecting the same matter is foreclosed, not only as to matters heard but also to matters that could have been heard in support of or in opposition thereto"). Moreover, although the bar applies even where the plaintiff, at the time of the first action, did not consider the newly-raised claim, in this instance it appears that plaintiffs, in litigating the Rubin Action, were aware of such claim and chose not to bring it. See Rubin, 233 Cal.App.4th at 1143 n.7 (noting "[p]laintiffs allude in their briefs to the absence of write-in votes at the general election[;] [t]o the extent plaintiffs intend to raise that absence as a constitutional claim here, we…reject[] it").

Accordingly, the third element is satisfied as to the write-in claim.

### 3. March Scheduling Claim

The Court agrees with plaintiffs that the March scheduling claim is not subject to preclusion, as it could not have been brought in the Rubin Action, the challenged schedule having been implemented several years thereafter. See S.B. 568, 2017-18 Reg. Sess. (Cal. 2017); see also Lawlor v. National Screen Service Corp., 349 U.S. 322, 328 (1955) (holding res judicata cannot "extinguish[] claims which did not even then exist and

which could not possibly have been sued upon in the previous case").

### 4. Equal Protection Claim

Although plaintiffs endeavor to distinguish their Equal Protection claim in the instant action from their Equal Protection claim in the Rubin Action, in that they have dropped their allegation that the asserted discrimination was "invidious" (see RJN Ex. A ¶ 43), such distinction is unavailing, as both claims share the same wrong and the same injury discussed above. Indeed, the Equal Protection claims are nearly identical. (Compare FAC ¶¶ 31, 49 with RJN Ex. A ¶¶ 3, 41-43.)

Accordingly, the third element is satisfied as to the Equal Protection claim.

## II.    Remaining Claims

In light of the res judicata analysis discussed above, the Court evaluates the top-two claim, write-in claim, and Equal Protection claim as asserted only by ASPC, and evaluates the March scheduling claim as asserted by all plaintiffs. The party designation claim, as noted, is only alleged on behalf of ASPC.

### A. Standing

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." See TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). "Standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." Id. at 431.

Here, at the outset, intervenor-defendants contend ASPC lacks Article III standing to assert the top-two claim, write-in claim, March scheduling claim, Equal Protection claim, and party designation claim, and that all plaintiffs lack Article III standing to assert

United States District Court
Northern District of California

the March scheduling claim. (See Intervenor-Def.'s Mot. at 22:1-23:10.)[10]

As to the first four of the above-listed claims, intervenor-defendants contend there is no injury in fact for purposes of Article III standing because political parties have no constitutional right to have elections conducted in the prior manner. An injury in fact, however, is "an invasion of…an interest that is…concrete and particularized and actual or imminent," which interest "can support standing even if even if it is not protected by law." See East Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 665 (9th Cir. 2021), 993 F.3d 640, 665 (9th Cir. 2021) (internal quotation and citation omitted). Here, the injury alleged, an inability to advance to the general election, meets the above description and thus suffices for Article III standing.

Likewise unavailing is intervenor-defendants' next argument, that the claimed injury is not traceable to California's top-two primary, but, rather, results from "an intervening cause—the electorate." (See Intervenor-Def.'s Mot. at 22:21-22.) As the Ninth Circuit has noted, however, "[c]ausation may be found even if there are multiple links in the chain connecting the defendant's unlawful conduct to the plaintiff's injury." See Mendia v. Garcia, 768 F.3d 1009, 1012 (9th Cir. 2014) (holding "there's no requirement that the defendant's conduct comprise the last link in the chain").[11]

Next, the Court finds unpersuasive intervenor-defendants' argument that, as to ASPC, there is no redressable injury because, according to intervenor-defendants, "even if Proposition 14 had never been enacted, and the prior partisan system were still in

---

[10] Defendant does not challenge standing.

[11] Habecker v. Town of Estes Park, 518 F.3d 1217 (10th Cir. 2008), to which intervenor-defendants cite, is distinguishable on its facts, the injury alleged by the plaintiff therein being "his loss of his elected office," not his inability to seek that office. See id. at 1224.

place," ASPC, not being a qualified political party, "would not be entitled to have its candidates listed as such on the ballot." (See Intervenor-Def.'s Mot. at 23:1-3.) As discussed above, however, a nonqualified party candidate could, under the prior system, appear on the general election ballot through an independent nomination petition. Given such circumstance, the Court finds ASPC's claims are redressable.

