David I. Schoen (*Pro Hac Vice*)
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone:  334-395-6611
E-Mail: Schoenlawfirm@gmail.com

Soyeun D. Choi, Esq., PC (SBN 211344)
969G Edgewater Blvd, 314
Foster City, CA 94404
Telephone: (650) 380-6116
E-mail: Soyeun@SoyeunEsq.com

Counsel for All Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| PEACE AND FREEDOM PARTY;<br>LIBERTARIAN PARTY OF CALIFORNIA;<br>GREEN PARTY OF CALIFORNIA;<br>AMERICAN SOLIDARITY PARTY OF CALIFORNIA;<br>GAIL LIGHTFOOT;<br>JOE DEHN;<br>SEAN DOUGHERTY;<br>WILLIAM PATTERSON;<br>AARON REVELES;<br>SHANNEL PITTMAN,<br><br>         Plaintiffs,<br><br>v.<br><br>Dr. SHIRLEY N. WEBER,<br>California Secretary of State,<br><br>         Defendant. | :  Case No. 3:24-cv-08308-MMC<br>:<br>:<br>:<br>:<br>: SECOND AMENDED<br>:  COMPLAINT<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## **<u>SECOND AMENDED COMPLAINT</u>**

**"It is expected that a voter hopes to find on the ballot a
candidate who comes near to reflecting his policy preferences
on contemporary issues."** *Lubin v. Panish*, **415 U.S. 709 (1974).**

**"The right of individuals to associate for the advancement of political beliefs
and the right of qualified voters to cast their votes effectively are protected
against federal and state encroachment by the First Amendment."** *Williams v.
Rhodes*, **393 U.S. 23, 30-31   (1968).**

**INTRODUCTION**

The Plaintiffs in this case are minor political parties operating in California, minor political party candidates for relevant political offices in California, and California voters who would like to cast their votes in the general election for minor party candidates, independent candidates, or write-in candidates.

Plaintiffs bring this action to challenge the constitutionality of Article II, §5 of the California Constitution and corresponding provisions in California's election code that provide for an electoral process in which only two candidates are permitted access to the general election ballot in California for the offices of United States Senator, Representative in Congress, Governor, Lieutenant Governor, Secretary of State, Controller, Insurance Commissioner, State Treasurer, Attorney General, Member, State Board of Equalization, Member of the State Senate, and Member of the State Assembly. *See* Cal Elec Code § 359.5.

Article II, §5 of the California Constitution provides that as of 2012, only two candidates for any of the elective offices at issue can appear on the general election ballot and these two candidates can only be the top two finishers in a primary election in which all candidates vie.  In a Presidential election year, the Top-Two primary is held in March - March 5, 2024, most recently. This is a time frame which repeatedly has been held unconstitutional as applied to minor political parties and independent candidates to select their candidates or declare their candidacies.

There is no route other than the Top-Two primary to the general election ballot for the elective offices at issue.  Write-in votes are not permitted.  This electoral process will be referred to herein as "Top-Two."

The Top-Two system, since its enactment, has created an unconstitutionally insurmountable barrier to general election ballot access for any minor party or independent candidate.  In almost every contest for elective office covered by the Top-Two primary system, in which at least two major party (Republican or Democratic Party) candidates appeared in the primary, no minor party or independent candidate has been allowed access to the general election

ballot.  Top-Two was devised by the two major party legislators and advocates to keep it that way.[1]

California's Top-Two system, as applied, violates the rights under the First and Fourteenth Amendments to the United States Constitution of minor parties, their candidates, independent candidates not affiliated with a party, and the rights of voters who wish to vote for and associate with minor political parties, their candidates, and the issues for which they stand.[2]

Plaintiffs herein seek a declaratory judgment that California's Top-Two primary law, as applied to them in their respective capacities, violates the rights guaranteed to them under the First and Fourteenth Amendments to the United States Constitution.

In this action, Plaintiffs challenge only the provision in the Top-Two law that sets a March primary deadline in a Presidential election year, alleging that such an early deadline, so far remote from the general election date, unconstitutionally violates their First and Fourteenth Amendment

---

[1]  "Although the State has a legitimate -- and indeed critical -- role to play in regulating elections, it must be recognized that it is not a wholly independent or neutral arbiter. Rather, the State is itself controlled by the political party or parties in power, which presumably have an incentive to shape the rules of the electoral game to their own benefit." *Clingman v. Beaver*, 544 U.S. 581, 603 (2005) (O'Connor, J., concurring in part and concurring in the judgment).

