ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
GABRIELLE D. BOUTIN
Deputy Attorney General
State Bar No. 267308
  1300 I Street, Suite 125
  Sacramento, CA 95814
  Telephone:  (916) 210-6053
  Fax:  (916) 324-8835
  E-mail:  Gabrielle.Boutin@doj.ca.gov
*Attorneys for Defendant Dr. Shirley Weber, in her
official capacity as California Secretary of State*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **PEACE AND FREEDOM PARTY, et al.,**<br><br>                                        Plaintiffs,<br><br>             v.<br><br>**DR. SHIRLEY N. WEBER, CALIFORNIA SECRETARY OF STATE,**<br><br>                                        Defendant. | 3:24-cv-08308-MMC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          October 2, 2026<br>Time:         9:00 a.m.<br>Dept:         Courtroom 7 – 19th Floor<br>Judge:       Hon. Maxine M. Chesney<br>Trial Date:  None set<br>Action Filed: 11/21/2024 |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED
COMPLAINT ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 2

INTRODUCTION ....................................................................................... 2

BACKGROUND ........................................................................................ 2

    I. Relevant California Election Laws ...................................................... 2

    II. The Parties ...................................................................................... 4

    III. Plaintiffs' First Amended Complaint and Its Dismissal .......................... 4

    IV. Allegations in the Second Amended Complaint ..................................... 5

LEGAL STANDARDS .................................................................................. 6

    I. Standard Applicable to a Motion to Dismiss Under Fed. R. Civ. Proc.
12(b)(6) ......................................................................................... 6

    II. Standards For Evaluating the Constitutionality of State Election Laws ................. 7

ARGUMENT ............................................................................................ 8

    I. Plaintiffs Assert Only Facial Constitutional Claims But Do Not Plausibly
Allege That All Applications of the Challenged Laws Are Unconstitutional ....... 8

    II. Count 1: Plaintiffs' Challenge to March Primaries in Presidential Election
Years Fails To State a Claim ............................................................... 9

        A. California's March Primaries in Presidential Election Years Do Not
Severely Burden Plaintiffs' Political Opportunities ................................. 9

        B. California's Interests Justify Any Burden Imposed by Holding
Primaries in March of Presidential Election Years ............................... 12

    III. Count 2: American Solidarity Party of California's Challenge to
California's "Party Preference" Statutes Fails to State a Claim .......................... 13

        A. ASPC Is Not Severely Burdened By the Party Preference Statutes .......... 13

        B. The Party Preference Statutes Are Justified By California's
Important Regulatory Interests ........................................................ 15

    IV. The Court Should Deny Leave to Amend the Second Amended Complaint ........ 18

CONCLUSION ........................................................................................ 18

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Anderson v. Celebrezze*
460 U.S. 780 (1983) ............................................................................................... *passim*

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................................................................................ 7

*Burdick v. Takushi*
504 U.S. 428 (1992) ............................................................................................................ 7

*Buscemi v. Bell*
964 F.3d 252 (4th Cir. 2020) ............................................................................................ 11

*Cervantes v. Countrywide Home Loans, Inc.*
656 F.3d 1034 (9th Cir. 2011) .......................................................................................... 18

*Chamness v. Bowen*
722 F.3d 1110 (9th Cir. 2013) ................................................................................ 7, 15, 16

*Dudum v. Arntz*
640 F.3d 1098 (9th Cir. 2011) ..................................................................................... 7, 11

*Fayer v. Vaughn*
649 F.3d 1061 (9th Cir. 2011) ............................................................................................ 7

*Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*
471 F.3d 1100 (9th Cir. 2006) .......................................................................................... 17

*Johnson v. Riverside Healthcare Sys., LP*
534 F.3d 1116 (9th Cir. 2008) ............................................................................................ 7

*Lawrence v. Blackwell*
430 F.3d 368 (6th Cir. 2005) ...................................................................................... 10, 11

*Lazy Y Ranch Ltd. v. Behrens*
546 F.3d 580 (9th Cir. 2008) .............................................................................................. 7

*Moody v. NetChoice, LLC*
603 U.S. 707 (2024) ............................................................................................................ 8

*Munro v. Socialist Workers Party*
479 U.S. 189 (1986) ........................................................................................... 8, 9, 10, 11

*N. Star Int'l v. Ariz. Corp. Comm'n*
720 F.2d 578 (9th Cir. 1983) .............................................................................................. 6

ii

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Rubin v. City of Santa Monica*
  308 F.3d 1008 (9th Cir. 2002) ............................................................................ 8, 15

*Rubin v. Padilla*
  233 Cal.App.4th 1128 (2015) ........................................................................ 2, 3, 15

*Short v. Brown*
  893 F.3d 671 (9th Cir. 2018) ................................................................................. 12

*Soltysik v. Padilla*
  910 F.3d 438 (9th Cir. 2018) ............................................................... 13, 14, 16, 17

*Tedards v. Ducey*
  951 F.3d 1041 (9th Cir. 2020) .................................................................. 7, 12, 16

*Timmons v. Twin Cities Area New Party*
  520 U.S. 351 (1997) ................................................................................ 13, 14, 15

*Washington State Grange v. Washington State Republican Party*
  552 U.S. 442 (9th Cir. 2008) ............................................................................. *passim*

