DAVID I. SCHOEN (*PRO HAC VICE*)
ATTORNEY AT LAW
2800 ZELDA ROAD, SUITE 100-6
MONTGOMERY, ALABAMA 36106
TELEPHONE: 917-941-7952
E-MAIL: SCHOENLAWFIRM@GMAIL.COM

SOYEUN D. CHOI, ESQ., PC (SBN 211344)
969G EDGEWATER BLVD, 314
FOSTER CITY, CA 94404
TELEPHONE: (650) 380-6116
E-MAIL: SOYEUN@SOYEUNESQ.COM

Counsel for all Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PEACE AND FREEDOM PARTY, et. al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**DR. SHIRLEY N. WEBER, CALIFORNIA SECRETARY OF STATE,**<br><br>Defendant. | 3:24-cv-08308-MMC<br><br>**PLAINTFFS' OPPOSITION TO DEFENDANT'S AND INTERVENORS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT [ECF Nos. 63 & 64]**<br><br>Courtroom: 7<br>Judge: Hon. Maxine M. Chesney<br>Hearing Date: October 2, 2026 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. RELEVANT PROCEDURAL POSTURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. PRELIMINARY POINTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

　　A.  Judicial Notice is to be Used Sparingly . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

　　B.  Intervenors Cannot Independently Decide the State's Interests . . . . . . . . . . . . . . . . 6

　　C.  This is an As-Applied Challenge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. LEGAL STANDARD FOR THE MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . 7

V. *ANDERSON/BURDICK* BALLOT ACCESS ANALYTICAL FRAMEWORK. . . . . . . . . . . 8

VI. DISCUSSION - THE DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . 13

　　A.  The March Deadline Argument States a Claim and Must Not be Dismissed. . . . . . . 13

　　　　1. Plaintiffs' Allegations in the SAC Regarding the March Deadline . . . . . . . . . 14

　　　　2. Defendant Misapprehends the Severity of the Burden. . . . . . . . . . . . . . . . . . . 16

　　　　3. The State's Purported Interests in the March Deadline are Unavailing. . . . . . 20

　　B.  The Party Label Ballot Prohibition States a Claim and Must Not be Dismissed . . . . 23

　　　　1. Plaintiff ASPC's Allegations Regarding the Party Label Prohibition . . . . . . . 23

　　　　2. The Defendant Misapprehends the Severity of the Burden . . . . . . . . . . . . . . . 24

　　　　3. The State's Claimed Interests in the Party Label Prohibition are Unavailing . 27

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**TABLE OF AUTHORITIES**

**Page(s):**

**Cases:**

*American Party of Texas v. White,*
415 U.S. 767 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 31

*Anderson v. Celebrezze,*
460 U.S. 780 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Angle v. Miller,*
673 F.3d 1122 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Arizona Libertarian Party v. Reagan,*
798 F.3d 723 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Bergland v. Harris,*
767 F.2d 1551 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21, 22

*Breck v. Stapleton,*
259 F. Supp. 3d 1126 (D. Mont. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Brumback v. Ferguson,*
343 F.R.D. 335 (E.D. Wash. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Burdick v. Takashi,*
504 U.S. 428 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*Cal. Justice Comm. v. Bowen,*
2012 U.S. Dist. LEXIS 150424,
2012 WL 5057625 (C.D. Cal., Oct. 18, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 19

*California Pro-Life Council, Inc. v. Rudolph*,
    507 F.3d 1172 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Chamness v. Bowen*,
    722 F.3d 1110 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Citizens to Establish a Reform Party of Ark. v. Priest*,
    970 F. Supp. 690 (E.D. Ark. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Citizens United v. Fed. Election Comm'n*,
    558 U.S. 310 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Clements v. Fashing*,
    457 U.S. 957 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Clingman v. Beaver*,
    544 U.S. 581 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 29

*Cook v. Gralike*,
    531 U.S. 510 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 29

*Cornwell v. Hamilton*
    80 F. Supp. 2d 1101 (S.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Council of Alternative Political Parties v. Hooks*,
    121 F. 3d 876 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*CPI Advanced, Inc. V. Kong Byung Woo Comm. Ind. Co., Ltd*,
    135 Fed. Appx. 81 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Craigmiles v. Giles*
    312 F.3d 220 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Democratic Party v. Reed*,
    343 F.3d 1198 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Dudum v. Arntz*,
    640 F.3d 1098 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Duke v. Cleland*,
    5 F.3d 1399 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Dunn v. Blumstein*
    405 U.S. 330 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Fulani v. Krivanek*,
    973 F.2d 1539 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Genasys Inc. v. Vector Acoustics, LLC*,
    638 F. Supp. 3d 1135 (S.D. Cal. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Green Party of Georgia v. Georgia*,
    551 Fed. Appx. 982 (11th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Green Party of Georgia v. Kemp*,
    171 F. Supp. 3d 1340 (N.D. Ga. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 30

*Green Party of Georgia v. Kemp*,
    674 Fed. Appx. 974 (11th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22
    *Rehearing and rehearing en banc denied*

*Green Party of Tennessee v. Hargett*,
    767 F.3d 533 (6th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Green Party of Tennessee v. Hargett*,
    791 F.3d 684 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Illinois State Board of Elections v. Socialist Workers Party*,
    440 U.S. 173 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Jackson v. Attorney General*,
    497 Mass. 691 (2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Jenness v. Fortson*,
    403 U.S. 431 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*John Doe No. 1 v. Reed*,
    561 U.S. 186 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kungys v. United States*,
    485 U.S. 759 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lee v. Keith*,
    463 F.3d 763 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

iv

*Libertarian Party v. Krebs*,
   290 F. Supp. 3d 902 (D. S.D. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Libertarian Party of Arkansas v. Thurston*,
   962 F.3d 390 (8th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

*Libertarian Party of Arkansas v. Thurston*,
   632 F. Supp. 3d 855 (E.D. Ark. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16, 18

*Libertarian Party of Illinois v. Illinois State Bd. Of Elections*,
   164 F. Supp. 3d 1023 (N.D. Ill. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Libertarian Party of Illinois v. Scholz*,
   164 F. Supp. 3d 1023 (N.D. Ill. 2016,
   affirmed by *Libertarian Party of Illinois v. Scholz*,
   872 F.3d 518 (7th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 9, 22

*Libertarian Party of Maine, Inc. v. Dunlap*,
   2016 U.S. Dist. LEXIS 69612,
   2016 WL 3039715 (D. Maine, May 27, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Libertarian Party of Nevada v. Swackhamer*,
   638 F. Supp. 565 (D. Nev. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Libertarian Party of Ohio v. Blackwell*,
   462 F.3d 579 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 19, 30

*Libertarian Party of Tennessee v. Goins*,
   793 F. Supp. 2d 1064 (M.D. Tenn. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Libertarian Party of Washington v. Munro*,
   31 F.3d 759 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Lubin v. Panish*,
   415 U.S. 709 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 31

*MacBride v. Exon*,
   558 F.2d 443 (8th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*McLain v. Meier*,
   637 F. 2d 1159 (8th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Mandel v. Bradley,*
   432 U.S. 173 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 22

*Malheur Forest Fairness Coalition v. Iron Triangle, LLC,*
    699 F. Supp. 3d 1086 (D. Ore. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Merrifield v. Lockyer*,
    547 F.3d 978 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Mazo v. Way*,
    551 F. Supp. 3d 478 (D. NJ 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 29

*Metropolitan Creditors' Trust v. Pricewaterhousecoopers, LLP,*
    463 F. Supp. 2d 1193 (E.D. Wash. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Motul S.A. v. USA Wholesale Lubricant, Inc.,*
    686 F. Supp. 3d 900 (N.D. Cal. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Munro v. Socialist Workers Party*,
    479 U.S. 189 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nader v. Brewer*,
    531 F.3d 1028 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21

*NL Indus., Inc., v. Kaplan*,
    792 F.2d 896 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*New Alliance Party of Alabama v. Hand*,
    933 F.2d 1568 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Norman v. Reed*,
    502 U.S. 279 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 26, 31

*PEST Committee v. Miller*,
    648 F. Supp. 2d 1202 (D. Nev. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pierce v. Jacobsen*,
    44 F.3d 853 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 21

*Pierce v. Stapleton*,
    505 F. Supp. 3d 1059 (D. Mont. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Porter v. Pate*,
    2022 U.S. Dist. LEXIS 241720,
    2022 WL 19655786 (S.D. Iowa, April 8 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Republican Party of Minnesota v. White*,
536 U.S. 765 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Reynolds v. Sims*
377 U.S. 533 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Rosen v. Bowen*,
970 F.2d 169 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 28, 29

*Rubin v. Padilla*,
233 Cal. App. 4th 1128 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Schultz v. Harry S. Truman Scholarship Found.*,
2023 U.S. Dist. LEXIS 40767 (N.D. Cal., March 10, 2023) . . . . . . . . . . . . . . . . . . . 8, 17

*Soltysik v. Padilla*,
910 F.3d 438 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*Storer v. Brown*,
415 U.S. 724 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22, 31

*Tashjian v. Republican Party of Conn.*,
479 U.S. 208 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26, 27, 29

*Tedards v. Ducey*,
951 F. 3d 1041 (9th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 25, 26

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 25

*Upper Skagit Inidan Tribe v. Sauk-Suiattle Indian Tribe*,
66 F. 4th 766 (9th Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wash. State Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Wash. State Grange v. Wash. State Republican Party*,
676 F.3d 784 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13, 17, 18

*Wesberry v. Sanders*
376 U.S. 1 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

*Whittaker v. Mallott*,
259 F. Supp. 3d 1024 (D. Alaska 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Williams v. Rhodes*,
     393 U.S. 23 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 16, 30, 31

*Wood v. Meadows*,
     117 F. 3d 770 (4th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**Statutes and Other Legislative Materials:**

Cal. Elec. Code § 1202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Cal. Elec. Code §§ 8002.5 & 13105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