Lastly, the Court is not persuaded by intervenor-defendants' argument that ASPC lacks Article III standing to bring its party designation claim because, according to intervenor-defendants, "the right to identify a political party on the ballot belongs to the candidate – not the party." (See Intervenor-Def.'s Mot. at 35:8-26.) Although intervenor-defendants cite to authority holding, with one narrow exception not applicable here, a plaintiff may not raise claims based on the rights of another (see Intervenor-Def.'s Mot. at 35:17-22), the FAC alleges ASPC itself has suffered injuries resulting from its name not appearing on the ballot (see FAC ¶¶ 6, 32 (alleging ASPC is "unconstitutionally burdened because…[its candidates] are prohibited from having their party name appear on the ballot"; further alleging "[s]upport for its political agenda" is "not limited to [party] members")).

### B.  Legal Standard: Anderson-Burdick

As the Supreme Court has recognized, Article I of the United States Constitution vests States with "the power to regulate their own elections," see Burdick v. Takushi, 504 U.S. 428, 433 (1992), and "States have enacted comprehensive and sometimes complex election codes," see Anderson v. Celebrezze, 460 U.S. 780, 788 (1983), which "invariably impose some burden upon individual voters," see Burdick, 504 U.S. at 433.

Federal courts thus evaluate challenges to state election laws using a balancing test developed by the Supreme Court, referred to as "Anderson-Burdick," under which courts "must weigh the character and magnitude of the asserted injury to the rights

18

United States District Court
Northern District of California

protected by the First and Fourteenth Amendments…against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." See Arizona Libertarian v. Hobbs, 925 F.3d 1085, 1090 (9th Cir. 2019) (internal quotation and citation omitted).

The Anderson-Burdick balancing test operates "as a sliding scale—the more severe the burden imposed, the more exacting [the] scrutiny; the less severe, the more relaxed [the] scrutiny." See id. (internal quotation and citation omitted). "To pass constitutional muster, a state law imposing a severe burden must be narrowly tailored to advance compelling interests." Id. (internal quotation and citation omitted). "On the other hand, a law imposing a minimal burden need only reasonably advance important interests." Id. (internal quotation and citation omitted). A law imposing a burden that "is not severe" but "more than slight[] warrant[s] scrutiny that is neither strict nor wholly deferential," see Soltysik v. Padilla, 910 F.3d 438, 445 (9th Cir. 2018), "requir[ing] [the State] to offer evidence that its regulation…is a reasonable means of achieving [its] desired ends," see id. at 448; see also Dudum v. Arntz, 640 F.3d 1098, 1114 n.27 (9th Cir. 2011) (holding "there may be instances where a burden is not severe enough to warrant strict scrutiny review but is serious enough to require an assessment of whether alternative methods would advance the proffered governmental interests").

Anderson-Burdick applies to claims implicating rights under the First Amendment as well as to claims under the Equal Protection Clause of the Fourteenth Amendment. See Burdick, 504 U.S. at 438-40 (applying balancing test to claim challenging state election law as violating First Amendment rights); see also Dudum, 640 F.3d at 1106 n.15 (applying Anderson-Burdick framework under Equal Protection Clause in context of election law; noting "[t]he Supreme Court has addressed [First Amendment and Equal

19

United States District Court
Northern District of California

Protection] claims collectively using a single analytic framework"). The Court next applies the Anderson-Burdick standard to plaintiffs' claims.

### 1. Top-Two Claim

ASPC challenges, under the First and Fourteenth Amendments, the top-two primary, alleging it imposes an unconstitutional barrier to general election ballot access. (See FAC ¶ 45.)

In Washington State Republican Party v. Washington State Grange ("Grange II"), 676 F.3d 784, 788 (9th Cir. 2012), the Ninth Circuit evaluated the constitutionality of Washington's top-two primary system, a system, as defendant notes, "very similar to California's system challenged here." (See Def.'s Mot. at 12:11-12; see also Intervenor-Def.'s Mot. at 11:6-7 (describing California law as "modeled" after Washington law).) The Washington primary, like California's, "serves as a means of winnowing the candidates to two rather than selecting party nominees"; voters are free to vote for any candidate on the primary ballot, whether or not the voter is a member of the same political party as the candidate, and the two candidates who receive the most votes in the primary election advance to the general election. See Grange II, 676 F.3d at 788.

As defendant also notes, the plaintiff in Grange II, the Libertarian Party of Washington, asserted a claim "nearly identical to the one presented by [p]laintiffs in this action" (see Def.'s Mot. at 13:19-20; see also Intervenor-Def.'s Mot. at 25:8-9 (noting ballot access "claim [asserted in Grange II] is essentially identical to [p]laintiffs' here")), namely, a claim alleging Washington's primary system violated said plaintiff's "fundamental right of access to the ballot by making it difficult for a minor-party candidate to qualify for the general election ballot," see Grange II, 676 F.3d at 793. In rejecting the claim, the Ninth Circuit weighed the burden imposed by the primary system on the Libertarian Party's rights against the state's interests in using such a system, and

concluded Washington's top-two primary did "not impose a severe burden on the Libertarian Party's rights" because "the Libertarian Party participates in a primary at the same time, and on the same terms, as major party candidates," id. at 794, i.e., it did "not give the 'established parties a decided advantage over any new parties struggling for existence,'" id. at 795 (quoting Williams v. Rhodes, 393 U.S. 23, 31 (1968)).