[2]  A Top-Two system in another State has been upheld as constitutional; but as the United States Supreme Court therein noted, the constitutionality of the ballot access implications of a Top-Two system was not raised, *see Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 458, n. 11 (2008).  In round two of the case, the Ninth Circuit expressly noted that the primary was in August and **not** in March, as it is here in a presidential election year. *Washington State Grange v. Washington State Republican Party*, 676 F.3d 784, 894 (9th Cir. 2012).  A California state appellate court has purported to consider the ballot access implications and upheld the Top-Two primary system; but the decision relies on mistaken facts and a misapplication of the law.  *See Rubin v. Padilla*, 233 Cal. App. 4th 1128; 183 Cal. Rptr. 3d 373 (2015).

Additionally, more than ten years have passed since that decision and the evidence during those years further establishes the unconstitutionally insurmountable barrier to gaining ballot access for minor parties and independent candidates the Top-Two primary law imposes. *See e.g., Mandel v. Bradley*, 432 U.S. 173, 177 (1977) ("Past experience will be a helpful, if not always an unerring, guide: it will be one thing if independent candidates have qualified with some regularity and quite a different matter if they have not."), *quoting from, Storer v. Brown*, 415 U.S. 724, 742 (1974). The decision in *Rubin* also contains factual errors.

rights under the United States Constitution.

In addition, Plaintiff American Solidarity Party of California challenges the restriction on the use of a party-label for a minor political party as violative of its First and Fourteenth Amendment rights under the United States Constitution.

While only these two claims are raised in this Second Amended Complaint based on this Court's April 13, 2026 Order (ECF #57), each claim is alleged to violate Plaintiffs' constitutional rights independently and in combination with the other provisions of the Top-Two law and must be analyzed in that framework.[3] Plaintiffs also intend to preserve all previously dismissed claims for appeal.

## JURISDICTION AND VENUE

1.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question).  Plaintiffs brings this action under 42 U.S.C. § 1983.  Plaintiffs also seek relief authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

2.       This Court is an appropriate venue for this action pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3.       Plaintiff Peace and Freedom Party is an Oakland,  California-based political party with a feminist, socialist agenda.  Its candidates have sought elective office in California, but have been unable to gain access to the general election ballot, notwithstanding significant support among the electorate, because of the Top-Two primary system.  It is a membership organization and its members support its political agenda.  Support for its political agenda and voters who cast and wish to cast their votes for its candidates in California are not limited to members.

4.       Plaintiff Libertarian Party of California ("LPC") is the California affiliate of

---

[3] *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 730 (9th Cir. 2015); *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008) (must be evaluated in light of entire statutory scheme and each restriction in combination with the others).

the Libertarian Party.  Candidates affiliated with the LPC regularly run for elective office in California, subject to the Top-Two primary law at issue in this case and have been barred from appearing on the general election ballot since the passage of the Top-Two primary law on numerous occasions.  Prior to the passage of the Top-Two primary law, LPC candidates regularly had access to the general election ballot for offices that now fall within the ambit of the Top-Two primary law. Its candidates often receive significant support at the polls in the primary, under the Top-Two primary system, but are blocked from appearing on the general election ballot solely because they did not finish in the top two positions in the primary.   The LPC has been active at all times relevant to this Complaint in addressing policy issues of great public interest to Californians and nationally.  The LPC has continued to seek ballot access in California in many races for elective office, putting forward a platform of smaller government and greater individual freedoms and will do so in the future.  It is a membership organization and its members support its political agenda.  Support for its political agenda and voters who cast and wish to cast their votes for its candidates in California are not limited to members.

5.      Plaintiff Green Party of California is a California-based political party which characterizes its platform as working to build an alternative system for a socially and racially just, ecologically sustainable, democratic and peaceful society that exists in harmony with nature. Its candidates for elective office in California have been prevented from appearing on the general election ballot because of the Top-Two primary law, despite significant support for the Party and its platform and candidates among the electorate.  It is a membership organization and its members support its political agenda.  Support for its political agenda and voters who cast and wish to cast their votes for its candidates in California are not limited to members.