*Washington State Republican Party v. Washington State Grange*
  676 F.3d 784 (9th Cir. 2012) ................................................................................ 10

**STATUTES**

42 U.S.C. § 1983 ........................................................................................................ 4

Cal. Elec. Code
  § 337 ........................................................................................................................ 3
  § 359.5 ..................................................................................................................... 3
  § 359.5(a) ................................................................................................................ 3
  § 1201 ...................................................................................................................... 3
  § 1202 ................................................................................................................... 3, 9
  § 5100 ...................................................................................................................... 4
  § 8002.5 ............................................................................................................ 2, 4, 6
  § 8062 .................................................................................................................... 15
  § 8103 .................................................................................................................... 15
  § 8141.5 ................................................................................................................... 3
  § 13105 ............................................................................................................. 2, 4, 6
  § 13105(a) ................................................................................................................ 4
  § 13307.5 ............................................................................................................... 17

Cal. Gov. Code § 85601 ........................................................................................... 17

iii

**TABLE OF AUTHORITIES**
(continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

California Constitution Article II
    § 5.................................................................................................................... 2, 4
    § 5(a) ................................................................................................................. 3, 5
    § 5(b) ............................................................................................................ 3, 4, 14
    § 5(c) ..................................................................................................................... 3
    § 5(d) .................................................................................................................... 3

United States Constitution
    First Amendment............................................................................................ 4, 8, 16
    Second Amendment ............................................................................................... 2
    Fourteenth Amendment.................................................................................. *passim*

**COURT RULES**

Federal Rules of Civil Procedure Rule 12(b)(6) ....................................................... 1, 6, 7

Notice of Mot. and Mot. to Dismiss Second Amended Complaint; Memo. of Pts. & Auth. (3:24-cv-08308-MMC)

## NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

PLEASE TAKE NOTICE THAT on October 2, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Maxine M. Chesney of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue in San Francisco, California, Defendant Dr. Shirley Weber, in her official capacity as California Secretary of State, will and hereby does move this Court to dismiss the Complaint and all claims therein, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion to dismiss is made on the grounds that Plaintiffs fails to state a claim upon which relief can be granted.  This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, and the papers and pleadings on file, and upon such matters that may be submitted at the hearing.

Dated: June 23, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General

*s/ Gabrielle D. Boutin*
GABRIELLE D. BOUTIN
Deputy Attorney General
*Attorneys for Dr. Shirley Weber, in her official capacity as California Secretary of State*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

"The States possess a broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (9th Cir. 2008) (quoting *Clingman v. Beaver,* 544 U.S. 581, 586 (2005) (internal quotation marks omitted).

Plaintiffs initially filed this suit to primarily challenge the general framework of California's top-two primary system, i.e. the advancement of the top-two vote getters to the general election. This Court correctly dismissed that constitutional challenge without leave to amend.

Plaintiffs have, however, amended two other constitutional challenges from their previous complaint. In Count 1 of the operative Second Amendment Complaint, Plaintiffs challenge California's scheduling of its primaries in March (rather than June) of presidential election years. In Count 2, Plaintiff American Solidarity Party of California challenges Elections Code sections 8002.5 and 13105, which require candidates' ballot labels to state "Party Preference: None" if they prefer a non-qualified political party.

Both of these counts fail to state a claim because the challenged laws satisfy *Anderson/Burdick* review: the laws do not impose severe burdens on Plaintiffs' constitutional rights and they are justified by California's important regulatory interests. The Second Amended Complaint should therefore be dismissed without leave to amend.

### BACKGROUND

#### I.   RELEVANT CALIFORNIA ELECTION LAWS

In 2010, California voters approved Proposition 14, which amended Article II, Section 5 of the California Constitution to create the state's top-two primary system for certain elected offices. *See* CAL. CONST. art. II, § 5; *Rubin v. Padilla*, 233 Cal.App.4th 1128, 1137 (2015). The top-two system applies to statewide executive offices (such as the Governor and Secretary of State) and state and federal legislative offices, all of which California designates as "voter-nominated

2

offices." CAL. CONST. art. II, § 5(a); Cal. Elec. Code § 359.5; *Rubin*, 233 Cal.App.4th at 1137. The top-two primary system does not apply to elections for presidential candidates, political party committees, or party central committees, which are designated as "party-nominated" offices. CAL. CONST. art. II, § 5(c), (d); Cal. Elec. Code § 337.[1]

Under the top-two primary system, "[a]ll voters may vote at a voter-nominated primary election for any candidate for congressional and state elective office without regard to the political party preference disclosed by the candidate or the voter, provided that the voter is otherwise qualified to vote for candidates for the office in question." CAL. CONST. art. II, § 5(a). This process leads to a general election between the two candidates receiving the most votes in the primary election, regardless of party preference or affiliation. *Id.* The purpose of a top-two primary is not "to determine the nominees of a political party"; rather, it "serves to winnow the candidates for the general election to the candidates receiving the highest or second highest number of votes cast at the primary election." Cal. Elec. Code § 359.5(a).