U.S. Const. amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

U.S. Const. amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

**Articles and Books:**

Adams, James, and Samuel Merrill, *Why Small, Centrist Third Parties Motivate Policy Divergence by Major Parties*, The American Political Science Review, vol. 100, no. 3, 2006, pp. 403-417 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

J. David Gillespie, *Challengers to Duopoly, Why Third Parties Matter in American Two-Party Politics* (University of South Carolina Press 2012 ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Jacques Anatole Francois Thibault ("Anatole France"), *The Red Lily* [1894] Ch. 7 . . . . . . . . . 12

**Rules:**

Fed. R. Civ. P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed R. Civ. P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

DAVID I. SCHOEN (*PRO HAC VICE*)
ATTORNEY AT LAW
2800 ZELDA ROAD, SUITE 100-6
MONTGOMERY, ALABAMA 36106
TELEPHONE: 917-941-7952
E-MAIL: SCHOENLAWFIRM@GMAIL.COM

SOYEUN D. CHOI, ESQ., PC (SBN 211344)
969G EDGEWATER BLVD, 314
FOSTER CITY, CA 94404
TELEPHONE: (650) 380-6116
E-MAIL: SOYEUN@SOYEUNESQ.COM

Counsel for all Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PEACE AND FREEDOM PARTY, et. al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**DR. SHIRLEY N. WEBER, CALIFORNIA SECRETARY OF STATE,**<br><br>Defendant. | 3:24-cv-08308-MMC<br><br>**PLAINTFFS' OPPOSITION TO DEFENDANT'S AND INTERVENORS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT [ECF Nos. 63 & 64]**<br><br>Courtroom: 7<br>Judge: Hon. Maxine M. Chesney<br>Hearing Date: October 2, 2026 |

## I.    RELEVANT PROCEDURAL POSTURE

The Complaint was filed in the above-captioned case on November 21, 2024 [ECF #1].  On January 31, 2025, Defendant Weber filed a motion to dismiss and supporting papers [ECF #20].  Also on January 31, 2025, Intervenors filed a motion for leave to intervene, along with a proposed motion to dismiss [ECF #19].  The motion to intervene was denied on February 10, 2025 [ECF #25]; however, following an agreement between Plaintiffs and the Intervenors [See ECF #26] and Defendant Weber's consent to the intervention [ECF #28], the Court entered an Order permitting the intervention [ECF #31].

On February 21, 2025, Plaintiffs filed their First Amended Complaint ("FAC") [ECF #29], rendering the motion to dismiss filed by the Defendant and the proposed motion to dismiss

---

1

proffered by the Intervenors moot [ECF ##30, 31].  On April 11, 2025, Intervenors filed a motion to dismiss the First Amended Complaint [ECF #34].  Defendant Weber filed her motion to dismiss and an amended motion to dismiss also on that date [ECF ##35, 36].  Defendant and Intervenors are aligned in their attack on the First Amended Complaint and their arguments overlapped.  For purposes of efficiency, Plaintiffs filed a consolidated Opposition to the motions to dismiss on June 26, 2025, and incorporates that pleading herein [ECF #42].  Defendant and the Intervenors filed Replies on July 28, 2025 [ECF ##44, 45].  On April 13, 2026, the Court granted (in par) the motions to dismiss [ECF #57].

The Court's Order granting the motions to dismiss left open two discrete claims.  The Court dismissed with leave to amend Plaintiffs' claim that the March deadlines as applied is unconstitutional.  The Court gave leave to amend this claim specifically for Plaintiffs to allege a burden [ECF #57 at 23-24].  The Court also dismissed with leave to amend Plaintiff American Solidarity Party of California's ("ASPC") claim that denying it the right to have its party name listed on the ballot is unconstitutional.  The Court required more "factual elaboration describing the nature and extent of the alleged burden."  [ECF #57 at 25-26].  All other claims were dismissed without leave to amend [ECF #57 at 26].

On May 21, 2026, Plaintiffs filed their Second Amended Complaint raising the two issues permitted by the Court [ECF #60].  By filing their Second Amended Complaint, Plaintiffs do not intend to waive any issue raised earlier that was eliminated from this litigation by the Court's Order granting the motions to dismiss.  In terms of the process of evaluating constitutional rights-based ballot access claims, Plaintiffs expressly preserve their arguments that the Court was required to fully consider the constitutional significance in ballot access jurisprudence of past experience since Top Two's enactment. *Res judicata* has a far more limited role in this dynamic and fundamentally important area of jurisprudence, where the rights to vote and stand for election are directly at issue.  Courts must instead evaluate based on evidence of participation, in this case, by small parties, in light of the restrictions at issue and this often means re-evaluating completely. *See e.g.*, *Libertarian Party of Ill. v. Ill. State Bd. of Elections*, 164 F. Supp. 3d 1023, 1031-1032 (N.D. Ill. 2016)(striking down Illinois' full-slate ballot access requirement, notwithstanding

several earlier decisions upholding it), *affirmed by Libertarian Party of Ill. v. Scholz,* 872 F.3d 518 (7th Cir. 2017).

By dismissing the bulk of Plaintiffs' claims in whole or in part based on *res judicata*, relying on the decision in, *Rubin v. Padilla*, 233 Cal. App. 4th 1128; 183 Cal. Rptr. 3d 373 (2015), Plaintiffs respectfully submit that the Court impermissibly ignored more than a decade of Top-Two ballot access history, which reflects a record of nearly complete exclusion from the general election ballot for these Plaintiffs and all other non-Democrat or Republican Party candidates in every election subject to Top-Two in which there is at least one Republican and one Democrat on the primary ballot.  Plaintiffs respectfully submit that the Court's Order cannot be reconciled with the fundamental principles that recognize (1) the constitutional significance of past experience, *Storer v. Brown*, 415 U.S. 724, 742 (1974); *Mandel v. Bradley*, 432 U.S. 173, 177 (1974); *Cal. Justice Comm. v. Bowen*, 2012 U.S. Dist. LEXIS 150424, *19-*20, 2012 WL 5057625 (C.D. Cal., October 18, 2012); and (2) that ballot access cases must be considered on their own, with each ballot access restriction evaluated in light of the entire statutory scheme and in combination with the others.  *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 730 (9th Cir. 2015); *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008); *Libertarian Party of Washington v. Munro*, 31 F.3d 759, 762 (9th Cir. 1994); *Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012).  The Court purported to evaluate some of the restrictions at issue in combination with others, but isolating the two issues on which Plaintiffs were permitted to amend is not consistent with these fundamental principles.

Plaintiffs will address the Defendant's Motion to Dismiss and in doing do intends to respond to the Intervenors' motion as well in this Response.

## II.   INTRODUCTION

Plaintiffs assert in their SAC the unassailable fact that (with one minor exception): "In the years since the passage of Proposition 14 and the adoption of the Top-Two primary in California, when there is at least one Republican on the primary ballot and one Democrat on the primary ballot no minor party candidate ever finishes in the top two. [SAC at ¶27] ).

Eleven years have passed since the decision in *Rubin v. Padilla*, 233 Cal. App. 4th 1128,

183 Cal. Rptr. 3d 373 (2015) and the evidence during those years further establishes the unconstitutionally insurmountable barrier to gaining ballot access for minor parties and independent candidates the Top-Two primary law imposes. *See e.g., Mandel v. Bradley*, 432 U.S. 173, 177 (1977) ("Past experience will be a helpful, if not always an unerring, guide: it will be one thing if candidates have qualified with some regularity and quite a different matter if they have not."), *quoting from, Storer v. Brown*, 415 U.S. 724, 742 (1974); *Libertarian Party of Arkansas v. Thurston*, 632 F. Supp. 3d 855, 892 (E.D. Ark. 2022)("… parties' past success or failure in a particular state under extant or prior requirements is relevant to show the necessity or burdensomeness of the restrictions, and such history is also material to the question of whether the statutes are narrowly tailored to a compelling state interest…"); *Lee v. Keith*, 463 F.3d 763, 769 (7th Cir. 2006); *Cal. Justice Comm. v. Bowen*, 2012 U.S. Dist. LEXIS 150424, *19-*20, 2012 WL 5057625 (S.D. Cal., October 18, 2012).[1]

This Court dismissed most of the claims Plaintiffs have attempted to raise in support of their argument that Top-Top is unconstitutional as applied to them, while allowing Plaintiffs to file a Second Amended Complaint limited to challenging the March deadline and the party label ballot restriction.

The two fundamentally important ballot access issues that this Court has permitted to be raised in the SAC have not been considered by any federal court.  As will be discussed below, the Ninth Circuit has suggested that the March deadline could change its evaluation of Top-Two; but the issue has not been squarely presented until this case.  *See Washington State Grange v. Washington State Republican Party* (*Grange* II), 676 F.3d 784, 794 (9th Cir. 2012).

The clear and unequivocal history over the more than a decade since the enactment of Top-Two and over the eleven years since the decision in *Rubin*, has proven that the barrier to minor parties gaining access to the general election ballot has been proven beyond question to be

[1] "The Supreme Court has held that ballot access history is an important factor in determining whether restrictions impermissibly burden the freedom of political association: "Past experience will be a helpful, if not always unerring, guide: it will be one thing if independent candidates have qualified with some regularity and quite a different matter if they have not." *Storer,* 415 U.S. at 742. The "inevitable question for judgment" is whether "a reasonably diligent independent candidate [could] be expected to satisfy the signature requirements, or will it be only rarely that the unaffiliated candidate will succeed in getting on the ballot?"

functionally insurmountable, constituting a severe burden by any measure, triggering strict scrutiny analysis under well-settled ballot access jurisprudence, and requiring compelling state interests and the application of the least restrictive means to achieve any such compelling interests.

There certainly are no compelling, important, or even rational, legitimate state interests in limiting the general election ballot to two candidates, especially in light of the indisputably demonstrated discriminatory impact this has had on minor parties, their candidates, and supporting voters.  Most relevant for the instant purposes, there are no state interests that support the March deadline or the party label restrictions presented in the SAC.