While the Ninth Circuit acknowledged Washington's top-two system "makes it more difficult for minor-party candidates to qualify for the general election ballot than regulations permitting a minor-party candidate to qualify for a general election ballot by filing a required number of petition signatures,"[12] it found such "additional burden… is an inherent feature of any top two primary system, and [that] the Supreme Court has expressly approved of top-two primary systems." See Grange II, 676 F.3d at 795; see also California Democratic Party v. Jones, 530 U.S. 567, 585 (2000) (noting "nonpartisan blanket primary" by which "[e]ach voter, regardless of party affiliation, may then vote for any candidate, and the top two vote getters (or however many the State prescribes) then move on to the general election," would pass constitutional muster).

Given the Ninth Circuit's decision in Grange II upholding the constitutionality of Washington's top-two primary system and the similarity of that system to California's top-two primary challenged in this action, the Court finds ASPC has not shown California's top-two primary violates the First and Fourteenth Amendments.

Accordingly, the top-two claim will be dismissed without leave to amend.

_____

[12] Although, as plaintiffs point out, the Ninth Circuit also noted the Washington primary is held in August rather than March, its holding was based primarily on the minor parties' "participat[ion] in [that] primary at the same time, and on the same terms, as major party candidates." See Grange II, 676 F.3d at 794.

### 2.  Write-In Claim

ASPC challenges, under the First and Fourteenth Amendments, California's prohibition of write-in voting at the general election. (See FAC ¶¶ 31, 48.) Moving defendants, relying on the Supreme Court's decision in Burdick, argue such prohibition does not impose an unconstitutional burden on plaintiffs.

In Burdick, the Supreme Court, in considering the burden imposed by a ban on write-in voting at both the primary and general elections, concluded "the burden is slight" and outweighed by the States' "rights to reserve the general election ballot for major struggles." See Burdick, 504 U.S. at 439 (internal quotation and citation omitted).

Here, much like the election laws at issue in Burdick, California's election system affords candidates access to the general election ballot through a primary election. Indeed, California's system provides even more latitude to minor parties than the system upheld in Burdick, as it permits write-in voting at the primary stage. See Cal. Elec. Code. §§ 15340, 8600. The Court thus finds ASPC has not shown California's prohibition of write-in voting at the general election violates the First and Fourteenth Amendments.

Lastly, to the extent plaintiffs allege the top-two primary and the prohibition of write-in voting at the general election in combination constitute an unconstitutional barrier to ballot access (see FAC ¶ 48), plaintiffs' claim remains unavailing. As noted above, the Ninth Circuit has found any limited burden associated with a top-two primary is outweighed by the State's interest in reserving general elections for the top two vote-getters. See Grange II, 676 F.3d at 795. Prohibiting write-in candidates on the general election ballot essentially does no more than serve to effectuate that result. Put another way, to allow write-in candidates at the general election would effectively negate the purpose of having a top-two primary.

Accordingly, the write-in claim, whether considered separately or in combination

22

with the top-two claim[13], will be dismissed without leave to amend.

### 3.  March Scheduling Claim

Although in their complaint plaintiffs challenge under the First and Fourteenth Amendments California's scheduling March primaries in years in which there is a presidential election, plaintiffs do not identify therein any burden imposed on them on account of such schedule. (See FAC ¶¶ 19, 33, 46.) Instead, plaintiffs, citing the Supreme Court's decision in Anderson, argue such schedule, "as applied to minor political parties and independent candidates," is unconstitutional as a matter of law. (See Opp. at 10:22-11:3; 16:21-17:4; FAC at 2:17-18.)

In Anderson, however, the Ohio statute at issue required independent candidates "to file a statement of candidacy and nominating petition in March in order to appear on the general election ballot in November," see Anderson, 460 U.S. at 780, whereas no such deadline applied to major parties, see id. at 791. The Supreme Court concluded the statute imposed an unconstitutional burden on independent candidates and voters because independent candidates could not decide to run for President after the March deadline whereas major parties had "the political advantage" of choosing their candidates closer to the election, see id., a burden thus falling "unequally on new or small political parties [and] independent candidates," see id. at 793.

Here, by contrast, California's top-two primary requires all parties and candidates for voter-nominated offices to compete in the primary in March during presidential election years, see Cal. Const. Article II, § 5(a), thereby imposing only one set of rules for major and minor parties alike, see Grange II, 676 F.3d at 794 (upholding top-two primary

---

[13] As set forth in the next section, the March Scheduling claim is subject to dismissal for failure to allege any burden imposed thereby.

system where minor parties "participate[d] in a primary at the same time, and on the same terms, as major party candidates").[14]

As plaintiffs may be able to allege a burden, however, plaintiffs' March scheduling claim will be dismissed with leave to amend.