6.      Plaintiff American Solidarity Party of California ("ASPC") is the national party's California chapter.  It stands for the sanctity of human life, the necessity of social justice, a shared responsibility to care for the environment, and the promotion of a more peaceful world.  Its candidates for elective office in California have been prevented from appearing on the general

election ballot because of the Top-Two primary law.  Its candidate for President regularly has qualified as a write-in candidate for President in the November general election, notwithstanding California's extremely cumbersome requirements for write-in candidates to appear on the general election ballot for President.   It is a membership organization and its members support its political agenda.  Support for its political agenda and voters who cast and wish to cast their votes for its candidates in California are not limited to members. Plaintiff American Solidarity Party of California is unconstitutionally burdened because when its candidates run in the primary, they are prohibited from having their party name appear on the ballot under California Election Code §§ 8002.5 and 13105.  Their ballot label is just "party preference: none." *Id.*; *See Soltysik v. Padilla*, 910 F.3d 438 (9th Cir. 2018).

7.      Plaintiff Gail Lightfoot is a registered California voter who ran for the United States Senate in 2024 as a Libertarian Party of California candidate, but was denied access to the general election ballot because of the Top-Two primary law.  She also wanted to cast her vote in the general election for herself and other Libertarian candidates, but all were denied ballot access because of the Top-Two primary.  Ms. Lightfoot, alternatively, would at least liked to have been able to submit her name and other minor party candidates as write-in candidates in the general election; but this, too, was barred by the Top-Two primary law.

8.      Plaintiff Joe Dehn is a registered California voter who ran for the United States House, seeking to be the elected Representative from California's 17th House District in 2024 as a Libertarian Party of California candidate, but was denied access to the general election ballot because of the Top-Two primary law.  He also wanted to cast his vote in the general election for himself and other Libertarian candidates, but all were denied ballot access because of the Top-Two primary.  Mr. Dehn, alternatively, would at least liked to have been able to submit his name and other minor party candidates as write-in candidates in the general election; but this, too, was barred by the Top-Two primary law.

9.      Plaintiff Sean Dougherty is a registered California voter who ran for the

United States House, seeking to be the elected Representative from California's 19th House District in 2024 as a Green Party of California candidate, but was denied access to the general election ballot because of the Top-Two primary law.  He also wanted to cast his vote in the general election for himself and other Green Party candidates, but all were denied ballot access because of the Top-Two primary.  Mr. Dougherty, alternatively, would at least liked to have been able to submit his name and other minor party candidates as write-in candidates in the general election; but this, too, was barred by the Top-Two primary law.

10.     Plaintiff William Patterson is a registered California voter who ran for a seat in the United States House, seeking to be the elected Representative from California's 28th House District in 2024 as a Peace and Freedom Party of California candidate, but was denied access to the general election ballot because of the Top-Two primary law.  He also wanted to cast his vote in the general election for himself and other Peace and Freedom Party candidates, but all were denied ballot access because of the Top-Two primary.  Mr. Patterson, alternatively, would at least like to have been able to submit his name and other minor party candidates as write-in candidates in the general election; but this, too, was barred by the Top-Two primary law.

11.      Plaintiff Aaron Reveles is a registered California voter who ran for a seat in the United States House, seeking to be the elected Representative from California's 34th House District in 2024 as a Peace and Freedom Party of California candidate, but was denied access to the general election ballot because of the Top-Two primary law.  He also wanted to cast his vote in the general election for himself and other Peace and Freedom Party candidates, but all were denied ballot access because of the Top-Two primary.  Mr. Reveles, alternatively, would at least liked to have been able to submit his name and other minor party candidates as write-in candidates in the general election; but this, too, was barred by the Top-Two primary law.

12.     Plaintiff Shannel Pittman is a registered California voter who ran for a seat in the California Assembly, seeking to be the elected Representative from the 52nd Assembly District, as a Green Party of California candidate, but was denied access to the general election

ballot because of the Top-Two primary law.  She also wanted to cast her vote in the general election for herself and other Green Party candidates, but all were denied ballot access because of the Top-Two Primary.  Ms. Pittman would at least liked to have been able to submit her name and other minor party candidates as write-in candidates in the general election; but this, too, was barred by the Top-Two primary law.

13.    All Plaintiffs are resident-citizens of California.

14.    Each individual Plaintiff who has been a candidate intends to run for elective office again and vote again in California and each political party Plaintiff intends to field candidates and to associate with voters who support their respective agendas and political positions in the future.

15.    Defendant Dr. Shirley N. Weber, a resident-citizen of California, serves as Secretary of State for the State of California and, among her other job duties, she is responsible for administering and enforcing the laws and procedures governing elections in California, including the application of the Top-Two primary system.