The top-two primary system also provides that while a political party may endorse, support or oppose a candidate, it "shall not nominate a candidate for any congressional or state elective office at the voter nominated primary," and "shall not have the right to have its preferred candidate participate in the general election for a voter-nominated office other than a candidate who is one of the two highest vote-getters at the primary election . . . ." *Id.* art. II, § 5(b); *see also* Cal. Elec. Code § 8141.5.

California statewide primaries take place every even-numbered year. Cal. Elec. Code § 1201. In presidential election years, the primaries take place in March. *Id.* § 1202; *see also* S.B. No. 568, 2017-2018 Reg. Sess. (Cal. 2017) (moving presidential election year primaries from June to March). In all other even-numbered years, the primaries take place in June. Cal. Elec. Code § 1201.

---

[1] Prior to Proposition 14's passage, statewide executive offices and state and federal legislative offices were effectively "party-nominated offices." *Rubin*, 233 Cal.App.4th at 1138. For party-nominated offices, the primary serves to designate the party nominees for the general election and each qualified party is entitled to place one, and only one, nominee on the general election ballot. *Id.*

A candidate in a top-two primary who is affiliated with a "qualified" party may list their "party preference" on the election ballot.  *See* CAL. CONST. art. II, § 5(b); Cal. Elec. Code §§ 5100, 8002.5, 13105(a).  A party may become "qualified" by reaching one of three designated statistical thresholds related to votes cast for affiliated candidates, the declared party preference of registered voters, and petition signatures.  Cal. Elec. Code § 5100.  If a candidate has no party preference or prefers a party that is not "qualified," then the ballot states near their name "Party Preference: None."  *Id.* §§ 8002.5(a)(2), 13105(a)(2).

## II.   THE PARTIES

Plaintiffs are minor political parties and their candidates.  SAC at 2.  Defendant is California Secretary of State Shirley Weber, in her official capacity.  Defendant-Intervenors are non-profit entities that sponsored Proposition 14.  *See* ECF No. 17-1 at 2-3.

## III.   PLAINTIFFS' FIRST AMENDED COMPLAINT AND ITS DISMISSAL

Plaintiffs initially filed a Complaint, and then a First Amended Complaint, ECF No. 29 ("FAC"), in this action.  In the FAC, Plaintiffs generally challenged the constitutionality of California's top-two primary system set forth in Article II, section 5 of the California Constitution.  *See generally* FAC at 1-3, 7-10.  The FAC asserted a cause of action under 42 U.S.C. section 1983 for violation of the First and Fourteenth Amendments of the U.S. Constitution.  *Id.* at 13.  Plaintiffs alleged that California's top-two primary system, i.e. the advancement of the top-two vote-getters from the primary to the general election, creates an unconstitutional barrier to the general election ballot for minor parties and their candidates.  FAC at 13.  That claim also challenged, in the context of the top-two primary system, California's prohibition on write-in candidates on the general election ballot and the State's scheduling of the primaries in March of presidential election years.  FAC at 14.

Plaintiff American Solidarity Party of California ("ASPC") alleged an additional constitutional challenge to California Elections Code sections 8002.5 and 13105 (the "Party Preference statutes"), which provide for candidates' "party preference" statements on primary ballots. FAC at 14.  ASPC alleged that these statutes violate its First and Fourteenth Amendment rights by requiring that the ballot labels of its candidates state "Party Preference: None."  *Id.*

4

Defendant and Defendant-Intervenors filed separate motions to dismiss the FAC on the grounds that Plaintiffs had failed to state a claim. ECF Nos. 34, 35. This Court granted both motions with leave to amend. Leave to amend was limited, however, to Plaintiffs' challenges to the State's scheduling of primaries in March of presidential election years and to ASPC's party preference claim.

With respect to the March primary challenge, the Court held that Plaintiffs had failed to state a claim because "plaintiffs d[id] not identify any burden imposed on them on account of such schedule." Order Granting Defendants' Motions to Dismiss, ECF No. 57 ("Order"), at 23. The Court explained that *Anderson* does not establish that a March party nomination deadline was unconstitutional as a matter of law because, there, major parties were permitted to choose their candidates at a later date and therefore had a political advantage over minor parties. *Id*. The Court contrasted the situation here, where "California's top-two primary requires all parties and candidates for voter-nominated offices to compete in the primary in March during presidential election years, see Cal. Const. Article II, § 5(a), thereby imposing only one set of rules for major and minor parties alike." *Id*. The Court granted Plaintiffs leave to amend the claim to attempt to allege a burden. *Id.* at 24.

With respect to ASPC's party preference claim, the Court similarly dismissed it with leave to amend, explaining that Plaintiffs had not sufficiently alleged the "nature and extent" of the purported burden on ASPC. *Id.* at 25-26.

## IV.    ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

In accordance with this Court's Order dismissing the First Amended Complaint, Plaintiffs filed a Second Amended Complaint that challenges only, in the context of California's top-two primary system, the March primary in presidential election years and the Party Preference statutes. *See generally* SAC.