These two provisions of Top-Two violate Plaintiffs' First and Fourteenth Amendment rights and the Elections Clause of the United States Constitution and, most relevant for the instant purposes, Plaintiffs' claims in the SAC are more than plausible and must be permitted to go forward, allowing Plaintiffs the opportunity to put forward evidence in support of their position.

Plaintiffs will make a couple of preliminary points, present the analytical framework for the kind of ballot access challenges presented by the case, and will then address the specific arguments in the Defendant's Motion to Dismiss, along with any position taken by the Intervenor-Defendants not otherwise addressed in the response to the Defendant's motion.

### III.    PRELIMINARY POINTS

There are two preliminary points to be made before discussing the applicable legal standard for the Court's evaluation of the motions to dismiss and the substantive opposition.

**A. Judicial Notice is to be Used Sparingly.**

First, the Intervenors once again have made voluminous submissions in support of their motions [ECF #64].  The bulk of their respective filings are comprised of matters with respect to which they ask the Court to take judicial notice.  In evaluating a Rule 12(b)(6) motion to dismiss, a court's consideration generally is limited to the allegations in the pleadings, exhibits attached to the Complaint and matters properly subject to judicial notice.  *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp.3d 1135 (S.D. Cal. 2022).  However, courts must be cautious and should only

5

take judicial notice of facts that are undisputed and relevant to the issues presented in the motion to dismiss and should not draw inferences in favor of the defendant based on extrinsic evidence. *Metropolitan Creditors' Trust v. Pricewaterhousecoopers, LLP*, 463 F.Supp.2 1193 (E.D. Wash. 2006); *Malheur Forest Fairness Coalition v. Iron Triangle, LLC*, 699 F. Supp.3d 1086 (D. Ore. 2023).  Indeed, the Ninth Circuit has emphasized a cautious approach to judicial notice in the context of Rule 12(b) motions to dismiss, especially when the facts at issue are in dispute and the request for judicial notice is especially broad, making it clear, *inter alia*, that judicial notice should not be used to reject factual allegations in a plaintiff's Complaint.  *See CPI Advanced, Inc. v. Kong Byung Woo Comm. Ind. Co., Ltd*, 135 Fed. Appx. 81 (9th Cir. 2005); *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp.3d 900 (N.D. Cal. 2023)(the court cannot take judicial notice of disputed facts in the proffered records); *Metropolitan Creditors' Trust, Id*; *Malheur*, *Id*. (denying judicial notice where the defendant sought to introduce extrinsic evidence to disprove plaintiff's factual allegations).

**B.  Intervenors Cannot Independently Decide the State's Interests.**

Secondly, while intervenors may participate in litigation to ensure that their perspective is considered, they do not have the right or authority to determine or argue independently as to what the state's interests are in support of the legislative restriction at issue in the case.  *See e.g, PEST Committee v. Miller*, 648 F. Supp.2d 1202 (D. Nev. 2009); *Brumback v. Ferguson*, 343 F.R.D. 335 (E.D. Wash. 2022).  This is particularly relevant and important in a ballot access case in which, as will be discussed in greater detail below, the analytical framework requires a court to consider the character and magnitude of the burden on ballot access and then identify and evaluate the precise interests put forward by the State as justification for the burden imposed by the restriction at issue.  *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Whittaker v. Mallott*, 259 F. Supp.3d 1024 (D. Alaska 2017).  And it is even more so where, as here, Plaintiffs allege that the ballot access restriction at issue is so onerous as to require strict scrutiny, and support by compelling state interests and the least restrictive means to accomplish those compelling interests.  *See, e.g., Breck v. Stapleton*, 259 F. Supp.3d 1126 (D. Mont. 2017).

## C.  This is an As-Applied Challenge.

The Defendant asserts that Plaintiffs have raised a facial challenge to the sections of Top Two-Two at issue, rather than an as-applied challenge and even devotes a section to arguing why a facial challenge is not sustainable [ECF #63 at 8-9].  Defendant is mistaken.  Plaintiffs' claims are alleged as as-applied claims [See e.g., ECF #60 at 3, Lines 3 & 8; at 11, Line 15; at 18, Lines 18-19 – Claim for Relief).  Plaintiffs' challenge to the two provisions in Top-Two at issue are alleged and intended to be as-applied challenges, based on the specific status of these Plaintiffs and the specific burdens these Plaintiffs allege to suffer from Top-Two (and in the case of the March deadline, as applied in a Presidential election cycle); but as is often the case, it has elements of an as-applied challenge and a facial challenge. "[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 331 (2010). In fact, a claim can have characteristics of as-applied and facial challenges: it can challenge more than just the plaintiff's particular case without seeking to strike the law in all its applications. *John Doe No. 1 v. Reed,* 561 U.S. 186, 194 (2010).  *Green Party of Tennessee v. Hargett*, 791 F.3d 684, 691-692 (6th Cir. 2015).  As the claim for relief expressly provides, Plaintiffs here simply seek relief from the March deadline as it applies to them and the party label restriction as applied to the ASPC, based on the specific burdens the SAC alleges they suffer from these provisions.

## IV.    LEGAL STANDARD FOR THE MOTION TO DISMISS

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *See id.* Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action." *See id.* (internal quotation, citation, and alteration omitted).

> In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

> *Schultz v. Harry S. Truman Scholarship Found.*, 2023 U.S. Dist. LEXIS 40767, *5-6 (N.D. Cal., March 10, 2023)(Chesney, J.)

Beyond any question, the detailed factual allegations in the SAC state cognizable claims for relief and are not just plausible; they are verifiably true and accurate. The Motions to Dismiss must be denied and Plaintiffs must be permitted to put on evidence in support of the burdens they suffer from the provisions at issue and challenging the Defendant's claimed state interests in support of the provisions at issue.

## V.    *ANDERSON/BURDICK* BALLOT ACCESS ANALYTICAL FRAMEWORK:

The underlying issues in this case center around constitutional claims that the Plaintiff parties' and candidates' rights to access to the general election ballot and plaintiff voters' rights to cast their votes to elect candidates and parties of their choice under the First and Fourteenth Amendments are being denied by the two provisions of California's Top-Two system at issue here. Again, Plaintiffs respectfully submit that each provision of the ballot access scheme being challenged must be evaluated not just for its impact standing alone, but in light of the entire structure; but this Court has dismissed all other aspects of Top-Two Plaintiffs have tried to raise and has limited its inquiry to the two issues it permitted Plaintiffs to raise in the SAC, while affirmatively barring Plaintiffs from raising the other Top-Two issues they attempted to raise in their FAC. In any event, the Court must be guided by the *Anderson/Burdick* analytical framework in evaluating the claims.

The First and Fourteenth Amendments afford all candidates vying for elected office, and their voting constituencies, the fundamental right to associate for political purposes and to participate in the electoral process and espouse their political views. *See, e.g., Clingman*, 544 U.S. at 586; *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Anderson*, 460 U.S. at 787-88; *Williams v. Rhodes*, 393 U.S. 23, 30 (1968); *Lee v. Keith*, 463 F.3d 763, 767-68 (7th Cir. 2006) (quoting *Clingman v. Beaver*, 544 U.S. 581, 586 (2005). Placing restrictions on candidates' and political parties' access to the ballot interferes with their right to associate for political purposes and the rights of qualified voters to cast their votes for the candidates of their choice. *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986) (*citing Williams*, 393 U.S. at 30); *see also Norman v. Reed*, 502 U.S. 279 (1992); *Anderson*, 460 U.S. at 786; *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S.173, 184 (1979).

Ballot-access requirements that place more burdensome restrictions on certain types of candidates than on others implicate rights under the Equal Protection Clause as well. *See Williams*, 393 U.S. at 30-31; *Green Party of Tennessee v. Hargett*, 791 F.3d 684, 695 (6th Cir. 2015) (finding that a ballot access restriction that "imposes a greater burden on minor parties without a sufficient rationale put forth by the state . . . violates the Equal Protection Clause"); *see also Anderson v. Celebrezze*, 460 U.S. 780, 786 n.7 (1980); *Lubin v. Panish*, 415 U.S. 709, 713-714 (1974); *Libertarian Party of Ill. v. Ill. State Bd. of Elections*, 164 F. Supp. 3d 1023, 1029 (N.D. Ill. 2016), *affirmed by*, *Libertarian Party of Illinois v. Scholz*,  872 F.3d 518, 523-24 (7th Cir. 2017)*(*discussing Equal Protection principles applied to restrictions which discriminate against minor parties in favor of major parties).

In striking down Ohio's ballot access restrictions in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), the Court set out the requisite analytical framework as follows:

Constitutional challenges to specific provisions of a State's election laws therefore cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions.  Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation.  It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate.  It then

must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule.

In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.  Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.  *Anderson*, 460 U.S. at 789. (Internal citation omitted).

In analyzing a particular burden to First and Fourteenth Amendment rights in the ballot access context, "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi,* 504 U.S. 428, 434 (1992). Regulations imposing severe burdens on associational rights must be narrowly tailored to advance a compelling government interest. *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358 (1997); *Pierce v. Jacobsen*, 44 F.3d 853, 862 (9th Cir. 2002) (state bears the burden of proving the regulation is narrowly tailored to meet the compelling interest). Regulations imposing lesser burdens are subject to less intensive scrutiny, and reasonable, nondiscriminatory restrictions ordinarily will be sustained if they serve important regulatory interests. *Ibid.*

"Where the State imposes only reasonable and genuinely neutral restrictions on associational rights, there is no threat to the integrity of the electoral process and no apparent reason for judicial intervention. As such restrictions become more severe, however, and particularly where they have discriminatory effects, there is increasing cause for concern that those in power may be using electoral rules to erect barriers to electoral competition. In such cases, applying heightened scrutiny helps to ensure that such limitations are truly justified and that the State's asserted interests are not merely a pretext for exclusionary or anticompetitive restrictions." *Clingman*, 544 U.S. at 603 (O'Connor, concurring); *See also*, *Clingman*, 544 U.S. at 596-87 ("Regulations that impose severe burdens on associational rights must be narrowly tailored to serve a compelling state interest); *Republican Party of Minnesota v. White*, 536 U.S.