### 4. Equal Protection Claim

ASPC alleges the top-two primary "unconstitutionally discriminates" against minor political parties, their members, their candidates, and voters in violation of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. (See FAC ¶¶ 31, 49.)

In particular, ASPC alleges the top-two primary "discriminates against minor political parties…in favor of the two major political parties" because, according to ASPC, minor party candidates face an "insurmountable barrier to the general election ballot [in covered elections] in which there are two or more candidates from either the Democratic or Republican parties." (See FAC ¶ 49.) The Court, applying Anderson-Burdick, finds California's top-two primary system passes constitutional muster under the First Amendment and under the Fourteenth Amendment.

Although ASPC argues the top-two primary, as a practical matter, burdens minor parties to a greater extent than it burdens major parties (see FAC ¶ 31), courts have been made aware of and considered such asserted differences and have found, where state election laws like those at issue here apply equally to all political parties, such laws are constitutional. See, e.g., Arizona Libertarian Party, 925 F.3d at 1095 (holding, where

---

[14] Plaintiffs' cited link to "a list of approximately 50 cases in which similarly early deadlines have been struck down" (see FAC at 14 n.11) is unavailing, as none of those cases addressed a State's holding its primary election on the same date for candidates of all political parties.

United States District Court
Northern District of California

"all established parties [were] subject to the same statutory requirements" as to signatures needed for ballot access, such provision did not violate Equal Protection Clause even assuming it "impose[d] a marginally higher burden" on minor party; noting any such imbalance was "a consequence of the [minor party's] modest size, not a fatal flaw of the statutory scheme"); Grange II, 676 F.3d at 794-95 (finding top-two system constitutional while acknowledging system "makes it more difficult for minor-party candidates to qualify for the general election ballot").

The Court, having "look[ed] to see whether the [top-two primary] provide[s] a real and essentially equal opportunity for ballot qualification," see Arizona Libertarian Party, 925 F.3d at 1095 (internal quotation and citation omitted), finds the alleged lack of success of minor party candidates in reaching the general election ballot as compared with major party candidates does not render California's top-two primary unconstitutionally discriminatory. As the Supreme Court has explained in no uncertain terms, "States are not burdened with a constitutional imperative to…'handicap' an unpopular candidate to increase the likelihood that the candidate will gain access to the general election ballot." See Munro v. Socialist Workers Party, 479 U.S. 189, 198 (1986) (holding State entitled to require candidate "to show a 'significant modicum' of voter support"); see also Jenness v. Fortson, 403 U.S. 431, 440-42 (1971) (rejecting First Amendment and Equal Protection challenge to state election system that allowed major party candidates to reach general election through traditional primary election while requiring minor party candidates to obtain petition signatures to reach general election).

Accordingly, ASPC's Equal Protection claim will be dismissed without leave to amend.

### 5. ASPC's Party Designation Claim

ASPC challenges, under the First and Fourteenth Amendments, California's

election codes governing party preference designations on the ballot. (See FAC ¶¶ 6, 47).

In support thereof, ASPC alleges it is "unconstitutionally burdened" thereby. (See id. ¶ 6.) Although, as ASPC points out, the FAC includes a citation to Soltysik, the Court finds the above-referenced conclusory assertion, with or without such bare citation, does not suffice to plead the claim in the absence of factual elaboration describing the nature and extent of the alleged burden. See Iqbal, 556 U.S. at 678. Moreover, although in Soltysik the Ninth Circuit found the same two election code sections challenged here, namely, sections 8002.5 and 13005, impose more than a slight burden, the burden addressed was the burden on the plaintiff therein, who was a candidate, not a party. See Soltysik, 910 F.3d at 445

Accordingly, ASPC's party designation claim will be dismissed with leave to amend.

**CONCLUSION**

For the reasons stated above, defendant's and intervenor-defendants' motions to dismiss are hereby GRANTED as follows:

1. To the extent said parties seek dismissal of the March Scheduling claim and Party Designation claim, the motions to dismiss are hereby GRANTED with leave to amend to cure the deficiencies identified above.

2. In all other respects, the motions are hereby GRANTED without such leave.

3. If plaintiffs elect to amend, plaintiffs' Second Amended Complaint shall be filed no later than May 8, 2026. Plaintiffs may not add any new claims without first obtaining leave of court. See Fed. R. Civ. P. 15(a)(2).

   **IT IS SO ORDERED.**

Dated: April 13, 2026

MAXINE M. CHESNEY
United States District Judge

United States District Court
Northern District of California