**FACTS**

16.    The Top-Two system in California was added to the California Constitution by Proposition 14, which was placed on the ballot by the California Legislature in 2009 and passed by voters the following year.  It became effective as of January 1, 2011.

17.    Under the system, statewide executive and state and federal legislative offices are designated "voter-nominated offices."  The Top-Two system in California is not a non-partisan system.

18.    In non-presidential election years, when there is a general election in November, a primary election is held in June for voter-nominated offices in which all voters and candidates, without regard to party affiliation, participate.

19.    In years in which there is a presidential election in November, the primary election for voter-nominated offices and for president are consolidated and the primary is held on

the first Tuesday after the first Monday in March.  Cal. Elec. Code §1202.

20.    In 2024, the Top-Two primary for voter-nominated offices in California was held on March 5, 2024.

21.    The Top-Two primary does not elect any candidate for any office; in fact, even if there is only one candidate in the Top-Two primary, that person is simply placed on the general election ballot and can only be elected from the general election ballot.

22.    California does not allow write-in candidates on the general election ballot in races subject to the Top-Two primary.

23.    There is no way for any candidate who does not finish in first or second place in the Top-Two primary to obtain access to the general election ballot.

24.    Unless a candidate for an elective office in California that is subject to the Top-Two primary finished in first or second place in the Top-Two primary, such candidate cannot be elected into office and voters cannot cast their vote in the general election for any such candidate.

25.    Proposition 14 and the adoption of the Top-Two primary effected a substantial change in the California electoral process.

26.    Prior to its passage, parties would nominate a candidate for elective office and the nominee of a qualified political party would be placed on the general election ballot.  That is no longer the case.

27.    In the years since the passage of Proposition 14 and the adoption of the Top-Two primary in California, when there is at least one Republican on the primary ballot and one Democrat on the primary ballot no minor party candidate ever finishes in the top two.[4]  The

---

[4]  There is only one single exception to this historical fact in any election subject to Top-Two since its enactment.  In the 2024 Top-Two primary for California State Assembly District 18, the American Independent Party candidate, Andre Sandford finished second by a few votes over two Republican candidates who split the Republican vote.  The Democratic party candidate overwhelmingly finished first.  The split was Dem: 84.9%; AIP: 5.3%; Rep: 5.1%; Rep: 4.7%. California Secretary of State's *Statement of Vote*.

barrier to minor party candidates and their voting supporters has been unconstitutionally insurmountable, as the historical record now establishes.

28.    As a direct result of the adoption of the Top-Two primary, there is no feasible opportunity for any political candidate who does not represent the Democratic or Republican Party to obtain access to the general election ballot in California where there is more than one candidate representing the Democratic or Republican Party in the Top-Two primary.

29.    The Top-Two primary effectively eliminates the ability of any candidate who is not a Democrat or Republican to appear on the general election ballot and effectively eliminates the ability of any voter to vote to elect any candidate who is not a member of the Democratic or Republican party.

30.    By effectively denying access to the general election ballot for any political candidate other than a Democrat or Republican, California law unlawfully limits the ability of third-parties to attract members and grow and to obtain elective office in California. It also makes it much harder for a small political party to retain ballot-qualified status, a requirement to be able to list party preference on the ballot.  *See* Cal. Const. Art. II §§ 5-6.

31.    The discrimination effected by the Top-Two primary between the two major political parties on the one hand (Democratic and Republican parties) and minor parties (and independent candidates) violates the rights of Plaintiff parties, their members, their followers, Plaintiff candidates and voters and those other eligible voters who wish to cast their vote for them on the general election ballot, guaranteed under the First Amendment and under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  The barring of write-in candidates from the ballot further impermissibly restricts the exercise of these fundamental constitutional rights and effectively disenfranchises those voters who wish to vote for the write-in candidate of their choice.[5]

---

[5]  Cal. Elec. Code, § 8606; Cal. Const. Art. II, §§ 5-6.

32.    California's Top-Two primary system, in conjunction with other California ballot access laws, unconstitutionally violates the First and Fourteenth Amendment rights of minor parties, their candidates, voters who wish to cast their votes for them for elective office, and independent candidates and their supporters and voters, including, but not limited to, the right to vote to further their political beliefs and otherwise meaningfully vote, the right to associate[6] with others who share political beliefs, the right to be a candidate whom voters can elect.[7]

33.    In a presidential election year, the provision under California law for holding the Top-Two primary in early March, Cal. Elec. Code § 1202, further violates the First and Fourteenth Amendment rights of Plaintiffs, their members and candidates, and of the voters and is plainly unconstitutional.