In "Count 1," Plaintiffs again allege that the State's scheduling of the top-two primary in March of presidential election years violates their First and Fourteenth Amendment rights under the United States Constitution. SAC at 15-17. They allege that this scheduling "unconstitutionally burdens the rights of minor parties, those who would like to associate with

5

them, candidates, and voters, including, but not limited to each of the Plaintiffs herein, in a variety of ways." *Id.* Plaintiffs specifically allege by holding the primary "at a time remote from the general election," California's March primaries limit Plaintiffs' ability to:

- educate and interest voters in their parties, party agendas, and the issues;
- "[o]rganiz[e] supporters to get our their message"; and,
- "[c]apitaliz[e] on their political messaging to attract voters on unexpected significant events that rise in the Spring."

SAC at 15-16.

In "Count 2," ASPC also once again challenges the Party Preference statutes, Elections Code sections 8002.5 and 13105, which require that ASPC's candidates' ballot labels state "Party Preference: None" because ASPC is not a qualified political party. SAC 17-19. ASPC alleges that these laws violate its First and Fourteenth Amendment rights. SAC at 17. ASPC alleges that the statutes:

negatively impact the Party's ability to grow nationally and the ASPC is denied the advantage of attracting voters, supports, and candidates who are familiar with and support the national party and its mission and agenda but who, because of California's prohibition on using the party label, do not understanding the relationship of its candidates to the national party.

SAC at 18.

For relief, Plaintiffs pray for a declaration that the "March primary date and party label restrictions" of the top-two primary system violate the First and Fourteenth Amendment and seek an injunction enjoining Defendant from "applying either provision." SAC at 19. Plaintiffs also ask the Court to "[r]equire the Defendant to list the party label on the ballot for all American Solidarity Party of California candidates." *Id.*

## LEGAL STANDARDS

### I.    STANDARD APPLICABLE TO A MOTION TO DISMISS UNDER FED. R. CIV. PROC. 12(B)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is plausible on its

6

face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation omitted). The court accepts as true all material allegations in the complaint and construes them in the light most favorable to the plaintiff. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). However, this tenet does not apply to "legal conclusions ... cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks omitted).

## II.  STANDARDS FOR EVALUATING THE CONSTITUTIONALITY OF STATE ELECTION LAWS

Review of state voting laws does not automatically require heightened scrutiny, but instead follows a flexible balancing standard: a court must weigh "the character and magnitude" of the asserted injury against the "interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration the extent to which the State interests make the burden necessary. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Under this standard, "the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). Accordingly, the Supreme Court has "repeatedly upheld reasonable, politically neutral regulations that have the effect of channeling expressive activity at the polls." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 452 (2008) (quoting *Burdick*, 504 U.S. at 438) ("*Washington I*")). On the other hand, when First and Fourteenth Amendment rights are subject to "severe restrictions," the law must be "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434. However, "voting regulations are rarely subjected to strict scrutiny." *Dudum v. Arntz,* 640 F.3d 1098, 1106 (9th Cir. 2011); *accord Chamness v. Bowen*, 722 F.3d 1110, 1116 (9th Cir. 2013).

Where, as here, the challenged restrictions are "reasonable [and] nondiscriminatory" and not "severe," courts may properly weigh the state's interests against the burden on constitutional rights at the motion to dismiss stage. *See Tedards v. Ducey*, 951 F.3d 1041, 1067-68 (9th Cir.

7

2020); *Rubin v. City of Santa Monica,* 308 F.3d 1008, 1012-13 (9th Cir. 2002) (affirming dismissal at the pleading stage after the trial court found "the ballot designation restrictions do not impose severe burdens on Rubin's First Amendment rights, and that the restrictions are justified by the City's important regulatory interests"); *see also Munro v. Socialist Workers Party*, 479 U.S. 189, 195-95 (1986) (states should be able to "respond to potential deficiencies in the electoral process with foresight" and therefore do not have the burden to offer empirical evidence that the law advances the state's interests).

## ARGUMENT

As explained in detail below, the SAC should be dismissed because both Count 1 and Count 2 fail to state a claim. As a threshold matter relevant to the *Anderson/Burdick* analysis, Count 1 and Count 2 in the SAC are both facial constitutional claims and Plaintiffs must therefore allege that all applications of the challenged statute are unconstitutional. Plaintiffs have failed satisfy this requirement. Neither the March primaries in presidential election years, nor the Party Preference statutes impose a severe burden on Plaintiffs and the laws are justified by California's important regulatory interests.

I.   **PLAINTIFFS ASSERT ONLY FACIAL CONSTITUTIONAL CLAIMS BUT DO NOT PLAUSIBLY ALLEGE THAT ALL APPLICATIONS OF THE CHALLENGED LAWS ARE UNCONSTITUTIONAL**

Count 1 and Count 2 in the SAC are both facial constitutional claims. Plaintiffs do not allege that the challenged laws are unconstitutional as applied in specific factual circumstances (i.e. to a particular candidate in a particular election), but rather, in all (applicable) future elections for all of the Plaintiffs' candidates. *See* SAC at 14-19.

"[A] plaintiff can only succeed in a facial challenge by "establish[ing] that no set of circumstances exists under which the Act would be valid," *i.e.,* that the law is unconstitutional in all of its applications." *Washington I*, 552 U.S. at 449 (citing *United States v. Salerno,* 481 U.S. 739 (1987)). Facial challenges are "disfavored." *Id.* at 450; *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) ("This Court has therefore made facial challenges hard to win").