765, 774-775 (2002)(same); *California Pro-Life Council, Inc. v. Rudolph,* 507 F.3d 1172, 1178 (9th Cir. 2007).

"[W]hat is demanded (by the State) may not be so excessive or impractical as to be in reality a mere device to always, or almost always, exclude parties with significant support from the ballot.  The Constitution requires that access to the electorate be real, not 'merely theoretical.'" *Am. Party of Texas v. White,* 415, U.S. 767, 783, 94S. Ct. 1296 (1974).

In this analysis, "the burden is on the state to 'put forward' the 'precise interests ... [that are] justifications for the burden imposed by its rule,'" and to "explain the relationship between these interests" and the challenged provision. *Fulani*, 973 F.2d at 1544 (*quoting Anderson*, 460 U.S. at 789). "The State must introduce evidence to justify both the interests the State asserts and the burdens the State imposes on those seeking ballot access." *Bergland*, 767 F.2d at 1554.

Courts are to determine the appropriate level of scrutiny based on the seriousness of the burden imposed. "Regulations imposing severe burdens ... must be narrowly tailored and advance a compelling state interest," while "[l]esser burdens ... trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358-59 (1997) (citations and internal quotation marks omitted)

In cases specifically addressing ballot access restrictions, courts look to the individual restrictions in light of the statutory scheme as a whole. *See Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 730 (9th Cir. 2015); *Nader v. Brewer,* 531 F.3d 1028, 1035 (9th Cir. 2008). "[T]he burden on plaintiffs' rights should be measured by whether, in light of the entire statutory scheme regulating ballot access, 'reasonably diligent' candidates can normally gain place on the ballot, or whether they will rarely succeed in doing so." *Id.* (quoting *Libertarian Party of Washington v. Munro,* 31 F.3d 759, 763 (1994)); *Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012)("In (the ballot access restrictions) setting, we have held that 'the burden on plaintiffs' rights should be measured by whether, in light of the entire statutory scheme regulating ballot access, 'reasonably diligent' candidates can normally gain a place on the ballot, or whether they will rarely succeed in

11

doing so.'") *Citing Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008) (quoting *Libertarian Party of Wash. v. Munro*, 31 F.3d 759, 762 (9th Cir. 1994)).

Ballot access equal protection claims are evaluated under the *Anderson/Burdick* framework just like First Amendment claims. *Norman v. Reed*, 502 U.S. 279, 288 n.8 (1992); *Dudum v. Arntz*, 640 F.3d 1098, 1106, n.15 (9th Cir. 2011).  Plaintiffs rely on the *Anderson/Burdick* analysis discussed herein in response to Defendant's Equal Protection argument.

Even though Plaintiff ASPC's Equal Protection claim was dismissed, it is worth recounting the following: " … 'sometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike.'" *Merrifield v. Lockyer*, 547 F.3d 978, 985-986 (9th Cir. 2008) (*citing Cornwell v. Hamilton*, 80 F. Supp. 2d 1101 (S.D. Cal. 1999) and *Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002) as two cases in which an Equal Protection violation was found notwithstanding treatment for the plaintiffs that was the same as for other groups under the challenged statutory framework).

Asserting that the two major parties are treated just like the minor parties under the Top-Two system brings to mind the famous Anatole France quote: "The law, in its majestic equality, forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread."[2]  As the court wrote in *Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340, 1362 (N.D. Ga. 2016), "'… burdens that fall on new or smaller parties fall disproportionately on 'those voters whose political preferences lie outside the existing political parties.' *Anderson,* 460 U.S. at 793-94, *citing Clements v. Fashing*, 457 U.S. 957, 964, (1982))."

Forcing minor parties to beat out major parties head to head just to gain access to the general election ballot is not treating them alike in reality.  They are minor parties still because they do not yet have the financial and other resources that the Democrats and Republicans have thus far in America, and if the barrier to general election ballot access imposed by Top-Two remains in place, leaving this as the only route and limiting the ballot to two candidates, minor

---

[2] Jacques Anatole Francois Thibault ("Anatole France), *The Red Lily* [1894], Ch. 7.

Plaintiffs' Opposition to Motions to Dismiss the Second Amended Complaint (3:24-cv-08308-MMC)

parties will not be able to grow into parties able to compete. Being kept off the general election ballot unquestionably stifles a minor party's ability to grow.

In referring to the lesser resources of minor parties competing to put forward their candidates and viewpoints, the Court wrote in *Williams*, granting "the States power to keep all political parties off the ballot until they have enough members to win would stifle the growth of all new parties working to increase their strength from year to year." *Williams*, 393 U.S. at 32.

Plaintiffs assert that both ballot access restrictions at issue create severe burdens requiring strict scrutiny and the least restrictive means. Plaintiffs acknowledge that the Ninth Circuit in *Soltysik* indicated that the party label restriction presents a burden that is more than slight and less than severe. *See also, Tedards v. Ducey,* 951 F.3d 1041, 1067 (9th Cir. 2020) (explaining why the party label issue of the nature presented in *Soltysik* requires the development of an evidentiary record).

In its Order granting the motions to dismiss, this Court suggested there might be a difference in analysis when it is a candidate at issue instead of a party for the party label issue [ECF #57 at 26]. There is no such distinction to be made here. A party only appears on the ballot through its candidates and the SAC makes it abundantly clear that the ASPC is raising the issue because of the violation of its candidates' rights and the harm caused to its candidates, its supporters, its members, and the party itself. Clearly the party itself suffers when its label is not permitted to appear on the ballot and the SAC spells out the harm caused, which Plaintiff will be prepared to prove through evidence presented by candidates, party leaders, voters, and expert testimony.

### VI.    DISCUSSION - THE DEFENDANT'S MOTION TO DISMISS

**A. The March Deadline Argument States a Claim and Must Not be Dismissed.**

One of the claims raised in the SAC is that the March primary that is held under the Top-Two system, in combination with the other restrictions imposed by Top-Two, renders Top-Two unconstitutional as applied to these Plaintiffs in a Presidential election cycle year [ECF #60 at ¶¶33, 45-51]. It is undisputed that Top-Two requires a March primary in presidential election years. *Cal. Elec. Code§1202*.

Tellingly, the court in *Washington State Grange v. Washington State Republican Party* (*Grange* II), 676 F.3d 784, 794 (9th Cir. 2012), in considering that State's Top-Two system, noted the unconstitutional burden the Court in *Anderson* found a March deadline to be for minor parties and independents and expressly distinguished the Washington scheme because it provided for a primary "… **in August, not March.**" (Emphasis added).  Surely, the Ninth Circuit was aware that with a jungle primary (there and here), the deadline at issue was the same for minor and major parties when it raised the specter of a different result if the primary were held in March.[3]  In fact, as alleged in the SAC, a March deadline creates a severe burden for minor parties and should be struck down as unconstitutional as applied to these Plaintiffs.

**1.  Plaintiffs' Allegations in the SAC Regarding the March Deadline:**

The SAC alleges the severe burden the March deadline imposes on Plaintiffs, with no compelling (or important or even rational state interest that could justify it).  The following is alleged in the SAC on this point:

Plaintiffs first set out their respective statuses in bringing the lawsuit [ECF #60 at 4-8, ¶¶3-14].  Plaintiffs allege that the early March deadline, reflected in Cal. Elec. Code § 1202 violates the First and Fourteenth Amendment rights of Plaintiffs, their member and candidates and of the voters [ECF #60 at 11, ¶33 & at 15, ¶45].

Then, Plaintiffs allege the following regarding the March deadline claim:

**Scheduling the primary for the first Tuesday after the first Monday in March in a Presidential election year unconstitutionally burdens the rights of minor parties, those who would like to associate with them, candidates, and voters, including, but not limited to each of the Plaintiffs herein, in a variety of ways.  These unconstitutional burdens exist irrespective of the fact that all candidates participate in one jungle primary.  "Sometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike." *Anderson v. Celebrezze*, 460 U.S. 780, 801 (1983), *quoting from*, *Jenness v.***

---

[3] Although the Anti-Surplusage Canon is intended primarily to be used as tool for statutory construction, *see, e.g.*, *Kungys v. United States*, 485 U.S. 759, 778 (1988) (plurality opinion of Scalia, J.), the specific text of a judicial opinion is significant nonetheless. *Upper Skagit Indian Tribe v. Sauk-Suiattle Indian Tribe*, 66 F.4th 766 (9th Cir. 2023).  Here the Ninth Circuit affirmatively raised the notion that a March primary could impact Top-Two's constitutionality and this should not be minimized or ignored.

14

*Fortson*, 403 U.S. 431, 442 (1971); *Merrifield v. Lockyer*, 547 F.3d 978, 985-986 (9th Cir. 2008).[4]

These Plaintiffs have been unconstitutionally burdened by the March primary provision in the following ways and no state interest justifies the burden the early deadline presents:

(A) As minor parties and non-major party candidates (including independents), it is vitally important for them to educate voters about their party identity, principles, agenda, and where they stand on issues. The early March primary limits their ability to do so because the upcoming election has not yet been defined, they are operating in a political vacuum, and generating interest among voters in the alternatives to the major parties that they offer is overwhelmingly difficult at a time so remote from the general election. Indeed, the early March primary is even more unfairly burdensome because minor parties must identify their candidates for office in the previous calendar year, 165 days before the early March primary. As an example, for the 2028 election, 165 days earlier is September 24, 2027, a date closer to the previous election on November 3, 2026 than to the general election in 2028 on November 7, 2028.