34.    Plaintiffs, members and candidates of the Plaintiff political parties, and California's voters have been proximately harmed and severely burdened by the passage, enforcement, and application of the Top-Two primary system.

35.    There is no state interest sufficient to constitutionally justify the Top-Two primary law as applied to Plaintiffs under any constitutional analysis.[8]  There are viable alternatives readily available that would serve any claimed state interest and not violate the rights of the Plaintiffs.

36.    For example, there is no legitimate argument that can be made to the effect that the Top-Two primary law serves a state interest by limiting ballot overcrowding or voter confusion.  Since Top-Two became the law, the primary ballots are by far more crowded than primary ballots prior

---

[6]  The exclusion of candidates "burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying-point for like-minded citizens." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).

[7]  "[A]n election campaign is a means of disseminating ideas as well as attaining political office." *Ill. State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 186 (1979).

[8]  The Court should apply strict scrutiny and require compelling state interests.  *See* Jessica A. Levinson, *Is the Party Over?  Examining the Constitutionality of Proposition 14 as It Relates to Ballot Access for Minor Parties* 44 Loyola of Los Angeles Law Review 463, 506 (Winter 2011).

to Top-Two.  There are many viable alternatives to meets these state interests without limiting access to the general election ballot to two candidates, especially with the demonstrated history here of the exclusion of minor party candidates and independents from the general election ballot since Top-Two became the law.  California has not and cannot demonstrate that limiting the general election ballot to two candidates is necessary or even rationally related to prevent ballot overcrowding or voter confusion, let alone that there is a compelling basis for it or that it is the least restrictive means for meeting any such purported state interest.

37.     Similarly, there is no legitimate argument that can be made that the Top-Two system serves a state interest in increasing voter participation and certainly not that Top-Two is even rationally related to such a purported state interest, let alone the least restrictive means of serving that interest.  Quite to the contrary, not only has Top-Two failed to increase voter participation; it has had the effect of decreasing voter participation.

38.     Since Top-Two became the law, voter participation has been lower in both the primaries and the general election.  Indeed, in 2014, voter participation in the primary at 25.17% was the lowest in California history in a midterm year.  In 2022, voter participation in the primary at 33.20% was lower than in any midterm primary in any year from 1974 through 2010 (all prior to Top-Two).  Voter participation in the midterm general election in 2014 at 42.20% was far lower than voter participation in any midterm general election from 1974 through 2010 (all prior to Top-Two).  In 2022 voter participation in the midterm general election at 50.80% was lower than in any midterm general election year from 1974-2010 except for 2002 (50.57%).[9]

39.     Moreover, when the two candidates who qualify for the general election are from the same major parties, voter participation drops off steeply in such races.  For example, in 2016 and 2018 the two candidates who were permitted to appear on the general election ballot for the U.S. Senate race were both Democrats.  In those races, of the voters who cast a ballot in 2016, 16.20% did not

---

[9]  Source: California Secretary of State's annual "Statement of Vote."

vote in the U.S. Senate race and for 2018, 12.58% of those who voted in the general election, did not cast a vote in the U.S. Senate race.  With both candidates for Lt. Governor on the general election ballot for Lt. Governor in 2018 Democrats, 17.74% of the voters who otherwise cast ballots in the general election, did not cast a vote for Lt. Governor in the general election.[10]

40.    Top-Two most certainly does not serve any state interest in increasing voter choice; indeed it needlessly, impermissibly, and dramatically limits voter choice with respect to the candidate to be elected.  Top-Two, by definition, limits voter choice to one of a total universe of two candidates by prohibiting any route to the general election - the only election from which a candidate can actually be elected to office - other than through the Top-Two primary (from which no candidate is elected into office).  Any voter who does not wish to vote for the Democratic or Republican party candidate in the general election under the Top-Two system cannot cast a vote for a candidate of choice, given the severe burden and barriers complained of herein.  The history since Top-Two's enactment establishes that the general election choice has been and will be limited to either a Republican or Democratic candidate if there were two candidates in the primary from the Republican or Democratic party, completely shutting out any minor party candidate and any voter wishing to cast a vote to actually elect a candidate other than a Republican or Democrat.  The limitation on voter choice is further reflected by the blank ballots cast in the general elections referred to in ¶39 herein.