Plaintiffs are therefore required to plausibly allege in the SAC that the challenged statutes are unconstitutional in all possible factual scenarios.  As explained below, they have not and cannot do so.

## II.   COUNT 1: PLAINTIFFS' CHALLENGE TO MARCH PRIMARIES IN PRESIDENTIAL ELECTION YEARS FAILS TO STATE A CLAIM

### A.   California's March Primaries in Presidential Election Years Do Not Severely Burden Plaintiffs' Political Opportunities

California's scheduling of primary elections in March of presidential election years is a "reasonable, nondiscriminatory" regulation that does not severely burden Plaintiffs' right to ballot access. *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).

Ballot access cases "focus on the degree to which the challenged restrictions operate as a mechanism to exclude certain classes of candidates from the electoral process." *Anderson*, 460 U.S. at 793.  "The inquiry is whether the challenged restriction unfairly or unnecessarily burdens the availability of political opportunity." *Id*. (internal quotation marks omitted).  The Constitution therefore guarantees political parties the opportunity to gain access to state ballots so that voters may cast their votes effectively. *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986) (upholding Washington statute requiring that minor-party candidate receive at least 1% of votes cast in primary election to qualify for general election ballot).  However, the Constitution does not guarantee minor parties a place on a general election ballot when their candidates have easy access to a primary election ballot that affords them the same opportunity to advance to the general election as every other candidate. *Id*. at 199 (a law's "effect on a candidate's constitutional rights is slight" when state "affords a minor-party candidate easy access to the primary election ballot and the opportunity to wage a ballot-connected campaign").  Primary election systems are not unconstitutional merely because "voters must make choices as they vote at the primary," where "there are no state imposed obstacles impairing voters in the exercise of their choices." *Id.*

Here, California's March primaries in presidential election years do not place any burden, and certainly no severe burden, on Plaintiffs' political opportunities.  In all election years,

including presidential election years, California holds a simultaneous primary election for all candidates affiliated with all parties. Cal. Elec. Code § 1202. Major and minor parties face the same challenges and receive the benefits from the timing of these primaries relative to the November general election. And since parties' and candidates' electoral success is relative to one another, minor parties and their candidates have the same political opportunity as their major party counterparts to participate in the primary, and to then proceed to the general election if they are a top-two vote getter. *See Washington State Republican Party v. Washington State Grange* 676 F.3d 784, 795 (9th Cir. 2012) ("*Washington II*") ("because [Washington's top-two primary] gives major and minor party candidates equal access to the primary and general election ballots, it does not give the established parties a decided advantage over any new parties struggling for existence" (internal quotation marks omitted)); *Lawrence v. Blackwell*, 430 F.3d 368, 373 (6th Cir. 2005) (upholding independent candidates' petition filing deadline one day before March primary elections in presidential election years on the grounds that no parties or candidates were disadvantaged compared to the rest of the field); *see also Munro*, 479 U.S.at 199 (a law's "effect on a candidate's constitutional rights is slight" when state "affords a minor-party candidate easy access to the primary election ballot and the opportunity to wage a ballot-connected campaign"). California's March primaries in presidential election years therefore constitute a "reasonable, nondiscriminatory" election regulation. *Anderson*, 460 U.S. at 788.

The purported "burdens" that Plaintiffs allege in the SAC do not amount to "severe" burdens that would subject the March primaries to strict scrutiny. Plaintiffs essentially allege that they are burdened by March primaries because it is more difficult for them to generate voter interest and support before the primaries and because there is less time before the primary to break into the top-two candidates by capitalizing on new issues of public interest. FAC at 15-16. However, the burdens of generating public interest and capitalizing on hot political topics are inherent to the operations of any political party. For political success, at some point before any primary, all parties must educate and appeal to voters, organize their supporters and direct their political messaging to unexpected events. And because all parties and candidates must participate in the March primaries, to the extent these burdens exist, all candidates and candidates are

10

burdened equally and none receives an advantage relative to another.[2]  *See Washington II*, 676 F.3d at 795; *Lawrence*, 430 F.3d at 374 (March petition filing deadline did not severely burden independent candidates because March primary elections meant that all candidates were on equal footing with respect to ability to respond to events close to the general election); *see also Buscemi v. Bell*, 964 F.3d 252, 263 (4th Cir. 2020) (petition filing deadline for independent candidates on same date as March primary election did not impose severe burden).

Possibly implicit in the "burdens" identified by Plaintiffs is the premise that Plaintiffs need more time and opportunity to appeal to voters before the top-two primary because they are generally less popular than the major parties and candidates.  However, "[s]tates are not burdened with a constitutional imperative to reduce voter apathy or to 'handicap' an unpopular candidate to increase the likelihood that the candidate will gain access to the general election ballot."  *Munro*, 479 U.S. at 198.  The March primaries in presidential election years provide minor party candidates the same "political opportunity" to obtain voter support as major party candidates, *Anderson*, 460 U.S. at 793, and do not "impair[] voters in the exercise of their choices," *Munro*, 479 U.S. at 193.