(B) Organizing supporters to get out their political message is much more difficult for Plaintiffs at a time so remote from the general election. It takes more time for minor parties and non-major party candidates (including independents) to mobilize and recruit supporters, voters, and candidates.

(C) The early March deadline unnecessarily prevents Plaintiffs from capitalizing on their political messaging to attract voters on unexpected significant events that arise in the Spring, still well in advance of the general election but that might separate them from the major parties and attract support.

The March deadline constitutes an unconstitutionally severe burden not justified by any state interest and certainly does not represent the least restrictive means to satisfy any state interest.[5]

The March deadline violates the Plaintiffs' First and Fourteenth Amendment rights to associate for the advancement of their political beliefs; the First and Fourteenth rights of qualified voters, regardless of their political persuasion, to cast their votes effectively, and the rights of the Plaintiffs to run for elective office and to hold such office.

California's early March primary date alone, and in combination with other provisions of Top-Two, provides an historically insurmountable barrier to the general election ballot access in any election race subject to the Top-Two primary system in which there are two or more candidates from either the Democratic or Republican parties.

---

[4] *Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340, 1362 (N.D. Ga. 2016),("'… burdens that fall on new or smaller parties fall disproportionately on 'those voters whose political preferences lie outside the existing political parties.' *Anderson,* 460 U.S. at 793-94, *citing Clements v. Fashing*, 457 U.S. 957, 964 (1982))."

[5] For a list of approximately 50 cases in which similarly early deadlines have been struck down, *See* "Lawsuits Which Enjoined or Overturned Early Petition Deadlines" https://ballot-access.org/2019/03/31/march-2019-ballot-access-news-print-edition/ . *See also, Libertarian Party v. Krebs*, 290 F. Supp. 3d 902 (D. S.D. 2018); *Porter v. Pate*, 2022 U.S. Dist. LEXIS 241720, 2022 WL 19655786 (S.D. Iowa, April 8, 2022).

**California's Top-Two system's March primary date has the effect of disenfranchising voters who wish to cast their ballot with respect to any of the elective offices subject to the Top-Two primary system, for a minor party candidate or any candidate of their choice other than a candidate representing the Democratic or Republican parties. It denies voters their right to express their political beliefs and agenda through a candidate of choice and it prevents Plaintiffs from growing, from attaining and maintaining ballot-qualified status, and it restricts meaningful participation in the democratic political process.**

[ECF #60 at 15-17, ¶¶45-51] As Plaintiffs' assertions in the SAC make clear, the March deadline actually requires them to take required steps many months before March, making it much more burdensome than it appears on its face.

Plaintiffs also refer in the SAC to the express notation by the *Grange II* court that in upholding the constitutionality of Washington's Top-Two system, it did so based, in part, on the fact that the primary was in August and not March. [ECF #60 at 3, n.2]. *See also*, *Libertarian Party of Ohio v. Blackwell,* 462 F.3d 579, 590-591 (6th Cir. 2006) (collecting cases striking down early deadlines, applying strict scrutiny to early deadlines, and explaining the impact of early deadlines on minor parties); *Libertarian Party of Arkansas v. Thurston*, 962 F.3d 390, 400 (8th Cir. 2020)(explaining problems for minor parties and independents associated with early deadlines). The Court in *Williams v. Rhodes* 393 U.S. 23, 33 (1968) also emphasized the burden imposed on minor parties in particular by early deadlines:

> Since the principal policies of the major parties change to some extent from year to year, and since the identity of the likely major party nominees may not be known until shortly before the election, this disaffected "group" will rarely if ever be a cohesive or identifiable group until a few months before the election. Thus, Ohio's burdensome procedures, requiring extensive organization and other election activities by a very early date, operate to prevent such a group from ever getting on the ballot and the Ohio system thus denies the "disaffected" not only a choice of leadership but a choice on the issues as well.

### 2.  Defendant Misapprehends the Severity of the Burden.

In response to the Plaintiffs' detailed assertions concerning the burden the March deadline imposes, the Defendant attempts to minimize the burden by referring to a couple of other cases in which March deadlines were approved [ECF #63 at 9-11]. Defendant's argument in this regard suffers from a number of deficiencies.

16

First, this is a motion to dismiss and all plausible facts alleged in the SAC are to be accepted as true. *Schultz v. Harry S. Truman Scholarship Found.*, 2023 U.S. Dist. LEXIS 40767, *5-6 (N.D. Cal., March 10, 2023)(Chesney, J.). Each and every fact alleged by Plaintiffs regarding the burden they face is more than plausible.

Secondly, this approach is irreconcilable with the dictate in *Anderson* that every situation involving a ballot access restriction must be considered on its own facts and the specific burden claimed by the affected party on a case-by-case basis.

The Court in *Anderson* rejected the use of any "'litmus-test'" to "separate valid from invalid [ballot access] restrictions." *Anderson,* 460 U.S. at 789. Instead, a court determining whether a challenged ballot access restriction is unconstitutional must: 1) evaluate the character and magnitude of rights protected by the First and Fourteenth Amendments; 2) identify the State's interests advanced as justifications for the burdens imposed by the ballot access restrictions; and 3) evaluate the legitimacy and strength of each asserted state interest, and determine whether and to what extent those interests required burdening the plaintiffs' rights. *Id*.

Perhaps the most surprising aspect of Defendant's argument that there is no burden imposed by a March deadline is her repeated reliance on the decision in *Washington State Republican Party v. Washington State Grange*, 676 F.3d 784 (9th Cir. 2012) without even acknowledging the qualification expressly raised in that decision that led this Court to permit Plaintiffs to reiterate their March deadline claim in the SAC. As the Defendant well knows, the Ninth Circuit in *Washington State Republican Party* expressly noted that early deadlines can cause a severe burden for minor parties, citing to the decision in *Anderson*, and specifically noted that the case could be different if the

---

deadline were March instead of August. *Id*. at 794.[6] It is hard to understand how the Defendant could have omitted that key distinction from her argument here, when the court in *Washington State Republican Party* expressly cited that as a distinction that allowed it to uphold a Top-Two statute.

Third, the Defendant entirely ignores the additional major burden asserted by Plaintiffs that is part of the March deadline requirement. In addition to all of the difficult work of educating voters well in advance of election season and the difficulty with messaging and using the limited resources of a small party for those important tasks, essential for it to grow and gain support, scheduling the primary in March requires Plaintiffs to identify their candidates by September of the previous year, 165 days before the primary. So, as Plaintiffs allege in the SAC, for the 2028 election, for example, they will have to identify their candidates by September 24, 2027, a date closer to the previous election on November 3, 2026 than to the general election on November 7, 2028 for which they seek to be candidates [SAC at 16, ¶47(B)].

This additional requirement has been held to increase the burden, making it "severe" for ballot access legal analysis and has led to early deadlines being struck down as unconstitutional in cases even where the primary dates themselves were the same for the major and minor parties. *See e.g.*, *Libertarian Party of Ohio v. Blackwell,* 462 F.3d 579, 590-591 (6th Cir. 2006) (March primary in Presidential year for major and minor parties; petition required 120 days in advance of primary; collecting cases striking down early deadlines, applying strict scrutiny to early deadlines, and explaining the impact of early deadlines on minor parties); *Libertarian Party of Arkansas v. Thurston*, 962 F.3d

---

[6] *See also*, *Jackson v. Attorney General*, 497 Mass. 691, 700 (2026) (September deadline; noting distinction between August and March made by the court in *Washington Republican Party* and the *Anderson* court's holding a March deadline unconstitutional.)

390, 400 (8th Cir. 2020)(explaining problems for minor parties and independents associated with early deadlines); *Libertarian Party of Maine, Inc. v. Dunlap*, 2016 U.S. Dist. LEXIS 69612, 2016 WL 3039715 (D. Maine, May 27, 2016) (certification deadline 196 days in advance of primary; minor and major parties participate in primaries).

> "Many courts have documented the burden imposed by statutes requiring political parties to file registration petitions far in advance of the primary and general elections. *See, e.g.*, *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 880 (3d Cir. 1997) ("*Hooks I*") (noting that an April deadline - 60 days in advance of the primary - required minor parties to rally support "when the election is remote and voters are generally uninterested in the campaign"); *Citizens to Establish a Reform Party of Ark. v. Priest*, 970 F. Supp. 690, 697-98 (E.D. Ark. 1996) (concluding that a January deadline prevented minor parties from finding volunteers, attracting media coverage and recruiting supporters, all of which impacted its ability to appear on the ballot); *McLain v. Meier*, 637 F.2d 1159, 1163-64 (8th Cir. 1980) ("*McLain I*") (same - June deadline 90 days in advance of primary). Deadlines early in the election cycle require minor political parties to recruit supporters at a time when the major party candidates are not known and when the populace is not politically energized."
> *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 586-587 (6th Cir. 2006).[7]

Fourth, the severity of the burden to these Plaintiffs based on the March deadline and corresponding obligations even before that under Top-Two, is not a matter to be dispensed with by granting a motion to dismiss in the face of the plausible facts alleged and the legal backdrop cited above. *See Green Party of Tennessee*, 767 F.3d 533, 548-

---

[7] *See also*, invalidated deadlines in: "*New Alliance Party of Ala. v. Hand*, 933 F.2d 1568, 1576 (11th Cir. 1991) (striking deadline sixty days before the primary and seven months before the general election); *McLain v. Meier*, 637 F.2d 1159, 1163-64 (8th Cir. 1980) (striking deadline more than ninety days before the primary and more than 150 days before the general election); *MacBride v. Exon*, 558 F.2d 443, 449 (8th Cir. 1977) (striking deadline ninety days before the primary and nine months before the general *election*); *Calif. Justice Comm. v. Bowen*, No. CV 12-3956 PA, 2012 U.S. Dist. LEXIS 150424, at *16-25, 2012 WL 5057625, at *4-9 (C.D. Cal. Oct. 18, 2012) (striking deadline 135 days before the primary and ten months before the general election); *Libertarian Party of Tenn. v. Goins*, 793 F. Supp. 2d 1064, 1086-89 (M.D. Tenn. 2010) (striking deadline 120 days before the primary and at least eight months before the general election); *Citizens to Establish a Reform Party in Ark. v. Priest*, 970 F. Supp. 690, 697-98 (E.D. Ark. 1996) (striking deadline five months before the primary and eleven months before the general election); *Libertarian Party of Nev. v. Swackhamer*, 638 F. Supp. 565, 570-71 (D. Nev. 1986) (striking deadline that was effectively 140 days before the primary when the 90-day official deadline was added to the 50-day verification period)." *Libertarian Party of Me., Inc. v. Dunlap*, 2016 U.S. Dist. LEXIS 69612, *17-18 (2016).