41.    California legislators and others are finally realizing the Top-Two is a "failed experiment" and is "undemocratic" and an initiative to eliminate Top-Two is underway.[11] The fact that the Top-Two primary was upheld in California state court provides no *res judicata* bar to this action. A fundamental principle of ballot access jurisprudence is that a court must consider ballot access

---

[10]  Source: California Secretary of State's annual "Statement of Vote."

[11]  https://ballotpedia.org/California_Repeal_Top-Two_Primary_System_Initiative_(2028); https://www.sfchronicle.com/politics/joegarofoli/article/top-two-primary-jungle-election-califor nia-22255381.php

history since the enactment of the ballot access statute under review.  When ballot history indicates that minor parties seldom or never got on the general election ballot in the years since the enactment of the statute at issue, *res judicata* in the ballot access context requires a re-evaluation factoring in that ballot history.[12]  "Past experience will be a helpful, if not always an unerring, guide: it will be one thing if independent candidates have qualified with some regularity and quite a different matter if they have not."  *Storer v. Brown*, 415 U.S. 724, 742 (1974).  *See also*, *Cal. Justice Comm. v. Bowen*, 2012 U.S. Dist. LEXIS 150424, *19-*20, 2012 WL 5057625 (C.D. Cal., October 18, 2012) (emphasizing the burden of an early deadline on new parties and the importance of considering the history of their ability to gain access to the general election ballot or lack thereof).

42.     Defendant has at all times relevant to this action acted under color of state law and the rights violated by Defendant's actions and the application of California's Top-Two primary law and associated provisions as described herein have been clearly established rights under the First and Fourteenth Amendments for many years.

43.     Defendant's actions under color of law have deprived and will continue to deprive Plaintiffs and their members, candidates, and voters of their fundamental constitutional rights and will continue to inflict continuing and irreparable injury to them.

**CAUSES OF ACTION (42 U.S.C. § 1983)**

**COUNT ONE**

**(The March Primary)**

44.     Paragraphs 1-43 of this Second Amended Complaint are incorporated and restated herein as if expressly set forth.

---

[12]  *See, e.g., Libertarian Party of Ill. v. Ill. State Bd. of Elections*, 164 F. Supp. 3d 1023, 1031-1033 (N.D. Ill. 2016), *affirmed by*, *Libertarian Party of Ill. v. Scholz*, 872 F.3d 518 (7th Cir. 2017) (striking down ballot access law, rejecting *res judicata* and overturning *Green Party v. Henrichs*, 822 N.E. 2d 910, 355 Ill. App. 3d 445 (Ill. App. 2005) and other decisions earlier upholding the law).

45.     The Scheduling of the Top-Two Primary in March Violates Plaintiffs' First and Fourteenth Amendment Rights Under the United States Constitution.[13]

46.     Scheduling the primary for the first Tuesday after the first Monday in March in a Presidential election year unconstitutionally burdens the rights of minor parties, those who would like to associate with them, candidates, and voters, including, but not limited to each of the Plaintiffs herein, in a variety of ways.  These unconstitutional burdens exist irrespective of the fact that all candidates participate in one jungle primary.  "Sometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike." *Anderson v. Celebrezze*, 460 U.S. 780, 801 (1983), *quoting from*, *Jenness v. Fortson*, 403 U.S. 431, 442 (1971); *Merrifield v. Lockyer*, 547 F.3d 978, 985-986 (9th Cir. 2008).[14]

47.     These Plaintiffs have been unconstitutionally burdened by the March primary provision in the following ways and no state interest justifies burden the early deadline presents:

    (A) As minor parties and non-major party candidates (including independents), it is vitally important for them to educate voters about their party identity, principles, agenda, and where they stand on issues.  The early March primary limits their ability to do so because the upcoming election has not yet been defined, they are operating in a political vacuum, and generating interest among voters in the alternatives to the major parties that they offer is overwhelmingly difficult at a time so remote from the general election.  Indeed, the early March primary is even more unfairly burdensome because minor parties must identify their candidates for office in the

---

[13] **"The constitutional right of citizens to create and develop new political parties . . . . derives from the First and Fourteenth Amendments and advances the constitutional interest of like-minded voters to gather in pursuit of common political ends, thus enlarging the opportunities of all voters to express their own political preferences. To the degree that a State would thwart this interest by limiting the access of new parties to the ballot, we have called for the demonstration of a corresponding interest sufficiently weighty to justify the limitation."  Norman v. Reed, 502 U.S. 279, 288-89 (1992).**

[14] *Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340, 1362 (N.D. Ga. 2016),("'… burdens that fall on new or smaller parties fall disproportionately on 'those voters whose political preferences lie outside the existing political parties.' *Anderson,* 460 U.S. at 793-94, *citing Clements v. Fashing*, 457 U.S. 957, 964 (1982))."

previous calendar year, 165 days before the early March primary.  As an example, for the 2028 election, 165 days earlier is September 24, 2027, a date closer to the previous election on November 3, 2026 than to the general election in 2028 on November 7, 2028.