Because the March primaries do not place a severe burden on Plaintiffs, they are not the "rare[]" type of election law that is subject to strict scrutiny." *Dudum v. Arntz,* 640 F.3d 1098, 1106 (9th Cir. 2011).  *See Lawrence*, 430 F.3d at 374 ("[T]he court would be overstepping its bounds to hold that either Ohio's decision to hold its primary at a relatively early date in presidential election years, or its decision to require all potential candidates to take action prior to that date in order to gain a place on the November ballot, are so unreasonable that strict scrutiny is necessary").

[2] Plaintiffs' allegation that it is difficult to generate voters' interest in political issues in March of presidential election years is dubious given the dominance of political issues in the news media and public discourse in the months leading up to presidential primaries.

11

**B.     California's Interests Justify Any Burden Imposed by Holding Primaries in March of Presidential Election Years**

Because March primaries in presidential election years do not severely burden Plaintiffs, the law need only be justified by the state's important regulatory interests to survive review. *Anderson*, 460 U.S. at 788.  That is the situation here.

As the Legislature recognized, holding the primary in March instead of June ensures that California residents have the opportunity to meaningfully influence the presidential primary process before the nominees are already "effectively decided" by other states.   Sen. Third Reading, 2017-2018 Reg. Sess., Analysis of SB 568, as amended August 31, 2017 (Cal. Sept. 13, 2017), at 1; Sen. Rules Comm., Analysis of SB 568, 2017-2018 Reg. Sess. (Cal. Sept. 15, 2017), at 5; Senate Third Reading, 2017-2018 Reg. Sess., Analysis of SB 568, as amended June 21, 2017, (Cal. Aug. 18), 17 at 1-3. This influence, in turn, also and incentivizes candidates to "respond to California's unique issues and challenges" and increases voter turnout for all of the candidates and issues on the ballot in California's primary elections.  Sen. Third Reading, 2017-2018 Reg. Sess., Analysis of SB 568, as amended August 31, 2017 (Cal. Sept. 13, 2017), at 1.

Voter turnout and voter influence on the agendas and positions of presidential candidates are important regulatory interests to California. *See Tedards v. Ducey*, 951 F.3d 1041, 1067 (9th Cir. 2020) ("we agree that Arizona's interest in voter turnout is important"); *Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018) ("California's general interest in increasing voter turnout" justified vote-by-mail regulations).  Indeed, in *California Democratic Party v. Jones*, the Supreme Court asserted that in some circumstances increasing voter choice and participation may even be "compelling" interests.  *Jones,* 530 U.S. at 584.[3]

---

[3] Although California's regulatory interests need not be narrowly tailored under *Anderson/Burdick*, it is worth noting that California already experimented numerous times with when and how to hold its primaries in presidential election years, including by holding only presidential primaries in March while holding all other primaries in June. *See* Sen. Rules Comm., Analysis of SB 568, 2017-2018 Reg. Sess. (Cal. Sept. 15, 2017), at 2-3 (providing history of legislation moving presidential primary dates).  The Legislature has now reasonably decided that a single primary held in March of presidential election years best balances the State's interests in having a voice in presidential primaries and voter turnout and participation, on one hand, and conserving election-related expenditures, on the other. *See id.*; *see also Tedards*, 951 F.3d at 1067 (state had "important interest" in saving election-related costs by declining to hold a separate special election).

12

Finally, as a practical matter, a determination that March primaries are not justified by states' important interests would have nationwide implications. Minor parties in every state would potentially have the constitutional right to later primaries, with no apparent standard for determining how close to the November general election primaries must be held. With no clear constitutional standards or uniformity among states, this would threaten to upend the entire country's schedule for presidential primary and general election campaigns.

California's March primaries in presidential election years are justified by the State's important interests and *Anderson/Burdick* scrutiny is therefore satisfied.

### III. COUNT 2: AMERICAN SOLIDARITY PARTY OF CALIFORNIA'S CHALLENGE TO CALIFORNIA'S "PARTY PREFERENCE" STATUTES FAILS TO STATE A CLAIM

#### A. ASPC Is Not Severely Burdened By the Party Preference Statutes

ASPC alleges that its First and Fourteenth Amendment rights are burdened by the Party Preference statutes because they "negatively impact [ASPC's] ability to grow nationally and the ASPC is denied the advantage of attracting voters, supporters, and candidates." SAC at 18. This is not a severe burden that would subject the statutes to strict scrutiny, as illustrated in *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997) and *Soltysik v. Padilla*, 910 F.3d 438 (9th Cir. 2018).

In *Timmons*, a minor party called the "New Party" challenged a Minnesota law that prohibited candidates from appearing on the ballot as candidate of more than one political party. *Timmons*, 520 U.S. at 354-55. The Supreme Court held: "That a particular individual may not appear on the ballot as a particular party's candidate does not severely burden that party's associational rights." *Id.* at 359. The Court rejected the district court's conclusion that the law severely burdened the New Party's ability to "broad[en] the base of public participation in and support for its activities." *Id.* at 360. It explained that the New Party was not "directly precluded . . . from developing and organizing," and that the New Party "remains free to endorse whom it likes, to ally itself with others, to nominate candidates for office, and to spread its message to all who will listen." *Id.* at 360-61. The Court also rejected the New Party's argument that it had the

right to communicate its choice of nominees on the ballot itself, explaining that "[b]allots serve primarily to elect candidates, not as forums for political expression." *Id.* at 362-63.