549 (6th Cir. 2014) (remanding for factual development on the severity of the burden from the filing deadline).

### 3. The State's Purported Interests in the March deadline are Unavailing.

The premise of the Defendant's argument regarding the State interests purporting to support the March deadline and outweigh the burden to Plaintiffs rests on two assertions that are mistaken. The entire section on the State's purported interests is premised on the absence of any severe burden and on the idea that its interests do not need to be "narrowly tailored." [ECF #63 at 12-13. Neither is a correct premise. Additionally, the State once again claims generic interests that the allegations in the SAC (and the Defendant's own empirical data) clearly render inapplicable.

Defendant claims that it has "important regulatory interests" in "voter turnout and voter influence on the agendas and positions of presidential candidates" [ECF #63 at 12]. There are two significant problems with this. First, there is no substantiation offered for the assertion that somehow holding the primary in March for the races subject to Top-Two increases voter turnout. Secondly, and perhaps more significantly, the empirical evidence, as alleged in the SAC, using data compiled by the Defendant, demonstrates just the opposite [ECF #60 at 12-13].[8] Moreover, this assertion ignores all of the cases, with *Anderson* leading the way, that, again, find just the opposite – that it is much harder to engage voter interest, enthusiasm, and participation with early deadlines. *See Anderson*, 460 U.S. at 790-794. Defendant refers to its purported interest in "voter choice" as well [ECF #63 at 12]. There is no indication either as to what that is supposed to mean or how having a March deadline advances that purported interest.

---

[8] Specifically, for Presidential election year cycles, the empirical data compiled by the Defendant belies the claim that the March deadline serves a state interest in voter participation. Other than in 2020, with an unusually polarized choice at the polls and increased mail-in voting due to Covid 19, voter participation has been lower than before Top-Two or flat at best. *See e.g.*, https://www.sos.ca.gov/administration/news-releases-and-advisories/2012-news-releases-and-advisories/db12-113?utm_source=chatgpt.com (2012 results who reflect lower than average pre-Top Two voter participation); chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://elections.cdn.sos.ca.gov/vca/2024/2024-primary-general-elections-vca-report-summary.pdf?utm_source=chatgpt.com (2024 returned roughly to 2012 levels).

Finally, without any citation or reference to any evidence, Defendant asserts that "… a determination that March primaries are not justified by states' important interests would have nationwide implications" and urges the Court to find that without "uniformity" among states, the "entire country's schedule for presidential primary and general election campaigns would be upended." [ECF #63]. Huh???

First of all, the instant case is solely a challenge to the March deadline as applied to these Plaintiffs, the burdens it causes them and their candidates and voters in California under this Top-Two system with all of its other burdens. Secondly, striking down a March primary deadline in a presidential election cycle is exactly what the United States Supreme Court did in Anderson and the "entire country's schedule for presidential primary and general election campaigns" was not upended; but if it were, it would be because, as the Court in *Anderson* found, the Constitution required it. Third, there is no constitutional principle requiring "uniformity" among the states for primary dates; and of course, the dates vary widely under the current system. Finally, there is a lesser state interest in regulating national elections for President and Vice-President. *Anderson*, 460 U.S. at 794-795.

The Court in *Anderson* expressly held that in passing judgment on the constitutionality of the ballot access restriction at issue, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional. *Anderson*, 460 U.S. at 789. (Internal citations omitted). *See also*, *Pierce v. Stapleton*, 505 F. Supp. 3d 1059, 1067 (D. Mont. 2020), *aff'd in part, rev'd in part and remanded sub nom. Pierce v. Jacobsen*, 44 F.4th 853 (9th Cir. 2022) ("A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."); *Nader v. Brewer*, 531 F.3d 1028, 1024 (9th Cir. 2008); *Soltysik, Id.*; *Bergland v. Harris*,

767 F.2d 1551 1553-54 (11th Cir. 1985); *Green Party of Georgia v. Kemp*, 171 F. Supp. 3d 1340, 1355-56, 1366-67 (N.D. Ga. 2016), *affirmed by and Opinion adopted in whole by Green Party of Georgia*, 674 Fed. Appx 974 (11th Cir. 2017), *rehearing and rehearing en banc denied* (11th Cir., March 31, 2017)(requiring the Secretary of State to prove the strength, legitimacy, and applicability of its claimed interests, consistent with long-standing precedent; reaffirming that a "litmus-test" approach is prohibited); *Green Party of Ga. v. Georgia*, 551 Fed. Appx. 982 (11th Cir. Ga. 2014)(Same).

The State cannot just rely on stating abstract interests that, perhaps, have been important or compelling in other cases where, as here, the ballot access restriction at issue does not advance those interests. *Libertarian Party of Illinois v. Scholz*, 872 F.3d 518, 525 (7th Cir. 2017). In evaluating the State's purported interests, even when the burden is not found to be severe, the reviewing court must evaluate whether such purported interests serve the purpose the State claims they are needed for and whether other less restrictive means could be used to serve such State interests, to the extent the interests are deemed to be legitimate. *Soltysik v. Padilla*, 910 F.3d 438, 445-448 (9th Cir. 2018).

In order to permit the required evaluation of competing interests, "[t]he State must introduce evidence to justify both the interests the State asserts and the burdens the State imposes on those seeking ballot access." *Id.*; *Bergland*, 767 F.2d at 1554. *See also*, *Mandel v. Bradley*, 432 U.S. 173, 178 (1977)(Court must sift through conflicting evidence and make findings of fact as to the difficulty of obtaining signatures in time to meet the deadline); *Storer v. Brown*, 415 U.S. 724 (1974)(a court is required to examine the facts and circumstances of each case individually and may not apply a "litmus test"); *Democratic Party v. Reed*, 343 F.3d 1198, 1205-1207 (9th Cir. 2003)(a determination about the validity and justification for the purported State interests vis a vis the burden imposed is not to be made in the abstract; rather the court must evaluate whether the specific purported interest is actually addressed by the law; rejecting "voter choice" and "voter participation" as justifying interests for a blanket primary); *Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340, 1366, n. 16 (N.D. Ga. 2016).

Plaintiffs must be given the opportunity to develop an evidentiary record to demonstrate the burden and to show that the restriction at issue does not advance, let alone serve the State's purported interests. *Soltysik*, *Id*. at 447. In the instant case, as plausibly alleged in the SAC [ECF # 60 at ¶¶36-40], the history we now have in the years since the passage of Top-Two demonstrates beyond any question that the State's purported interests have actually been undermined by Top-Two and the March deadline.

**B. The Party Label Ballot Pohibition States a Claim and Must Not be Dismissed.**

The second claim the Court gave leave to amend and that is asserted in the SAC is the claim by Plaintiff ASPC that the constitutional rights of its candidates, members, supporters, and of the party itself are violated by the prohibition in Top-Two against having its party label appear on the ballot in association with its candidate. The law requires, instead, the misleading and deceptive language "Party Preference: None" on the ballot for an ASPC candidate.

**1. Plaintiff ASPC's Allegations Regarding the Party Label Prohibition:**

The following are the allegations in the SAC regarding the burden this party-label prohibition has placed on Plaintiff ASPC:

**California law, Cal. Elec. Code §§ 8002.5 and 13105, that prohibits Plaintiff American Solidarity Party of California from listing its party name on the ballot and, instead, requires its ballot label to be "Party Preference: None" violates the First and Fourteenth Amendments to the United States Constitution. There are other related requirements that are imposed in impermissibly discriminatory fashion against minor parties as well. If the ASPC wants to have a candidate statement, for example, it has to purchase one and, similar to its listing on the ballot as "party preference: none," if the ASPC purchases a candidate statement, even on the candidate statement, its candidates are listed as "No Qualified Party Preference." If the ASPC wants its party name to appear anywhere on the candidate it has to pay the State just to have the words "American Solidarity Party" on the candidate statement, and it still will not appear anywhere on the ballot. While the ASPC has to go through an extremely burdensome process to become a qualified party, the current qualified parties were grandfathered in. No other party has successfully qualified since Top-Two and its associated requirements were enacted.**

**Plaintiff ASPC has worked hard to develop its political messaging and to publicize its stand on important political issues. This is essential to helping the Party grow and attract voters, supporters, and candidates.**

**As set out in Paragraph 6 of this Second Amended Complaint, Plaintiff ASPC is the**

**California chapter of a national party.  The Party fields candidates for elective office and, specifically for President in elections around the country.  By not allowing its party label to be listed on the ballot in California, California's restrictions negatively impact the Party's ability to grow nationally and the ASPC is denied the advantage of attracting voters, supporters, and candidates who are familiar with and support the national party and its mission and agenda but who, because of California's prohibition on using the party label, do not understand the relationship of its candidates to the national party.**

**A party's name and the political philosophy and agenda associated with that name is vitally important to the Party's ability to attract voters, supporters, and candidates who would be likely to subscribe to its views and take valuable cues from the Party label associated with that agenda and its ideological bona fides.  By denying ASPC the ability to use its party label in the California jungle primary, the statutory provisions at issue severely handicap the ASPC at a critical juncture in the election process and, specifically at the most dispositive, climatic juncture in the process - selecting a candidate in the voting booth.[9]**

**Requiring the use of "None" to indicate "Party Preference" falsely reflects the ASPC's and its candidates' approach to the election and misleads potential voters, implying that its candidates and the Party itself is neutral, has no meaningful specific agenda sufficient to set it apart from other parties and leads to confusion.**

**There is no sufficient state interest justifying this severely burdensome restriction on the ASPC's ability to list its party label on the ballot.**

**The statutory provisions at issue have the effect of disenfranchising voters who wish to cast their ballot with respect to any of the elective offices subject to the Top-Two primary system, for a minor party candidate or any candidate of their choice other than a candidate representing the Democratic or Republican parties.  It denies voters their right to express their political beliefs and agenda through a candidate of choice and it prevents Plaintiff ASPC from growing, from attaining and maintaining ballot-qualified status, and it restricts meaningful participation in the democratic political process, all in violation of the First and Fourteenth Amendments.  It also violates ASPC's rights to Equal Protection of the law by discriminating against it in materially detrimental ways because of its status as a minor political party in contrast to California law's treatment of the Democratic and Republican parties.**

[ECF #60 at 17-19, ¶¶53-59].