(B) Organizing supporters to get out their political message is much more difficult for Plaintiffs at a time so remote from the general election.  It takes more time for minor parties and non-major party candidates (including independents) to mobilize and recruit supporters, voters, and candidates.

(C) The early March deadline unnecessarily prevents Plaintiffs from capitalizing on their political messaging to attract voters on unexpected significant events that arise in the Spring, still well in advance of the general election but that might separate them from the major parties and attract support.

48.     The March deadline constitutes an unconstitutionally severe burden not justified by any state interest and certainly does not represent the least restrictive means to satisfy any state interest.[15]

49.     The March deadline violates the Plaintiffs' First and Fourteenth Amendment rights to associate for the advancement of their political beliefs; the First and Fourteenth rights of qualified voters, regardless of their political persuasion, to cast their votes effectively, and the rights of the Plaintiffs to run for elective office and to hold such office.

50.     California's early March primary date alone, and in combination with other provisions of Top-Two,  provides an historically insurmountable barrier to the general election ballot access in any election race subject to the Top-Two primary system in which there are two or more

---

[15]  For a list of approximately 50 cases in which similarly early deadlines have been struck down, *See* "Lawsuits Which Enjoined or Overturned Early Petition Deadlines" https://ballot-access.org/2019/03/31/march-2019-ballot-access-news-print-edition/ . *See also, Libertarian Party v. Krebs*, 290 F. Supp. 3d 902 (D. S.D. 2018); *Porter v. Pate*, 2022 U.S. Dist. 241720, 2022 WL 19655786 (S.D. Iowa, April 8, 2022).

candidates from either the Democratic or Republican parties.

51.     California's Top-Two system's March primary date has the effect of disenfranchising voters who wish to cast their ballot with respect to any of the elective offices subject to the Top-Two primary system, for a minor party candidate or any candidate of their choice other than a candidate representing the Democratic or Republican parties.  It denies voters their right to express their political beliefs and agenda through a candidate of choice and it prevents Plaintiffs from growing, from attaining and maintaining ballot-qualified status, and it restricts meaningful participation in the democratic political process.

**Count Two**

**(Cal. Elec. Code §§ 8002.5 and 13105 )**

52.     Paragraphs 1-51 of this Second Amended Complaint are incorporated and restated herein as if expressly set forth.

53.     California law, Cal. Elec. Code §§ 8002.5 and 13105, that prohibits Plaintiff American Solidarity Party of California from listing its party name on the ballot and, instead, requires its ballot label to be "Party Preference: None" violates the First and Fourteenth Amendments to the United States Constitution.  There are other related requirements that are imposed in impermissibly discriminatory fashion against minor parties as well.  If the ASPC wants to have a candidate statement, for example, it has to purchase one and, similar to its listing on the ballot as "party preference: none," if the ASPC purchases a candidate statement, even on the candidate statement, its candidates are listed as "No Qualified Party Preference."  If the ASPC wants its party name to appear anywhere on the candidate it has to pay the State just to have the words "American Solidarity Party" on the candidate statement, and it still will not appear anywhere on the ballot.  While the ASPC has to go through an extremely burdensome process to become a qualified party, the current qualified parties were grandfathered in.  No other party has successfully qualified since Top-Two and its associated requirements were enacted.

54.     Plaintiff ASPC has worked hard to develop its political messaging and to publicize its

stand on important political issues. This is essential to helping the Party grow and attract voters, supporters, and candidates.

55.    As set out in Paragraph 6 of this Second Amended Complaint, Plaintiff ASPC is the California chapter of a national party. The Party fields candidates for elective office and, specifically for President in elections around the country. By not allowing its party label to be listed on the ballot in California, California's restrictions negatively impact the Party's ability to grow nationally and the ASPC is denied the advantage of attracting voters, supporters, and candidates who are familiar with and support the national party and its mission and agenda but who, because of California's prohibition on using the party label, do not understand the relationship of its candidates to the national party.