In *Soltysik*, a 2014 candidate for State Assembly and member of the Socialist Party USA challenged the Party Preference statutes. 910 F.3d at 442-43. The Ninth Circuit concluded that the statutes did not impose a severe burden on Soltysik's First and Fourteenth Amendment rights. *Id.* at 444-45. The Court reasoned that the statutes do not, for example, "bar Soltysik from office or the ballot altogether," "prohibit the Socialist Party USA or other minority parties from campaigning for Soltysik or endorsing him" as its standard bearer, or "suffocate core political speech by, for instance, banning Soltysik from communicating his preference for the party's ideology or platform in the public square." *Id.* at 445 (internal quotation marks omitted) (citing cases).

Here, California's Party Preference statutes do not severely burden ASPC's ability to grow and attract support as a party. Just as in *Timmons* and *Soltysik*, ASPC can grow and build its popularity and influence by organizing, campaigning and endorsing candidates, and generally engaging with voters by spreading its political messages. Moreover, ASPC does not have the specific right to appear on the ballot alongside its preferred candidate because ballots are not intended to serve as fora parties' political expression. *See Timmons*, 520 U.S. at 362-63. This is particularly so in California's voter-nominated (not party-nominated) top-two primaries, where the function of the "Party Preference" on the California ballot label is to indicate each candidate's preferred party, not each party's preferred candidate. *See* CAL. CONST. art. II, § 5(b); *see also Timmons*, 520 U.S. at 365 (a ballot's purpose is "a means of choosing candidates" not "political advertising").

Thus, because ASPC does not plausibly allege a cognizable burden, much less a severe one in all possible circumstances, strict scrutiny does not apply to ASPC's facial challenge in Count 2 under the *Anderson/Burdick* framework.

14

**B.    The Party Preference Statutes Are Justified By California's Important Regulatory Interests**

The Party Preference statutes satisfy *Anderson/Burdick* review because any burden they may impose on ASPC is justified by California's important regulatory interests.  *See Anderson*, 460 U.S. at 788.

The State's interests in permitting candidates to identify on the ballot only political parties that have qualified to participate in an election include ensuring that candidates appear on the ballot in an orderly manner, preventing misrepresentation, avoiding electoral confusion and deception, preserving the simplicity of its ballots, and ensuring the efficiency, integrity, and fairness of the ballots.

It is well settled that a state has a compelling interest in regulating the method by which candidates appear on the ballot and "protecting the integrity, fairness, and efficiency of their ballots and election processes as a means of electing public officials." *Timmons*, 520 U.S. at 364. "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer*, 415 U.S. at 730.  The State also has an important interest in preserving the simplicity of its ballots.  *Rubin*, 308 F.3d at 1011.

Given the ease by which the State permits candidates to appear on the primary ballot,[4] if candidates are free to identify whichever nonqualified political body they prefer, the ballot could easily be manipulated to send political or even commercial messages to voters. The ballot could be exploited to associate candidates' names with popular slogans and catchphrases or political ideologies and statements, couched as the names of their preferred (but previously nonexistent) political bodies.

Furthermore, if the State were to allow candidates to designate on the ballot a preference for any political body, regardless of how little voter support it has, it becomes a self-designation

---

[4] Any candidate for statewide, legislative, or congressional offices may be placed on the primary election ballot merely by filing a declaration of candidacy and nomination papers with up to 100 voter signatures, and paying a filing fee of 1 percent (2 percent for United States Senator and statewide candidates) of the office's salary.  Cal. Elec. Code §§ 8062, 8103.

15

system that obliterates the State's ability to manage its ballots.  *See Chamness*, 722 F.3d at 1118-19.  If any political party label may be used on the ballot, then it could also allow candidates to circumvent the prohibition against "status designations" upheld by the Ninth Circuit in *Rubin*.  See *Rubin*, 308 F.3d at 1019. For example, instead of using an impermissible status designation such as "peace activist," a candidate could instead identify his or her preferred party as the "Peace Activist" party and seek to have the term "Peace Activist" placed next to his or her name on the ballot, even if that party does not exist.  In sum, limiting the ballot designations to qualified political parties "avoids both the problems of allowing questionable self-designation and the alternative prospect of having to make case-by-case governmental decisions regarding the acceptability of various self-designations." *Chamness*, 722 F.3d at 1119.[5]

ASPC will likely argue that, under *Soltysik*, California's interests do not necessarily justify the alleged burden on APSC as a matter of law, and that dismissal is therefore improper at the pleadings stage.   In *Soltysik*, the Ninth Circuit permitted candidate Soltysik's as-applied challenge to proceed past the pleadings stage so that the district court could weigh the evidence of the burden on Soltysik against the evidence of the State's asserted interests. *Soltysik*, 910 F.3d at 447-49; *see also Tedards*, 951 F.3d at 1067.  However, the Ninth Circuit's justification for rejecting dismissal  was that although the Party Preference statutes' burden on Soltysik was "not severe, it is more than slight." *Soltysik*, 910 F.3d at 445; *Tedards*, 951 F.3d at 1067.

This case materially differs from *Soltysik* for the purpose of this motion because this case involves a facial challenge by a political party, which requires the political party show that all applications of the challenged statute are unconstitutional. *Washington I*, 552 U.S. at 449.  Here, the State is entitled to dismissal because in at least *some* possible applications, the Party Preference statutes impose only a "slight" burden on ASPC. *Washington I* illustrates why this is so.