### 2.  The Defendant Misapprehends the Severity of the Burden

At the outset of the section of its motion to dismiss in which the Defendant argues that

ASPC is not severely burdened by the party label prohibition, it cites to the decisions in *Timmons*

---

[9] *See Soltysik v. Padilla*, 910 F.3d 438, 442 (9th Cir. 2018); *Tashjian v. Republican Party*, 479 U.S. 208, 220 (1986) ("To the extent that party labels provide a shorthand designation of the views of party candidates on matters of public concern, the identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise.").

24

*v. Twin Cities Area New Party*, 520 U.S. 351 (1997) and *Soltysik v. Padilla*, 910 F.3d 438 (9ᵗʰ Cir. 2018) for the proposition asserted in the section's heading – that the burden is not severe [ECF #63 at 13]. The section omits other factors surrounding this kind of ballot access burden, including holdings in favor of an evidentiary hearing and discussion about why, while perhaps less than severe, the burden is nonetheless significant. Somehow, by the end of its argument in this section, contrary to all authority (and of course, none is cited), Defendant represents to the Court that Plaintiff ASPC does not "plausibly allege a "cognizable burden …." [ECF #63 at 14]. Surely, Defendant well knows that the allegations by ASPC in the SAC allege a cognizable burden and significantly more than that. It is not clear why the Defendant would make such an unsupportable representation directly contrary to the relevant authority in this Circuit and elsewhere.

The "cognizable" burden created by the party label prohibition and the appropriateness of an evidentiary hearing, recognized in *Soltysik v. Padilla*, 910 F.3d 438 (9ᵗʰ Cir. 2012), was reaffirmed again by the Ninth Circuit in 2020 in its decision in *Tedards v. Ducey*, 951 F.3d 1041 (9ᵗʰ Cir. 2020):

> "This case is distinguishable from **Soltysik** because, compared to the burden at issue here**, the burden in *Soltysik* fell higher on the *Burdick* sliding scale between "reasonable, nondiscriminatory" and "severe."** *Id.* at 445-46. In ***Soltysik***, we considered a challenge to a California law requiring candidates from all but six "qualified" parties to state a party preference of "None" on the ballot. *Id.* at 445. **The law therefore required a false statement regarding political views and clearly discriminated against candidates from new and small parties. *Id.* at 445-46. Under these circumstances, we held that further development of the evidentiary record was necessary to determine whether there were "more precise ways" to address the State's alleged interest in preventing voter confusion.** *Id.* at 447."

*Tedards v. Ducey*, 951 F.3d 1041, 1067 (2020) (Emphasis added).

In granting Plaintiff ASPC leave to file a Second Amended Complaint on this issue, this Court noted that the primary case cited by Plaintiff ASPC in support of its party label claim, *Soltysik v. Padilla*, 910 F.3d 438 (9ᵗʰ Cir. 2012) found that the election code provisions here impose "more than a slight burden," but that that case dealt with a "candidate, not a party." [ECF

#57 at 26]. That is a difference without a distinction in this context; nor is it raised as an issue in the addressing the burden imposed on ASPC.[10]

As noted, ASPC's claim is on behalf of its candidates, members, and voters who wish to support it, as well as on its own behalf as a party. *See, e.g.*, ECF #60 at ¶6, alleging that the ASPC's "candidates for elective office in California have been prevented from appearing on the general election ballot. "Plaintiff American Solidarity Party is unconstitutionally burdened because **when its candidates run in the primary, they are prohibited from having their party name appear on the ballot …**" (emphasis added); *See also* ¶¶52-59 (describing the burden on the ASPC and its candidates; ¶2 under the Claims for Relief ("Require the Defendant to list the party label on the ballot for all American Solidarity of California Party candidates.").

The interests in having candidates associated with their parties and vice versa and in avoiding voter deception by falsely or misleadingly not listing the party association are well-recognized especially when it comes to the ballot – the vitally important last forum for information a voter sees before casting his or her vote. *See Tashjian v. Republican Party,* 479 U.S. 208, 220 (1986*)*; *Cook v. Gralike*, 531 U.S. 510, 525 (2001) ("Indeed, it seems clear that the adverse labels handicap candidates 'at the most crucial state in the election process – the instant before the vote is cast.'"); *Rosen v. Bowen*, 970 F.2d 169, 175 (6th Cir. 1992); *Mazo v. Way*, 551 F. Supp. 3d 478, 504-05 (D. NJ. 2021) ("the potential power of [naming a person or group] as a signal to voters of a candidate's ideological bona fides," a valuable voting cue without which a candidate may face "a potentially serious handicap 'at the climactic moment of choice' in the voting booth."); *Soltysik*, 910 F.3d at 442 (quoting *Rosen*, 970 F.2d at 175); *Norman v. Reed*, 502 U.S. 279 (1992) (recognizing the constitutional importance of allowing new parties to grow and be associated with their party name). *See also, Tedards v. Ducey,* 951 F.3d 1041, 1067 (9th Cir.

---

[10] To the extent the Defendant attempts to focus on the party status of Plaintiff ASPC, it is in the next section of its motion to dismiss and there it is offered in support of the plainly erroneous straw man claim that Plaintiff ASPC has raised a facial challenge. That simply is not the case. ASPC has raised an as-applied challenge on its own behalf and on behalf of its members, candidates, supporters, and voters, challenging the prohibition based on the specific burdens it has alleged that it specifically causes them. [ECF #63 at 17-18]. Defendant appears to recognize that the claim is brought on behalf of its members, candidates, supporters, and voters, even while once again mischaracterizing the claim as a facial challenge and misstating the law [ECF #63 at 18, n.7].

2020) (explaining why the party label issue in *Soltysik* requires the development of an evidentiary record).

In this regard, it is worth considering the words of the court in *Soltysik* about the burden and the key importance of what is on the ballot, the last piece of information a voter has just before casting his or her vote:

> "These two suggestions are not only factually misleading. Given the potential power of the party-preference label as a signal to voters of a candidate's ideological bona fides, a label suggesting affirmative dissociation from any political ideology is also a potentially significant handicap "at the climactic moment of choice" in the voting booth. *Rosen v. Brown*, 970 F.2d 169, 175 (6th Cir. 1992); *see also Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 220, 107 S. Ct. 544, 93 L. Ed. 2d 514 (1986) ("To the extent that party labels provide a shorthand designation of the views of party candidates on matters of public concern, the identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise."). In light of these potential distortions, we cannot agree with the Secretary that, as a matter of law, the statutes impose at worst a "slight" burden on candidates like Soltysik."

*Soltysik v. Padilla*, 910 F.3d 438, 445-446 (2018)

Plaintiff ASPC respectfully submits that as applied to it and its candidates, members, supporters, prospective voters, and voters, the party label prohibition and requirement that its candidates affirmatively and falsely indicate that they have no party preference constitutes a severe burden violating their rights under the First and Fourteenth Amendments to the United States Constitution.  In light of the burden alleged as to this Plaintiff and its members, supporters, and voters, whether severe or something less, an evidentiary hearing is required to adduce evidence of the burden, challenge the claimed State's interests and give an opportunity to address more precise ways of addressing any claimed state interest in prohibiting the party label from the ballot and affirmatively requiring the party's candidates to mislead the public, while burdening the party's ability to grow.

### 3. The State's Claimed Interests in the Party Label Prohibition are Unavailing.

The purported State interests offered by Defendant in support of the party label prohibition as applied here, [ECF #63 at 15], are exactly the kinds of interests that the court in *Soltysik* found to require an evidentiary hearing – both to assess the "true extent of the burden" imposed and the

27

"weightiness of California's interests in imposing that burden." *Soltysik*, 910 F.3d at 450. Indeed, the court in *Soltysik* professed its view that, while avoiding voter confusion, for example is a legitimate government interest, it is not at all clear why some less burdensome means could not address that interest and, indeed, it seemed to the court that the prohibition on party label – indicating the candidate had no party preference – would have the opposite consequence and actually cause voter confusion. *Id*. at 447. Throughout the decision, the court in *Soltysik* expressed its concern about the deception and misrepresentation the party label prohibition caused, rejecting the interests claimed here by the State.

To the extent the State relies on the decision in *Chamness v. Bowen*, 722 F.3d 1110 (9th Cir. 2013) [ECF #63 at 16], it ignores entirely how the court in *Soltysik* distinguished the two cases. First, the court noted that the prohibition at issue in *Chamness* had no practical effect (the difference between "independent" and no party preference) in contrast to the issue before the court in *Soltysik* and here. And *Chamness*, the affected party was given an opportunity to put on evidence in support of its claim, but failed to adduce sufficient evidence. *Soltysik*, 910 F.3d at 447-448.[11]

---

[11] "Our decision in *Chamness*, which featured a similar (but meaningfully different) California ballot requirement, illustrates why a remand for further factual development is warranted here. The version of the California Elections Code then in effect required the ballot to describe Chamness as having "No Party Preference," but Chamne**s**s wanted the ballot to list his party preference as "Independent." 722 F.3d at 1113, 1115. Reviewing the grant of summary judgment in the Secretary's favor, our court rejected **Chamness**'s First and Fourteenth Amendments claim because he "failed to provide any *evidence* that the two phrases are actually likely to be understood by voters to convey . . . different meanings, and, if they do, that the distinction would tend to affect the way voters cast their votes." *Id.* at 1117-18 (emphasis added).