56.    A party's name and the political philosophy and agenda associated with that name is vitally important to the Party's ability to attract voters, supporters, and candidates who would be likely to subscribe to its views and take valuable cues from the Party label associated with that agenda and its ideological bona fides. By denying ASPC the ability to use its party label in the California jungle primary, the statutory provisions at issue severely handicap the ASPC at a critical juncture in the election process and, specifically at the most dispositive, climatic juncture in the process - selecting a candidate in the voting booth.[16]

57.    Requiring the use of "None" to indicate "Party Preference" falsely reflects the ASPC's and its candidates' approach to the election and misleads potential voters, implying that its candidates and the Party itself is neutral, has not meaningful specific agenda sufficient to set it apart from other parties and leads to confusion.

---

[16] *See Soltysik v. Padilla*, 910 F.3d 438, 442 (9th Cir. 2018); *Tashjian v. Republican Party*, 479 U.S. 208, 220 (1986) ("To the extent that party labels provide a shorthand designation of the views of party candidates on matters of public concern, the identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise.").

58.   There is no sufficient state interest justifying this severely burdensome restriction on the ASPC's ability to list its party label on the ballot.

59.   The statutory provisions at issue have has the effect of disenfranchising voters who wish to cast their ballot with respect to any of the elective offices subject to the Top-Two primary system, for a minor party candidate or any candidate of their choice other than a candidate representing the Democratic or Republican parties.  It denies voters their right to express their political beliefs and agenda through a candidate of choice and it prevents Plaintiff ASPC from growing, from attaining and maintaining ballot-qualified status, and it restricts meaningful participation in the democratic political process, all in violation of the First and Fourteenth Amendments.  It also violates ASPC's rights to Equal Protection of the law by discriminating against it in materially detrimental ways because of its status as a minor political party in contrast to California law's treatment of the Democratic and Republican parties.

### CLAIMS FOR RELIEF[17]

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

1.   Enter a judgment declaring the March primary date and the party label restrictions provisions of California's Top-Two primary system identified above and as codified in the California Constitution and the California Election Code, to be violative of the First and Fourteenth Amendments to the United States Constitution and otherwise unconstitutional as applied to Plaintiffs and enjoining the Defendant from applying either provision;

2.   Require the Defendant to list the party label on the ballot for all American Solidarity Party of California candidates.

3.   Award Plaintiffs reasonable attorney's fees and costs of this action;

---

[17]  **" ...States may not employ ballot access limitations which result in the exclusion of minor parties from the ballot."** *See Williams v. Rhodes, supra*. **"The Constitution requires that access to the electorate be real, not 'merely theoretical.'" American Party of Texas, 415 U.S., at 783, quoting** *Jenness v. Fortson*, **403 U.S. 431,  439."** *Munro v. Socialist Workers Party*, **479 U.S. 189, 205 (1986).**

4.    Grant Plaintiffs such other and further relief as this Court deems just and equitable.

**"In our political life, third parties are often important channels through which political dissent is aired: 'All political ideas cannot and should not be channeled into the programs of our two major parties. History has amply proved the virtue of political activity by minority, dissident groups, which innumerable times have been in the vanguard of democratic thought and whose programs were ultimately accepted. . . . The absence of such voices would be a symptom of grave illness in our society.'"** *Sweezy v. New Hampshire*, **354 U.S. 234, 250-251 (opinion of WARREN, C. J.).** *Williams v. Rhodes*, **393 U.S. 23, 39 (1968) (Douglas, J., Concurring).**

Respectfully Submitted,

s/ Soyeun D. Choi (SBN 211344)
Counsel for Plaintiffs

Soyeun D. Choi, Esq., PC
969G Edgewater Blvd, 314
Foster City, CA 94404
Telephone: (650) 380-6116;
E-mail: Soyeun@SoyeunEsq.com

/s/ David I. Schoen
Counsel for Plaintiffs
*pro hac vice*

David I. Schoen
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: 917-941-7952
Facsimile: 917-591-7586
E-Mail: Dschoen593@aol.com
        Schoenlawfirm@gmail.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 21st day of May, 2026, I caused a copy of the foregoing

Second Amended Complaint to be served on all counsel of record by filing the same in this Court,

through the ECF system.

<u>/s/ David I. Schoen</u>
Counsel for Plaintiffs
*pro hac vice*