---

[5] For further examples of how the Party Preference statutes help prevent candidate misrepresentation and voter confusion, *see* Answering Brief for Defendant-Appellant Alex Padilla, California Secretary of State, *Soltysik v. Padilla*, 910 F.3d 438 (9th Cir. Mar. 6, 2017) (No. 16-55758), 2017 WL 1013436, at *54-59.

In *Washington I*, state political parties brought a facial challenge to Washington's top-two primary system. *Washington I*, 552 U.S. at 448. Like California's current primary system, Washington's system required candidates for office to be identified on the ballot by their self-designated party preference. *Id.* at 444. The political parties alleged that the party preference provisions violated their First Amendment associational rights by "forcing [them] to associate with candidates [they do] not endorse," *id.* at 448, and causing voter confusion regarding whether there had been any such party endorsement or approval, *id.* at 454. The Supreme Court held that the parties had failed to show that the party preference provisions were unconstitutional in all their applications. *Id.* at 457-49. The Court conceded that "it is *possible* that voters will misinterpret the candidates' party-preference designations as reflecting endorsement by the parties." *Id.* at 45. But it went on to state that it could not strike down the law "on its face based on the mere possibility of voter confusion." *Id.* The Court went on to consider whether ballots could be printed in such a way as to minimize widespread voter confusion, stating that imagining such methods was "not difficult." *Id.* at 456. It gave examples such as adding prominent disclaimers on the ballots, allowing clarification in candidate statements, and providing the public with educational materials. *Id.*

Similarly, here, it is not difficult to imagine applications of California's Party Preference statutes in future elections in which any burden on ASPC would be only slight. Prominent language could be added to ballots to state that "No Party Preference" next to a candidate's name may mean that the candidate actually prefers a party that is not a qualified party under the Elections Code. The ballot could also direct voters to the voter information guides, including to the candidate statements, for more information.[6] If these measures, for example, were taken in a future elections, the burden on ASPC's ability to grow and promote itself would be "slight,"

---

[6] As ASPC acknowledges in the SAC, its candidates have the opportunity in their candidate statements to communicate to voters their affiliation with ASPC. SAC at 17. Indeed, candidates subject to the top-two primary may place their statements in the state or county (defending on the office they are running for) voter information guides. Cal. Gov. Code § 85601; Cal. Elec. Code § 13307.5. Examples of candidate statements can be found in the State's Official Voter Information Guide for the June 2026 primary election, available at https://vig.cdn.sos.ca.gov/2026/primary/pdf/complete-vig.pdf.

17

Notice of Mot. and Mot. to Dismiss Second Amended Complaint; Memo. of Pts. & Auth. (3:24-cv-08308-MMC)

*Soltysik*, 910 F.3d at 445, and thus, as a matter of law, justified by California's regulatory interests. As a result, ASPC has not plausibly alleged that the Party Preference statutes are unconstitutional in all their applications and Count 2 should be dismissed.[7]

**IV.    THE COURT SHOULD DENY LEAVE TO AMEND THE SECOND AMENDED COMPLAINT**

This Court should deny Plaintiffs leave to amend the Second Amended Complaint. Plaintiffs have already attempted, and failed, to successfully amend their challenges to California's March primaries and Party Preference statutes. Further amendments would be futile because these laws satisfy *Anderson/Burdick* as a matter of law. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile").

**CONCLUSION**

For the reasons above, the Court should dismiss the SAC without leave to amend.

---

[7] To the extent ASPC seeks to vindicate the First and Fourteenth Amendment rights of voters, rather than itself, that claim also fails. The SAC alleges that the Party Preference statutes harm voters that wish to vote for candidates that who do not represent the major parties. SAC at 18. However, ASPC would only have associational standing to represent the interests of its *own* voters, not all voters. *See Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1105 (9th Cir. 2006) ("Under the doctrine of 'associational' or 'representational' standing an organization may bring suit on behalf of its members whether or not the organization itself has suffered an injury from the challenged action"); *id* (associational standing requires entity to show that "at least one of its members would have standing to sue in his own right"). Any burden on ASPC members' ability to vote for their own candidate would be exceedingly small, because they would be best positioned to know (or learn) about the affiliation of their own candidates. The State's interests identified above would therefore easily justify such a burden in that type of facial challenge.

18

Dated: June 23, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General

*/s Gabrielle D. Boutin*
GABRIELLE D. BOUTIN
Deputy Attorney General
*Attorneys for Defendant Dr. Shirley Weber, in her official capacity as California Secretary of State*

Notice of Mot. and Mot. to Dismiss Second Amended Complaint; Memo. of Pts. & Auth. (3:24-cv-08308-MMC)

# CERTIFICATE OF SERVICE

Case Name:    **Peace and Freedom Party, et al.**          No.      **3:24-cv-08308-MMC**
              **v. Dr. Shirley N. Weber**

I hereby certify that on June 23, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on June 23, 2026, at Los Angeles, California.

Cecilia Apodaca                                           */s/ Cecilia Apodaca*
Declarant                                                    Signature

SA2024305451
67812957.docx