Here, because the district court dismissed his complaint, Soltysik never had the opportunity to develop such evidence, and on the record before us we cannot say as a matter of law that the "Party Preference: None" designation is a sufficiently unobtrusive means of clarifying to voters that Soltysik's preferred political body does not qualify as a "party" under California election law. *See, e.g., Duke v. Cleland*, 5 F.3d 1399, 1405-06 & n.6 (11th Cir. 1993) (vacating dismissal of ballot-regulation challenge and remanding for further proceedings because "[d]iscovery has not commenced" and "[t]he existence of a state interest . . . is a matter of proof"); *Wood v. Meadows*, 117 F.3d 770, 776 (4th Cir. 1997) (reversing grant of summary judgment and remanding "for further factual development both as to the burdens . . . upon independent candidates and their supporters, and as to the interests of the [government] in imposing that [burden]" because the record was "virtually barren of any evidence of the strength or legitimacy of the [government's] interests, administrative or otherwise"); *Rosen*, 970 F.2d at 172-73, 176 (reviewing evidence supporting plaintiff's challenge to Ohio ballot law, including affidavits of three experts). Nor can we conclude as a matter of law that a factually misleading label like the one next to Soltysik's name would not "tend to affect the way voters cast their

(continued…)

Plaintiffs' Opposition to Motions to Dismiss the Second Amended Complaint (3:24-cv-08308-MMC)

The Defendant's assertion that being able to list one's party on a candidate substitute ought to suffice [ECF #63 at 17, n.6] is belied by case after case that has emphasized the singular importance on the ballot itself because of its role in providing information to the voter at the last and most crucial moment right before the vote is cast.  *See Tashjian v. Republican Party,* 479 U.S. 208, 220 (1986*); Cook v. Gralike*, 531 U.S. 510, 525 (2001); *Rosen v. Bowen*, 970 F.2d 169, 175 (6th Cir. 1992); *Mazo v. Way*, 551 F. Supp. 3d 478, 504-05 (3d Cir. 2021); *Soltysik*, 910 F.3d at 442 (quoting *Rosen*, 970 F.2d at 175).

The balance of the Defendant's argument is based on the false premise that this is a facial challenge and should be rejected out of hand.

The motion to dismiss ASPC's claim should be dismissed and, at a minimum, an evidentiary hearing must be provided.

## VII.   CONCLUSION

It is not a constitutionally sufficient answer to say that all parties are treated the same with the same chance to enter the blanket primary and finish in the top two – and especially not when we have the undeniable history of the exclusion from the general ballot for minor parties when they have to go head to head with the major parties.  Top Two is not based on a showing of a modicum of support in order to gain general election ballot access.  Rather, it is a device created by legislators from the two major parties that ensures that those two major parties will maintain the right to govern, at the expense of the minor parties who have lesser resources and seek to grow, but cannot grow without access to the general election ballot for their members, supporters, and voters to see.  This is the very dynamic Justice O'Connor warned about in her concurring opinion in *Clingman v. Beaver*, 544 U.S. 581, 603 (2005) (O'Connor, J., Concurring).[12] Indeed,

_____

votes." *Chamness*, 722 F.3d at 1118.

*Soltysik v. Padilla*, 910 F.3d 438, 447-448 (2018).

[12] "Although the State has a legitimate -- and indeed critical -- role to play in regulating elections, it must be recognized that it is not a wholly independent or neutral arbiter. Rather, the State is itself controlled by the political party or parties in power, which presumably have an incentive to shape the rules of the electoral game to their own benefit."

the Top-Two system, like another state's system struck down as unconstitutional, "serves to protect the two major parties at the expense of political dialogue and free expression, which is not justified, much less compelling." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 594 (6th Cir. 2006).

Smaller political parties have played a significant role in the American political system through our nation's history.  As Justice Marshall wrote long ago:

"The States' interest in screening out frivolous candidates must be considered in light of the significant role that third parties have played in the political development of the Nation. Abolitionists, Progressives, and Populists have undeniably had influence, if not always electoral success." *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 185 (1979); *See* also, Green *Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340, 1352-53 (N.D. Ga. 2016), *affirmed by Green Party of Ga. v. Kemp,* 2017 U.S. App. LEXIS 1769 (11th Cir., February 1, 2017); *See also*, J. David Gillespie, *Challengers to Duopoly, Why Third Parties Matter in American Two-Party Politics* (University of South Carolina Press 2012 ed.) https://www.jstor.org/stable/j.ctv6wgjrr ; Adams, James, and Samuel Merrill. *Why Small, Centrist Third Parties Motivate Policy Divergence by Major Parties.* The American Political Science Review, vol. 100, no. 3, 2006, pp. 403–417. JSTOR, www.jstor.org/stable/27644363.

None of the proffered State interests put forward by the Defendant can justify the burden on Plaintiffs arising from the March deadline or on ASPC from the party label prohibition.  The following excerpts from two landmark ballot access cases poignantly express the constitutional imperative to rein in overly restrictive ballot access initiatives and to require truly compelling state interests that actually apply when minor parties, candidates, and voters face a burden like that imposed by Top Two:

> "For more than two decades, this Court has recognized the constitutional right of citizens to create and develop new political parties. The right derives from the First and Fourteenth Amendments and advances the constitutional interest of like-minded voters to gather in pursuit of common political ends, thus enlarging the opportunities of all voters to express their own political references. See *Anderson* v. *Celebrezze*, 460 U.S. 780, 793-794, 75 L. Ed. 2d 547, 103 S. Ct. 1564 (1983); *Illinois Bd. of Elections* v. *Socialist Workers Party*, 440 U.S. 173, 184, 59 L. Ed. 2d 230, 99 S. Ct. 983 (1979); *Williams* v. *Rhodes*, 393

---

30

Plaintiffs' Opposition to Motions to Dismiss the Second Amended Complaint (3:24-cv-08308-MMC)

U.S. 23, 30-31, 21 L. Ed. 2d 24, 89 S. Ct. 5 (1968). To the degree that a State would thwart this interest by limiting the access of new parties to the ballot, we have called for the demonstration of a corresponding interest sufficiently weighty to justify the limitation, see *Anderson, supra*, at 789, and we have accordingly required any severe restriction to be narrowly drawn to advance a state interest of compelling importance. See *Socialist Workers Party, supra*, at 184, 186."

*Norman v. Reed*, 502 U.S. 279, 288-289 (1992).

"Restrictions on access to the ballot burden two distinct and fundamental rights, "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams* v. *Rhodes, supra*, at 30. The freedom to associate as a political party, a right we have recognized as fundamental, see 393 U.S., at 30-31, has diminished practical value if the party can be kept off the ballot. Access restrictions also implicate the right to vote because, absent recourse to referendums, "voters can assert their preferences only through candidates or parties or both." *Lubin* v. *Panish*, 415 U.S. 709, 716 (1974). By limiting the choices available to voters, the State impairs the voters' ability to express their political preferences. And for reasons too self-evident to warrant amplification here, we have often reiterated that voting is of the most fundamental significance under our constitutional structure. *Wesberry* v. *Sanders*, 376 U.S. 1, 17 (1964); *Reynolds* v. *Sims*, 377 U.S. 533, 555 (1964); *Dunn* v. *Blumstein, supra*, at 336.  When such vital individual rights are at stake, a State must establish that its classification is necessary to serve a compelling interest. *American Party of Texas* v. *White*, 415 U.S. 767, 780-781 (1974); *Storer* v. *Brown*, 415 U.S. 724, 736 (1974); *Williams* v. *Rhodes, supra*, at 31."

*Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)

Plaintiffs have alleged plausible facts in support of a cognizable legal theory in their SAC regarding the constitutional violations effected by the March Deadline and the party label prohibition.  The Motions to Dismiss must be denied.  Plaintiffs must be permitted to develop a record in this case to fully demonstrate the severity of the burden imposed on them in their respective roles as parties, candidates, and voters and to demonstrate that the interests the Defendant claims justify the Top-Two restrictions at issue are not sufficiently weighty to justify such restrictions.   Plaintiffs must also be permitted to develop a record, through expert testimony and otherwise, of the availability and greater efficacy of alternative election systems that would meet any legitimate ballot access State interest.

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 17-18 (1964).

Plaintiffs must be permitted to have that voice by having a real, achievable avenue to gain access to the general election ballot in order to get elected to govern and in order to be able to meaningfully exercise their right to vote. The March deadline and the party label prohibition impermissibly violate Plaintiffs' constitutional rights. Plaintiffs must be permitted to pursue their First and Fourteenth Amendment claims.

_____

/s/ David I. Schoen

David I. Schoen (*pro hac vice*)
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: 917-941-7952
Facsimile: 917-591-7586
E-Mail: Dschoen593@aol.com; Schoenlawfirm@gmail.com

Soyeun D. Choi, Esq., PC (SBN 211344)
969G Edgewater Blvd, 314
Foster City, CA 94404
Telephone: (650) 380-6116;
E-mail: Soyeun@SoyeunEsq.com

*Counsel for Plaintiffs*

Plaintiffs' Opposition to Motions to Dismiss the Second Amended Complaint (3:24-cv-08308-MMC)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of August, 2026, I caused a true and correct copy of the foregoing pleading on all counsel of record by filing the same through this Court's ECF system.

/s/ David I. Schoen

Plaintiffs' Opposition to Motions to Dismiss the Second Amended Complaint (3:24-cv-08308-MMC)